# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
| --- | --- |
| IN RE MBNA CORPORATION DERIVATIVE AND CLASS LITIGATION | Lead Case No. 1:05-cv-00327-GMS |
| This Document Relates To: ALL ACTIONS | |

## OPENING BRIEF OF NOMINAL DEFENDANTS MBNA CORPORATION AND BANK OF AMERICA CORPORATION, THE MBNA "INSIDER DEFENDANTS" AND DEFENDANTS RANDOLPH D. LERNER AND KENNETH L. LEWIS IN SUPPORT OF THEIR MOTION TO DISMISS

Richard H. Morse (No. 531)
rmorse@ycst.com
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600

*Attorneys for nominal defendants MBNA
Corporation and Bank of America Corporation
and defendants Bruce L. Hammonds, Kenneth
A. Vecchione, Richard K. Struthers, John R.
Cochran, III, Lance L. Weaver, Charles C.
Krulak, Michael G. Rhodes, John W. Scheflen,
Randolph D. Lerner and Kenneth L. Lewis*

Of Counsel:

Richard J. Urowsky
Richard C. Pepperman II
Ryan C. Williams
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

January 20, 2006

**TABLE OF CONTENTS**

*Page*

NATURE AND STAGE OF THE PROCEEDING..................................................................1

SUMMARY OF ARGUMENT .................................................................................................2

STATEMENT OF FACTS .......................................................................................................6

      A.    MBNA's January 2005 Earnings Forecast and Subsequent
            Announcement of First Quarter 2005 Earnings..........................................6

      B.    The Subsequent Litigation .......................................................................7

      C.    BAC's Acquisition of MBNA ....................................................................8

      D.    Plaintiffs' Consolidated Amended Complaint............................................9

ARGUMENT.........................................................................................................................10

I.      Maryland Law Governs Plaintiffs' Claims That MBNA Officers and
        Directors Breached Their Fiduciary Duties ...........................................................11

II.    Plaintiffs Lack Standing to Pursue Derivative Claims on Behalf of
        MBNA or BAC ....................................................................................................12

III.   Plaintiffs Did Not Make the Required Demand Upon the Board of
        Either MBNA or BAC Before Commencing This Litigation................................16

      A.    Plaintiffs Have Not Adequately Alleged That a Demand
            Upon MBNA's Board Would Have Been Futile. ....................................16

      B.    Plaintiffs Have Not Adequately Alleged That a Demand
            Upon BAC's Board Is Futile...................................................................20

IV.   Plaintiffs' Purportedly "Direct" Claims on Behalf of Former MBNA
        Shareholders Are Actually Derivative Claims Belonging to BAC........................21

V.    Plaintiffs' Claims on Behalf of the Holder Class Should Be Dismissed
        as Unduly Speculative.........................................................................................24

VI.   Plaintiffs Have Not Alleged Sufficient Facts to Rebut the Presumption
        That the MBNA Board's Approval of the BAC Merger Was a Valid
        Exercise of Business Judgment............................................................................26

VII.  Plaintiffs' Claim That MBNA's Directors Breached Their Duty of Full
        Disclosure by Failing to Include Certain Information in the Proxy
        Statement Is Without Merit...................................................................................31

VIII.   Plaintiffs' Conclusory Allegation That Kenneth Lewis Aided and
        Abetted a Purported Breach of Fiduciary Duty Cannot Support a Cause
        of Action. ................................................................................................................37

IX.     Plaintiffs' Claims Against Randolp Lerner Should Be Dismissed
        Because MBNA's Charter Shields Its Directors from Monetary
        Liability.................................................................................................................39

CONCLUSION................................................................................................................40

# TABLE OF AUTHORITIES

*Page(s)*

## Federal Cases

*Allison* v. *General Motors Corp.*, 604 F. Supp. 1106 (D. Del.),
  *aff'd*, 782 F.2d 1026 (3d Cir. 1985) ..........................................................21

*Blue Chip Stamps* v. *Manor Drug Stores*, 421 U.S. 723 (1975).....................................25

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997)..................7, 10

*In re Compucom Systems, Inc. Stockholders Litig.*,
  No. Civ.A. 499-N, 2005 WL 2481325 (Del. Ch. Sept. 29, 2005) ...........................26

*Cramer* v. *Gen. Telegraph & Electric Corp.*, 582 F.2d 259 (3d Cir. 1978)...................20

*Crocker* v. *Federal Deposit Ins. Corp.*, 826 F.2d 347 (5th Cir. 1987) ..........................25

*In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546 (D. Del. 2002)........................10, 11

*DiLorenzo* v. *Edgar*, No. Civ. 03-841-SLR,
  2004 WL 609374 (D. Del. Mar. 24, 2004) ..................................................9

*Grill* v. *Hoblitzel*, 771 F. Supp. 709 (D. Md. 1991)..........................................................39

*Hayes* v. *Crown Central Petroleum Corp.*, 249 F. Supp. 2d 725
  (E.D. Va. 2002), *aff'd*, 78 Fed. Appx. 857 (4th Cir. 2003).....................................39

*Heit* v. *Tenneco*, Inc., 319 F. Supp. 884 (D. Del. 1970) ..................................................12

*Ieradi* v. *Mylan Laboratories, Inc.*, 230 F.3d 594 (3d Cir. 2000)....................................8

*Jolly Roger Fund, L.P.* v. *Sizeler Prop. Investors, Inc.*, No. RDB 05-841,
  2005 WL 2989343 (D. Md. Nov. 3, 2005) ................................................3, 12, 13, 22

*Kamen* v. *Kemper Finance Services, Inc.*, 500 U.S. 90 (1991) .......................................16

*Kamen* v. *Kemper Finance Services, Inc.*,
  939 F.2d 458 (7th Cir.), *cert. denied*, 502 U.S. 974 (1991).......................................18

*In re Kaufman Mutual Fund Actions*, 479 F.2d 257 (1st Cir. 1973)...............................18

*Kaufman* v. *Safeguard Scientifics, Inc.*, 587 F. Supp. 486 (E.D. Pa. 1984) ...................20

*Lewis* v. *Curtis*, 671 F.2d 779 (3d Cir. 1982) ..................................................................18

*In re Merck & Co. Sec. Litig.*, No. 04-3298,
   2005 WL 3436619 (3d Cir. Dec. 15, 2005) ............................................................8

*In re Merrill Lynch Focus Twenty Fund Investment Company Act Litig.*,
   218 F.R.D. 377 (E.D.N.Y. 2003) ..........................................................................19

*Oran* v. *Stafford*, 226 F.3d 275 (3d Cir. 2000) ...........................................................9, 11

*Scalisi* v. *Fund Asset Management, Inc.*, 380 F.3d 133 (2d Cir. 2005) .........................17

*In re Vicuron Pharms., Inc. Securities Litig.*, No. 04-2627,
   2005 WL 2989674 (E.D. Pa. July 1, 2005) ............................................................7

*Weiss* v. *Temporary Investment Fund*, 692 F.2d 928 (3d Cir. 1982) .............................18

### State Cases

*Alleco, Inc.* v. *Harry & Jeanette Weinberg Foundation, Inc.*,
   639 A.2d 173 (Md. Ct. Spec. App. 1994) ............................................................18

*Aronson* v. *Lewis*, 473 A.2d 805 (Del. 1984) ...............................................................18

*Barkan* v. *Amsted Industrial*, 567 A.2d 1279 (Del. 1989) ............................................30

*Beam ex rel. Martha Stewart Omnimedia, Inc.*, v. *Stewart*,
   845 A.2d 1040 (Del. 2004) ..................................................................................19

*Behrens* v. *United Investors Management Co.*,
   No. 12876, 1993 WL 400209, (Del. Ch. Oct. 1, 1993)..........................................37

*Benning* v. *Wit Capital Group, Inc.*, No. Civ.A.99C-06-157 MMJ,
   2004 WL 3030005 (Del. Super. Nov. 30, 2004)....................................................25

*Bershad* v. *Curtiss-Wright Corp.*, 535 A.2d 840 (Del. 1987)........................................34

*Bonime* v. *Biaggini*, Nos. 6925 and 6980, 1984 WL 19830
   (Del. Ch. Dec. 7, 1984), *aff'd*, 505 A.2d 451 (Del. 1985) .....................................15

*Booth* v. *Robinson*, 55 Md. 419 (Md. 1881) .................................................................23

*Caruana* v. *Saligman*, Civ. A. No. 11135,
   1990 WL 212304, (Del. Ch. Dec. 21, 1990)..........................................................21

*Coates* v. *Netro Corp.*, No. 19154, No. Civ.A. 19154,
   2002 WL 31112340 (Del. Ch. Sept. 11, 2002) .....................................................12

*Danielewicz* v. *Arnold*, 769 A.2d 274 (Md. 2001)..............................................15, 23, 26

*Decker* v. *Clausen*, Civ. A. Nos. 10,684 and 10,685,
    1989 WL 133617 (Del. Ch. Nov. 6, 1989) ................................................................21

*In re First Interstate Bancorp Consolidated Shareholder Litig.*,
    729 A.2d 851 (Del. Ch. 1998), *aff'd*, 748 A.2d 913 (Del. 2000) .............................15

*In re Frederick's of Hollywood, Inc. Shareholders Litig.*,
    C.A. No. 15944, 2000 WL 130630 (Del. Ch. Jan. 31, 2000) ............................26, 27

*In re General Motors (Hughes) S'holders Litig.*, No. Civ. A. 20269,
    2005 WL 1089021 (Del. Ch. May 4, 2005)..............................................................38

*Grosset* v. *Wenaas*, 35 Cal. Rptr.3d 58 (Cal. Ct. App. 2005).........................................13

*Hudson* v. *Prime Retail, Inc.*, No. 24-C-03-5806,
    2004 WL 1982383, (Md. Cir. Ct. Apr. 1, 2004)...........................................28, 30, 31

*Jasinover* v. *Rouse Co.*, No. 13-C-04-59594,
    2004 WL 3135516 (Md. Cir. Ct. Nov. 1, 2004) ...........................................28, 29, 34

*In re JCC Holding Co.*, 843 A.2d 713, 721 (Del. Ch. 2003)....................................33, 35

*Kramer* v. *W. Pac. Industrial, Inc.*, 546 A.2d 348 (Del. 1988) ......................................22

*Krim* v. *ProNet, Inc.*, 744 A.2d 523 (Del. Ch. 1999).......................................................34

*Lewis* v. *Anderson*, 477 A.2d 1040 (Del. 1983)...............................................3, 12, 14, 15

*Lewis* v. *Turner Broadcasting Sys., Inc.*, 503 S.E.2d 81 (Ga. Ct. App. 1998) ...............13

*Lewis* v. *Ward*, 852 A.2d 896 (Del. 2004) ...............................................................14, 15

*Loudon* v. *Archer-Daniels-Midland Co.*, 700 A.2d 135 (Del. 1997).............................31

