Table of Contents

**Amendment, Waiver and Extension of the Merger Agreement**

Subject to applicable law, the parties may amend the merger agreement by action taken or authorized by their boards of directors or by written agreement. However, after any approval of the transactions contemplated by the merger agreement by the MBNA stockholders, there may not be, without further approval of those stockholders, any amendment of the merger agreement that (1) changes the amount or the form of the consideration to be delivered to the holders of MBNA common stock, (2) changes any term of the certificate of incorporation of the combined company, or (3) changes any of the terms and conditions of the merger agreement if such change would adversely affect the holders of any MBNA securities, in each case other than as contemplated by the merger agreement.

At any time prior to the completion of the merger, each of us, by action taken or authorized by our respective board of directors, to the extent legally allowed, may:

• extend the time for the performance of any of the obligations or other acts of the other party;

• waive any inaccuracies in the representations and warranties of the other party; or

• waive compliance by the other party with any of the other agreements or conditions contained in the merger agreement.

**Resales of Bank of America Stock by Affiliates**

Shares of Bank of America common stock to be issued to MBNA stockholders in the merger have been registered under the Securities Act, and may be traded freely and without restriction by those stockholders not deemed to be affiliates (as that term is defined under the Securities Act) of MBNA. Any subsequent transfers of shares, however, by any person who is an affiliate of MBNA at the time the merger is submitted for a vote of the MBNA stockholders will, under existing law, require:

• the further registration under the Securities Act of the Bank of America stock to be transferred;

• compliance with Rule 145 promulgated under the Securities Act, which permits limited sales under certain circumstances; or

• the availability of another exemption from registration.

An "affiliate" of MBNA is a person who directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, MBNA. These restrictions are expected to apply to the directors and executive officers of MBNA and the holders of 10% or more of the outstanding MBNA common stock. The same restrictions apply to the spouses and certain relatives of those persons and any trusts, estates, corporations or other entities in which those persons have a 10% or greater beneficial or equity interest.

Bank of America will give stop transfer instructions to the exchange agent with respect to the shares of Bank of America common stock to be received by persons subject to these restrictions, and the certificates for their shares will be appropriately legended.

MBNA has agreed in the merger agreement to use its reasonable best efforts to cause each person who is an affiliate of MBNA for purposes of Rule 145 under the Securities Act to deliver to Bank of America a written agreement intended to ensure compliance with the Securities Act.

46

Table of Contents

## THE STOCK OPTION AGREEMENT

*The following description, which sets forth the material provisions of the stock option agreement under which MBNA has granted an option to Bank of America to purchase shares of MBNA common stock in specified circumstances, is subject to the full text of, and qualified in its entirety by reference to, the stock option agreement, which is attached to this document as Appendix B and which is incorporated by reference in this document. We urge you to read the stock option agreement carefully and in its entirety, as it is the legal document governing the stock option.*

### The Stock Option

When we entered into the merger agreement, we also entered into a stock option agreement. Under the terms of the stock option granted by MBNA to Bank of America, Bank of America may purchase up to 249,764,005 shares of MBNA common stock at an exercise price of $21.30 per share. However, the number of shares issuable upon exercise of the option cannot exceed 19.9% of MBNA common stock outstanding without giving effect to any shares issued under the option. In the event that any additional shares of common stock are either issued or redeemed after the date of the stock option agreement, the number of shares of common stock subject to the option will be adjusted so that such number equals 19.9% of the number of shares of common stock then issued and outstanding without giving effect to any shares of common stock subject to or issued under the option. This exercise price represents MBNA's closing common stock price on June 28, 2005, the business day prior to the date our boards of directors approved the merger agreement. The terms of the stock option agreement are summarized below.

### Purpose of the Stock Option Agreement

The stock option agreement may have the effect of making an acquisition or other business combination of MBNA by a third party more costly because of the need in any transaction to acquire any shares of common stock issued under the stock option agreement or because of any cash payments made under the stock option agreement. The stock option agreement may, therefore, discourage third parties from proposing an alternative transaction to the merger, including one that might be more favorable, from a financial point of view, to MBNA stockholders than the merger.

To our knowledge, no event giving rise to the right to exercise the stock option has occurred as of the date of this document.

### Exercise; Expiration

Bank of America may exercise its option in whole or in part if both an Initial Triggering Event and a Subsequent Triggering Event occur prior to the occurrence of an Exercise Termination Event, as these terms are described below. The purchase of any shares of MBNA common stock under the option is subject to compliance with applicable law, which may require regulatory approval.

The term "Initial Triggering Event" generally means the following:

- MBNA or any of its subsidiaries, without Bank of America's prior written consent, enters into an agreement to engage in an "Acquisition Transaction" (as defined below) with a third party or MBNA's board of directors recommends that its stockholders approve or accept any Acquisition Transaction with any person other than Bank of America;

- the MBNA board of directors has failed to recommend in this document the approval and adoption of the merger agreement, or, in a manner adverse to Bank of America, withdraws, modifies or qualifies, or proposes to withdraw, modify or qualify, the recommendation by the MBNA board of directors of the merger agreement or the merger to MBNA's stockholders, takes any public action or makes any public statement in connection with the meeting of MBNA's stockholders to approve the merger inconsistent with the recommendation of the MBNA board of directors, or recommends any Alternative Proposal (as defined above);

- any third party acquires beneficial ownership or the right to acquire beneficial ownership of 10% or more of the outstanding shares of MBNA common stock;

- any person, other than Bank of America, publicly makes a *bona fide* proposal to MBNA or MBNA's stockholders to engage in an Acquisition Transaction;

47

Table of Contents

- after the receipt by MBNA or its stockholders of any *bona fide* inquiry or proposal from a third party to MBNA or any of its subsidiaries to engage in an Acquisition Transaction, MBNA breaches any covenant or obligation contained in the merger agreement, the breach entitles Bank of America to terminate the merger agreement and the breach has not been cured prior to the date of written notice of the option holder's intention to exercise the option; or

- any third person, without the written consent of Bank of America, files an application or notice with the Federal Reserve Board or other federal or state bank regulatory authority, which application or notice has been accepted for processing, for approval to engage in an Acquisition Transaction.

As used in the stock option agreement, the term "Acquisition Transaction" means:

- a merger, consolidation or share exchange, or any similar transaction, involving MBNA or any of its significant subsidiaries;

- a purchase, lease or other acquisition or assumption of all or a substantial portion of the assets or deposits of MBNA or any of its significant subsidiaries;

- a purchase or other acquisition of securities representing 10% or more of the voting power of MBNA; or

- any substantially similar transaction, except that any substantially similar transaction involving only MBNA and one or more of its subsidiaries or involving only any two or more of these subsidiaries will not be deemed to be an Acquisition Transaction, provided that it is not entered into in violation of the merger agreement.

The stock option agreement generally defines the term "Subsequent Triggering Event" to mean any of the following events or transactions:

- the acquisition by a third party of beneficial ownership of 20% or more of the outstanding MBNA common stock; or

- MBNA enters into an agreement to engage in an Acquisition Transaction with a third party or its board of directors recommends that its stockholders approve or accept any Acquisition Transaction or proposed Acquisition Transaction other than the merger agreement. For this purpose, the percentage referred to in the definition of Acquisition Transaction is 20% instead of 10%.