*In re Lukens Inc. S'holders Litig.*, 757 A.2d 720 (Del. Ch. 1999).................................30

*Malpiede* v. *Townson*, 780 A.2d 1075, 1086 (Del. 2001).............................................31

*Manzo* v. *Rite Aid, Inc.*, No. Civ. A. 18451-NC,
    2002 WL 31926606 (Del. Ch. Dec. 19, 2002)....................................................24, 38

*McDermott, Inc.* v. *Lewis*, 531 A.2d 206 (Del. 1987) .....................................................11

*Official Comm. of Unsecured Creditors of Integrated Health Servs., Inc.* v. *Elkins*,
C.A. No. 20228, 2004 WL 1949290 (Del. Ch. Aug. 24, 2004)................................19

*Paramount Communications, Inc.* v. *QVC Network, Inc.*,
637 A.2d 34 (Del. 1994) ..........................................................................30

*Paskowitz* v. *Wohlstadter*, 822 A.2d 12721 (Md. Ct. Spec. App. 2003) ......................22

*In re Ply Gem Industrial S'holders Litig.*, No. 15779,
2001 WL 755133 (Del. Ch. June 26, 2001)...............................................19

*Rales* v. *Blasband*, 634 A.2d 927 (Del. 1993) ................................................20

*Revlon Inc.* v. *MacAndrews & Forbes Holdings*, 506 A.2d 173 (Del. 1986)................27

*Rosenblatt* v. *Getty Oil Co.*, 493 A.2d 929 (Del. 1985)...................................31

*In re Santa Fe Pacific Corp. S'holder Litig.*, 669 A.2d 59 (Del. 1995) .......................38

*Solomon* v. *Armstrong*, 747 A.2d 1098 (Del. Ch. 1999),
*aff'd*, 746 A.2d 277 (Del. 2000)..............................................................31

*Stroud* v. *Grace*, 606 A.2d 75 (Del. 1992).....................................................31

*TCG Sec., Inc.* v. *Southern Union Co.*,
No. 1282, 1990 WL 7525 (Del. Ch. Jan. 31, 1990)...................................37

*Thompson* v. *ENSTAR Corp.*, 509 A.2d 578 (Del. Ch. 1984) ........................................30

*In re Toys "R" Us Sec. Litig.*, 877 A.2d 975 (Del. Ch. 2005).........................................30

*Vantagepoint Venture Partners 1996* v. *Examen, Inc.*,
871 A.2d 1108 (Del. 2005) ....................................................................11

*In re Vitalink Committees S'holders Litig.*, No. 12085,
1991 WL 238816 (Del. Ch. Nov. 8, 1991) ...............................................37

*Waller* v. *Waller*, 49 A.2d 449 (Md. 1946)................................................22, 23

*Weil* v. *Morgan Stanley DW, Inc.*, 877 A.2d 1024 (Del. Ch. 2005) ..............................38

*Werbowsky* v. *Collomb*, 766 A.2d 123 (Md. 2001) .................................5, 16, 17, 23, 26

*Wittman* v. *Crooke*, 707 A.2d 422 (Md. Ct. Spec. App. 1998)................................26, 30

*Zirn* v. *VLI Corp.*, No. 9488, 1995 WL 362616 (Del. Ch. June 12, 1995),
  37*aff'd*, 681 A.2d 1050 (Del. 1996)..........................................................................37

### Statutes and Rules

Fed. R. Civ. P. 9.........................................................................................................14

Fed. R. Civ. P. 23.1 ................................................................................................3, 16

8 Del. Gen. Corp. Law § 327 ....................................................................................15

Md. Code Ann., Corp. and Ass'ns Code § 2-405.1 ...............................................3, 28

Md. Code Ann., Corp. and Ass'ns Code § 3-114 .......................................................13

Md. Code Ann., Cts. & Jud. Proc. Code § 5-418............................................................39

## NATURE AND STAGE OF THE PROCEEDING

Plaintiffs Lemon Bay Partners, LLP and David Benoit, former share-holders of MBNA Corporation ("MBNA"), bring this consolidated action against certain former officers and directors of MBNA and against the Chairman and CEO of Bank of America Corporation ("BAC").

Plaintiffs seek to assert derivative claims on behalf of MBNA, a Maryland corporation that ceased to exist on January 1, 2006 when it was acquired by BAC. They also seek to assert the same derivative claims on behalf of BAC, a Delaware corporation, as MBNA's putative successor-in-interest. (Am. Compl. ¶¶ 6, 21, 44, 114-154.)[1]

In addition, plaintiffs assert what they characterize as direct claims in their capacity as former MBNA shareholders against the same MBNA defendants and against BAC's Chairman and CEO. Plaintiffs seek to bring these so-called direct claims on behalf of two putative classes of former MBNA shareholders. (*Id.* ¶¶ 155-190.)

This case is one of numerous lawsuits filed in this Court after MBNA's April 21, 2005 announcement that its 2005 first-quarter earnings were lower than expected. In addition to this action, a number of putative class actions have been brought on behalf of MBNA shareholders under the federal securities laws. A consolidated complaint in those securities class actions was filed on December 12, 2005. And a putative class action also has been filed on behalf of participants in MBNA's 401(k) Plus Savings Plan under ERISA. All of these cases are based on the same underlying factual

---

[1] Plaintiffs' Consolidated and Amended Shareholders' Class and Derivative Complaint, filed Nov. 21, 2005, is cited in this brief either as the "Consolidated Amended Complaint" or as "(Am. Compl. ¶ __)." On January 12, 2006, *Rosenwald* v. *Unger, et al.*, No. 05-CV-00692-GMS, was consolidated with this action.

allegations.  On January 9, 2006, the MBNA defendants moved to dismiss the ERISA action in its entirety, and they anticipate filing a similar motion to dismiss the securities class action on February 10, 2006.

Plaintiffs here allege that MBNA's officers and directors breached various fiduciary duties owed to MBNA and its shareholders by making certain misleading statements regarding MBNA's expected financial performance.  (*Id.* ¶¶ 64-78.)  They also allege that the MBNA defendants violated certain fiduciary duties by agreeing to the merger with BAC on unfavorable terms and by failing to make certain disclosures in the proxy materials seeking MBNA shareholder approval of the proposed merger.  (*Id.* ¶¶ 83-95.)  Finally, they allege that Kenneth Lewis, BAC's Chairman and CEO, aided and abetted the MBNA defendants in their purported breach of fiduciary duty in connection with the proxy materials.  (*Id.* ¶¶ 39, 189.)

Nominal defendants MBNA and BAC, defendants Bruce Hammonds, Kenneth Vecchione, Richard Struthers, John Cochran, III, Lance Weaver, Charles Krulak, Michael Rhodes and John Scheflen (referred to in the Consolidated Amended Complaint as the MBNA "Insider Defendants") and defendants Randolph Lerner and Kenneth Lewis now move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss all claims asserted against them in their entirety for failure to state a claim upon which relief can be granted.

## SUMMARY OF ARGUMENT

Each of the claims asserted against the MBNA Insider Defendants and Randolph Lerner (as well as the one claim asserted against Kenneth Lewis) should be dismissed as a matter of law.

   1. Plaintiffs lack standing to assert derivative claims (Counts I-VI) on behalf of MBNA or BAC. These claims are based on alleged breaches by MBNA officers and directors of fiduciary duties owed to MBNA prior to the merger. (Am. Compl. ¶¶ 114-154.) It is well-settled in both Maryland and Delaware, the states of incorporation of the two nominal defendants, that a plaintiff who ceases to be a share-holder of a corporation at any time during the pendency of derivative litigation loses standing to assert derivative claims on behalf of the company. *Jolly Roger Fund, L.P.* v. *Sizeler Prop. Investors, Inc.*, No. RDB 05-841, 2005 WL 2989343, at *7 (D. Md. Nov. 3, 2005); *Lewis* v. *Anderson*, 477 A.2d 1040, 1047 (Del. 1984). When BAC acquired MBNA on January 1, 2006, plaintiffs ceased to be shareholders of MBNA and therefore lost standing to assert derivative claims on behalf of MBNA. Those claims now belong to BAC. Plaintiffs also lack standing to assert derivative claims on behalf of BAC because they were not BAC shareholders at the time of the alleged wrongs or when they commenced this action.

   2. Plaintiffs' derivative claims fail for the separate and independent reason that they did not make a demand upon the board of either MBNA or BAC before commencing this litigation. Although plaintiffs allege that such demand is excused as futile, they have not met their burden of pleading with particularity, as required by Rule 23.1 of the Federal Rules of Civil Procedure, that the board of directors of either company would not have received and reviewed any demand in good faith. Plaintiffs' demand futility allegation with respect to MBNA's board is premised primarily on their contention that the MBNA board already has taken a position regarding certain claims and that certain MBNA directors have social or business relationships with other MBNA

directors or with MBNA itself.  These allegations are legally insufficient to demonstrate that pre-suit demand is excused.  Plaintiffs' demand futility allegation with respect to BAC's board is wholly conclusory and premised on the BAC board's approval of the terms of the merger with MBNA.  Such allegations are inadequate as a matter of law.

        3.      Although alleged to be direct, plaintiffs' remaining claims for breach of fiduciary duty (Counts VII-XI) are also derivative under Maryland law, and thus should be dismissed for the same reasons.  The classification of a claim as "direct" or "derivative" depends on the nature of the relief sought, not on plaintiffs' characterization of the claim.  Maryland courts have held that the officers and directors of a corporation owe fiduciary duties to the corporation itself, not to its individual shareholders.  Under Maryland law, therefore, the claims that plaintiffs allege are "direct" are really derivative claims, which should be dismissed for the above-stated reasons.

        4.      Plaintiffs' claims on behalf of the so-called "Holder" Class (Counts VII and VIII) also should be dismissed because plaintiffs have not alleged a legally cognizable injury.  The Consolidated Amended Complaint defines the Holder Class as MBNA shareholders who neither purchased nor sold MBNA shares based on the alleged misrepresentations.  (Am. Compl. ¶ 7(a).)  Both state and federal courts have held that shareholders cannot state a claim by alleging that they continued to hold (*i.e.*, failed to sell) shares as a result of an alleged misrepresentation because the damages are too speculative and uncertain.

        5.      Plaintiffs' claims on behalf of the putative "Merger" Class challenging the MBNA board's decision to enter into the BAC merger (Counts IX and X) ask this Court to review the board's business judgment in contravention of Maryland law.

Directors enjoy broad authority to make decisions for the corporation, and that discretion "should not be impinged based on non-specific or speculative allegations of wrong-doing." *Werbowsky* v. *Collomb*, 766 A.2d 123, 144 (Md. 2001). Absent fraud, self-dealing or unconscionable conduct by a majority of the board—which are not adequately alleged here—the board's business judgment should be free from judicial scrutiny. Moreover, a majority of MBNA's shareholders ratified the board's decision to approve the merger with BAC. This vote further immunizes the board from second-guessing in litigation.