The stock option agreement defines the term "Exercise Termination Event" to mean any of the following:

- completion of the merger;

- termination of the merger agreement in accordance with its terms before an Initial Triggering Event, except a termination of the merger agreement by Bank of America based on a breach by MBNA of a representation, warranty, covenant or other agreement contained in the merger agreement (unless the breach is non−volitional) or a termination based on MBNA modifying its recommendation of the merger in a manner adverse to Bank of America; or

- the passage of 18 months, subject to the extension described below, after termination of the merger agreement, if the termination follows the occurrence of an Initial Triggering Event or is a termination of the merger agreement by Bank of America based on a breach by MBNA of a representation, warranty, covenant or other agreement contained in the merger agreement (unless the breach is non−volitional) or based on MBNA modifying its recommendation of the merger in a manner adverse to Bank of America.

If the option becomes exercisable, it may be exercised, in whole or in part, within 180 days following the Subsequent Triggering Event. Bank of America's right to exercise its option and certain other rights under the stock option agreement are subject to an extension in order to obtain required regulatory approvals and comply with applicable regulatory waiting periods and to avoid liability under the short−swing trading restrictions contained in Section 16(b) of the Exchange Act. The option is exercisable for shares of MBNA common stock. MBNA has agreed that, if it does not have sufficient shares of common stock available under its articles of incorporation to issue to Bank of America in the event the option becomes exercisable and cannot obtain stockholder approval to increase its authorized shares of common

48

Table of Contents

stock in a reasonable time, it will issue in lieu of shares of MBNA common stock shares of a voting participating preferred stock with terms intended to make a share of the stock substantially economically equivalent to a share (or shares) of MBNA common stock.

## Rights Under the Stock Option Agreement

Immediately prior to or after a Repurchase Event (as defined below), and prior to an Exercise Termination Event subject to extension as described above, following a request of Bank of America, MBNA may be required to repurchase the option and all or any part of the shares issued under the option. The repurchase of the option will be at a price equal to the number of shares for which the option may be exercised multiplied by the amount by which the market/offer price, as that term is defined in the stock option agreement, exceeds the option price. At the request of the owner of option shares from time to time, MBNA may be required to repurchase such number of the option shares from the owner as designated by the owner at a price equal to the market/offer price, as that term is defined in the stock option agreement, multiplied by the number of option shares so designated. The term "Repurchase Event" is defined to mean:

- completion of an Acquisition Transaction involving MBNA, except that for this purpose the reference to 10% in the definition of Acquisition Transaction is deemed to be 50%; or

- acquisition by any person of beneficial ownership of 50% or more of the then–outstanding shares of common stock of MBNA.

The stock option agreement also provides that Bank of America may, at any time during which MBNA would be required to repurchase the option or any option shares upon proper request or notice, subject to extension as described above, surrender the option and any shares issued under the option held by Bank of America to MBNA for a cash payment equal to $1.0559 billion, adjusted for the aggregate purchase price previously paid by Bank of America with respect to any option shares and gains on sales of stock purchased under the option. However, Bank of America may not exercise its surrender right if MBNA repurchases the option, or a portion of the option, in accordance with MBNA's repurchase obligations described above.

If, prior to an Exercise Termination Event, MBNA enters into certain mergers, consolidations or other transactions, certain fundamental changes in its capital stock occur, or it sells all or substantially all of its assets to any person other than Bank of America or one of Bank of America's subsidiaries, the option will be converted into, or be exchanged for, a substitute option, at Bank of America's election, of:

- the continuing or surviving corporation of a consolidation or merger with MBNA;

- MBNA in a merger in which it is the continuing or surviving person;

- the transferee of all or substantially all of the assets of MBNA; or

- any person that controls any of these entities, as the case may be.

The substitute option will have the same terms as the original option (including a repurchase right, but based on the closing price of the common stock of the substitute issuer). However, if, because of legal reasons, the terms of the substitute option cannot be the same as those of the original option, the terms of the substitute option will be as similar as possible and at least as advantageous to Bank of America. Also, the number of shares exercisable under the substitute option is capped at 19.9% of the shares of common stock outstanding prior to exercise. In the event this cap would be exceeded, the issuer of the substitute option will pay Bank of America the difference between the value of a capped and non–capped option.

The stock option agreement provides that the total profit realized by Bank of America as a result of a stock option agreement may in no event exceed $1.4078 billion.

49

Table of Contents

## ACCOUNTING TREATMENT

The merger will be accounted for as a "purchase," as that term is used under generally accepted accounting principles, for accounting and financial reporting purposes. Under purchase accounting, the assets (including identifiable intangible assets) and liabilities (including executory contracts and other commitments) of MBNA as of the effective time of the merger will be recorded at their respective fair values and added to those of Bank of America. Any excess of purchase price over the fair values is recorded as goodwill. Financial statements of Bank of America issued after the merger would reflect these fair values and would not be restated retroactively to reflect the historical financial position or results of operations of MBNA.

## FEDERAL INCOME TAX CONSEQUENCES OF THE MERGER

The following general discussion sets forth the anticipated material United States federal income tax consequences of the merger to U.S. holders (as defined below) of MBNA common stock that exchange their shares of MBNA common stock for shares of Bank of America common stock and cash in the merger. This discussion does not address any tax consequences arising under the laws of any state, local or foreign jurisdiction, or under any United States federal laws other than those pertaining to income tax. This discussion is based upon the Code, the regulations promulgated under the Code and court and administrative rulings and decisions in effect on the date of this document. These laws may change, possibly retroactively, and any change could affect the continuing validity of this discussion.

This discussion addresses only those MBNA stockholders that hold their shares of MBNA common stock as a capital asset within the meaning of Section 1221 of the Code. Further, this discussion does not address all aspects of United States federal income taxation that may be relevant to you in light of your particular circumstances or that may be applicable to you if you are subject to special treatment under the United States federal income tax laws, including if you are:

• a financial institution;

• a tax–exempt organization;

• an S corporation or other pass–through entity (or an investor in an S corporation or other pass–through entity);

• an insurance company;

• a mutual fund;

• a dealer in stocks and securities, or foreign currencies;

• a trader in securities that elects the mark–to–market method of accounting for your securities;

• a holder of MBNA common stock subject to the alternative minimum tax provisions of the Code;

• a holder of MBNA common stock that received MBNA common stock through the exercise of an employee stock option, through a tax qualified retirement plan or otherwise as compensation;

• a person that is not a U.S. holder (as defined below);

• a person that has a functional currency other than the U.S. dollar; or

• a holder of MBNA common stock that holds MBNA common stock as part of a hedge, straddle, constructive sale or conversion transaction.

**Determining the actual tax consequences of the merger to you may be complex. They will depend on your specific situation and on factors that are not within our control. You should consult with your own tax advisor as to the tax consequences of the merger in your particular circumstances, including the applicability and effect of the alternative minimum tax and any state, local, foreign or other tax laws and of changes in those laws.**

For purposes of this discussion, the term "U.S. holder" means a beneficial owner of MBNA common stock that is (i) an individual citizen or resident of the United States, (ii) a corporation organized in or under the laws of the United States or any state thereof or the District of Columbia or (iii) otherwise subject to U.S. federal income taxation on a net income basis in respect of the MBNA common stock.