6.      Plaintiffs' claim for alleged breach of the duty of full disclosure in connection with the proxy statement that sought MBNA shareholder approval of the BAC merger also should be rejected. Plaintiffs have failed to identify any omission of *material* information that would render the proxy materials misleading. The proxy statement to which plaintiffs refer (and the exhibits thereto) contained over 160 pages of detailed information explaining all material aspects of the proposed transaction. Plaintiffs do not adequately explain why any of the information alleged to be improperly omitted (Am. Compl. ¶¶ 188(a)-(j)) constituted a material omission affecting the "total mix" of information available to shareholders. Rather, the additional information plaintiffs allege should have been included either is largely cumulative of other information contained in the proxy statement or would have been wholly irrelevant to consideration of the proposed merger.

7.      Even if plaintiffs had adequately alleged that MBNA's directors breached their duty of disclosure, their allegation that Kenneth Lewis, BAC's Chairman and CEO, aided and abetted that breach still should be dismissed. Maryland law, which

governs the fiduciary duties owed by MBNA's former officers and directors, does not

recognize a cause of action for aiding and abetting a fiduciary violation.  Moreover,

plaintiffs have not alleged sufficient facts to support an inference that Lewis knowingly

participated in a breach of fiduciary duty in connection with the proxy statement.  Rather,

plaintiffs rest their claim against Lewis solely on the bald assertion (a single sentence)

that he aided and abetted the fiduciary violations alleged in Count XI.  (Am. Compl.

¶ 189.)  This single conclusory allegation is plainly insufficient to state a claim.

        8.      Plaintiffs' claims against Randolph Lerner, the Chairman of

MBNA's board, also should be dismissed because MBNA's charter absolved its directors

of liability to the fullest extent permitted by Maryland law.

## STATEMENT OF FACTS

### A.    MBNA's January 2005 Earnings Forecast and Subsequent Announcement of First Quarter 2005 Earnings

On January 21, 2005, MBNA held an earnings conference call with

analysts at which it stated, among other things, that it expected that its earnings for 2005

would grow at an annual rate of 10%.  (Am. Compl. ¶¶ 65-69.)  MBNA repeated this

statement about expected 2005 earnings at a Credit Suisse First Boston investor

conference on February 9, 2005.  (*Id.* ¶ 75.)

On April 21, 2005, MBNA issued a press release announcing its earnings

for the first quarter of 2005.  The press release reported that MBNA's net income for the

first quarter was $0.02 per share, which was substantially below the previous year's first

quarter earnings.  (*Id.* ¶ 78.)  MBNA attributed its lower-than-expected first-quarter

earnings to higher-than-expected charges associated with a previously announced

restructuring and from unexpectedly high payment volumes from U.S. credit card

customers. (*Id.* ¶ 79.) In light of its lower-than-expected first-quarter earnings, MBNA

revised its earlier projection of 10% earnings growth for fiscal year 2005, stating that

management now believes that "MBNA's 2005 earnings per share will be significantly

below its 10% growth objective." (April 21, 2005 MBNA Press Release.)[2] Following

this announcement, the price of MBNA's publicly traded shares declined. (Am. Compl.

¶ 80.)

### B.     The Subsequent Litigation

On May 5, 2005—about two weeks after MBNA issued its April 21 press

release—the first of many shareholder class actions was filed in this Court asserting

claims under the federal securities laws based on allegedly misleading statements by

MBNA and its officers between January 20, 2005 and April 21, 2005. *See Baker* v.

*MBNA Corp.*, No. 1:05-cv-00272-GMS (D. Del.). Numerous additional securities class

actions were filed against MBNA over the next month, as was a putative class action on

behalf of participants in MBNA's 401(k) Plus Savings Plan under ERISA.

On May 25, 2005, plaintiff Lemon Bay, LLP filed the first derivative

action on behalf of nominal defendant MBNA against five MBNA officers. The *Lemon*

*Bay* complaint relied heavily on the allegations asserted in the previously filed securities

actions. According to the *Lemon Bay* complaint, MBNA lost substantial market value

---

[2] A copy of this press release is attached as Exhibit A to the Affidavit of Richard C. Pepperman, II, sworn to January 20, 2006 (the "Pepperman Affidavit"). In deciding a motion to dismiss, a court may consider documents that are "'integral to or explicitly relied upon in the complaint . . . without converting the motion [to dismiss] into one for summary judgment.'" *In re Vicuron Pharms., Inc. Sec. Litig.*, No. 04-2627, 2005 WL 2989674, at *2 (E.D. Pa. July 1, 2005) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). The April 21, 2005 press release is described in the Consolidated Amended Complaint (Am. Compl. ¶ 78) and is integral to plaintiffs' claims that MBNA and/or its former shareholders were damaged by the alleged misrepresentations. (*See id.* ¶ 80.)

and is potentially liable for millions of dollars in damages in the securities actions as a result of the misrepresentations alleged in the securities class action complaints. On June 6, 2005, plaintiff David Benoit filed a second derivative action on behalf of MBNA against eight MBNA officers and nine MBNA directors. The *Benoit* complaint similarly alleged that MBNA was injured by the decline in its market value following the April 21, 2005 announcement of first quarter earnings. As in the securities class actions, the original *Lemon Bay* and *Benoit* complaints alleged that the individual defendants had misrepresented MBNA's financial prospects in the January 2005 earnings forecast and in subsequent statements to investors.[3]

### C.    BAC's Acquisition of MBNA

On June 30, 2005, BAC issued a press release announcing its plans to acquire MBNA. (Am. Compl. ¶ 91.) MBNA's board of directors had approved the proposed transaction by a unanimous vote one day earlier on June 29, 2005. (*Id.* ¶ 88.) When announced, the proposed merger valued each MBNA share at $27.50, significantly above the price at which MBNA's shares traded immediately prior to both the announcement of the merger and the April 21, 2005 announcement of MBNA's first-quarter 2005 earnings. On December 30, 2005—the last trading day for MBNA shares before the closing of the merger with BAC—MBNA stock closed at $27.15 per share.[4]

---

[3] A third derivative action, *Rosenwald* v. *Laura A. Unger et al.*, Case No. 1:05-cv-00692-GMS, was recently consolidated with this action.

[4] A document setting out the closing price of MBNA common stock for each trading day in 2005 is attached as Exhibit B to the Pepperman Affidavit. The Court "can take judicial notice of [MBNA's] stock prices even on a motion to dismiss because these facts are 'not subject to reasonable dispute [and are] capable of accurate and ready determination by resort to a source whose accuracy cannot be reasonably questioned.'" *In re Merck & Co. Sec. Litig.*, No. 04-3298, 2005 WL 3436619, at *2 n.3 (3d Cir. Dec. 15, 2005) (quoting *Ieradi* v. *Mylan Labs., Inc.*, 230 F.3d 594, 600 n.3 (3d Cir. 2000)).

In connection with the proposed merger, a proxy statement was prepared describing the material terms of the transaction. This proxy statement was filed with the Securities and Exchange Commission on September 19, 2005 and distributed to MBNA shareholders prior to the shareholder vote regarding the proposed merger.[5] The proxy materials consisted of a 66-page description of the proposed transaction that explained to shareholders the terms of the merger as well as other considerations relevant to their vote, plus approximately 99 pages of appendices and exhibits containing additional details.

On November 2, 2005, a majority of MBNA's shareholders voted to approve the proposed merger (Am. Compl. ¶ 5), and the transaction closed on January 1, 2006. Upon completion of the merger, MBNA was merged into BAC as the surviving corporation, and MBNA ceased to exist as a separate legal entity. (*See* Proxy Statement, Appendix A at A-1 ¶ 1.1 ("As of the Effective Time [of the merger], the separate corporate existence of MBNA shall cease.").)

### D.    Plaintiffs' Consolidated Amended Complaint

On November 21, 2005, plaintiffs filed their Consolidated Amended Complaint. In addition to repeating the allegations contained in the original derivative complaints regarding MBNA's January 2005 earnings forecast and the subsequent decline in MBNA's share price (Am. Compl. ¶¶ 63-82), the Consolidated Amended Complaint also alleges that MBNA received inadequate consideration pursuant to its

---

[5] A copy of the proxy materials filed with the Securities and Exchange Commission (the "Proxy Statement") is attached as Exhibit C to the Pepperman Affidavit. Plaintiffs here explicitly rely on this document as the sole basis for Count XI in the Consolidated Amended Complaint. (Am. Compl. ¶¶ 186-190.) The court also can take judicial notice of this document because it was filed with the Securities and Exchange Commission. *See Oran* v. *Stafford*, 226 F.3d 275, 289 (3d Cir. 2000); *DiLorenzo* v. *Edgar*, No. Civ. 03-841-SLR, 2004 WL 609374, at *2 (D. Del. Mar. 24, 2004).

merger with BAC as a result of breaches of fiduciary duty by MBNA's officers and directors (*id.* ¶¶ 83-97) and that the Proxy Statement was materially misleading as a result of the omission of certain specified information (*id.* ¶¶ 186-190).

The Consolidated Amended Complaint names eight MBNA officers and nine MBNA directors as defendants, as well as Kenneth Lewis, the Chairman and CEO of BAC. (*Id.* ¶¶ 30-39.) Plaintiffs seek to assert six derivative claims (Counts I-VI) on behalf of MBNA as well as BAC as MBNA's "successor in interest" following the merger. (*Id.* ¶¶ 6, 44, 114-154.) In addition to these derivative claims, plaintiffs also seek to assert five direct claims for alleged breaches of fiduciary duties supposedly owed to them directly in their capacity as former MBNA shareholders. Plaintiffs seek to bring these supposedly "direct" claims on behalf of two putative classes: (1) a "Holder Class," defined as "all persons who held the common stock of MBNA on January 19, 2005 and continued to hold the stock . . . through at least April 22, 2005, and were damaged thereby" (*id.* ¶ 108(a)), and (2) a "Merger Class," defined as "all MBNA shareholders who will have their shares exchanged in the [MBNA-BAC] Merger and will suffer damages as a result of the wrongs alleged herein and the unfair and inadequate MBNA merger price" (*id.* ¶ 108(b)). Plaintiffs assert two causes of action on behalf of the Holder Class (Counts VII and VIII) and three on behalf of the Merger Class (Counts IX -XI).

## ARGUMENT

Although a court must accept the factual allegations of the complaint as true in analyzing a motion to dismiss, "it need not credit a complaint's bald assertions or legal conclusions." *In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546, 550 (D. Del. 2002) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3d Cir.

1997) (internal quotations omitted)).  "Therefore, a complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)."  *In re Digital Island Sec. Litig.*, 223 F. Supp. 2d at 550 (quoting *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996) (internal quotations omitted)).