Table of Contents

**Tax Consequences of the Merger Generally**

The parties intend for the merger to qualify as a reorganization for United States federal income tax purposes. In connection with the filing of the registration statement of which this document forms a part, Cleary Gottlieb Steen & Hamilton LLP has delivered an opinion to Bank of America to the effect that the merger will be treated as a reorganization within the meaning of Section 368(a) of the Code, and Wachtell, Lipton, Rosen & Katz has delivered an opinion to MBNA to the effect that (1) the merger will be treated as a reorganization within the meaning of Section 368(a) of the Code and (2) except to the extent of any cash consideration received in the merger and except with respect to cash received in lieu of fractional share interests in Bank of America common stock, no gain or loss will be recognized by holders of MBNA common stock in the merger. It is a condition to Bank of America's obligation to complete the merger that Bank of America receive an opinion from Cleary Gottlieb Steen & Hamilton LLP, dated the closing date of the merger, to the same effect as the opinion from that firm described above. It is a condition to MBNA's obligation to complete the merger that MBNA receive an opinion from Wachtell, Lipton, Rosen & Katz, dated the closing date of the merger, to the same effect as the opinion from that firm described above. These opinions will be based on representation letters provided by Bank of America and MBNA and on customary factual assumptions, all of which must continue to be true and accurate in all material respects as of the effective time of the merger. None of the opinions described above will be binding on the Internal Revenue Service. Bank of America and MBNA have not sought and will not seek any ruling from the Internal Revenue Service regarding any matters relating to the merger, and as a result, there can be no assurance that the Internal Revenue Service will not disagree with or challenge any of the conclusions described herein.

As a result of the merger qualifying as a reorganization within the meaning of Section 368(a) of the Code, upon exchanging your MBNA common stock for a combination of Bank of America common stock and cash, you will generally recognize gain (but not loss) in an amount equal to the lesser of:

• the amount of gain realized (i.e., the excess, if any, of the sum of the cash and the fair market value of the Bank of America common stock you receive over your tax basis in the MBNA common stock surrendered in the merger); and

• the amount of cash that you receive in the merger.

For this purpose, gain or loss must be calculated separately for each identifiable block of shares surrendered in the exchange, and a loss realized on one block of shares may not be used to offset a gain realized on another block of shares. If you have different bases or holding periods in respect of shares of MBNA common stock, you should consult your tax advisor prior to the exchange with regard to identifying the bases or holding periods of the particular shares of Bank of America common stock received in the merger.

Any recognized gain will generally be long−term capital gain if your holding period with respect to the MBNA common stock surrendered is more than one year at the effective time of the merger. In some cases, where you actually or constructively own Bank of America common stock immediately before the merger, such cash received in the merger could be treated as having the effect of the distribution of a dividend, under the tests set forth in Section 302 of the Code, in which case such cash received would be treated as ordinary dividend income. These rules are complex and dependent upon the specific factual circumstances particular to you. Consequently, if you may be subject to those rules, you should consult your tax advisor as to the application of these rules to the particular facts relevant to you.

The aggregate tax basis in the shares of Bank of America common stock that you receive in the merger, including any fractional share interests deemed received by you under the treatment described below, will equal your aggregate adjusted tax basis in the MBNA common stock you surrender, increased by the amount of taxable gain, if any, that you recognize on the exchange (including any portion of the gain that is treated as a dividend but excluding any gain or loss resulting from the deemed receipt and redemption of a fractional share interest described below) and decreased by the amount of any cash received by you in the merger (excluding any cash received in lieu of a fractional share interest). Your holding period for the shares of Bank of America common stock that you receive in the merger (including a fractional share interest deemed received and redeemed as described below) will include your holding period for the shares of MBNA common stock that you surrender in the exchange.

51

Table of Contents

### Cash in Lieu of a Fractional Share

If you receive cash in lieu of a fractional share of Bank of America common stock, you will be treated as having received the fractional share of Bank of America common stock pursuant to the merger and then as having exchanged the fractional share of Bank of America common stock for cash in a redemption by Bank of America. As a result, assuming that the redemption of a fractional share of Bank of America common stock is treated as a sale or exchange and not as a dividend, you generally will recognize gain or loss equal to the difference between the amount of cash received and the basis in its fractional share of Bank of America common stock as set forth above. This gain or loss generally will be capital gain or loss, and will be long−term capital gain or loss if, as of the effective date of the merger, the holding period for the shares is greater than one year. The deductibility of capital losses is subject to limitations.

### Backup Withholding

If you are a non−corporate holder of MBNA common stock you may be subject to information reporting and backup withholding at a rate of 28% on any cash payments you receive. You generally will not be subject to backup withholding, however, if you:

- furnish a correct taxpayer identification number and certify that you are not subject to backup withholding on the substitute Form W−9 or successor form included in the election form/letter of transmittal you will receive; or

- are otherwise exempt from backup withholding.

Any amounts withheld under the backup withholding rules will generally be allowed as a refund or credit against your United States federal income tax liability, provided you timely furnish the required information to the Internal Revenue Service.

### Reporting Requirements

If you receive shares of Bank of America common stock as a result of the merger, you will be required to retain records pertaining to the merger and you will be required to file with your United States federal income tax return for the year in which the merger takes place a statement setting forth certain facts relating to the merger.

Table of Contents

## COMPARISON OF STOCKHOLDERS' RIGHTS

Bank of America is incorporated in Delaware and MBNA is incorporated in Maryland. Your rights as an MBNA stockholder are governed by the Maryland General Corporation Law, the MBNA articles of incorporation and the MBNA bylaws. Upon completion of the merger, you will exchange your shares of MBNA common stock for cash and shares of Bank of America common stock, and as Bank of America stockholders your rights will be governed by the Delaware General Corporation Law, the Bank of America certificate of incorporation and the Bank of America bylaws.

The following is a summary of the material differences between the rights of holders of Bank of America common stock and the rights of holders of MBNA common stock, but does not purport to be a complete description of those differences. These differences may be determined in full by reference to the Delaware General Corporation Law, the Maryland General Corporation Law, the Bank of America certificate of incorporation, the MBNA articles of incorporation, the Bank of America bylaws and the MBNA bylaws. The Bank of America certificate of incorporation, the MBNA articles of incorporation and the Bank of America and MBNA bylaws are subject to amendment in accordance with their terms. Copies of the governing corporate instruments are available, without charge, to any person, including any beneficial owner to whom this document is delivered, by following the instructions listed under "Where You Can Find More Information" on page 64.

| MBNA | Bank of America |
|------|-----------------|

### AUTHORIZED CAPITAL STOCK

*Authorized Shares.* MBNA is authorized under its articles of incorporation to issue 1,520,000,000 shares, consisting of 1,500,000,000 shares of common stock, par value $0.01 per share, and 20,000,000 shares of preferred stock, par value $0.01 per share.

*Authorized Shares.* Bank of America is authorized under its certificate of incorporation to issue 7,600,000,000 shares, consisting of 7,500,000,000 shares of common stock, par value $0.01 per share, and 100,000,000 shares of preferred stock, par value $0.01 per share.

*Preferred Stock.* MBNA's articles of incorporation provide that shares of preferred stock may be issued from time to time in one or more series by the board of directors. The board can fix the preferences, conversion and other rights, voting powers, restrictions, limitations as to dividends, qualifications and terms and conditions of redemption of each series of preferred stock. The rights of preferred stockholders may supersede the rights of common stockholders. Currently, (1) 6 million shares are authorized as MBNA $7^1/2\%$ Series A Cumulative Preferred Stock and (2) 6 million shares are authorized as Series B Adjustable Rate Cumulative Preferred Stock. Under the merger agreement, MBNA has agreed to redeem all outstanding shares of its $7^1/2\%$ Series A Cumulative Preferred Stock and Series B Adjustable Rate Cumulative Preferred Stock prior to completion of the merger.

*Preferred Stock.* Bank of America's certificate of incorporation provides that shares of preferred stock may be issued from time to time in one or more series by the board of directors. The board can fix the designations, preference, limitations and relative rights of each series of preferred stock. The rights of preferred stockholders may supersede the rights of common stockholders. Currently, (1) 35,045 shares are authorized as Bank of America Series B 7% Cumulative Redeemable Preferred Stock, (2) 690,000 shares are authorized as Bank of America Series VI 6.75% Perpetual Preferred Stock, and (3) 805,000 shares are authorized as Bank of America Series VII 6.60% Cumulative Preferred Stock.