## I.     Maryland Law Governs Plaintiffs' Claims That MBNA Officers and Directors Breached Their Fiduciary Duties.

"Delaware's well established conflict of laws principles require that" the internal affairs of a corporation be "governed by the laws of the forum of incorporation." *McDermott, Inc.* v. *Lewis*, 531 A.2d 206, 215 (Del. 1987).  This "internal affairs doctrine" is a "major tenet of Delaware corporation law having important federal constitutional underpinnings." *Id.* at 209.  As one court explained, "directors and officers of corporations have a significant right . . . to know what law will be applied to their actions and stockholders . . . have a right to know by what standards of accountability they may hold those managing the corporation's business and affairs." *Vantagepoint Venture Partners 1996* v. *Examen, Inc.*, 871 A.2d 1108, 1113 (Del. 2005) (internal quotation marks and footnotes omitted) ("The internal affairs doctrine is a long-standing choice of law principle which recognizes that only one state should have the authority to regulate a corporation's internal affairs—the state of incorporation.").  The internal affairs doctrine "serves the vital need for a single, constant and equal law." *McDermott*, 531 A.2d at 216.

At the time of the supposed fiduciary violations, MBNA was a Maryland corporation,[6] and any fiduciary duties owed by MBNA's officers and directors therefore were governed by Maryland law. BAC's subsequent acquisition of MBNA does not affect the substantive law governing plaintiffs' breach-of-fiduciary-duty claims. *See, e.g., Coates* v. *Netro Corp.*, No. 19154, 2002 WL 31112340, at *2 n.6 (Del. Ch. Sept. 11, 2002) (claims relating to internal affairs of California corporation subsequently reincorporated in Delaware were subject to California rather than Delaware law because conduct at issue occurred prior to reincorporation). Although plaintiffs do not specify which state law governs their fiduciary-duty claims, they acknowledge the relevance of Maryland law. (*See* Am. Compl. ¶¶ 178, 184 (characterizing their theory of liability as "consistent with Maryland fiduciary jurisprudence").)

## II.    Plaintiffs Lack Standing to Pursue Derivative Claims on Behalf of MBNA or BAC.

A plaintiff in a derivative action who ceases to be a shareholder of the corporation at any point after the commencement of the litigation loses standing to prosecute the action on behalf of the corporation. *See, e.g., Jolly Roger Fund, L.P.* v. *Sizeler Prop. Investors, Inc.*, No. RDB 05-841, 2005 WL 2989343, at *7 (D. Md. Nov. 3, 2005); *Heit* v. *Tenneco, Inc.*, 319 F. Supp. 884, 886 (D. Del. 1970). In *Lewis* v. *Anderson*, 477 A.2d 1040, 1047 (Del. 1984), the Delaware Supreme Court held that upon completion of a merger, a former shareholder of the acquired corporation can no longer

---

[6] MBNA's corporate charter, as amended and filed with the Securities and Exchange Commission is attached as Exhibit D to the Pepperman Affidavit. The Court may take judicial notice of this document. *Oran*, 226 F.3d at 289; *see also In re Baxter Int'l Inc. S'holders' Litig.*, 654 A.2d 1268, 1270 (Del. Ch. 1995) ("The court may take judicial notice of the certificate [of incorporation] in deciding a motion to dismiss.").

pursue derivative claims on behalf of the acquired company.[7] This is so even with respect to actions commenced prior to the merger because all rights to the causes of action pass to the surviving corporation upon completion of the merger and any interest shareholders of the acquired corporation may have in any potential recovery is thereby extinguished. *Lewis*, 447 A.2d at 1049-50.

The majority of state courts that have examined the effect of a merger on a shareholder's standing to pursue a derivative action has adopted the Delaware Supreme Court's conclusion in *Lewis*. *See*, *e.g.*, *Grosset* v. *Wenaas*, 35 Cal. Rptr. 3d 58, 71-72 (Cal. Ct. App. 2005); *Lewis* v. *Turner Broadcasting Sys., Inc.*, 503 S.E.2d 81, 84 (Ga. Ct. App. 1998); *see also* 13 Fletcher's Cyclopedia of Private Corporations § 5972.40 (citing additional cases). What is more, a recent decision by a Maryland federal court applying Maryland law predicted that Maryland would adopt the reasoning of *Lewis* in determining the standing of former shareholders to pursue derivative claims. *See Jolly Roger Fund, L.P.*, 2005 WL 2989343, at *7 ("A plaintiff that ceases to be a shareholder loses standing to continue a derivative suit.").

Upon completion of the merger on January 1, 2006, all assets of MBNA, including any right it may have to pursue claims against its former officers and directors for alleged breaches of fiduciary duty, passed by operation of law to BAC as the surviving entity. *See* Md. Code Ann., Corps. & Ass'ns § 3-114(d)(1) (upon completion of merger, "[t]he assets of each corporation . . . transfer to, vest in, and devolve on the successor without further act or deed"). Indeed, plaintiffs acknowledge that upon the

---

[7] Maryland courts frequently adopt the reasoning of Delaware corporate-law decisions. *See*, *e.g.*, *Jolly Roger Fund, L.P.*, 2005 WL 2989343, at *3 ("With respect to corporate governance issues, Maryland courts often look to Delaware caselaw.").

"close of the Merger, any derivative claims asserted on behalf of MBNA devolve by operation of law upon Bank of America." (Am. Compl. ¶ 44; *see also id.* ¶ 104 ("Upon completion of the Merger between MBNA and Bank of America, on or about January 1, 2006, MBNA's derivative claims will pass by operation of law to Bank of America, the surviving corporation.").)

In *Lewis*, the Delaware Supreme Court recognized two potential circumstances in which a shareholder's right to pursue derivative claims on behalf of the acquired corporation might survive a merger: (1) "where the merger itself is the subject of a claim of fraud" intended to "deprive [the acquired corporation] of its claim against the individual defendants" and (2) where the merger at issue was a mere "reorganization," *i.e.*, a transaction that "in reality . . . does not affect plaintiff's ownership of the business enterprise." 477 A.2d at 1046 n.10. The allegations of the complaint are insufficient to bring plaintiffs' claims within either exception.

"[A] complaint seeking to invoke the fraud exception must demonstrate [both] that the merger was fraudulent *and* done merely to eliminate derivative claims." *Lewis* v. *Ward*, 852 A.2d 896, 905 (Del. 2004) (emphasis added). The complaint here falls well short of the mark. Plaintiffs' single allegation (Am. Compl. ¶ 90) that the BAC merger was motivated in part by a desire of MBNA's officers and directors to avoid liability in these derivative actions is wholly conclusory and, as such, insufficient to satisfy the heightened pleading required to plead fraud under Rule 9(b) of the Federal Rules of Civil Procedure. *See Ward*, 852 A.2d at 905-06 (to satisfy "fraud exception," fraud must be pleaded with particularity and circumstances demonstrating economically plausible connection between merger and desire to extinguish derivative claims must be

alleged). Absent the requisite factual allegations, the Court need not accept plaintiffs' bald assertion that MBNA's officers and directors agreed to a $35 billion merger with BAC "merely to eliminate derivative claims." *Id.* at 905.

Nor do plaintiffs' claims fall within the "mere reorganization" exception, which has no application to mergers such as the MBNA-BAC merger that involve two free-standing companies with separate boards of directors, officers, assets and stock-holders and that therefore result in a mix of assets distinctly different from the pre-merger company. *See Ward*, 852 A.2d at 904; *Bonime* v. *Biaggini*, Nos. 6925 and 6980, 1984 WL 19830, at *3 (Del. Ch. Dec. 7, 1984), *aff'd*, 505 A.2d 451 (Del. 1985). Plaintiffs cannot plausibly contend that they satisfy this exception.

Recognizing that they now lack standing to assert claims on behalf of MBNA, plaintiffs alternatively seek to pursue their derivative claims on behalf of BAC as MBNA's "putative successor in interest." (Am. Compl. ¶ 6.) Plaintiffs claim that they have standing to proceed on behalf of BAC because they received BAC shares as part of the merger. (*Id.* ¶¶ 21, 44.) Under the "contemporaneous ownership" requirement of both Delaware and Maryland law, however, a shareholder cannot assert derivative claims based on events that occurred before he or she acquired shares in the company. *See, e.g.*, *Danielewicz* v. *Arnold*, 769 A.2d 274, 281 (Md. Ct. Spec. App. 2001); *Lewis*, 477 A.2d at 1046; *see also* 8 Del. Gen. Corp. Law § 327 ("In any derivative suit . . . it shall be averred in the complaint that the plaintiff was a stockholder of the corporation at the time of the transaction of which such stockholder complains.").

Plaintiffs do not allege that they owned any BAC shares at the time of the alleged wrongs. They therefore lack standing to pursue derivative claims on behalf of

BAC. *See, e.g.*, *Ward*, 852 A.2d at 903-04 (plaintiffs lacked standing to pursue derivative claims on behalf of merged entity); *In re First Interstate Bancorp Consol. S'holder Litig.*, 729 A.2d 851, 867 (Del. Ch. 1998) (merger extinguished plaintiffs' standing to pursue derivative claims even though plaintiff received stock in acquiring corporation as part of merger), *aff'd*, 748 A.2d 913 (Del. 2000).

**III.    Plaintiffs Did Not Make the Required Demand Upon the Board of Either MBNA or BAC Before Commencing This Litigation.**

Under Rule 23.1 of the Federal Rules of Civil Procedure, a plaintiff asserting derivative claims must allege with particularity the steps taken prior to initiating the litigation to make a demand upon the corporation's board of directors and any circumstances explaining plaintiff's failure to take such steps. The issue of whether demand is excused is governed by the law of the state of incorporation. *See Kamen* v. *Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108-09 (1991). ("[A] court that is entertaining a derivative action . . . must apply the demand futility exception as it is defined by the law of the State of incorporation.").

**A.    Plaintiffs Have Not Adequately Alleged That a Demand Upon MBNA's Board Would Have Been Futile.**

MBNA was a Maryland corporation. A demand upon a corporation's board of directors is not excused under Maryland law unless plaintiff can establish either that: (1) a demand, or a delay in awaiting a response to a demand, would cause irreparable harm to the corporation, or (2) a majority of the directors are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule. *Werbowsky* v. *Collomb*, 766 A.2d 123, 144 (Md. 2001).

During the relevant period, MBNA's board consisted of ten directors: Bruce Hammonds, Randolph Lerner, James Berick, Mary Boies, Benjamin Civiletti, William Jews, Stuart Markowitz, William Milstead, Laura Unger and Thomas Murdough. (Am. Compl. ¶¶ 22, 30-38.) Hammonds was MBNA's President and CEO and Lerner was MBNA's Chairman. (*Id.* ¶¶ 22, 30.) The remaining eight individuals were independent directors with no direct employment relationship with MBNA other than their service as directors. (*Id.* ¶¶ 30-38.)