### VOTING RIGHTS IN AN EXTRAORDINARY TRANSACTION

The Maryland General Corporation Law generally requires approval of a consolidation, merger, share exchange or transfer by the affirmative vote of two−thirds of all votes entitled to be cast on the matter.

The Delaware General Corporation Law generally requires that any merger, consolidation or sale of substantially all the assets of a corporation be approved by a vote of a majority of all outstanding shares entitled to vote thereon. Although a Delaware corporation's certificate of incorporation

53

Table of Contents

| MBNA | Bank of America |
|---|---|
| However, a Maryland corporation's articles of incorporation may provide for a greater or lesser vote (but not less than a majority). The MBNA articles of incorporation provide that, notwithstanding any provision of the Maryland General Corporation Law requiring any action to be taken or authorized by the affirmative vote of the holders of more than a majority of the votes of all classes or any class of stock of MBNA, the action will be effective and valid if taken or authorized by the affirmative vote of a majority of the total number of votes entitled to be cast thereon, unless otherwise specified in the MBNA articles of incorporation. Approval of the merger requires the affirmative vote of the holders of a majority of the outstanding shares of MBNA common stock entitled to vote at the MBNA special meeting. | may provide for a greater vote, the Bank of America certificate of incorporation does not require a greater vote. |

## AMENDMENT TO THE ARTICLES/CERTIFICATE OF INCORPORATION

The Maryland General Corporation Law generally provides that an amendment to a corporation's articles of incorporation requires (1) adoption by the board of directors of a resolution submitting the proposed amendment to the stockholders, and (2) approval by the affirmative vote of the holders of two–thirds of all the votes entitled to be cast on the matter. However, a Maryland corporation's articles of incorporation may provide for a greater or lesser vote (but not less than a majority).

The MBNA articles of incorporation provide that, notwithstanding any provision of the Maryland General Corporation Law requiring any action to be taken or authorized by the affirmative vote of the holders of more than a majority of the votes of all classes or any class of stock of MBNA, such action will be effective and valid if taken or authorized by the affirmative vote of a majority of the total number of votes entitled to be cast thereon, unless otherwise specified in the MBNA articles of incorporation. Amendments to the MBNA articles of incorporation generally require the affirmative vote of the holders of at least a majority of the outstanding shares of MBNA common stock entitled to vote on such matter. The MBNA articles of incorporation specifically require a different standard with respect to control share acquisitions, as discussed below.

The MBNA articles of incorporation provide that MBNA reserves the right to make, from time to time, any amendments of its articles of incorporation which are authorized by law, including any amendments which alter the contract

Under the Delaware General Corporation Law, an amendment to the certificate of incorporation requires (1) the approval of the board of directors, (2) the approval of the holders of a majority of the outstanding stock entitled to vote upon the proposed amendment, and (3) the approval of the holders of a majority of the outstanding stock of each class entitled to vote thereon as a class. The Bank of America certificate of incorporation provides that Bank of America reserves the right at any time to amend or repeal any provision of the Bank of America certificate of incorporation and that all rights conferred thereby are granted subject to such right of Bank of America, but does not contain any provisions altering the standards for amendment.

Table of Contents

| MBNA | Bank of America |
|------|-----------------|

rights of outstanding stock as expressly set forth in the articles of incorporation.

## AMENDMENT TO THE BYLAWS

Under the Maryland General Corporation Law the power to adopt, alter and repeal a corporation's bylaws is vested in the stockholders, except to the extent that the articles of incorporation or bylaws vest it in the board of directors. The MBNA bylaws specify that the bylaws may be altered, amended or repealed, and new bylaws may be adopted, by the MBNA board of directors and that the MBNA stockholders have no power to make, amend or repeal any bylaw.

Under the Delaware General Corporation Law, bylaws may be adopted, amended or repealed by the stockholders entitled to vote, and by the board of directors if the corporation's certificate of incorporation confers the power to adopt, amend or repeal the corporation's bylaws upon the directors. The Bank of America certificate of incorporation confers the power to adopt, amend or repeal the Bank of America bylaws upon the Bank of America board of directors, subject to the power of the Bank of America stockholders to alter or repeal any bylaws made by the Bank of America board of directors.

## APPRAISAL RIGHTS

Under the Maryland General Corporation Law, appraisal rights are available only in connection with (1) a consolidation or merger with another corporation, (2) acquisitions of the stockholder's stock in a share exchange, (3) a transfer of assets requiring stockholder approval, (4) an amendment of a company's articles of incorporation in a way that alters the contract rights, as expressly set forth in the articles of incorporation, of any outstanding stock and substantially adversely affects the stockholder's rights, unless the right to do so is reserved by the articles of incorporation, or (5) transactions governed by the voting requirements section related to transactions with interested stockholders, or is exempt from such voting requirements in certain circumstances.

However, no appraisal rights are available to holders of shares of any class of stock if:

   • the stock is listed on a national securities exchange, is designated as a national market system security on an interdealer quotation system by the National Association of Securities Dealers, Inc., or is designated for trading on the NASDAQ Small Cap Market;

   • the stock is that of the successor in a merger, unless (1) the merger alters the contract rights of the stock as expressly set forth in the articles of incorporation (or other organizational document of the successor), and such document does not reserve the right to do so, or (2) the stock is to be changed or converted into something other than either stock in the successor or cash, scrip or other

Under the Delaware General Corporation Law, a stockholder of a Delaware corporation such as Bank of America who has not voted in favor of, nor consented in writing to, a merger or consolidation in which the corporation is participating generally has the right to an appraisal of the fair value of the stockholder's shares of stock, subject to specified procedural requirements. The Delaware General Corporation Law does not confer appraisal rights, however, if the corporation's stock is either (1) listed on a national securities exchange or designated as a national market system security on an interdealer quotation system by the National Association of Securities Dealers, Inc. or (2) held of record by more than 2,000 holders.

Even if a corporation's stock meets the foregoing requirements, however, the Delaware General Corporation Law provides that appraisal rights generally will be permitted if stockholders of the corporation are required to accept for their stock in any merger, consolidation or similar transaction anything other than (1) shares of the corporation surviving or resulting from the transaction, or depository receipts representing shares of the surviving or resulting corporation, or those shares or depository receipts plus cash in lieu of fractional interests, (2) shares of any other corporation, or depository receipts representing shares of the other corporation, or those shares or depository receipts plus cash in lieu of fractional interests, which shares or depository receipts are listed on a national securities exchange or designated as a national market system security on an interdealer quotation system by the National Association of Securities

55

Table of Contents

| **MBNA** | **Bank of America** |
|---|---|
| rights or interests arising out of the provisions for the treatment of fractional shares of stock in the successor; | Dealers, Inc. or held of record by more than 2,000 holders, or (3) any combination of the foregoing. |
|   • the stock is generally not entitled to be voted on the transaction or the stockholder did not own the shares on the record date; | Under the Delaware General Corporation Law, appraisal rights are not available in the merger for Bank of America stockholders. |
|   • the articles of incorporation provide that the holders of stock are not entitled to exercise appraisal rights; or | |
|   • the stock is that of an open−ended investment company. | |

Holders of MBNA common stock do not have any appraisal rights because the outstanding shares of MBNA common stock are listed on The New York Stock Exchange and because the MBNA articles of incorporation do not otherwise provide. See the discussion in the "The Merger—MBNA Stockholders Do Not Have Dissenters' Appraisal Rights in the Merger" on page 31.