Plaintiffs nevertheless argue that a demand upon the MBNA board was futile because the board had allegedly "already pre-judged the merits of this action" and would not assert claims that were "inconsistent with the stance to be taken by MBNA in its defense to the Securities Class Action." (*Id.* ¶¶ 101-102.) In addition, plaintiffs allege that the non-employee directors of MBNA could not impartially consider a demand to prosecute the claims because they "have an interest in safeguarding" the compensation they receive as directors. (*Id.* ¶ 103(e).) Finally, plaintiffs contend that the MBNA board participated in many of the alleged wrongs and had ultimate responsibility for ensuring the accuracy of MBNA's SEC filings and financial reports. (*Id.* ¶¶ 103(f), (i)-(j).)

Under Maryland law, such generalized allegations regarding the non-employee directors of a corporation are legally insufficient to allow plaintiffs to escape the requirement of a pre-suit demand upon the board. In *Werbowsky*, the Maryland Court of Appeals held that a failure to make a demand would not be excused "simply because a majority of the directors approved or participated in some way in the challenged transaction or decision, or on the basis of generalized or speculative allegations that they are conflicted or are controlled by other conflicted persons, or because they are paid well

for their services as directors." 766 A.2d at 143.[8]  As the court explained, the pre-suit

demand requirement prevents minority shareholders from controlling litigation to the

detriment of the corporation and also reflects courts' belief that directors' business

judgment regarding whether to initiate litigation on behalf of the corporation is entitled to

respect and "should not be impinged based on non-specific or speculative allegations of

wrongdoing." *Id.* at 144; *see also Kamen* v. *Kemper Fin. Servs., Inc.*, 939 F.2d 458, 462

(7th Cir.) ("Demand enables the directors to take the leading role in managing the

corporation.  Conscientious managers may conclude that legal action is unjustified

because not meritorious, or because it would subject the firm to injury."), *cert. denied,*

502 U.S. 974 (1991).  Excusing plaintiffs from complying with the demand requirement

based on their highly generalized and speculative allegations would run afoul of this

strongly held judicial policy.[9]

       Plaintiffs further assert that three of the non-employee MBNA directors

have personal or employment relationships with MBNA or other directors.  In particular,

they allege that James Berick has acted as an attorney and adviser to Lerner and that

Berick's son is a partner at a law firm that receives business from MBNA and the Lerner

family.  (Am. Compl. ¶ 103(d).)  Similarly, plaintiffs state that Benjamin Civiletti is a

---

[8] *See also Scalisi* v. *Fund Asset Mgmt., L.P.*, 380 F.3d 133, 139-40 (2d Cir. 2004) (under
Maryland law, allegation that directors had "a powerful self-interest not to authorize a suit" for
fear of losing their remunerative position as directors was legally insufficient).

[9] Nor can plaintiffs argue that demand should be excused because the directors would
have been unwilling to initiate litigation against themselves.  *See Weiss* v. *Temporary Inv. Fund,
Inc.*, 692 F.2d 928, 943 (3d Cir. 1982); *Lewis* v. *Curtis*, 671 F.2d 779, 785 (3d Cir. 1982).  Absent
sufficient allegations of bias or self-interestedness, the mere naming of the directors as defendants
does not excuse pre-suit demand.  *See, e.g., Lewis*, 671 F.2d at 785; *In re Kaufman Mut. Fund
Actions*, 479 F.2d 257, 265 (1st Cir. 1973); *see also Aronson* v. *Lewis*, 473 A.2d 805, 815 (Del.
1984) ("[T]he mere threat of personal liability for approving a questioned transaction, standing,
alone, is insufficient to challenge either the independence or disinterestedness of directors.").

partner in a law firm that has represented MBNA and that Civiletti's son is an MBNA employee. (*Id.* ¶ 103(c).) And lastly, plaintiffs note that William Milstead used to be a partner at Ernst & Young LLP, MBNA's auditor. (*Id.* ¶ 103(g).)

To raise a reasonable doubt about the independence of an outside director, a plaintiff must allege more than the existence of such routine personal or business relationships. *See, e.g., Beam ex rel. Martha Stewart Omnimedia, Inc.* v. *Stewart*, 845 A.2d 1040, 1052 (Del. 2004). A plaintiff instead must allege particularized facts sufficient to raise an inference that "the non-interested director would be more willing to risk his or her reputation than risk the relationship with the interested director[s]." *Id.*; *see also In re Ply Gem Indus. S'holders Litig.*, No. 15779, 2001 WL 755133, at *7 (Del. Ch. June 26, 2001). Plaintiffs' allegations of professional relationships between Berick (and his son) and the Lerner family and between MBNA and firms with which Civiletti and Milstead are or were associated are not sufficient to raise such an inference. Plaintiffs have not specified, among other things, the amount or nature of any financial benefit any of these three defendants receive from these relationships. In fact, they have not alleged that Milstead or Civiletti derives *any* direct financial benefit as a result of the relationship between their firms and MBNA. Such allegations are insufficient to satisfy the stringent standards of demonstrating demand futility under Maryland law.[10] Nor can

---

[10] *Cf. In re Merrill Lynch Focus Twenty Fund Inv. Company Act Litig.*, 218 F.R.D. 377, 381 (E.D.N.Y. 2003) (allegation that eight of nine outside directors of mutual fund company received substantial compensation from service on boards of other mutual funds controlled by same mutual fund company was insufficient to establish demand futility under Maryland law); *see also Official Comm. of Unsecured Creditors of Integrated Health Servs., Inc.* v. *Elkins*, C.A. No. 20228, 2004 WL 1949290, at *11 (Del. Ch. Aug. 24, 2004) (fact that director was founding partner of a law firm that received legal fees from corporation was not sufficient to establish director's "interested" status in absence of any allegations as to amount of fees law firm obtained from company or relation of such fees to firm's total income).

plaintiffs escape the demand requirement based on their allegation that Civiletti's son

works at MBNA. *See Seibert* v. *Harper & Row, Publishers, Inc.*, C.A. No. 6639, 1984

WL 21874, at *3 (Del. Ch. Dec. 5, 1984).

**B.    Plaintiffs Have Not Adequately Alleged That a Demand Upon BAC's Board Is Futile.**

BAC is a Delaware corporation. Demand is not excused under Delaware

law unless plaintiff alleges particularized facts creating a reasonable doubt that, "as of the

time the complaint is filed, the board of directors could have properly exercised its

independent and disinterested business judgment in responding to a demand." *Rales* v.

*Blasband*, 634 A.2d 927, 934 (Del. 1993).

Plaintiffs have not alleged any circumstances that raise such doubts about

the independence or disinterest of BAC's directors. In fact, with the exception of Lewis,

BAC's Chairman and CEO, plaintiffs do not refer to any BAC director by name or even

allege how many directors sit on the BAC board. The only allegations offered to excuse

plaintiffs' failure to make a demand on the BAC board are that the board has purportedly

"pre-judged the merits of this action," (Am. Compl. ¶ 101), and has agreed, as part of the

merger agreement, to indemnify MBNA's officers and directors and to maintain certain

insurance coverage after the merger. (*Id.* ¶¶ 106-107.) These allegations are insufficient

as a matter of law.

As an initial matter, the mere fact that a board is aware of a potential cause

of action and has chosen not to assert a claim does not demonstrate the futility of a

demand. *See, e.g., Cramer* v. *Gen. Tel. & Elec. Corp.*, 582 F.2d 259, 274-76 (3d Cir.

1978) (demand requirement is "inextricably linked" to directors' business judgment

regarding whether to pursue litigation on behalf of corporation); *Kaufman* v. *Safeguard*

*Scientifics, Inc.*, 587 F. Supp. 486 (E.D. Pa. 1984) (prior corporate decisions suggesting

that corporation is unlikely to sue on its own behalf does not excuse demand).  Nor is

demand excused because BAC's board agreed to indemnify the present and former

directors and officers of MBNA from liability for matters arising prior to the completion

of the merger and to maintain in place the existing indemnification rights and insurance

coverage of such officers and directors.  *See, e.g., Caruana v. Saligman*, Civ. A. No.

11135, 1990 WL 212304, at *4 (Del. Ch. Dec. 21, 1990) (rejecting contention that

directors were interested based on existence of liability insurance and directors' approval

of a charter amendment limiting their own liability); *Decker v. Clausen*, Civ. A. Nos.

10,684 and 10,685, 1989 WL 133617, at *2 (Del. Ch. Nov. 6, 1989).  Also insufficient to

excuse demand are plaintiffs' allegations that the BAC board "agreed to 'cooperate' with

the defendants . . . and 'use their best efforts' to 'defend' against and defeat the claims."

(Am. Compl. ¶ 107.)  As one court explained, "the suggestion that demand is excused

because the directors . . . are defending related litigation is without merit."  *Decker*, 1989

WL 133617, at *2; *see also Allison v. General Motors Corp.*, 604 F.Supp. 1106, 1113 (D.

Del.) *aff'd* 782 F.2d 1026 (3d Cir. 1985).

       In short, plaintiffs have not made particularized allegations that call into

question the BAC directors' independence and that would justify interfering with the

BAC board's business judgment regarding whether to pursue the claims asserted in this

action.

## IV.    Plaintiffs' Purportedly "Direct" Claims on Behalf of Former MBNA Shareholders Are Actually Derivative Claims Belonging to BAC.

       In addition to the derivative claims discussed above, plaintiffs also assert

five purportedly "direct" claims based on alleged violations of fiduciary duties

- 21 -

supposedly owed directly to them and other former MBNA shareholders. (Am. Compl. ¶¶ 152-189.) The classification of a cause of action as direct or derivative depends upon the nature of the injury asserted, not upon plaintiffs' characterization of the claim. *See Paskowitz* v. *Wohlstadter*, 822 A.2d 1272, 1277 (Md. Ct. Spec. App. 2003); *Kramer* v. *W. Pac. Indus., Inc.*, 546 A.2d 348, 352 (Del. 1988); *Jolly Roger Fund L.P.*, 2005 WL 2989343, at *4.

In *Jolly Roger Fund, L.P.* v. *Sizeler Prop. Investors, Inc.*, No. RDB 05-841, 2005 WL 2989343 (D. Md. Nov. 3, 2005), a Maryland federal court discussed whether Maryland law recognizes any fiduciary duties owed directly by officers and directors of a corporation to individual shareholders. Although the court ultimately determined that it need not decide the issue, 2005 WL 2989343, at *5, it noted that the Maryland Court of Appeals in *Werbowsky* held that the obligations of a director under Maryland corporate law "run . . . to the corporation and not, at least directly, to the shareholders." *Id.* at *4 (quoting *Werbowsky*, 766 A.2d at 133). The *Jolly Roger Fund* court explained that this conclusion is consistent with earlier Maryland opinions, including *Waller* v. *Waller*, 49 A.2d 449 (Md. 1946). 2005 WL 2989343, at *5.