## SPECIAL MEETINGS OF STOCKHOLDERS

| | |
|---|---|
| The Maryland General Corporation Law provides that a special meeting of stockholders may be called by a corporation's president, board of directors or any other person specified in a corporation's articles of incorporation or bylaws. The MBNA bylaws permit special meetings of stockholders to be called by the chief executive officer, the president or the MBNA board of directors, as well as the secretary upon the written request of stockholders entitled to cast at least 25% of all votes entitled to be cast at the meeting. The MBNA bylaws also provide that unless the special meeting is requested by stockholders entitled to vote at least a majority of all votes entitled to be cast at the meeting, a special meeting need not be called to consider any matter which is substantially the same as a matter voted on at any special meeting of the stockholders held during the preceding 12 months. | Under the Delaware General Corporation Law, special stockholder meetings of a corporation may be called by the corporation's board of directors, or by any person or persons authorized to do so by the corporation's certificate of incorporation or bylaws. The Bank of America bylaws provide that a special meeting of stockholders may be called for any purpose by the board of directors, the chairman of the board of directors, the chief executive officer or the president, or the secretary acting under instructions of any of the foregoing. |

## STOCKHOLDER PROPOSALS AND NOMINATIONS

| | |
|---|---|
| Holders of MBNA common stock may nominate individuals for election to the MBNA board of directors or submit proposals for consideration at meetings of stockholders as specified in the MBNA bylaws. The MBNA bylaws provide that with respect to any stockholder proposals, no business, including a nomination for election as a director, may be brought before an annual meeting of stockholders by any stockholder unless the stockholder has given written notice of the business | The Delaware General Corporation Law does not contain any specific provisions regarding notice of stockholders' proposals or nominations for directors. The Bank of America bylaws specify that nominations of individuals for election as directors and stockholder proposals may be made pursuant to Bank of America's notice of meeting, by or at the direction of the Bank of America board of directors or by any holder of Bank of America stock entitled to vote on the election of directors who complies |

Table of Contents

| MBNA | Bank of America |
|---|---|
| to MBNA's secretary not later than 90 days prior to the anniversary date of the previous year's annual meeting. In the event of a special meeting of MBNA stockholders at which directors are to be elected, a nomination of an individual for election as a director may be made pursuant to MBNA's notice of meeting by or at the direction of the MBNA board of directors or by an MBNA stockholder who complies with the notice procedure. A stockholder may nominate a director for election as specified in the notice of meeting so long as the notice is received by the secretary of MBNA not later than the close of business on the later of the 90th day prior to such special meeting or the 10th day following the public announcement of the special meeting. The notice must include certain information concerning the stockholder, the business the stockholder proposes to bring before the meeting and, in the case of a nomination for director, the nominee. | with the requisite notice procedure. The notice procedure requires that a stockholder's proposal or nomination of an individual for election as a director must be made in writing and received by the secretary of Bank of America not later than the close of business on the 75th day nor earlier than the close of business on the 120th day prior to the first anniversary of the date Bank of America commenced mailing its proxy materials for the preceding year's annual meeting. In the event of a special meeting of Bank of America stockholders at which directors are to be elected, any Bank of America stockholder entitled to vote may nominate an individual for election as director if the stockholder's notice is received by the secretary of Bank of America not later than the close of business on the 15th day following the day on which notice of the meeting is first mailed to Bank of America stockholders. The notice must include certain information concerning the stockholder, the matter the stockholder proposes to bring before the meeting and, in the case of a nomination for director, the nominee. |

## BOARD OF DIRECTORS

### Number of Directors

| | |
|---|---|
| Under the Maryland General Corporation Law, a corporation must have a board of directors consisting of at least one director. The MBNA articles of incorporation provide that the MBNA board of directors is to initially consist of four members and that the number of directors may be increased or decreased as provided in the bylaws. The MBNA bylaws provide that the number of directors must not be less than the lesser of three (or the number of stockholders) or more than 20. Pursuant to the bylaws, the board of directors may fix the number of directors from time to time by resolution of the board of directors. Currently, the number of members of the MBNA board of directors is nine. | Under Delaware General Corporation Law, the board of directors of a corporation must consist of one or more members, each of whom must be a natural person. The Bank of America bylaws provide that the Bank of America board of directors is to consist of not less than five nor more than 30 members, which number may be changed from time to time within such range by the Bank of America board of directors. Currently, the number of members of the Bank of America board of directors is 17. |

### Classification

| | |
|---|---|
| The Maryland General Corporation Law permits classification of a Maryland corporation's board of directors if the corporation's articles of incorporation or bylaws so provide. The MBNA articles of incorporation and the MBNA bylaws do not provide for classification of the MBNA board of directors. | The Delaware General Corporation Law permits classification of a Delaware corporation's board of directors if the corporation's certificate of incorporation, an initial bylaw or a bylaw approved by the stockholders so provides. The Bank of America certificate of incorporation and the Bank of America bylaws do not provide for classification of the Bank of America board of directors. |

Table of Contents

| MBNA | Bank of America |
|------|-----------------|

## Removal

Under the Maryland General Corporation Law, the stockholders of a corporation may remove any director, with or without cause, by the affirmative vote of a majority of all votes entitled to be cast generally for the election of directors, except in certain circumstances including election of directors by a separate class or series, cumulative voting, a classified board or as otherwise provided in the articles of incorporation. Since the MBNA articles of incorporation do not include this limitation, MBNA stockholders may remove one or all of the MBNA directors with or without cause by the affirmative vote of a majority of all votes entitled to be cast generally for the election of directors.

The Delaware General Corporation Law provides that, in the absence of cumulative voting or a classified board, any director or the entire board of directors may be removed, with or without cause, by the holders of a majority of the shares then entitled to vote in an election of directors. Bank of America stockholders may remove one or all of the Bank of America directors with or without cause.

## Vacancies

Under the Maryland General Corporation Law, stockholders may elect a successor to fill a vacancy on the board of directors which results from the removal of a director. In addition, a majority of the remaining members of the board of directors may fill a vacancy, unless it results from an increase in the size of the board, in which case the vacancy may be filled by a majority of the entire board.

Under the MBNA bylaws, a majority of the remaining members of the MBNA board of directors may fill a vacancy, unless it results from an increase in the size of the board, in which case the vacancy may be filled by a majority of the entire board.

Under the Delaware General Corporation Law, vacancies and newly created directorships may be filled by a majority of the directors then in office, even though less than a quorum, or by a sole remaining director unless otherwise provided in the certificate of incorporation or bylaws.

Under the Bank of America bylaws, vacancies on the board of directors may be filled by the vote of a majority of the remaining directors, even if such remaining directors constitute less than a quorum.

## Special Meetings of the Board

Special meetings of the board of directors may be called by the chairman of the board, the chief executive officer or by a majority of the board.

Special meetings of the board of directors may be called by the chairman of the board, the chief executive officer, the president, or the secretary acting under instructions from any of the foregoing persons, or upon the call of any three directors.

## Director Liability and Indemnification

The Maryland General Corporation Law permits a Maryland corporation to indemnify any director or officer made a party to any proceeding by reason of service in that capacity unless it is established that (1) the act or omission of the director or officer was material to the matter giving rise to the proceeding and (a) was committed in bad faith or (b) was the result of active and deliberate dishonesty, (2) the director or officer actually received an improper personal benefit in money, property or services, or (3) in the case of any criminal proceeding, the director or officer had

The Delaware General Corporation Law provides that a corporation may indemnify a director or officer against expenses actually and reasonably incurred by him in association with any action, suit or proceeding in which he is involved by reason of his service to the corporation, if the director or officer acted in good faith and in a manner the person reasonably believed to be in or not opposed to the best interests of the corporation, and with respect to a criminal proceeding, the director or officer had no reason to believe that the act was unlawful.