In *Waller*, the Maryland Court of Appeals stated that "there is no legal privity or immediate connection between the directors and the individual stockholders." 49 A.2d at 454. As the court explained, "directors occupy a fiduciary relation to the corporation and all its stockholders" and, as such, "are not trustees for the individual stockholders." *Id.* The *Waller* court thus held that where a complaint alleges "only violation of rights common to all the stockholders" of a corporation, any wrongs committed "were done to the corporation, affected all the stockholders of the corporation,

and could be redressed only by an action brought by the corporation or its receivers." *Id.*

Although court recognized that a shareholder could pursue an action directly against an

officer or director based on a violation of a duty owed to him personally—for example,

where "the gravamen of [plaintiff's] complaint was not the damage to the corporation or

its stockholders in general but to himself personally"—the court stressed that causes of

action based on fiduciary duties "which the law imposes upon all officers and directors"

of a corporation properly belong to the corporation itself rather than to individual

shareholders. *Id.* at 453-54.

   The principle articulated in *Waller* is consistent with Maryland's corporate

code. *See* Md. Code Ann., Corps. & Ass'ns § 2-405.1(g) ("Nothing in this section

creates a duty of any director of a corporation enforceable otherwise than by the

corporation or in the right of the corporation."). It also is consistent with other Maryland

decisions. *See Danielewicz*, 769 A.2d at 283 ("Where directors commit a breach of trust,

they are liable to the corporation, not to its creditors or stockholders, and any damages

recovered are assets of the corporation . . . ."); *Booth* v. *Robinson*, 55 Md. 419, 438 (Md.

1881) ("[T]he proper and primary party to complain and call the directors to an account

. . . for fraud or breaches of trust, in the management of the affairs of the corporation, is

the corporation itself; because the duty is owing, and the wrong is done directly to the

corporation, and only indirectly to the shareholders.").

   In this case, all of the purportedly "direct" claims asserted by plaintiffs on

behalf of former MBNA shareholders are based on the fiduciary duties owed by the

individual defendants in their capacity as officers and directors of the corporation. (Am.

Compl. ¶¶ 152-189). Under Maryland law, these duties were owed directly to MBNA,

not to its individual shareholders.  *Werbowsky*, 766 A.2d at 133; *Waller*, 49 A.2d at 454.

As a result, any cause of action based on an alleged breach of these duties was the

property of MBNA and devolved to BAC upon completion of the merger.  Because the

right of action does not belong to them individually, plaintiffs cannot assert these claims

directly.  They also cannot assert the claims derivatively on behalf of MBNA or BAC for

the reasons set forth above.

## V.    Plaintiffs' Claims on Behalf of the Holder Class Should Be Dismissed as Unduly Speculative.

The complaint defines the "Holder" Class as individuals who purchased

MBNA shares prior to January 19, 2005 and continued to hold them until at least April

22, 2005.  (Am. Compl. ¶ 108(a).)  On behalf of this putative class, plaintiffs seek to

assert claims based on alleged misrepresentations relating to the "business and prospects"

of MBNA (*id.* ¶¶ 159, 166), the first of which supposedly occurred on January 20, 2005

(*id.* ¶ 64).  The complaint further alleges that the misrepresentations were revealed to the

market in MBNA's April 21, 2005 press release announcing its earnings for the first

quarter of 2005.  (*Id.* ¶ 78.)  The putative Holder Class thus consists of individuals who

neither bought nor sold MBNA stock as a result of the misrepresentations alleged in the

Consolidated Amended Complaint.

Courts have rejected similar claims that a plaintiff continued to hold stock

based upon alleged misrepresentations as impermissibly speculative.  For example, in

*Manzo* v. *Rite Aid, Inc.*, No. Civ. A. 18451-NC, 2002 WL 31926606 (Del. Ch. Dec. 19,

2002), the Delaware Chancery Court rejected a fraud claim based on the allegation that

plaintiff had refrained from selling shares in a corporation in reliance upon alleged

misrepresentations by defendants.  The court noted that plaintiff's theory of damages

- 24 -

assumed reliance by shareholders on the allegedly misleading statements even though the complaint, like plaintiffs' complaint here, contained no allegations supporting an inference of such reliance. *Id.* at \*5. The court also found that "awarding money damages to compensate plaintiff for the return she *could* have earned had she invested elsewhere—as she was free to do, but didn't do—amounts to speculation founded upon uncertainty." *Id.* at \*5.

Other courts have applied this rule to nearly identical allegations. *See, e.g., Benning* v. *Wit Capital Group, Inc.*, No. Civ.A.99-C-06-157-MMJ, 2004 WL 3030005, at \*4 (Del. Super. Ct. Nov. 30, 2004) (any award of money damages based upon plaintiffs' allegation that defendants' fraudulent conduct induced them to hold shares for longer than they otherwise would is "too speculative and not based upon a cognizable injury"); *Crocker* v. *Federal Deposit Ins. Corp.*, 826 F.2d 347, 351 (5th Cir. 1987) (plaintiffs' damages were unduly speculative where plaintiffs had not alleged that "the class or any member thereof desired specifically to sell their stock at a given point, but were deterred from effectuating a sale" by alleged misrepresentations).[11]

Plaintiffs have alleged no legally cognizable injury suffered by members of the Holder Class as a result of the alleged misrepresentations, and any attempt to calculate the damages the members of the Holder Class suffered because they supposedly

---

[11] Similarly, in *Blue Chip Stamps* v. *Manor Drug Stores*, 421 U.S. 723 (1975), the United States Supreme Court refused to extend standing under the federal securities laws to plaintiffs who supposedly refrained from selling stock in reliance upon alleged misrepresentations. The Court expressed concern that adopting a contrary rule "would throw open to the trier of fact many rather hazy issues of historical fact the proof of which depended almost entirely on oral testimony" of the plaintiff. 421 U.S. at 743. In that case, the Securities and Exchange Commission also submitted a brief emphasizing that "the effect, if any, of a deceptive practice on someone who has neither purchased nor sold securities may be more difficult to demonstrate than is the effect on a purchaser or seller." *Id.*

failed to sell their MBNA stock in reliance upon the misrepresentations would be entirely speculative. Those claims therefore should be dismissed.

## VI.    Plaintiffs Have Not Alleged Sufficient Facts to Rebut the Presumption That the MBNA Board's Approval of the BAC Merger Was a Valid Exercise of Business Judgment.

Plaintiffs assert two claims against MBNA's former directors (Counts IX and X) for alleged breach of their fiduciary duties in connection with their approval of the BAC merger. (Am. Compl. ¶¶ 169-185.) Under Maryland law, directors are presumed to act properly and in the best interests of the company. *Werbowsky*, 766 A.2d at 144. As such, they enjoy the benefit and protection of the business judgment rule, and their control of corporate affairs should not be impinged based on non-specific or speculative allegations of wrongdoing. *Id.*; *see also Danielewicz* v. *Arnold*, 769 A.2d at 290-91. If a director's conduct is authorized under Maryland law, "a showing must be made of fraud, self-dealing or unconscionable conduct to justify judicial review" of the director's decision. *Wittman* v. *Crooke*, 707 A.2d 422, 425 (Md. Ct. Spec. App. 1998).

Plaintiffs have not alleged sufficient facts to rebut the presumption that the MBNA board's approval of the proposed merger with BAC was a valid exercise of business judgment by MBNA's directors. The Consolidated Amended Complaint acknowledges that the MBNA board unanimously approved the proposed merger on June 29, 2005. (Am. Compl. ¶ 88.) As previously noted, eight of the ten members of MBNA's board were independent directors with no employment relationship with MBNA. Where a majority of a board's independent directors approves a proposed merger, the business judgment rule protects the board's decision. *See, e.g., In re Compucom Sys., Inc. Stockholders Litig.*, No. Civ.A. 499-N, 2005 WL 2481325 (Del. Ch.

Sept. 29, 2005) ("If the court concludes that the facts do not support an inference of disloyalty or lack of due care, the board's actions are entitled to the protections of the business judgment rule."); *In re Frederick's of Hollywood, Inc. S'holders Litig.*, C.A. No. 15944, 2000 WL 130630, at *7 (Del. Ch. Jan. 31, 2000) (dismissing duty of loyalty claim because plaintiff alleged that only one of four directors was interested and challenged merger was approved by majority of disinterested directors).

Plaintiffs purport to assert claims against MBNA's directors based on alleged violations of their so-called "Revlon duties." (Am. Compl. ¶¶ 176-185.) In *Revlon Inc.* v. *MacAndrews & Forbes Holdings*, 506 A.2d 173 (Del. 1986), the Delaware Supreme Court held that if directors decide to sell control of the company, they have a fiduciary obligation under Delaware law to maximize the price shareholders receive for their shares, and their decisions are subject to judicial review under a "reasonableness" standard rather than the more deferential standard applied to decisions protected by the business judgment rule. 506 A.2d at 180-81. Plaintiffs contend that MBNA's directors violated their supposed "Revlon" duties to maximize immediate shareholder value by failing to conduct a public auction of the company and by agreeing to a "no-shop" provision and granting BAC an option to acquire a substantial portion of MBNA stock at a discount. (Am. Compl. ¶¶ 179-180.)

Plaintiffs' "Revlon" theory is not viable under Maryland law. Maryland's corporations law provides that "[t]he duties of the directors of a corporation do not require them to . . . [a]ct or fail to act solely because of: (i) [t]he effect the act or failure to act may have on an acquisition or potential acquisition of control of the corporation; or (ii) [t]he amount or type of any consideration that may be offered or paid to stockholders

in an acquisition." Md. Code Ann., Corps. & Ass'ns § 2-405.1(d). Moreover, Maryland

law expressly provides that "[a]n act of a director relating to or affecting an acquisition or

a potential acquisition of control of a corporation may not be subject to a higher duty or

greater scrutiny than is applied to any other act of a director." *Id.* § 2-405.1(g).

Recognizing this important difference between Maryland and Delaware

law, Maryland courts have held that decisions by the directors of a Maryland corporation

relating to a "change of control" are not subject to heightened scrutiny, but rather are

protected by the business judgment rule. *See Hudson* v. *Prime Retail, Inc.*, No. 24-C-03-

5806, 2004 WL 1982383, at *11, n.13 (Md. Cir. Ct. Apr. 1, 2004) ("[I]n Maryland[,] the

business judgment rule applies even to directors' change-in-control decisions.");

*Jasinover* v. *Rouse Co.*, No. 13-C-04-59594, 2004 WL 3135516, at *9 (Md. Cir. Ct.

Nov. 1, 2004) ("A director's acts in connection with [a change-in-control transaction] are

presumed to satisfy the standards established by section 2-405.1(a), and may not be

subject to a higher duty of greater scrutiny than is applied to any other act of a director.")

(internal citations and quotation marks omitted).

Plaintiffs acknowledge that the MBNA board consulted with MBNA's

management and its financial and legal advisers regarding possible strategic alternatives

in light of "MBNA's recent financial performance and prospects [and] consolidation

activity in the credit card industry." (Am. Compl. ¶ 83.) Plaintiffs also admit that

MBNA's management approached at least one other financial institution (which plaintiffs

allege was "likely Wachovia") regarding a potential strategic combination. (*Id.* ¶ 86.)