Table of Contents

| MBNA | Bank of America |
|------|-----------------|

reasonable cause to believe that the act or omission was unlawful.

The Maryland General Corporation Law requires a corporation (unless its articles of incorporation provide otherwise) to indemnify reasonable expenses for a director or officer who has been successful, on the merits or otherwise, in the defense of any proceeding to which he is made a party by reason of his service in that capacity. The MBNA articles of incorporation provide that directors and officers shall have no liability to the corporation or its stockholders for damages, and that MBNA shall indemnify and advance expenses to directors and officers, in each case to the fullest extent permitted by the Maryland General Corporation Law.

The Delaware General Corporation Law requires a corporation to indemnify a director or officer who successfully defends himself in such a proceeding.

The Bank of America certificate of incorporation provides that directors shall not be personally liable for breaches of their duties as directors, to the fullest extent allowed under the Delaware General Corporation Law. The Bank of America bylaws provide that directors and officers shall be indemnified to the fullest extent permitted by the Delaware General Corporation Law.

## STOCKHOLDER RIGHTS PLAN

MBNA currently does not have a stockholder rights plan in effect.

The Maryland General Corporation Law expressly authorizes a corporation's board of directors to adopt stockholder rights plans, which may include slow hand and dead hand stockholder rights plans, without stockholder approval.

Bank of America currently does not have a stockholder rights plan in effect, but under Delaware law the Bank of America board of directors could adopt such a plan without stockholder approval.

The Delaware General Corporation Law does not include a statutory provision expressly validating stockholder rights plans; however, such plans have generally been upheld by decision of courts applying Delaware law. Dead hand stockholder rights plans are not permitted under Delaware law.

The Bank of America board of directors has adopted a policy of requiring stockholder approval prior to the adoption of any stockholder rights plan.

## STATE ANTI−TAKEOVER STATUTES

### Business Combinations

Pursuant to the Maryland General Corporation Law, a corporation may not engage in any "business combination" with an "interested stockholder" (generally, one who beneficially owns 10% or more of the voting power) for a period of five years after the interested stockholder first becomes an interested stockholder, unless the transaction has been approved by the board of directors before the interested stockholder became an interested stockholder or the corporation has exempted itself from the statute pursuant to a provision in its articles of incorporation. After the five−year period has elapsed, a corporation subject to the statute may not consummate a business combination with an interested stockholder unless (1) the transaction has been recommended by the board of directors and (2) the transaction has been

The Delaware General Corporation Law generally prohibits a corporation from engaging in a "business combination" with an "interested stockholder" (generally, one who beneficially owns 15% or more of the voting power) for a period of three years following the date that the stockholder became an "interested stockholder" unless:

  • prior to that time the corporation's board of directors approved either the business combination or the transaction that resulted in the stockholder becoming an "interested stockholder";

  • upon completion of the transaction that resulted in the stockholder becoming an "interested stockholder," the "interested

59

Table of Contents

| MBNA | Bank of America |
|---|---|
| approved by (a) 80% of the outstanding shares entitled to be cast and (b) two–thirds of the votes entitled to be cast other than shares owned by the interested stockholder. This approval requirement need not be met if certain fair price and terms criteria have been satisfied. | stockholder" owned at least 85% of the voting stock of the corporation outstanding at the time the transaction commenced, subject to specified adjustments; or |

The term "business combination" is defined to include a wide variety of transactions, including mergers, consolidations, share exchanges, sales or other dispositions of 10% or more of a corporation's assets and various other transactions that may benefit an interest stockholder.

The MBNA articles of incorporation do not contain any provisions opting out of the restrictions prescribed by the above statute.

 • at or subsequent to that time, the business combination is approved by the corporation's board of directors and authorized at an annual or special meeting of stockholders by the affirmative vote of at least 66⅔/3% of the outstanding voting stock that is not owned by the "interested stockholder."

The three–year prohibition on business combinations with an "interested stockholder" does not apply under certain circumstances, including business combinations with a corporation that does not have a class of voting stock that is:

 • listed on a national security exchange;

 • authorized for quotation on the Nasdaq Stock Market; or

 • held of record by more than 2,000 stockholders;

unless, in each case, this result was directly or indirectly caused by the "interested stockholder" or from a transaction in which a person became an "interested stockholder."

The term "business combination" is defined to include a wide variety of transactions, including mergers, consolidations, sales or other dispositions of 10% or more of a corporation's assets and various other transactions that may benefit an "interested stockholder."

The Bank of America certificate of incorporation and the Bank of America bylaws do not contain any provisions opting out of the restrictions prescribed by this section of the Delaware General Corporation Law. The merger does not constitute a prohibited business combination under this statute.

### Control Share Acquisition

| MBNA | Bank of America |
|---|---|
| The Maryland General Corporation Law provides that control shares acquired in a control share acquisition have no voting rights except to the extent approved by the stockholders at a special meeting of the stockholders by the affirmative vote of two–thirds of all the votes entitled to be cast on the matter, excluding all interested shares, or as exempted by a provision contained in the articles of incorporation or bylaws and adopted at any time before the acquisition of the shares. The MBNA | The Delaware General Corporation Law does not contain a control share acquisition statute. |

Table of Contents

| MBNA | Bank of America |
|------|-----------------|

articles of incorporation and bylaws exempt Alfred Lerner and The Progressive Corporation and their successors in interest or their affiliates or associates from statutory limitations on the voting rights of control shares.

The special meeting of stockholders to consider the voting rights to be accorded the shares acquired or to be acquired in the control share acquisition is to be held within 50 days after the date on which the corporation receives a request and a written undertaking to pay the corporation's expenses of the special meeting delivered by the acquiring person. If the acquiring person does not request a special meeting, the issue of the voting rights to be accorded the shares acquired in the control share acquisition may be presented for consideration at any meeting of stockholders.

If voting rights have not been approved for control shares, the corporation may redeem any or all of the control shares within certain periods. In addition, stockholders may be entitled to appraisal rights, as described above in "—Appraisal Rights," for certain control share acquisitions.

"Control shares" means shares of stock that would, if aggregated with all other shares of stock of the corporation owned by a person or in respect of which that person is entitled to exercise voting power (except by a revocable proxy), entitle that person, directly or indirectly, to exercise the voting power of shares of stock of the corporation in the election of directors within any of the following ranges of voting power: one–tenth or more, but less than one–third of all voting power; one–third or more, but less than a majority of all voting power; or a majority or more of all voting power.

"Control Share Acquisition" means the acquisition, directly or indirectly, by any person, of ownership of, or the power to direct the exercise of voting power with respect to, issued and outstanding control shares. Certain transactions are excluded from the definition of control share acquisition, including the acquisition of shares under a merger, consolidation or share exchange effected under the portions of the Maryland General Corporation Law that govern mergers and require board and stockholder approval, if the corporation is a party to the merger, consolidation or share exchange.

| MBNA | Bank of America |
| --- | --- |

### STOCKHOLDER APPROVALS

### BOARD POLICIES

The MBNA board of directors has not adopted any specific policies requiring stockholder approval prior to actions by the board.

The Bank of America board of directors has adopted a policy of requiring stockholder approval for severance agreements with senior executives that provide severance benefits in amounts exceeding two times the sum of any senior executive's base salary and bonus.