These allegations establish that MBNA's management and board engaged in a reasonable

process designed to assess market conditions and the interest of other potential suitors

before initiating negotiations with BAC. (*See also id.* ¶¶ 3, 15, 171.) Plaintiffs also

concede that the proposed transaction represented a significant premium to MBNA's

shareholders. (*Id.* ¶ 17.)

Plaintiffs have not alleged any facts that would establish that the MBNA

board's decision not to conduct an auction constituted an abuse of their business

judgment. Under Maryland law, "[t]here is no requirement that the Board fully shop the

company to multiple bidders . . . ." *Jasinover*, 2004 WL 3135516, at *9 ("Maryland does

not require an auction when the decision is made to sell a corporation."). The strategy

pursued by MBNA's board—a survey of market conditions, including a review of

previous combinations in the industry, an assessment of the potential price for which

MBNA could be sold after consulting with financial and legal advisers,[12] and the

initiation of discrete contacts with potentially interested suitors (Am. Compl. ¶¶ 83, 86)—

represented a reasonable effort to maximize shareholder value, while avoiding potential

adverse consequences that might have accompanied a public auction, including

disruption to MBNA's ongoing business. Moreover, the MBNA board was free under

Maryland law to enter into—and lock up—an agreement with BAC if it viewed the deal

as "attractive" for MBNA shareholders. *Jasinover*, 2004 WL 3135516, at *9 ("[T]he

Board is free to lock up an attractive deal."). Thus, even accepting as true plaintiffs'

---

[12] Maryland's corporations law provides that "[i]n performing his duties, a director is entitled to rely on any information, opinion, report, or statement, including any financial statement or other financial data, prepared or presented by . . . (ii) a lawyer, certified public accountant, or other person, as to a matter which the director reasonably believes to be within the person's professional or expert competence." Md. Code Ann., Corps. & Ass'ns § 2-405.1(b)(1).

allegations, there is no basis for the Court to second-guess the reasonableness of the steps taken by the MBNA board in connection with the BAC merger.[13]

Finally, plaintiffs readily admit that a majority of MBNA's shareholders approve the proposed merger on November 3, 2005. (Am. Compl. ¶ 17.) Under Maryland law, officers and directors of a corporation cannot be held liable for decisions that were subsequently ratified by an informed vote of the corporation's stockholders. *Hudson*, 2004 WL 1982383, at *14; *Wittman* , 707 A.2d at 425; *see also In re Lukens Inc. S'holders Litig.*, 757 A.2d 720, 737 (Del. Ch. 1999) ("[W]here a majority of fully informed stockholders ratify action of even interested directors, an attack on the ratified transaction normally must fail.") (internal quotation marks omitted). In light of the shareholders' vote, plaintiffs' claims challenging the MBNA board's approval of the BAC merger as a breach of fiduciary duty fail as a matter of law.

---

[13] Even if heightened *Revlon* scrutiny were to apply, plaintiffs have not alleged sufficient facts to demonstrate that the MBNA board's decision to approve the BAC merger was unreasonable. "Delaware courts have made clear that the enhanced judicial review *Revlon* requires is not a license for law-trained courts to second-guess reasonable, but debatable, tactical choices that directors have made in good faith." *In re Toys "R" Us Sec. Litig.*, 877 A.2d 975, 1000 (Del. Ch. 2005). The Delaware Supreme Court has recognized that there is "no single blueprint that a board must follow to fulfill its duties" and has acknowledged that a board's duty to take reasonable steps to secure the highest immediately available price does not invariably require a board to conduct an auction. *Barkan* v. *Amsted Indus.*, 567 A.2d 1279, 1286 (Del. 1989); *see also Paramount Communications, Inc.* v. *QVC Network Inc.,* 637 A.2d 34, 44 (Del. 1994). Delaware courts have also recognized that provisions in merger agreements that limit the acquired company's ability to seek competing offers (so-called "no-shop" provisions) or that provide the acquiring entity with stock or other rights in the acquired corporation (so-called "lock-up" provisions) can be validly employed by a board as part of its reasonable efforts to maximize shareholder value. *See, e.g., Barkan*, 567 A.2d at 1287-88 (board's decision to approve no-shop provision as part of merger agreement was reasonable); *Thompson* v. *ENSTAR Corp.*, 509 A.2d 578, 584 (Del. Ch. 1984) (plaintiffs failed adequately to allege facts demonstrating that board's approval of "lock-up" provision was violation of board's duty to maximize shareholder value).

VII.    **Plaintiffs' Claim That MBNA's Directors Breached Their Duty of Full Disclosure by Failing to Include Certain Information in the Proxy Statement Is Without Merit.**

Maryland recognizes a duty of directors to disclose to stockholders material information within the directors' control regarding transactions on which the stockholders will vote. *Hudson*, 2004 WL 1982383, at *13. Maryland courts generally have looked to Delaware decisions for guidance on such "duty of candor" claims. *Id.*

Delaware courts have held that plaintiffs bear the burden of pleading and proving claims of material misstatements and omissions. *See Solomon* v. *Armstrong*, 747 A.2d 1098, 1128 (Del. Ch. 1999), *aff'd*, 746 A.2d 277 (Del. 2000); *Stroud* v. *Grace*, 606 A.2d 75, 85 (Del. 1992). To plead a breach of the duty to disclose in connection with a proxy statement, plaintiffs must (1) allege that facts are missing from the proxy state- ment, (2) identify those facts, (3) state why those facts meet the materiality standard, (4) describe how those omissions resulted in injury, and (5) allege that the information was known to the directors or was within the directors' control. *Hudson*, 2004 WL 1982383, at *13-14 (citing *Loudon* v. *Archer-Daniels-Midland Co.*, 700 A.2d 135, 141 (Del. 1997)). For the omitted information to be material, it is not enough that the information might render a communication to shareholders "somewhat more informa- tive." *Solomon*, 747 A.2d at 1128. Rather, "[t]here must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable stockholder as having significantly altered the 'total mix' of information available." *Rosenblatt* v. *Getty Oil Co.*, 493 A.2d 929, 944 (Del. 1985); *see also Malpiede* v. *Townson*, 780 A.2d 1075, 1086 (Del. 2001); *Loudon*, 700 A.2d at 141.

In their complaint, plaintiffs identify ten specific omissions that allegedly rendered the proxy statement misleading. (Am. Compl. ¶¶ 188(a)-(j).) Although the

- 31 -

complaint contains a single conclusory allegation that the omitted information was "material" (Am. Compl. ¶ 187), plaintiffs provide no real explanation for why the ten omitted facts were purportedly material to a determination by MBNA's shareholders regarding whether to approve or reject the proposed BAC merger. In many instances, the information identified by plaintiffs is simply cumulative or accretive of information already disclosed in the proxy statement. Other information identified by plaintiffs as having been omitted from the proxy statement would be wholly irrelevant to MBNA shareholders' decision. Each of the omissions identified by plaintiffs is addressed separately below:

**UBS Accretion/Dilution Analysis**. Plaintiffs challenge the failure to include "additional information disclosing the circumstances under which [the] merger could be dilutive to MBNA stockholders and extending the pro forma merger analysis to 2008." (Am. Compl. ¶ 188(a).) Plaintiffs' vague allusion to unspecified "additional information" regarding the accretion/dilution analysis is wholly conclusory and provides no basis for a finding of materiality. And while extending the pro forma merger analysis by an additional year might have satisfied plaintiffs' curiosity, the failure to do so did not constitute a material omission. *Cf. In re Siliconex S'holders Litig.*, No. Civ. A. 18700, 2001 WL 716787, at *12 (Del. Ch. June 21, 2001) (lack of "meaningful pro forma" information and failure to project future performance of combined entities in proxy statement did not constitute a material omission).

**Fairness Opinion Using Best Available Projections Regarding BAC**. Plaintiffs complain that BAC "failed to obtain and fully disclose" an updated fairness opinion using its best estimates of BAC's future performance. (Am. Compl. ¶ 188(b).)

Delaware law, which, as noted above, would serve as a guide for Maryland courts, provides no support for plaintiffs' assertion that BAC was obligated to commission a fairness opinion from an investment bank solely for the purpose of disclosure in the proxy statement. *See In re JCC Holding Co.*, 843 A.2d 713, 721 (Del. Ch. 2003) ("[T]here is no obligation on the part of a board to disclose information that simply does not exist."); *In re Dataproducts Corp. S'holders Litig.*, Civ. A. No. 11164, 1991 WL 165301, at *8 (Del. Ch. Aug. 22, 1991) (rejecting argument that defendants "were affirmatively obligated to create (and then disclose)" valuations that had not previously been undertaken).

**Dilutive Impact of Option Exercise.** Plaintiffs allege that the failure to disclose the dilutive impact on earnings per share ("EPS") "arising from the potential exercise of the option issued by MBNA to Bank of America" constituted a material omission. (Am. Compl. ¶ 188(c).) The proxy statement disclosed the existence of the stock option agreement with BAC and a detailed description of the material terms of that agreement, including the conditions under which it could be triggered and the maximum amount of profit BAC could potentially earn if the option were exercised. (Proxy Statement at 5, 47-49.) Plaintiffs fail to provide any explanation for how the failure to disclose potential impact on EPS (a mathematical calculation that could have been performed using information already in the proxy statement) could have materially affected any shareholder's decision on the merger vote.

**Effect of Change in Dividend Policy.** Plaintiffs contend that the proxy statement should have included projections regarding "any foreseeable changes to Bank of America's dividend policy," including the effects "of an elimination of the Bank of

America dividend." (Am. Compl. ¶ 188(d).) BAC's current dividend policy is disclosed in the proxy statement (Proxy Statement at 31), as is a comparison of the quarterly dividends paid by BAC and MBNA for the years 2003, 2004 and 2005 (*id.* at 63). The failure to include in the proxy statement financial projections based solely on speculation about decisions BAC's board may or may not make at some point in the future hardly rises to the level of a material omission.

**MBNA's Efforts to Maximize Shareholder Value.** Plaintiffs allege that the proxy statement should have included a description of other potential merger partners identified by MBNA and of all of MBNA's communications with such companies. (Am. Compl. ¶ 188(e).) Such pre-merger communications have been held to be "immaterial, as a matter of law, until the firms have agreed on the price and structure of the transaction." *Bershad* v. *Curtiss-Wright Corp.*, 535 A.2d 840, 847 n.5 (Del. 1987); *see also Jasinover*, 2004 WL 3135516, at *11 ("[T]he emphasis [in determining materiality in the context of a merger-related proxy statement] is on what the Board actually did, not what it could have done had it traveled a different road"); *Krim* v. *ProNet, Inc.*, 744 A.2d 523, 529 (Del. Ch. 1999).[14]

**Effect of Failure to Repurchase.** Plaintiffs object that the pro forma merger analysis included an assumption that BAC would repurchase 51,000,000 of its shares on an assumed funding rate of 2.5% and did not include any analysis of the

---

[14] Comparing the duties of directors under Maryland and Delaware law, the proxy statement noted that Maryland law does not require a director to "accept, recommend or respond to any proposal by a person seeking to acquire control of the corporation" or to "act or fail to act solely because of the effect the act or failure to act may have on an acquisition or potential acquisition . . . or the amount or type of consideration that may be offered or paid to the stock-holders in any acquisition." (Proxy Statement at 62.)

possible effects if this repurchase was not accomplished or if the assumed funding rate was not obtained. (Am. Compl. ¶ 188(f).) The forward-looking nature of the projections in the pro forma analysis was fully disclosed in the proxy statement, as was the possibility that the actual performance of the combined company, including earnings, could be adversely affected by a variety of unforeseen factors. (Proxy Statement at 13.) The failure of MBNA and BAC to account for every hypothetical possibility that might conceivably have affected EPS for the combined company and to include a separate analysis for each such hypothetical scenario did not render the proxy statement materially misleading.