In addition, the Bank of America board of directors has adopted a policy of requiring stockholder approval prior to the adoption of any stockholder rights plan.

### DUTIES OF DIRECTORS

Under the Maryland General Corporation Law, the standard of conduct for directors is governed by statute. The Maryland General Corporation Law requires that a director of a Maryland corporation perform his or her duties: (1) in good faith, (2) in a manner he or she reasonably believes to be in the best interests of the corporation, and (3) with the care that an ordinarily prudent person in a like position would use under similar circumstances. A director's acts are presumed to satisfy this standard of conduct. In addition, under the Maryland General Corporation law, the acts of directors of a Maryland corporation relating to or affecting an acquisition or potential acquisition of control of a corporation are not subject to any higher duty or greater scrutiny than is applied to any other act of a director.

A director's duty does not require him or her to (1) accept, recommend or respond to any proposal by a person seeking to acquire control of the corporation, (2) authorize the corporation to redeem any rights under, or modify or render inapplicable, any stockholders rights plan, (3) make a determination under the Maryland Business Combination Act or the Maryland Control Share Acquisition Act, or (4) act or fail to act solely because of the effect the act or failure to act may have on an acquisition or potential acquisition of control of the corporation or the amount or type of consideration that may be offered or paid to the stockholders in an acquisition.

Under Delaware law, the standards of conduct for directors have developed through Delaware court case law. Generally, directors of Delaware corporations are subject to a duty of loyalty and a duty of care. The duty of loyalty requires directors to refrain from self–dealing and the duty of care requires directors in managing the corporate affairs to use that level of care which ordinarily careful and prudent persons would use in similar circumstances. When directors act consistently with their duties of loyalty and care, their decisions generally are presumed to be valid under the business judgment rule.

Table of Contents

## COMPARATIVE MARKET PRICES AND DIVIDENDS

Each of Bank of America common stock and MBNA common stock is listed on the NYSE, among other stock exchanges. The following table sets forth the high and low sales prices of shares of Bank of America common stock and MBNA common stock as reported on the NYSE, and the quarterly cash dividends declared per share for the periods indicated.

| | Bank of America Common Stock | | | MBNA Common Stock | | |
|---|---|---|---|---|---|---|
| | High | Low | Dividend(1) | High | Low | Dividend |
| **2003** | | | | | | |
| First Quarter | $ 36.25 | $ 32.13 | $ 0.32 | $ 21.20 | $ 11.96 | $ 0.08 |
| Second Quarter | 40.00 | 33.60 | 0.32 | 22.60 | 14.52 | 0.08 |
| Third Quarter | 42.45 | 37.29 | 0.40 | 25.07 | 20.15 | 0.10 |
| Fourth Quarter | 41.38 | 36.25 | 0.40 | 25.50 | 23.00 | 0.10 |
| **2004** | | | | | | |
| First Quarter | 41.50 | 38.81 | 0.40 | 29.05 | 24.52 | 0.12 |
| Second Quarter | 42.83 | 38.52 | 0.40 | 28.40 | 23.12 | 0.12 |
| Third Quarter | 44.99 | 41.77 | 0.45 | 26.35 | 22.35 | 0.12 |
| Fourth Quarter | 47.47 | 42.94 | 0.45 | 28.39 | 23.50 | 0.12 |
| **2005** | | | | | | |
| First Quarter | 47.20 | 43.43 | 0.45 | 29.01 | 24.09 | 0.14 |
| Second Quarter | 47.42 | 43.47 | 0.45 | 26.70 | 18.29 | 0.14 |
| Third Quarter (through | | | | | | |
| September 16, 2005) | 46.05 | 42.45 | 0.50 | 26.30 | 24.63 | 0.14 |

(1)   The above table has been adjusted to reflect an August 27, 2004 two for one stock split of Bank of America's common stock.

On June 29, 2005, the last full trading day before the public announcement of the merger agreement, the high and low sales prices of shares of Bank of America common stock as reported on the New York Stock Exchange were $47.08 and $46.73, respectively. On September 16, 2005, the last full trading day before the date of this document, the high and low sales prices of shares of Bank of America common stock as reported on the New York Stock Exchange were $43.68 and $42.88, respectively.

On June 29, 2005, the last full trading day before the public announcement of the merger agreement, the high and low sales prices of shares of MBNA common stock as reported on the New York Stock Exchange were $21.29 and $21.03, respectively. On September 16, 2005, the last full trading day before the date of this document, the high and low sale prices of shares of MBNA common stock as reported on the New York Stock Exchange were $25.40 and $25.02, respectively.

As of September 16, 2005, the last date prior to printing this document for which it was practicable to obtain this information, there were approximately 278,489 registered holders of Bank of America common stock and approximately 2,903 registered holders of MBNA common stock.

Bank of America stockholders and MBNA stockholders are advised to obtain current market quotations for Bank of America common stock and MBNA common stock. The market price of Bank of America common stock and MBNA common stock will fluctuate between the date of this document and the completion of the merger. No assurance can be given concerning the market price of Bank of America common stock or MBNA common stock before or after the effective date of the merger.

## LEGAL MATTERS

The validity of the Bank of America common stock to be issued in connection with the merger will be passed upon for Bank of America by Timothy J. Mayopoulos, Executive Vice President and General Counsel of Bank of America.

## EXPERTS

The consolidated financial statements and management's assessment of the effectiveness of internal control over financial reporting (which is included in the Report of Management on Internal Control over Financial Reporting) of Bank of America and its subsidiaries incorporated in this document by reference to Bank of America's Current Report on Form 8–K filed on July 12, 2005, have been so incorporated in reliance on the report of PricewaterhouseCoopers LLP, an independent registered public accounting firm, given on the authority of said firm as experts in accounting and auditing.

The consolidated financial statements of MBNA Corporation incorporated by reference in MBNA Corporation's Annual Report (Form 10–K) for the year ended December 31, 2004, and MBNA Corporation management's assessment of the effectiveness of internal control over financial reporting as of December 31, 2004 incorporated by reference therein, have been audited by Ernst & Young LLP, independent registered public accounting firm, as set forth in their reports thereon, incorporated by reference therein, and incorporated herein by reference. Such consolidated financial statements and management's assessment are incorporated herein by reference in reliance upon such reports given on the authority of such firm as experts in accounting and auditing.

MBNA expects representatives of Ernst & Young LLP to attend the special meeting. These representatives will have an opportunity to make a statement if they desire to do so, and we expect that they will be available to respond to any appropriate questions you may have.

## OTHER MATTERS

According to the MBNA bylaws, business to be conducted at a special meeting of stockholders may only be brought before the meeting pursuant to a notice of meeting. Accordingly, no matters other than the matters described in this document will be presented for action at the special meeting or at any adjournment or postponement of the special meeting.

### MBNA 2006 Annual Meeting Stockholder Proposals

MBNA will hold a 2006 annual meeting of stockholders only if the merger is not completed before the time it is required to hold its 2006 annual meeting under its bylaws. For a stockholder proposal to be considered for inclusion in MBNA's proxy statement and form of proxy relating to the MBNA 2006 annual meeting of stockholders (in the event this meeting is held), the proposal must be received at MBNA's principal executive offices not later than November 18, 2005. Any stockholder proposals will be subject to Rule 14a–8 under the Exchange Act.