**Basis for Assumed Discount and Growth Rates**. Plaintiffs argue that the proxy statement should have included an explanation for the use of different assumed discount rates and asset growth rates in the discounted cash flow analysis for BAC and MBNA. (Am. Compl. ¶ 188(g).) Failure to include in a proxy statement an explanation of the basis for choosing a particular discount rate does not constitute a materially misleading omission. *See In re Cheyenne Software, Inc.*, C.A. No. 14941, 1996 WL 652765, at *3-4 (Del. Ch. Nov. 7, 1996); *see also In re JCC Holdings*, 843 A.2d at 721-22 (allegation that investment bank used incorrect discount rate in its financial projections did not state a claim for violation of a duty to disclose).

**Potential UBS Conflicts.** Although the proxy statement disclosed that UBS had previously provided financial services unrelated to the merger to both MBNA and BAC and that, in the ordinary course of its business, UBS or its affiliates may hold or trade BAC or MBNA securities (Proxy Statement at 30), plaintiffs contend that the failure to disclose the "aggregate amount of compensation" received by UBS in

- 35 -

connection with the pre-merger services it performed for MBNA and BAC and the amount of BAC and MBNA securities held or traded by UBS rendered the proxy statement materially misleading. (Am. Compl. ¶ 188(h).)  Plaintiffs offer, however, no allegation that would support an inference that the amount of such compensation or shareholdings would have been material to any MBNA shareholder in determining whether to approve the proposed merger.

**Potential Value of Derivative Claims.**  Plaintiffs also allege that MBNA should have disclosed in the proxy statement the potential value of all claims asserted against it in the derivative actions. (Am. Compl. ¶ 188(i).)  Even plaintiffs have declined to provide such an estimate in their Consolidated Amended Complaint.  The proxy statement discloses the existence of plaintiffs' derivative suits and notes that plaintiffs asserted claims related to the merger.  (Proxy Statement at 33.)  Plaintiffs fail to allege why more information was required.

**Hammonds' "Misconduct."**  Plaintiffs fault MBNA for failing to "disclose and discuss" Hammonds's statements regarding whether MBNA was for sale. (Am. Compl. ¶ 188(j).)  The only such statement identified in the Consolidated Amended Complaint appeared in a Business Week article published on June 13, 2005.  (*Id.* ¶ 86.) The failure to include in the proxy statement a discussion of a single statement by an MBNA executive in an article that was widely published more than five months before the merger vote and that was publicly available at that time did not constitute a materially misleading omission.

The Delaware courts (to which Maryland courts look for guidance on duty-of-candor claims) have consistently rejected "the fallacy that increasingly detailed

disclosure is always material and beneficial" because "[i]n some instances the opposite will be true." *Zirn* v. *VLI Corp.*, No. 9488, 1995 WL 362616, at *4 (Del. Ch. June 12, 1995), *aff'd*, 681 A.2d 1050 (Del. 1996). Directors should not be required, upon pain of civil liability, to "bury the shareholders in an avalanche of trivial information." *Behrens* v. *United Investors Mgmt. Co.*, No. 12876, 1993 WL 400209, at *9 (Del. Ch. Oct. 1, 1993) (quotation omitted). Otherwise, proxy solicitations would become "so detailed and voluminous that they will no longer serve their purpose." *TCG Sec., Inc.* v. *Southern Union Co.*, No. 1282, 1990 WL 7525, at *7 (Del. Ch. Jan. 31, 1990); *see also In re Vitalink Comms. S'holders Litig.*, No. 12085, 1991 WL 238816, at *13 (Del. Ch. Nov. 8, 1991).

Simply stated, plaintiffs do not allege facts that satisfy the materiality standard. Their complaint does not explain how the inclusion of any of the omitted information they identify would have affected the "total mix" of information available to shareholders and thus might have affected shareholders' decision whether to approve the proposed merger. Plaintiffs' disclosure claim should therefore be dismissed.

## VIII. Plaintiffs' Conclusory Allegation That Kenneth Lewis Aided and Abetted a Purported Breach of Fiduciary Duty Cannot Support a Cause of Action.

Plaintiffs' claim against Lewis for allegedly aiding and abetting the MBNA defendants' breach of their duty of full disclosure in connection with the proxy materials (Count XI) fails for several reasons.

First, Maryland does not recognize a separate cause of action for aiding and abetting in the commission of a tort, including a breach of fiduciary duty. *See Alleco, Inc.* v. *Harry & Jeanette Weinberg Foundation, Inc.*, 639 A.2d 173, 175 (Md. Ct. Spec. App. 1994) ("[N]o separate tort liability exists in this State for simply aiding and abetting

someone else in committing a tort"). The Court need go no further than this in dismissing the claim against Lewis.

Second, plaintiffs' claim against MBNA's directors for breach of their duty of full disclosure—the underlying basis for Lewis's purported aiding-and-abetting liability—is subject to dismissal for the reasons described above. This alone requires dismissal of plaintiffs' claim against Lewis. *See, e.g.*, *Weil* v. *Morgan Stanley DW, Inc.*, 877 A.2d 1024, 1039 (Del. Ch. 2005); *Manzo*, 2002 WL 31926606, at *6.

Finally, a plaintiff seeking to state a claim for aiding and abetting a breach of fiduciary duty (which does not exist under Maryland law) must plead, among other things, that the defendant "knowingly participated" in the breach. *In re General Motors (Hughes) S'holders Litig.*, No. Civ.A. 20269, 2005 WL 1089021, at *23 (Del. Ch. May 4, 2005). Plaintiffs offer only one sentence in support of their claim against Lewis. (*See* Am. Compl. ¶ 189.) This conclusory allegation is wholly inadequate to establish that Lewis "knowingly participated" in any breach of fiduciary duty by MBNA's directors. *See, e.g.*, *In re Santa Fe Pacific Corp. S'holder Litig.*, 669 A.2d 59, 72 (Del. 1995) (conclusory statement that defendant "had knowledge of the Individual Defendants' fiduciary duties and knowingly and substantially participated and assisted in the Individual Defendants' breaches of fiduciary duty, and, therefore, aided and abetted such breaches of fiduciary duties" was insufficient to state claim); *In re General Motors*, 2005 WL 1089021, at *24 ("[T]here must be factual allegations in the complaint from which knowing participation can be reasonably inferred . . . . Conclusory statements of knowing participation will not suffice.") (internal quotation and citations omitted).

IX.    **Plaintiffs' Claims Against Randolph Lerner Should Be Dismissed Because MBNA's Charter Shields Its Directors from Monetary Liability.**

Article VII(a) of MBNA's charter provides that "[t]o the fullest extent that limitations on the liability of directors and officers are permitted by the Maryland General Corporation Law, no director or officer of the Corporation shall have any liability to the Corporation or its stockholders for damages. This limitation on liability applies to events occurring at the time a person serves as director or officer of the Corporation whether or not such person is a director or officer at the time of any proceeding in which liability is asserted." (Pepperman Aff. Ex. D at 4.) Under Maryland law, a corporation's charter "may include any provision expanding or limiting liability of its directors or officers to the corporation or its stockholders for money damages, "with only two exceptions: (i) actual receipt of an improper benefit or profit in money, property, or services, and (ii) active and deliberate dishonesty." Md. Code Ann., Cts. & Jud. Proc. Code § 5-418; *see, e.g., Hayes* v. *Crown Central Petroleum Corp.*, 249 F. Supp. 2d 725, 733-34 (E.D. Va. 2002), *aff'd*, 78 Fed. Appx. 857 (4th Cir. 2003); *Grill* v. *Hoblitzell*, 771 F. Supp. 709, 712 (D. Md. 1991).

Randolph Lerner (the Chairman of MBNA's board) and the other defendants identified in the Consolidated Amended Complaint as the MBNA "Director Defendants" (Am. Compl. ¶¶ 30, 38) are named as defendants in connection with seven claims asserted by plaintiffs (Counts III, V, VI, VIII-XI). None of these claims involves any allegation that any Director Defendant received any improper benefit or engaged in fraud or other "active and deliberate dishonesty." (*See* Am. Compl. ¶¶ 133-39, 149-154, 162-190.) As a result, plaintiffs' monetary damages claims against Lerner must be dismissed.

## CONCLUSION

The claims asserted in the Consolidated Amended Complaint against the moving defendants should be dismissed in their entirety for failure to state a claim upon which relief can be granted.

YOUNG CONAWAY STARGATT & TAYLOR, LLP


*Richard H. Morse*

Richard H. Morse (No. 531)
rmorse@ycst.com
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600

*Attorneys for nominal defendants MBNA Corporation and Bank of America Corporation and defendants Bruce L. Hammonds, Kenneth A. Vecchione, Richard K. Struthers, John R. Cochran, III, Lance L. Weaver, Charles C. Krulak, Michael G. Rhodes, John W. Scheflen, Randolph D. Lerner and Kenneth L. Lewis*

Of Counsel:

Richard J. Urowsky
Richard C. Pepperman II
Ryan C. Williams
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

January 20, 2006

## CERTIFICATE OF SERVICE

I, Richard H. Morse, hereby certify that on January 20, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of Court using CM/ECF which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Robert R. Davis, Esquire
> A. Zachary Naylor, Esquire
> Chimicles & Tikellis LLP
> One Rodney Square
> P.O. Box 1035
> Wilmington, DE 19899

> Edward P. Welch, Esquire
> Seth M. Beausang, Esquire
> Skadden Arps Slate Meagher & Flom LLP
> One Rodney Square
> P.O. Box 636
> Wilmington, DE 19899

I further certify that on January 20, 2006, I also caused copies of the foregoing document to be served by hand on the above-listed counsel of record

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_Richard H. Morse_

Richard H. Morse (I.D. No. 531)
17th Floor, Brandywine Building
1000 West Street
P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6651
rmorse@ycst.com

*Attorneys for Nominal Defendants MBNA Corporation and Bank of America Corporation and Defendants Bruce L. Hammonds, Kenneth A. Vecchione, Richard K. Struthers, John R. Cochran, III, Lance L. Weaver, Charles C. Krulak, Michael G. Rhodes, John W. Scheflen and Kenneth L. Lewis*