With respect to any other stockholder proposals, one of MBNA's bylaws provides that no business, including a nomination for election as a director, may be brought before an annual meeting of stockholders by any stockholder unless the stockholder has given written notice of the business to the Secretary of MBNA not later than 90 days prior to the anniversary date of the previous year's annual meeting. For the 2006 Annual Meeting of Stockholders, should it be held, this deadline is February 1, 2006. The notice must include certain information concerning the stockholder, the business the stockholder proposes to bring before the meeting and, in the case of a nomination for director, the nominee. A copy of MBNA's bylaws is available on its website *(http://www.mbna.com/investor)* and may be obtained from the Secretary of MBNA at 1100 North King Street, Wilmington, Delaware 19884.

## WHERE YOU CAN FIND MORE INFORMATION

Bank of America has filed with the SEC a registration statement under the Securities Act that registers the distribution to MBNA stockholders of the shares of Bank of America common stock to be issued in connection with the merger. The registration statement, including the attached exhibits and schedules, contains additional relevant information about Bank of America and Bank of America stock. The rules and regulations of the SEC allow us to omit certain information included in the registration statement from this document.

You may read and copy this information at the Public Reference Room of the SEC at 100 F Street, NE, Room 1580, Washington, D.C. 20549. You may obtain information on the operation of the SEC's Public Reference Room by calling the SEC at 1–800–SEC–0330. The SEC also maintains an internet website that contains reports, proxy statements and other information about issuers, like Bank of America and MBNA, who file electronically with the SEC. The address of the site is *http://www.sec.gov*. The

Table of Contents

reports and other information filed by Bank of America with the SEC are also available at Bank of America's internet website. The address of the site is *http://www.bankofamerica.com*. The reports and other information filed by MBNA with the SEC are also available at MBNA's internet website. The address of the site is *http://www.mbna.com/investor*. We have included the web addresses of the SEC, Bank of America, and MBNA as inactive textual references only. Except as specifically incorporated by reference into this document, information on those web sites is not part of this document.

The SEC allows Bank of America and MBNA to incorporate by reference information in this document. This means that Bank of America and MBNA can disclose important information to you by referring you to another document filed separately with the SEC. The information incorporated by reference is considered to be a part of this document, except for any information that is superseded by information that is included directly in this document.

This document incorporates by reference the documents listed below that Bank of America and MBNA previously filed with the SEC. They contain important information about the companies and their financial condition.

**Bank of America SEC Filings**

| (SEC File No. 001–06523; CIK No. 0000070858) | Period or Date Filed |
|---|---|
| Annual Report on Form 10–K except for Part II, Item 7. Management's Discussion and Analysis of Financial Condition and Results of Operations; and Part II, Item 8. Consolidated Financial Statements and Supplementary Data. The information included in Part II Item 7 and Item 8 was updated in the Current Report on Form 8–K filed on July 12, 2005, which is incorporated herein by reference. | Year ended December 31, 2004 |
| Quarterly Report on Form 10–Q | Quarters ended March 31, 2005 and June 30, 2005 |
| Current Reports on Form 8–K | Filed on January 7, 2005, January 18, 2005 (2), January 26, 2005, February 10, 2005, February 24, 2005, March 3, 2005, March 9, 2005, March 14, 2005, March 22, 2005, March 23, 2005, April 18, 2005, May 6, 2005, May 19, 2005, June 30, 2005, July 6, 2005, July 12, 2005, July 18, 2005, July 26, 2005, August 9, 2005, August 11, 2005, August 16, 2005, August 26, 2005, September 2, 2005 and September 12, 2005 (other than the portions of those documents not deemed to be filed) |
| The description of Bank of America common stock set forth in a registration statement filed pursuant to Section 12 of the Exchange Act and any amendment or report filed for the purpose of updating those descriptions | |

**MBNA SEC Filings**

| (SEC File No. 001–10683; CIK No. 0000870517) | Period or Date Filed |
|---|---|
| Annual Report on Form 10–K | Year ended December 31, 2004 |
| Quarterly Report on Form 10–Q | Quarters ended March 31, 2005 and June 30, 2005 |
| Current Reports on Form 8–K | Filed on January 20, 2005 (3), January 21, 2005, February 1, 2005, February 10, 2005, February 15, 2005, February 28, 2005, March 15, 2005, April 6, 2005, April 20, 2005 (2), April 21, 2005 (2), May 6, 2005, May 16, 2005 (2), May 19, 2005, June 1, 2005, June 14, 2005, June 15, 2005, June 22, 2005, June 30, 2005, July 6, 2005, July 7, 2005, July 18, 2005 (2), August 11, 2005 (2), August 15, 2005, August 16, 2005 (2), August 25, 2005, September 12, 2005, September 15, 2005 and September 16, 2005 (other than the portions of those documents not deemed to be filed) |

Table of Contents

In addition, Bank of America and MBNA also incorporate by reference additional documents that either company files with the SEC under Sections 13(a), 13(c), 14 and 15(d) of the Securities Exchange Act of 1934, as amended, between the date of this document and the date of the MBNA special meeting. These documents include periodic reports, such as Annual Reports on Form 10−K, Quarterly Reports on Form 10−Q and Current Reports on Form 8−K, as well as proxy statements.

Bank of America has supplied all information contained or incorporated by reference in this document relating to Bank of America, as well as all pro forma financial information, and MBNA has supplied all information relating to MBNA.

Documents incorporated by reference are available from Bank of America and MBNA without charge, excluding any exhibits to those documents unless the exhibit is specifically incorporated by reference as an exhibit in this document. You can obtain documents incorporated by reference in this document by requesting them in writing or by telephone from the appropriate company at the following addresses:

**Bank of America Corporation**
Bank of America Corporate Center
100 N. Tryon Street
Charlotte, North Carolina 28255
Investor Relations
Telephone: (704) 386−5667

**MBNA Corporation**
MBNA Corporation
1100 North King Street
Wilmington, Delaware 19884
Attention: Investor Relations
Telephone: (800) 362−6255

*MBNA stockholders requesting documents should do so by October 27, 2005 to receive them before the special meeting.* **You will not be charged for any of these documents that you request. If you request any incorporated documents from Bank of America or MBNA, MBNA will mail them to you by first class mail, or another equally prompt means, within one business day after it receives your request.**

**Neither Bank of America nor MBNA has authorized anyone to give any information or make any representation about the merger or our companies that is different from, or in addition to, that contained in this document or in any of the materials that have been incorporated in this document. Therefore, if anyone does give you information of this sort, you should not rely on it. If you are in a jurisdiction where offers to exchange or sell, or solicitations of offers to exchange or purchase, the securities offered by this document or the solicitation of proxies is unlawful, or if you are a person to whom it is unlawful to direct these types of activities, then the offer presented in this document does not extend to you. The information contained in this document speaks only as of the date of this document unless the information specifically indicates that another date applies.**

**This document contains a description of the representations and warranties that each of Bank of America and MBNA made to the other in the merger agreement. Representations and warranties made by Bank of America, MBNA and other applicable parties are also set forth in contracts and other documents (including the merger agreement and option agreement) that are attached or filed as exhibits to this document or are incorporated by reference into this document. These representations and warranties were made as of specific dates, may be subject to important qualifications and limitations agreed to between the parties in connection with negotiating the terms of the agreement, and may have been included in the agreement for the purpose of allocating risk between the parties rather than to establish matters as facts. These materials are included or incorporated by reference only to provide you with information regarding the terms and conditions of the agreements, and not to provide any other factual information regarding MBNA, Bank of America or their respective businesses. Accordingly, the representations and warranties and other provisions of the agreements (including the merger agreement and the stock option agreement) should not be read alone, but instead should be read only in conjunction with the other information provided elsewhere in this document or incorporated by reference into this document.**