IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------x
                                        :
IN RE MBNA CORPORATION                  :
DERIVATIVE AND CLASS                    :      Lead Case No. 1:05-cv-00327-
LITIGATION                              :      GMS
_____        
                                        :
This Document Relates To:               :
ALL ACTIONS.                            :      CLASS AND DERIVATIVE
                                        :      ACTION
-----------------------------------------------------x


OPENING BRIEF IN SUPPORT OF THE MBNA
OUTSIDE DIRECTOR DEFENDANTS' MOTION TO DISMISS


                        Edward P. Welch (I.D. # 671)
                        Edward B. Micheletti (I.D. # 3794)
                        SKADDEN, ARPS, SLATE,
                          MEAGHER & FLOM LLP
                        One Rodney Square
                        P.O. Box 636
                        Wilmington, Delaware 19899
                        (302) 651-3000
                        Attorneys for the MBNA
                        Outside Director Defendants

Of Counsel:
Jay B. Kasner
Susan L. Saltzstein
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
4 Times Square
New York, New York 10036-6522
(212) 735-3000

DATED: January 20, 2006

## TABLE OF CONTENTS

                                                                      PAGE

TABLE OF AUTHORITIES ........................................................................... i

SUMMARY OF ARGUMENT .......................................................................1

NATURE AND STAGE OF PROCEEDINGS ....................................................5

STATEMENT OF FACTS ...........................................................................6

    A.    The Company (And Its Independent Board).................................6

    B.    MBNA's January 2005 Earnings Forecast And First Quarter 2005
        Results.............................................................................6

    C.    The Merger.......................................................................8

    D.    MBNA Shareholders Approve The Merger................................9

    E.    The Complaint ...................................................................9

ARGUMENT.........................................................................................10

I.    STANDARD OF REVIEW. ...................................................................10

II.    THE INTERNAL AFFAIRS DOCTRINE MANDATES THAT
    MARYLAND LAW GOVERNS THIS DISPUTE. .............................................10

III.    PLAINTIFFS HAVE NO BASIS FOR PURSUING THEIR CLAIMS
    AGAINST THE OUTSIDE DIRECTORS..........................................................12

    A.    By Virtue Of The Merger, Plaintiffs Have Lost Standing To Pursue
        Their Claims Against The Outside Directors..............................12

    B.    Plaintiffs' Failure To Make A Pre-Suit Demand Warrants
        Dismissal.........................................................................16

IV.    TO THE EXTENT THE COURT REACHES THE MERITS OF THIS
    DISPUTE, THE COMPLAINT SHOULD BE DISMISSED FOR
    FAILURE TO STATE A CLAIM. ................................................................21

    A.    Conclusory Breach Of Fiduciary Duty Allegations Fail To State A
        Claim.............................................................................21

1.  Plaintiffs' conclusory allegations of corporate waste fail to state a claim..................................................................................24

2.  Plaintiffs' conclusory allegations of mismanagement and lack of oversight fail to state a claim. ............................................25

B.  Plaintiffs' Attack On The Merger Process Should Fail..............................27

1.  Plaintiffs' reliance on *Revlon*, *Unocal* or any other heightened form of judicial scrutiny of director conduct should be rejected. .......................................................................27

2.  Plaintiffs' allegations that the Outside Directors failed to obtain the highest Merger price do not state a claim under Maryland law.. ..............................................................................28

C.  The Complaint Should Be Dismissed In Its Entirety Because The Outside Directors Are Not Subject To Liability For Money Damages.................................................................................................31

D.  Plaintiffs' "Holder Claims" Should Be Dismissed. ....................................33

E.  Defendants Did Not Breach Their Duty Of Disclosure Because The Proxy Materials Submitted To The Shareholders Were Complete And Accurate............................................................................35

CONCLUSION.......................................................................................................35

# TABLE OF AUTHORITIES

CASES                                                                          PAGE(S)

Aronson v. Lewis,
    473 A.2d 805 (Del. 1984), overruled on other grounds sub nom.
    Brehm v. Eisner, 764 A.2d 244 (Del. 2000) ...................................................... 17, 18, 23

Barkan v. Amsted Indus.,
    567 A.2d 1279 (Del. 1989) ............................................................................ 28

In re Baxter Int'l, Inc. S'holders' Litig.,
    654 A.2d at 1270 .............................................................................................. 4

Beam v. Stewart,
    845 A.2d 1040 (Del. 2004) ............................................................................ 16

Blue Chip Stamps v. Manor Drug Stores,
    421 U.S. 723 (1975) ................................................................................... 4, 34

CTS Corp. v. Dynamics Corp. of Am.,
    481 U.S. 69 (1987) ........................................................................................ 10

Century Nat'l Bank v. Makkar,
    751 A.2d 1 (Md. Ct. Spec. App. 2000) .......................................................... 22

Cincinnati Bell Cellular Sys. Co. v. Ameritech Mobile Phone Serv. of Cincinnati,
    Inc., C.A. No. 13389, 1996 WL 506906 (Del. Ch. Sept. 3, 1996), aff'd,
    692 A.2d 411 (Del. 1997) .............................................................................. 26

In re Citigroup Inc. S'holders Litig.,
    C.A. No. 19827, 2003 WL 21384599 (Del. Ch. June 5, 2003), aff'd sub nom.
    Rabinovitz v. Shapiro, 839 A.2d 666 (Del. 2003) ........................................... 26

Criden v. Steinberg,
    C.A. No. 17082, 2000 WL 354390 (D. Del. Mar. 23, 2000) ........................... 10

Danielewicz v. Arnold,
    769 A.2d 274 (Md. App. 2001) ................................................... 12, 13, 19, 21, 28

In re Encore Computer Corp. S'holders Litig.,
    C.A. No. 16044, 2000 WL 823373 (Del. Ch. June 16, 2000) ......................... 23

Ercole v. Conectiv & Coventry Health Care of Del., Inc.,
    C.A. No. 03-186 GMS, 2003 WL 21104926 (D. Del. May 15, 2003) ............ 10

Ettridge v. TSI Group, Inc.,
    548 A.2d 813 (Md. 1988) ............................................................................... 13

Ferguson v. Cramer,
    695 A.2d 603 (Md. Ct. Spec. App. 1997), aff'd, 709 A.2d 1279 (Md. 1998) ................. 22

In re First Interstate Bancorp Consol. S'holder Litig.,
    729 A.2d 851 (Del. Ch. 1998), aff'd sub nom. Bradley v. First Interstate
    Bancorp, 748 A.2d 913 (Del. 2000) .................................................................. 13, 14, 15

In re Frederick's of Hollywood, Inc. S'holders Litig.,
    C.A. No. 15944, 2000 WL 130630 (Del. Ch. Jan. 31, 2000) ......................................... 23

Freedman v. Rest. Assocs. Indus.,
    C.A. No. 9212, 1990 WL 135923 (Del. Ch. Sept. 19, 1990) ........................................... 28

In re Freeport-McMoran Sulphur, Inc. S'holders Litig.,
    C.A. No. 16729, 2001 WL 50203 (Del. Ch. Jan. 11, 2001) ........................................... 23

Goodman v. Poland,
    395 F. Supp. 660 (D. Md. 1975) ..................................................................... 12

Grill v. Hoblitzell,
    771 F. Supp. 709 (D. Md. 1991) ........................................................... 4, 16, 32

Guttman v. Huang,
    823 A.2d 492 (Del. Ch. 2003) ......................................................................... 26

Hayes v. Crown Cent. Petroleum Corp.,
    249 F. Supp. 2d 725 (E.D. Va. 2002), aff'd, 78 Fed. Appx. 857 (4th Cir. 2003) ............. 33

Henne v. Balick,
    146 A.2d 394 (Del. 1958) ............................................................................... 34

Herd v. Major Realty Corp.,
    C.A. No. 10707, 1990 WL 212307 (Del. Ch. Dec. 21,1990) ........................................... 28

Hudson v. Prime Retail, Inc.,
    C.A. No. 24-C-03-5806, 2004 WL 1982383
    (Md. Cir. Ct. Apr. 1, 2004) ....................................................... 4, 22, 27, 29, 35

Jacobs v. Yang,
    C.A. No. 206, 2004 WL 1728521 (Del. Ch. Aug. 2, 2004),
    aff'd mem., 867 A.2d 902 (Del. 2005) ......................................................... 19, 20

ii

Jasinover v. Rouse Co.,
    C.A. No. 13-C-04-59594, 2004 WL 3135516 (Md. Cir. Ct. Nov. 4, 2004) ........ 27, 29, 30

Jolly Roger Fund LP v. Sizeler Property Investors, Inc.,
    C.A. No. Civ. RDB 05-841, 2005 WL 2989343 (D. Md. Nov. 3, 2005) .................. 12, 14

Kamen v. Kemper Fin. Servs., Inc.,
    500 U.S. 90 (1991) ....................................................................................................... 11

Knox v. Rosenberg,
    No. H-99-0123 (S.D. Tex. Sept. 28, 1999) ...................................................... 32

Levine v. Smith,
    591 A.2d 194 (Del. 1991) overruled on other grounds sub nom.
    Brehm v. Eisner, 746 A.2d 244 (Del. 2000) .................................................... 17

Lewis v. Leaseway Transp. Corp.,
    C.A. No. 8720, 1990 WL 67383 (Del. Ch. May 16,  1990) ............................................ 30

Lewis v. Anderson,
    477 A.2d 1040 (Del. 1984) ............................................................................. 13, 14, 15

Lewis v. Ward,
    852 A.2d 896 (Del. 2004) ......................................................................... 14, 15

Litt v. Wycoff,
    C.A. No. 19083-NC, 2003 WL 1794724 (Del. Ch. Mar. 28, 2003) ................................ 21

Llewellyn v. Queen City Dairy, Inc.,
    48 A.2d 322 (Md. 1946) ............................................................................. 12

In re MONY Group Inc. S'holder Litig.,
    852 A.2d 9 (Del. Ch. 2004) ........................................................................ 31

Manzo v. Rite Aid Corp.,
    C.A. No. 18451-NC, 2002 WL 31926606 (Del. Ch. Dec. 19, 2002),
    aff'd, 825 A.2d 239 (Del. 2003) .................................................................. 34

McDermott Inc. v. Lewis,
    531 A.2d 206 (Del. 1987) ............................................................................. 11

McMillan v. Intercargo Corp.,
    768 A.2d 492 (Del. Ch. 2000) ................................................................. 10, 23

Nebenzahl v. Miller,
C.A. No. 13206, 1993 WL 488284 (Del. Ch. Nov. 8, 1993) ........................................... 25

Official Committee of Unsecured Creditors of Integrated Health Servs., Inc. v.
Elkins, C.A. No. 20228, 2004 WL 1949290 (Del. Ch. Aug. 24, 2004) .............. 19, 20, 24

Pogostin v. Rice,
C.A. No. 6235, 1983 WL 17985 (Del. Ch. Aug. 12, 1983),
aff'd, 480 A.2d 619 (Del. 1984) ..................................................................................... 16

Porter v. Texas Commerce Bancshares, Inc.,
C.A. No. 9114, 1989 WL 120358 (Del. Ch. Oct. 12, 1989) ...................................... 14, 30

Rattner v. Bidzos,
C.A. No. 19700, 2003 WL 22284323 (Del. Ch. Oct. 7, 2003) ................................. 18, 26

Resource Ventures, Inc. v. Resources Mgmt. Int'l, Inc.,
42 F. Supp. 2d 423 (D. Del. 1999) ................................................................................... 6

Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.,
506 A.2d 173 (Del. 1985) ............................................................................................... 27

Seibert v. Harper & Row, Publishers, Inc.,
C.A. No. 6639, 1984 WL 21874 (Del. Ch. Dec. 5, 1984) ............................................... 19

Sekuk Global Enters. Profit Sharing Plan v. Kevenides,
C.A. No. 24-C-03-007496, 2004 WL 1982508 (Md. Cir. Ct. May 25, 2004) ................ 18

Sussex County Senior Servs., Inc. v. Carl J. Williams & Sons, Inc.,
C.A. No. 99-473-GMS, 1999 WL 33220035 (D. Del. Dec. 29, 1999) ............................ 10

Unocal Corp. v. Mesa Petroleum Co.,
493 A.2d 946 (Del. 1985) ............................................................................................... 27

Valentine v. On Target, Inc.,
686 A.2d 636 (Md. Ct. Spec. App. 1996), aff'd., 727 A.2d 947 (Md. 1999) .................. 22

VantagePoint Venture Partners 1996 v. Examen, Inc.,
871 A.2d 1108 (Del. 2005) ....................................................................................... 10, 11

Waller v. Waller,
49 A.2d 449 (Md. 1946) ................................................................................................. 12

In re Walt Disney Co. Derivative Litig.,
C.A. No. 15452, 2005 WL 2056651 (Del. Ch. Aug. 9, 2005) ......................................... 25

Weiss v. Samsonite Corp.,
 741 A.2d 366 (Del. Ch.), aff'd mem., 746 A.2d 277 (Del. 1999) ...................................... 8

Werbosky v. Collomb,
 766 A.2d 123 (Md. 2001) ....................................................................................... *passim*

In re Wheelabrator Tech. Inc. S'holders Litig.,
 C.A. No. 11495, 1992 WL 212595 (Del. Ch. Sept. 1, 1992) ........................................... 11

Wittman v. Crooke,
 707 A.2d 422 (Md. Ct. Spec. App. 1998) .................................................................. 21, 35

STATUTES                                                                    PAGE(S)

8 Del. C. § 102(b)(7) ...................................................................................................... 32

Fed. R. Civ. P. 23.1 ....................................................................................................... 16

Jud. Proc. § 5-418 ........................................................................................................ 32

Maryland's Corporate Code § 2-405.1 ...................................................... 4, 12, 22, 30

Maryland's Corporate Code § 2-405.2 ............................................................... 4, 31

Maryland's Corporate Code § 2-418(f) ................................................................... 25

James J. Hanks, Jr., Maryland Corporation Law § 6.6[b] ........................................... 27

James J. Hanks, Jr., Maryland Corporation Law § 6.9 ............................................... 32

Kenneth B. Abel, The Maryland Corporation: Legal Aspects of
Organization & Operation § VI(H) (2004) ................................................................. 27

## SUMMARY OF ARGUMENT

Plaintiffs' 67-page Consolidated Amended Shareholders' Class and Derivative Complaint (the "Complaint") devotes scant attention to MBNA's outside directors (the "Outside Directors").  So little is said concerning the Outside Directors (and what they specifically did or did not do) that one is left to wonder whether there exist <u>any</u> facts addressed to the Outside Directors that credibly can be said to support the seven causes of action to which the names of the Outside Directors are seemingly attached.

The Outside Directors are not alleged to have sold any securities.

The Outside Directors are not alleged to have made any misstatements or omissions to the public.

The Outside Directors are not alleged to have received any personal benefit from their approval of MBNA's merger with Bank of America Corporation ("BAC") -- a merger that was overwhelmingly approved by the shareholders of MBNA on November 2, 2005 (the "Merger").

The Outside Directors are not alleged to have ignored red flags about MBNA's financial condition.

The Outside Directors are not alleged to have approved the Merger without first securing the assistance of a qualified investment banker who opined that the price was fair and the legal advice of corporate counsel who advised the MBNA Board on the propriety of the Merger.

What can be distilled from the Complaint are two unsupported charges. *First*, Plaintiffs quote liberally from a class action securities complaint (the "Securities Complaint") that was filed by different former MBNA shareholders and that does not name any of the Outside Directors as defendants.  Plaintiffs recount the Securities Complaint's theory that

because MBNA allegedly did not perform well in the first quarter of 2005, and because certain of MBNA's management -- none of whom are Outside Directors -- are alleged to have sold stock *months prior* to the announcement of the first quarter results, MBNA's management "must have known" earlier certain adverse facts that later came to pass.

Beyond Plaintiffs' all-too-familiar refrain about what the defendant directors "must have known," the Complaint is utterly devoid of allegations concerning what specific, material information the Outside Directors knew during Plaintiffs' purported class period (the "Class Period"), when or how they knew or should have known about such information, or how that information was contrary to information already disclosed publicly. Importantly, the Complaint establishes no connection between any Outside Director and any purportedly offending statement. Instead, Plaintiffs rely on typical allegations about the directors' status and their general access to unidentified documents.

*Second*, Plaintiffs complain that MBNA's merger with BAC was "a 'sweetheart' deal" which "sacrificed the interests of [MBNA's] shareholders to achieve [director Bruce Hammonds'] own agenda and that of his close colleagues." (Compl. ¶¶ 2, 3) But these conclusory statements notwithstanding, the Outside Directors' conduct relating to the Merger -- which was approved by MBNA's shareholders -- is unassailable as a matter of well-settled law. Courts routinely reject the boilerplate merger-related allegations Plaintiffs offer here, such as the claim that the director defendants stood to "personally benefit as a result of the [Merger]." (Compl. ¶ 95) And Plaintiffs' occasional "specific" allegations -- which are primarily leveled at MBNA's CEO and President, Bruce Hammonds, because he allegedly "negotiated the [BAC] deal himself" (Compl. ¶ 89) -- have been roundly rejected as insufficient to support the kind of breach of fiduciary duty claims Plaintiffs wish to pursue.

Furthermore, many of Plaintiffs' allegations belie their purported causes of action. For example, Plaintiffs concede that before agreeing to any deal with BAC, "the

2

MBNA Board met with MBNA management and the Company's outside advisors . . . [to discuss] [p]ossible strategic alternatives . . . including hypothetical scenarios involving a business combination" (Compl. ¶ 83) -- precisely the conduct Plaintiffs allege that Defendants were duty-bound to perform.

For the following reasons, all seven causes of action asserted against the Outside Directors should be dismissed as a matter of law:

*First*, the Merger, which closed on January 1, 2006, extinguished Plaintiffs' standing to pursue derivative claims against the Outside Directors. Under Maryland law, breach of fiduciary duty claims are considered derivative in nature, and, thus, all claims raised in the Complaint should be dismissed on standing grounds.

*Second*, Plaintiffs' claims should be dismissed for failure to make a "demand" upon the MBNA Board. Plaintiffs wishing to pursue derivative shareholder actions under Maryland law must meet a rigorous standard that recognizes futility only as "a very limited exception" to the requirement that demand first be made on the board. Werbowsky v. Collomb, 766 A.2d 123, 144 (Md. 2001). Plaintiffs here allege that demand should be excused as futile based on the director defendants' alleged roles in the decision-making process underlying Plaintiffs' claims and director defendants' relationships to one another. The Maryland Court of Appeals, however, has held unambiguously that these conclusory allegations of director interestedness are insufficient to excuse demand. Similarly, Plaintiffs' half-hearted attempt to allege that a demand on the BAC board would be futile is not only a transparent attempt to reclaim standing in this action, but it also is insufficient to excuse demand under Delaware's demand futility standard.

*Third*, the Outside Directors' conduct in pursuing and conducting merger negotiations more than satisfied their fiduciary duties as a matter of law. Indeed, not only are Plaintiffs' merger-related allegations focused almost exclusively on "Insider Defendants" (see,

e.g., Compl. ¶ 84 (contending that the Merger was motivated in part by directors' purported desire to avoid liability in securities litigation that does not even name the Outside Directors as defendants)), but the criticisms Plaintiffs level against Defendants in general are the very kinds routinely rejected as bases for the merger-related claims Plaintiffs wish to pursue.

*Fourth*, Plaintiffs fail to adequately plead any breach of fiduciary duty claims under Section 2-405.1 of the Maryland Corporations and Associations Law, which states that "corporate directors [who] perform their duties (1) in good faith, (2) in a manner [the director] reasonably believes to be in the best interests of the corporation, and (3) with the care that an ordinarily prudent person in a like position would use under similar circumstances . . . [have] no liability by reason of being or having been a director of a corporation." Hudson v. Prime Retail, Inc., C.A. No. 24-C-03-5806, 2004 WL 1982383, at *11 (Md. Cir. Ct. Apr. 1, 2004).

*Fifth*, MBNA's certificate of incorporation (the "MBNA Charter") immunizes MBNA's Directors from any liability predicated on the kinds of claims Plaintiffs seek to pursue. See Md. Code Ann., Corps. & Ass'ns § 2-405.2; Grill v. Hoblitzell, 771 F. Supp. 709, 712 (D. Md. 1991) (dismissing derivative action against directors of a Maryland corporation pursuant to Maryland Corporate Code § 2-405.2).[1]

*Sixth*, Plaintiffs' "holder claims" should be dismissed because Plaintiffs have not identified any actual or quantifiable damages, a necessary element of such claims. Plaintiffs' only conceivable damages claim -- that they may have missed an opportunity to take advantage of an artificial rise in MBNA's stock price -- is not a legally cognizable loss. See Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 734-35 (1975).

---

[1]    The court may take judicial notice of the MBNA Charter. See In re Baxter Int'l, Inc. S'holders' Litig., 654 A.2d 1268, 1270 (Del. Ch. 1995) (when reviewing whether a certificate of incorporation exempts directors from liability, "[t]he court may take judicial notice of the certificate [of incorporation] in deciding a motion to dismiss").

*Seventh*, all of Plaintiffs' merger-related claims should be dismissed on the ground that MBNA shareholders, who were fully informed about the Merger, have ratified the MBNA Board's actions in connection with the Merger by overwhelmingly voting in favor of the Merger, effectively extinguishing Plaintiffs' claims against the Outside Directors.

For these reasons, and as set forth more fully below, the Outside Directors respectfully submit that all claims asserted against them should be dismissed.

## NATURE AND STAGE OF PROCEEDINGS

This action arises out of events related to market disclosures made by MBNA Corporation ("MBNA" or the "Company") between January 21 and April 21, 2005, and a stock and cash merger between MBNA and BAC that was approved by MBNA shareholders on November 3, 2005.

On November 17, 2005, Plaintiffs filed a Complaint in this action. As to the Outside Directors, the Complaint alleges that they (1) breached their fiduciary duties (Count Three); (2) breached their fiduciary duties through gross mismanagement (Count Five); (3) wasted corporate assets by permitting excessive executive compensation (Count Six); (4) made misrepresentations to a purported "holder class" (Count Eight); and (5) breached their fiduciary duties in connection with the Merger (Counts Nine, Ten and Eleven).

On January 20, 2006, the Outside Directors moved to dismiss the Complaint. This is the opening brief in support of their motion to dismiss the Complaint pursuant to Rules 23.1, 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.

## STATEMENT OF FACTS[2]

### A.    The Company (And Its Independent Board)

MBNA, a Maryland company headquartered in Wilmington, Delaware, was (as of 2004) the world's largest independent credit card lender. (Compl. ¶ 43) MBNA had a ten-member board of directors. (Compl. ¶¶ 22, 30-38) Only one out of the ten directors -- Bruce Hammonds, MBNA's Chief Executive Officer and President -- is expressly alleged to also be an officer of the Company.[3]

### B.    MBNA's January 2005 Earnings Forecast And First Quarter 2005 Results

In January 2005, MBNA reported its fourth quarter and full year 2004 financial results. (Compl. ¶ 64) By many standards, MBNA had a strong 2004 financial performance. Quarterly net income grew from $703.5 million to $768.9 million -- nearly a 9% increase over fourth quarter 2003 results. (Compl. ¶ 64) For the full year 2004, MBNA's net income rose from $2.34 billion in 2003 to $2.68 billion in 2004, a 15% increase. (Id.) In addition, loan receivables rose to $33.8 billion in 2004, a $134.8 million increase from 2003 results. (Compl. ¶ 77)[4]

---

[2]    The Statement of Facts is taken from the few well-pleaded allegations in the Complaint that are accepted as true for purposes of this motion only. The Court may not accept conclusory allegations as true. See, e.g., Resource Ventures, Inc. v. Resources Mgmt. Int'l, Inc., 42 F. Supp. 2d 423, 438 (D. Del. 1999) (court "'not required to accept legal conclusions either alleged or inferred from the pleaded facts'") (quoting Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993)).

[3]    Plaintiffs allege, without explanation, that Randolph Lerner is employed by MBNA as its "Chairman." (Compl. ¶ 103(b)) The remaining eight independent directors are referred to as the "Outside Directors." They are James H. Berick, Mary M. Boies, Benjamin R. Civiletti, William L. Jews, Stuart L. Markowitz, William B. Milstead, Thomas G. Murdough and Laura S. Unger. As noted below, however, Murdough resigned as a director before Plaintiffs filed any derivative action.

[4]    Plaintiffs do not directly challenge the accuracy of MBNA's reported financial results for 2004, but rather offer only the sweeping allegation that certain statements were false and
*(cont'd)*

On January 21, 2005, MBNA held an earnings conference call. (Compl. ¶ 65) During this call, the Company reported to its stockholders that it had decided to reduce its reliance on "zero percent" interest rate offers on credit card loans that were used to attract new customers. (Compl. ¶¶ 66, 68-69) The Company also announced that it was engaging in voluntary "early retirement" and severance programs in an effort to offset perceived higher marketing costs. (Compl. ¶ 65) Although the Company explained that it continued to "feel confident" that it could deliver consistent *long-term* growth "well into the future," it was projecting only 10% annual earnings growth in 2005, because (in addition to the "pullback on zero percent marketing"), MBNA had started "the year off at a relatively low level of growth" due to "slow industry growth" overall. (Compl. ¶ 68)[5]

Thereafter, between January 21, 2005 and February 3, 2005, certain officer defendants sold shares of the Company's stock. (Compl. ¶ 74) Relying on a separately filed Securities Complaint, Plaintiffs suggest that these insiders were aware of a pending business downturn at the time they sold their shares (Compl. ¶ 143) -- but allege no factual support for this contention. Moreover, there is no allegation in the Complaint that the Outside Directors participated in any of the alleged stock sales, or were on notice (or should have been on notice) of any facts suggesting wrongdoing in connection with those sales.

On April 21, 2005, three months after the January 21 earnings conference, MBNA announced the *results* of the first quarter of 2005. (Compl. ¶ 78) Net income for the

---

misleading "[a]ccording to the [Securities] Complaint," which Plaintiffs repeatedly reference to bootstrap their own claims. (See Compl. ¶ 77)

[5]    Certain of these comments were repeated at a Credit Suisse First Boston investor conference on February 9, 2005. (Compl. ¶ 75)

first quarter of 2005 was $0.02 per share.[6] (Compl. ¶¶ 78-79) These results are alleged to be attributable to two unanticipated events: (1) the number of participants in the early retirement program was nearly *double* what the Company had originally projected; and (2) payment volumes from U.S. credit card holders were much higher than anticipated. (Compl. ¶ 79) As a result of this announcement, the Company's stock price declined. (Compl. ¶ 80)

## C.    The Merger

On June 30, 2005, MBNA announced it had reached a merger agreement with BAC, whereby each share of MBNA stock would be exchanged for $27.50 in cash and shares of BAC stock (the "Merger"). (Compl. ¶ 182) The Merger price represented a significant premium over (1) the $21.07 closing price of MBNA's shares the day before the announcement of the Merger (Compl. ¶ 17); and (2) the $23.11 closing price of MBNA's shares on April 20, 2005, the day before MBNA's first-quarter 2005 earnings results were announced (which Plaintiffs claim led to the general decline in MBNA's stock price).[7] (Ex. A) MBNA's board unanimously approved the Merger. (Compl. ¶ 88)

The Merger was the culmination of a thorough search process for potential merger partners. (Compl. ¶ 15) MBNA hired not one, but two, financial advisors to assist it in connection with the search process. (Compl. ¶ 3) In early June 2005, the MBNA Board met with management, its financial advisors and its outside counsel (Wachtell, Lipton, Rosen & Katz) to discuss certain issues including (1) the Company's recent financial performance

---

[6]    Though the Court need not consider this information to resolve this motion, Plaintiffs' statement that MBNA's net income in first quarter 2005 was "down from $0.40 per share in the year-earlier period" (Compl. ¶ 78) ignores the relevant context in which that statement was made. The April 21, 2005 press release clearly explains that "for first quarter 2005, [w]ithout [MBNA's] restructuring charge, net income was . . . $0.40 per common share" -- *the same as the Company's net income in first quarter 2005.*

[7]    The Court may take judicial notice of MBNA's stock prices. See, e.g., Weiss v. Samsonite Corp., 741 A.2d 366, 375 n.26 (Del. Ch.), aff'd mem., 746 A.2d 277 (Del. 1999) (taking judicial notice of trading price of listed stock in ruling on a motion to dismiss).

8

and prospects, (2) consolidation activity in the credit card industry and the general environment, (3) long-term trends, and (4) other developments in the markets in which MBNA conducts business. (Compl. ¶ 83) The Board also considered "[p]ossible strategic alternatives," including remaining independent or engaging in a business combination. (Id.) Thereafter, MBNA held discussions with at least one other potential merger partner (Wachovia Inc. ("Wachovia")) (Compl. ¶ 86), and had a list of several other merger candidates it was willing to consider. (Compl. ¶ 83) Ultimately, MBNA approved a deal with BAC, which represented a significant premium to MBNA's stockholders. (Compl. ¶ 17)

**D.    MBNA Shareholders Approve The Merger**

On or about September 26, 2005, MBNA sent proxy materials to shareholders containing extensive disclosures about the Merger and the search process. (Compl. ¶ 83) Thereafter, on November 3, 2005, MBNA's shareholders approved the Merger. (Compl. ¶ 17)

**E.    The Complaint**

The Complaint, though lengthy, consists largely of conclusory allegations and unsubstantiated attacks on the presumptively careful, loyal and good faith efforts of the MBNA board in connection with the Company's disclosure of its first quarter 2005 results and the Merger process. As to the Outside Directors, what the Complaint fails to allege speaks volumes. Even a cursory review of the Complaint leads one to the conclusion that the Outside Directors here were disinterested and independent -- Plaintiffs have not adequately alleged that any of them acted disloyally or failed to act independently or in good faith in connection with the Merger. Other than conclusory allegations questioning their independence, Plaintiffs largely ignore the Outside Directors, choosing instead to lump them together with all other defendants when attempting to state a claim. This tactic -- which leaves Plaintiffs without any alleged factual support for any of the claims against the eight Outside Directors -- dooms the Complaint to failure.

9

As explained below, all seven counts against the Outside Directors should be dismissed as a matter of law.

## ARGUMENT

### I.    STANDARD OF REVIEW.

To survive a motion to dismiss, a complaint must allege facts that, if taken as true, would establish each and every element of a claim upon which relief can be granted. Criden v. Steinberg, C.A. No. 17082, 2000 WL 354390, at *2 n.7 (D. Del. Mar. 23, 2000) (citation omitted).  Where, as here, the complaint is largely composed of "bald assertions" and "legal conclusions," the Court need not credit those allegations in ruling on a motion to dismiss.  Ercole v. Conectiv & Coventry Health Care of Del., Inc., C.A. No. 03-186 GMS, 2003 WL 21104926, at *1 (D. Del. May 15, 2003); Sussex County Senior Servs., Inc. v. Carl J. Williams & Sons, Inc., C.A. No. 99-473-GMS, 1999 WL 33220035, at *1 (D. Del. Dec. 29, 1999) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997) (in analyzing a motion to dismiss, the court "need not accept legal conclusions pled in the guise of factual allegations as being true"); see also McMillan v. Intercargo Corp., 768 A.2d 492, 496 (Del. Ch. 2000) (dismissing complaint that alleged "no facts from which a reasonable inference can be drawn that any conflicting self-interest or bad faith motive caused the defendant directors to fail to meet their obligations").

### II.    THE INTERNAL AFFAIRS DOCTRINE MANDATES THAT MARYLAND LAW GOVERNS THIS DISPUTE.

"The internal affairs doctrine is a long-standing choice of law principle which recognizes that only one state should have the authority to regulate a corporation's internal affairs -- the state of incorporation."  VantagePoint Venture Partners 1996 v. Examen, Inc., 871 A.2d 1108, 1112 (Del. 2005); see also CTS Corp. v. Dynamics Corp. of Am., 481 U.S. 69, 91 (1987) (holding it is "an accepted part of the business landscape in this country for

States to create corporations, to prescribe their powers, and to define the rights that are

acquired by purchasing their shares"); McDermott Inc. v. Lewis, 531 A.2d 206, 209 (Del.

1987) (noting that the "internal affairs doctrine is a major tenet of Delaware corporation law

having important federal constitutional underpinnings"). Indeed, under the internal affairs

doctrine, courts routinely apply the law of the state of incorporation to "the entire gamut of

internal corporate affairs." VantagePoint, 871 A.2d at 1113. This includes "those matters

that pertain to the relationships among or between the corporation and its officers, directors,

and shareholders." Id.; see also McDermott, 531 A.2d at 216 ("[D]irectors and officers have

a significant right, under the fourteenth amendment's due process clause, to know what law

will be applied to their actions.").

        Although its headquarters are located in Delaware, MBNA is *incorporated*

*under Maryland law.*[8]  Accordingly, under the internal affairs doctrine, Maryland law

governs all of the claims raised by Plaintiffs against the Outside Directors. McDermott, 531

A.2d at 209. This includes Plaintiffs' claim that any demand on the board of directors was

futile because such issues are considered matters of substantive state law. See, e.g., Kamen v.

Kemper Fin. Servs., Inc., 500 U.S. 90, 101, 106 (1991) ("[a] court that is entertaining a

derivative action . . . must apply the demand futility exception as it is defined by the law of

the State of incorporation"; to do otherwise "would necessarily infuse corporate decision

making with uncertainty" and result in "disruption to the internal affairs of the corporation").

---

[8]   Though Plaintiffs fail to allege that MBNA is incorporated in Maryland, they acknowledge
that Maryland law governs their claims by repeatedly alluding to "Maryland fiduciary
jurisprudence" in their Complaint. (See, e.g., Compl. ¶¶ 178, 184) In any event, MBNA's
corporate charter clearly establishes that it is a Maryland company. (See Ex. B) The Court
may take judicial notice of the charter for purposes of this motion. See In re Wheelabrator
Tech. Inc. S'holders Litig., C.A. No. 11495, 1992 WL 212595, at *11 (Del. Ch. Sept. 1, 1992).

## III.   PLAINTIFFS HAVE NO BASIS FOR PURSUING THEIR CLAIMS AGAINST THE OUTSIDE DIRECTORS.

### A.   By Virtue Of The Merger, Plaintiffs Have Lost Standing To Pursue Their Claims Against The Outside Directors.

Under Maryland law, a director's obligation "*runs . . . to the corporation* and not, at least directly, to the shareholders." Werbowsky v. Collomb, 766 A.2d 123, 144 (Md. 2001); *see also* Maryland Corporate Code ("MCC") § 2-405.1(g) (explaining that "nothing in this section creates a duty of any director of a corporation enforceable *otherwise than by the corporation or in the right of the corporation*"); Goodman v. Poland, 395 F. Supp. 660, 680 (D. Md. 1975) (stating that "an officer or director is not in a fiduciary relationship with an individual stockholder with respect to his stock"); Llewellyn v. Queen City Dairy, Inc., 48 A.2d 322, 327 (Md. 1946) (same principle).

By definition, then, any claims of breach of fiduciary duty under Maryland law are derivative in nature, because they are "enforceable" only "by the corporation or in the right of the corporation," and not directly (by way of a class claim or otherwise) by stockholders. *See* MCC § 2-405.1(a); see also Waller v. Waller, 49 A.2d 449, 452 (Md. 1946) ("Where directors commit a breach of trust, they are liable to the corporation, not to its creditors or stockholders, and any damages recovered are assets of the corporation*, and the equities of the creditors and stockholders are sought and obtained through the medium of the corporate entity*.") (emphasis added); Danielewicz v. Arnold, 769 A.2d 274, 281-82 (Md. App. 2001) (explaining that principles set forth in Waller are "well-settled law" in Maryland); Jolly Roger Fund LP v. Sizeler Property Investors, Inc., C.A. No. RDB 05-841, 2005 WL 2989343, at *6 (D. Md. Nov. 3, 2005) (under Maryland law, "an action that causes harm to a corporation and incidentally injures shareholders by diminishing or destroying the value of their stock *is not a direct action*") (emphasis added) (citing Waller, 49 A.2d at 452)).

Here, all seven counts of the Complaint that name the Outside Directors admittedly are claims for breach of fiduciary duty or were brought on behalf of the company,[9] and therefore are derivative under Maryland law. It is well-settled under Maryland law, pursuant to the "contemporaneous ownership" rule, that a stockholder suing derivatively must demonstrate actual ownership of shares in the corporation, both at the time of the alleged wrongs and during the litigation. See, e.g., Ettridge v. TSI Group, Inc., 548 A.2d 813, 817-18 (Md. 1988) (describing contemporaneous ownership rule under Maryland law, noting that it "has been codified in federal practice at Fed. R. Civ. Proc. 23.1(1), and has been followed by most of the states"); Danielewicz, 769 A.2d at 281-82 (affirming decision that vested remainder interest did not confer standing to pursue derivative claims because plaintiff lacked possessory interest at the time of the alleged wrong). Thus, a plaintiff who owns stock in a Maryland corporation loses standing to pursue derivative claims when that plaintiff ceases to be a shareholder -- *including by reason of a merger*. See, e.g., Ettridge, 548 A.2d at 817-18; Danielewicz, 769 A.2d at 281-82; see also Lewis v. Anderson, 477 A.2d 1040, 1046, 1049 (Del. 1984) (holding that because derivative standing is dependent upon the ownership of stock, "[a] plaintiff who ceases to be a shareholder, whether by reason of a merger or for any other reason, loses standing to continue a derivative suit"); In re First Interstate Bancorp Consol. S'holder Litig., 729 A.2d 851 (Del. Ch. 1998) (holding that

---

[9]    See, e.g., Compl. ¶ 135 (Count III: "Defendants *breached their fiduciary duties* of care, loyalty, reasonable inquiry, oversight, good faith and supervision") (emphasis added); id. ¶ 150 (Count V: "Defendants . . . abandoned and abdicated *their responsibilities and fiduciary duties*") (emphasis added); id. ¶ 154 (Count VI: "As a result of *the waste and/or dissipation of corporate assets*, the MBNA Individual Defendants are liable to the Company") (emphasis added); id. ¶ 165 (Count VIII: "Defendants *breached their fiduciary duties* of care, loyalty, reasonable inquiry, oversight, good faith and supervision") (emphasis added); id. ¶ 170 (Count IX: "[t]he MBNA Director Defendants *breached their duty of entire fairness*") (emphasis added); id. ¶ 180 (Count X: "[t]he Director Defendants breached their Revlon duties"); id. ¶ 189 (Count XI: "[E]ach of the Defendants named herein *breached their fiduciary duty* of full disclosure") (emphasis added).

plaintiff stockholders' ability to pursue derivative claims on behalf of First Interstate was extinguished as a result of a stock-for-stock merger with Wells Fargo), aff'd sub nom. Bradley v. First Interstate Bancorp, 748 A.2d 913 (Del. 2000); Porter v. Texas Commerce Bancshares, Inc., C.A. No. 9114, 1989 WL 120358, at *5 (Del. Ch. Oct. 12, 1989) (holding that a "merger in which a corporation's shareholders received stock in another corporation, other securities or cash, *will **always** result in termination of the right of the pre-merger shareholders to sue on behalf of the company*") (emphasis added).[10]

        Therefore, by virtue of the Merger, Plaintiffs have lost standing to pursue the derivative claims here, a fact that Plaintiffs concede. (Compl. ¶ 104 ("Upon completion of the Merger between MBNA and Bank of America ... MBNA's derivative claims will pass by operation of law to Bank of America, the surviving corporation.")) For this reason alone, the Complaint should be dismissed in its entirety as to the Outside Directors.

        In an attempt to avoid this result, Plaintiffs have concocted two arguments for why the black-letter principle established by the contemporaneous ownership rule should be ignored.[11] *First*, Plaintiffs contend that Defendants agreed to the Merger solely to "escape liability" for their derivative claims. (Compl. ¶ 90) Plaintiffs, however, offer no alleged factual support for this conclusion, and it is well-settled that conclusory allegations do not suffice to avoid the standing requirement of the contemporaneous ownership rule. Lewis v.

---

[10]   Where appropriate, Maryland courts will consider the expertise of the Delaware courts on questions of corporate law. See, e.g., Jolly Roger, 2005 WL 2989343, at *3 ("With respect to corporate governance issues, Maryland courts often look to Delaware caselaw.").

[11]   It appears that Plaintiffs are attempting to invoke the two recognized exceptions *under Delaware law* to the "iron-clad rule that a shareholder of a merger entity loses standing to assert pre-merger derivative claims" -- (i) where the merger itself is the subject of a claim of fraud (i.e., designed solely for the purpose of avoiding director liability), or (ii) where the merger is, in reality, merely a reorganization that does not affect plaintiffs' ownership in the business enterprise. See Lewis v. Anderson, 477 A.2d at 1046 n.10.

Ward, 852 A.2d 896, 905 (Del. 2004) (holding that the "particularized pleading requirement of Rule 9(b) must be satisfied by a derivative complaint that seeks to invoke the fraud exception in Lewis v. Anderson"). Moreover, Plaintiffs' conclusory claim is belied by the Complaint, which clearly alleges that the MBNA board *turned down* an earlier offer from Wachovia before accepting the BAC offer. (Compl. ¶ 86) This allegation is inconsistent with Plaintiffs' theory that Defendants, including the Outside Directors, agreed to the Merger solely to avoid derivative liability.

*Second*, Plaintiffs appear to contend that because they have received BAC stock in connection with the Merger, this permits them to circumvent the "contemporaneous ownership" rule and continue to pursue the derivative claims against the MBNA directors on behalf of BAC. (Compl. ¶ 44) Delaware courts have conclusively rejected this claim, and the same result should be reached here. See, e.g., First Interstate, 729 A.2d at 867 (rejecting argument that receiving stock in a merger invoked exception to the standing rule; holding that such an exception "would not apply to mergers with outside or pre-existing corporations with substantial assets").

Even if the Court were to conclude that receiving shares of BAC stock was sufficient to provide Plaintiffs with continued standing to pursue their claims, Plaintiffs' suggestion that demand on the BAC board would be futile (because its members are, for some unspecified reason, interested or not independent) should fail. (Compl. ¶¶ 104-07) Plaintiffs offer absolutely no particularized allegations about any of BAC's directors that support the notion that they are unable to consider fairly any demand. In fact, other than referring to Ken Lewis -- BAC's Chairman, President and Chief Executive Officer -- Plaintiffs do not refer to any BAC board member by name, let alone even allege how many directors sit on the BAC board. By any standard -- and here, the demand futility test relating to the BAC board would have to be considered under Delaware law, because BAC is a

15

Delaware company -- Plaintiffs have not shown that demand is futile. See, e.g., Pogostin v. Rice, C.A. No. 6235, 1983 WL 17985, at *3 (Del. Ch. Aug. 12, 1983) (dismissing complaint where "Plaintiffs did not allege any facts," particularized or otherwise, that established that demand on the board was futile), aff'd, 480 A.2d 619 (Del. 1984).

        Accordingly, the entire Complaint should be dismissed.

**B.     Plaintiffs' Failure To Make A Pre-Suit Demand Warrants Dismissal.**

        The Complaint also should be dismissed because Plaintiffs failed to make a pre-suit demand on the MBNA Board. Maryland law imposes a strict demand requirement on stockholders who wish to commence derivative litigation. See Werbowsky, 766 A.2d at 144 (emphasis added). As explained by the Court in Werbowsky, "[t]he demand requirement *is* important. Directors are presumed to act properly and in the best interest of the corporation. They enjoy the benefit and protection of the business judgment rule, and their control of corporate affairs should not be impinged based on non-specific or speculative allegations of wrongdoing." Id. (emphasis in original).

        In the absence of a pre-suit demand, a stockholder must "allege with particularity" facts demonstrating that demand is "futile." See Fed. R. Civ. P. 23.1; Werbowsky, 766 A.2d at 133; see also Beam v. Stewart, 845 A.2d 1040, 1049-50 (Del. 2004) (holding that to excuse pre-suit demand, "plaintiff has the burden to *plead particularized facts*" establishing demand futility) (emphasis added). This is established only by alleging *with particularity* that "a majority of the directors are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule." Werbowsky, 766 A.2d at 146; Beam, 845 A.2d at 1049. To excuse demand based on conclusory allegations of wrongdoing "would effectively abrogate the demand rule in its entirety." Grill, 771 F. Supp. at 712. Thus, "[c]ommon sense dictates that this inquiry cannot begin and end with a mere

conclusory allegation that the directors have been guilty of misconduct. If that were all that

were required, the futility exception would swallow the demand rule." Id. at 711-12; see also

Levine v. Smith, 591 A.2d 194, 211 (Del. 1991), overruled on other grounds sub nom. Brehm

v. Eisner, 746 A.2d 244 (Del. 2000).

        In Werbowsky, the Maryland Court of Appeals identified several boilerplate

demand futility allegations that would not warrant excusing demand:

> We . . . are not willing to excuse the failure to make demand
> simply because a majority of the directors approved or
> participated in some way in the challenged transaction or
> decision, or on the basis of generalized or speculative
> allegations that they are conflicted or are controlled by other
> conflicted persons, or because they are paid well for their
> services as directors, were chosen as directors at the behest of
> controlling stockholders, or would be hostile to the action.

Werbowsky, 766 A.2d at 143-44.

        Plaintiffs' claim of demand futility is built entirely on these sorts of

conclusory allegations. For example, Plaintiffs launch a number of attacks on the

independence and disinterestedness of the MBNA director defendants generally, all of which

should fail. *First*, Plaintiffs claim that the MBNA board, including the Outside Directors,

would never authorize a derivative action on behalf of MBNA because they "would expose

their own wrongdoing" by doing so. (Compl. ¶ 103(l)) Similarly, Plaintiffs allege that a

demand on the members of MBNA's audit committee -- Outside Directors Jews, Berick,

Markowitz, Milstead and Unger -- would be futile because these Defendants are alleged to

have "breached their duties by causing or allowing the improper financial statements" to be

made to the public. (Compl. ¶ 103(f)) Such conclusory allegations of demand futility,

however, do not suffice. See, e.g., Werbowsky, 766 A.2d at 143-44 (demand is not excused

"simply because a majority of the directors approved or participated in some way in the

challenged transaction or decision . . . or would be hostile to the action"); see also Aronson v.

Lewis, 473 A.2d 805, 815 (Del. 1984), overruled on other grounds sub nom. Brehm v. Eisner, 746 A.2d 244 (Del. 2000) (the "mere threat of personal liability . . . standing alone, is insufficient to challenge either the independence or disinterestedness of directors").

   *Second*, Plaintiffs suggest that filing a lawsuit on behalf of the Company would also be "inconsistent with the stance to be taken by MBNA in its defense to the Securities Class Action." (Compl. ¶ 102) But what Plaintiffs cannot avoid is that *none of the Outside Directors, who constitute a majority of the MBNA board of directors, are named as defendants in the Securities Class Action*. Again, Plaintiffs' unsupported claim of demand futility should fail. See, e.g., Werbowsky, 766 A.2d at 143-44 (demand should not be excused "on the basis of generalized or speculative allegations that they are conflicted or are controlled by other conflicted persons"); Rattner v. Bidzos, C.A. No. 19700, 2003 WL 22284323, at *14 (Del. Ch. Oct. 7, 2003) ("One is left to guess at which of the Individual Defendants, indeed if any of the Director Defendants, are defendants in the federal securities class action lawsuits. These conclusory and cryptic allegations are insufficient to satisfy the demand excusal requirements.").

   *Third*, Plaintiffs suggest that certain defendant directors were "incapable of impartially considering a demand . . . because they have an interest in safeguarding their substantial compensation" as directors. (Compl. ¶ 103(e)) This fails to state a claim for demand futility. See Werbowsky 766 A.2d at 143-44 (the court is "not willing to excuse the failure to make demand simply because . . . [directors] are paid well for their services as directors"). The same is true for Plaintiffs' allegations concerning the "likely" insurance implications of a Board-initiated lawsuit. (See Compl. ¶ 103(o)) See, e.g., Werbowsky, 766 A.2d at 130 (affirming lower court's ruling that a lack of insurance coverage for named directors did not excuse demand); see also Sekuk Global Enters. Profit Sharing Plan v. Kevenides, C.A. No. 24-C-03-007496, 2004 WL 1982508, at *8-9 (Md. Cir. Ct.

May 25, 2004) (citing <u>Werbowsky</u>, recognizing that "courts . . . have held that [the possibility

of triggering] an insured-versus-insured provision does not excuse a pre-suit demand").

> As shown below, the remainder of Plaintiffs' demand futility arguments,

raised against each of the Outside Directors specifically, also should fail:

- ***Civiletti***: The Complaint alleges that Civiletti is not independent because defendants "Hammonds and Lerner direct and control legal business provided to Venable, LLP, a law firm in which Civiletti is a partner," and because Civiletti's son is a full-time employee of MBNA and a subordinate of defendants Hammonds and Lerner. (Compl. ¶ 103(c)) Plaintiffs fail, however, to allege that any fees received from MBNA are material to Venable. See, e.g., <u>Official Comm. of Unsecured Creditors of Integrated Health Servs., Inc. v. Elkins</u>, C.A. No. 20228, 2004 WL 1949290, at *11 (Del. Ch. Aug. 24, 2004) (dismissing challenge to the independence of founding partner of law firm that received fees from the company in the absence of any "allegations as to the amount of fees the law firm obtained from [the company], and whether those fees constituted such a large part of the firm's income so as to be material to either the firm or [the director]"; <u>Jacobs v. Yang</u>, C.A. No. 206, 2004 WL 1728521, at *6 (Del. Ch. Aug. 2, 2004), <u>aff'd mem.</u>, 867 A.2d 902 (Del. 2005). Similarly, that Civiletti's son is an MBNA employee and a subordinate of Hammonds and Lerner is insufficient as a matter of law to excuse demand. See, e.g., <u>Seibert v. Harper & Row, Publishers, Inc.</u>, C.A. No. 6639, 1984 WL 21874, at *3 (Del. Ch. Dec. 5, 1984) (finding that director's alleged "interest" stemming from the fact that he is the cousin of the director who heads a subsidiary of Harper Row is insufficient to show interest); <u>Danielewicz</u>, 769 A.2d at 290-91 (rejecting argument that demand would have been futile solely because appellant's husband and appellee's son sat on board);

- ***Berick***: Plaintiffs attack Berick's independence on the ground that he is an attorney and advisor to defendant Lerner and the Lerner family's interests. (Compl. ¶ 103(d)) This allegation also is insufficient as a matter of law to refute independence. See, e.g., <u>Elkins</u>, 2004 WL 1949290, at *11 (rejecting claim that director was beholden to company founder simply because director was managing director of an entity in which the founder had a "financial interest"). Plaintiffs further allege that Berick lacks independence because his son is a partner at a law firm that receives legal business from MBNA, Lerner and his family's business interests. (Compl. ¶ 103(d)) But Plaintiffs do not allege that any fees received from MBNA were material to the law firm. Therefore, this allegation also fails to excuse demand. See <u>Elkins</u>, 2004 WL 1949290, at *11; <u>Jacobs</u>, 2004 WL 1728521, at *6.

- ***Boies, Markowitz***: Plaintiffs do not make any particularized allegations about Boies and Markowitz except to mention that they were members of MBNA's compensation committee (Compl. ¶ 103(a)) and that Markowitz was a member of the Company's audit committee. (Compl. ¶ 103(f)) Membership on either committee is not enough to taint their independence. See, e.g., <u>Werbowsky</u>, 766 A.2d at 143-44 (demand is not excused "simply because a majority of the

19

directors approved or participated in some way in the challenged transaction or decision . . . or would be hostile to the action").

- *Milstead*: Plaintiffs contend that director Milstead lacked independence because he was a partner at Ernst & Young, LLP and recommended that Ernst & Young be retained as MBNA's auditor, bringing his firm "millions of dollars every year in fees." (Compl. ¶ 103(g)) These allegations do not suffice for several reasons. *First*, plaintiffs fail to allege that Milstead had sufficient control of MBNA to dictate the amount of business E&Y received. See Werbowsky, 766 A.2d at 130-32 (finding no reason to question director's independence based on business transactions -- worth millions of dollars -- in which directors did not authorize or directly participate). *Second*, Plaintiffs' assertion that a "vigorous and independent investigation may . . . reflect badly on Ernst & Young's professional conduct . . . [and] might [ ] lead to the conclusion that claims should be asserted against Ernst & Young" (Compl. ¶ 103(g)) fails because it is merely a more attenuated attempt to excuse demand based on the potential that a director might find himself in a position hostile to an investigation. See Werbowsky, 766 A.2d at 143-44. *Third*, Plaintiffs fail to allege that the fees paid by MBNA were material to Ernst & Young. See, e.g., Elkins, 2004 WL 1949290, at *11 (rejecting independence claim because the complaint failed to allege "whether [a law firm's] ... fees constituted such a large part of the firm's income so as to be material to either the firm" or the defendant).

- *Unger*: The only allegation in the Complaint regarding Unger's independence is that she possesses "specialized financial expertise," and that therefore she was in a unique position to understand the business and finances of MBNA. (Compl. ¶ 103(h)) From there, Plaintiffs leap to the conclusion that Unger breached her duties "by causing or allowing the improper financials described herein." (Compl. ¶ 103(h)) Possessing "specialized" financial expertise -- even if it were true in Unger's case, which it is not -- does not render an independent director interested for purposes of demand futility. See, e.g., Jacobs, 2004 WL 1728521, at *6 n.31 (allegation that board "had knowledge" of wrongdoing and "breached its fiduciary duty by acquiescing to the wrongful conduct" did not raise a reasonable doubt as to board's independence).

- *Murdough*: Plaintiffs fail to offer any reason why Murdough should be treated as anything less than independent.[12]

    Thus, as alleged, a majority of MBNA's ten-member board was independent

and disinterested, and, thus, fully able to consider any demand. As the Maryland Court of

---

[12]  Though Plaintiffs allege that Murdough was a director at all "relevant" times (Compl. ¶ 37), he resigned from the MBNA Board before Plaintiffs commenced this lawsuit. Thus, he was not a director when the MBNA Board approved the Merger, and any merger-related claims against him should be dismissed.

Appeals has held, even if one or more individual directors are "so interested in [a] transaction that [they] could not have reasonably been expected to respond to [a] demand in good faith"-- something Plaintiffs fail to sufficiently allege about *any* of the directors here -- demand is not excused where plaintiffs cannot establish a similar conflict for a *majority* of directors. Danielewicz, 769 A.2d at 292. See also Werbowsky, 766 A.2d at 144 (excusing demand only when a majority of directors are "so personally and directly conflicted"); Litt v. Wycoff, C.A. No. 19083-NC, 2003 WL 1794724, at *4, 6 (Del. Ch. Mar. 28, 2003) (demand not excused where at least six of the eleven directors were disinterested and independent).

For all of the foregoing reasons, Plaintiffs have failed to "clearly demonstrate, in a very particular manner," that a majority of MBNA's directors were "so personally and directly conflicted" that they could not have been reasonably "expected to respond to a demand in good faith. . . ." Werbowsky, 766 A.2d at 144.

Accordingly, the entire Complaint should be dismissed.

## IV.   TO THE EXTENT THE COURT REACHES THE MERITS OF THIS DISPUTE, THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

As explained in Part III above, there are powerful reasons why the Court should dismiss the claims against the Outside Directors without reaching the merits of those claims. However, to the extent the Court does consider the merits, each of the counts of the Complaint that name the Outside Directors -- Counts Three, Five, Six, Eight, Nine, Ten and Eleven -- should also be dismissed for failure to state a claim.

### A.   Conclusory Breach Of Fiduciary Duty Allegations Fail To State A Claim.

Under Maryland law, directors -- such as the Outside Directors here -- are entitled to a presumption that they have "acted in good faith and in the best interests of the corporation." Wittman v. Crooke, 707 A.2d 422, 425 (Md. Ct. Spec. App. 1998); Danielewicz, 769 A.2d at 296 (Maryland law is "well established that courts generally will

21

not interfere with the internal management of a corporation and that the conduct of the
corporation's affairs are placed in the hands of the board of directors and if the majority of the
board properly exercises its business judgment, the directors are not ordinarily liable")
(citations omitted).

This "business judgment" presumption is expressly codified in Maryland's
Corporate Code. Section 2-405.1 of the MCC provides that a director "is presumed to satisfy
the standards of subsection (a) of this section," which requires directors to perform their
duties "(1) in good faith, (2) in a manner [the director] reasonably believes to be in the best
interest of the corporation, and (3) with the care that an ordinarily prudent person in a like
position would use under similar circumstances." Md. Code Ann., Corps. & Ass'ns § 2-
405.1(a, e); see also Hudson v. Prime Retail, Inc., C.A. No. 24-C-03-5806, 2004 WL
1982383, at *1 (Md. Cir. Ct. Apr. 1, 2004) (recognizing Maryland business judgment rule as
set forth in Section 2.405).

In order to properly allege a claim for breach of fiduciary duty, a plaintiff
must allege facts sufficient to rebut this statutory business judgment presumption; conclusory
allegations do not suffice. See, e.g., Hudson, 2004 WL 1982383, at *14 (dismissing breach
of fiduciary duty claim because the amended complaint contained conclusory allegations
with no allegations of fact); Century Nat'l Bank v. Makkar, 751 A.2d 1, 6 (Md. Ct. Spec. App.
2000) (affirming dismissal of claims where no factual allegations were alleged, only "bare
conclusory assertion[s]"); see also Ferguson v. Cramer, 695 A.2d 603, 605, 609 (Md. Ct.
Spec. App. 1997) ("The Court, however, need not consider conclusory charges which have
no factual support."), aff'd, 709 A.2d 1279 (Md. 1998); Valentine v. On Target, Inc., 686

A.2d 636, 641 (Md. Ct. Spec. App. 1996) (affirming dismissal of complaint that asserted "no facts beyond bald conclusory allegations"), aff'd, 727 A.2d 947 (Md. 1999).[13]

Here, the Complaint contains only the most conclusory allegations of wrongdoing against the Outside Directors. In fact, the Complaint is most notable for what it does *not* allege. For example, Plaintiffs have not alleged adequately that the Outside Directors received any personal benefit from their approval of the Merger, or that they lacked independence. In fact, the Complaint fails to allege *any* facts that establish that a *majority of the Outside Directors* acted disloyally (i.e., by having a material self-interest in the transaction) or failed to act independently or in good faith in connection with the Merger. See, supra, Part III.B., above. As a result, any breach of fiduciary duty claims relating to the Merger -- Counts Nine and Ten -- should be dismissed. McMillan, 768 A.2d at 496 (dismissing complaint that alleged "no facts from which a reasonable inference can be drawn that any conflicting self-interest or bad faith motive caused the defendant directors to fail to meet their obligations"); In re Freeport-McMoran Sulphur, Inc. S'holders Litig., C.A. No. 16729, 2001 WL 50203, at *5 (Del. Ch. Jan. 11, 2001) (explaining that dismissal was warranted where plaintiff failed to rebut business judgment presumption with particularized allegations establishing that a majority of the board was interested in the transaction).[14]

---

[13]   Similarly, under Delaware law, decisions made by an independent, disinterested board of directors are protected by the "business judgment rule," and the burden of rebutting that presumption falls on the party challenging the decision. See, e.g., Aronson, 473 A.2d at 812. The business judgment rule "creates a powerful presumption in favor of actions taken by . . . directors in that a decision made by a loyal and informed board will not be overturned by the courts unless it cannot be 'attributed to any rational business purpose.'" In re Encore Computer Corp. S'holders Litig., C.A. No. 16044, 2000 WL 823373, at *5 (Del. Ch. June 16, 2000) (quoting Cede & Co. v. Technicolor, Inc., 634 A.2d 345, 361 (Del. 1993)).

[14]   Even if the Complaint sufficiently alleged that *certain* Defendants were improperly conflicted -- which it plainly does not -- Defendants are still entitled to the benefit of the business judgment rule because the Merger was approved by a *majority* of disinterested Directors. See In re Frederick's of Hollywood, Inc. S'holders Litig., C.A. No. 15944, 2000 WL 130630, at *7
                                                                                                                   *(cont'd)*

Moreover, Plaintiffs have failed to allege any specific facts that establish that any of the Outside Directors sold *any* securities (based on inside information or otherwise); committed mismanagement or waste; made any misstatements or omissions to the public; or ignored red flags about MBNA's financial condition at any time. As discussed further below, claims unsupported by such factual allegations should fail.

### 1. Plaintiffs' conclusory allegations of corporate waste fail to state a claim.

In Count Six of the Complaint, Plaintiffs allege that certain "incentive based bonuses [paid] to certain [MBNA] executive officers," and the potential "legal liability and/or legal costs to defend" this or related litigations, amount to corporate waste. (Compl. ¶¶ 153-54) Maryland courts have embraced Delaware's stringent standard for waste claims, holding that to state a claim a plaintiff must show that "what the corporation has received 'is so inadequate in value that no person of ordinary, sound business judgment would deem it worth that which the corporation has paid.'" Werbowsky, 766 A.2d at 139 (citing Grobow v. Perot, 539 A.2d 180, 189 (Del. 1998)); Elkins, 2004 WL 1949290, at *17 ("Waste is a standard rarely satisfied in Delaware courts.").

Here, neither of Plaintiffs' purported examples of corporate waste suffice to state a claim under this standard. *First*, because the "retention of key employees may itself be a benefit to a corporation," any incentive bonuses or other compensation paid to MBNA executives can hardly be called evidence of corporate waste. Elkins, 2004 WL 1949290, at *18 ("[W]hen dealing with a board's decision on executive compensation, its substantive decision is entitled to great deference. It is the essence of business judgment for a board to

---

*(cont'd from previous page)*
(Del. Ch. Jan. 31, 2000) (dismissing duty of loyalty claim because plaintiff alleged that only one of four directors was interested and because the challenged merger was approved by a majority of disinterested directors).

determine if a particular individual warrants large amounts of money, whether in the form of current salary or severance payments.") (citations omitted); In re Walt Disney Co. Derivative Litig., C.A. No. 15452, 2005 WL 2056651, at *39 (Del. Ch. Aug. 9, 2005) (finding that termination of executive resulting in payment of severance package was not "a situation where the defendants have irrationally squander[ed] or give[n] away corporate assets").[15] *Second*, that a corporation has agreed to indemnify its directors and officers for any litigation they may face in their roles as directors, or to advance them their legal fees in connection with such litigation, too, is not evidence of waste -- rather it is expressly permitted under Maryland law. See Md. Code Ann., Corps. & Ass'ns § 2-418(f) (authorizing the payment by the corporation of reasonable expenses incurred by a director who is a party to a proceeding in advance of its final disposition).

Thus, Count Six of the Complaint should be dismissed.

### 2.    Plaintiffs' conclusory allegations of mismanagement and lack of oversight fail to state a claim.

In Counts Three and Five, Plaintiffs allege that the Outside Directors committed gross mismanagement and failed to properly oversee the affairs of the company. Yet, Plaintiffs offer no facts to support such claims. From what can be discerned from the Complaint, Plaintiffs' claims appear to be premised on the strained theory -- which was taken directly from the Securities Complaint -- that the MBNA directors, including the Outside Directors, should have realized that the Company was not going to perform as well as expected in the first quarter of 2005 when the Company announced its *annual* projections in

---

[15]    Moreover, the incentive compensation about which Plaintiffs complain was admittedly established *before* the Merger. (Compl. ¶ 62) See, e.g., Nebenzahl v. Miller, C.A. No. 13206, 1993 WL 488284, at *3, 4 (Del. Ch. Nov. 8, 1993) (rejecting plaintiffs' contention that payments set forth in a merger agreement evidenced a breach of duty where compensation was set pre-merger).

January 2005 (or shortly thereafter). However, the Complaint is utterly devoid of allegations concerning what specific, material information the Outside Directors knew during the Class Period, when or how they knew or should have known about such information or how that information was contrary to information already discussed publicly. Most importantly, Plaintiffs allege *no connection* between the purportedly offending statements made in January 2005 and the Outside Directors.

Ultimately, the best Plaintiffs can muster to support their claims of lack of oversight and gross mismanagement are boilerplate allegations concerning the Outside Directors' positions as directors and their general access to Company documents. This does not suffice. See, e.g., Cincinnati Bell Cellular Sys. Co. v. Ameritech Mobile Phone Serv. of Cincinnati, Inc., C.A. No. 13389, 1996 WL 506906, at *14 (Del. Ch. Sept. 3, 1996) (holding that to prevail on a claim for gross mismanagement or gross negligence, a plaintiff must "plead and . . . prove that [the defendant] was 'recklessly uninformed' or acted 'outside the bounds of reason'"), aff'd, 692 A.2d 411 (Del. 1997); Guttman v. Huang, 823 A.2d 492, 507 (Del. Ch. 2003) (dismissing claim for lack of oversight because plaintiffs failed to allege that directors had knowledge of, or were on notice of, any "red flags" related to the company's financial controls); In re Citigroup Inc. S'holders Litig., C.A. No. 19827, 2003 WL 21384599, at *2 (Del. Ch. June 5, 2003) (red flags "are only useful when they are either waved in one's face or displayed so that they are visible to the careful observer"), aff'd sub nom. Rabinovitz v. Shapiro, 839 A.2d 666 (Del. 2003); Rattner, 2003 WL 22284323, at *13 (dismissing lack of oversight claims, quoting Citigroup for the same proposition).

Thus, Counts Three and Five of the Complaint should be dismissed.

**B.**    **Plaintiffs' Attack On The Merger Process Should Fail.**

    **1.**    **Plaintiffs' reliance on *Revlon*, *Unocal* or any other heightened form of judicial scrutiny of director conduct should be rejected.**

Under the Maryland Corporate Code, "an act of a director relating to or affecting an acquisition or a potential acquisition of control of a corporation may not be subject to a higher duty or greater scrutiny than is applied to any other act of a director." Md. Code Ann., Corps. & Ass'ns § 2-405.1(f). As the court in <u>Hudson v. Prime Retail</u> explained: "*in Maryland[,] the business judgment rule applies even to directors' change-in-control decisions.*" 2004 WL 1982383, at *11 n.13 (emphasis added); <u>see also</u> <u>Jasinover v. Rouse Co.</u>, C.A. No. 13-C-04-59594, 2004 WL 3135516, at *9 (Md. Cir. Ct. Nov. 4, 2004) ("A director's acts in connection with [maximizing shareholder value] are 'presumed to satisfy the standards' established by section 2-405.1(a), and 'may not be subject to a higher duty or greater scrutiny than is applied to any other act of a director.'") (citations omitted); James J. Hanks, Jr., <u>Maryland Corporation Law</u> § 6.6[b] n.105h ("The decisions of the Supreme Court of Delaware in <u>Unocal</u> . . . and <u>Weinberger v. UOP, Inc.</u>, . . . should not be applied in Maryland."); Kenneth B. Abel, <u>The Maryland Corporation: Legal Aspects of Organization & Operation</u> § VI(H) (2004) (Section 2-405.1 of the Maryland Corporate Code "negates the applicability of the <u>Unocal</u> and <u>Revlon</u> standards in Maryland").

Plaintiffs ignore this well-settled principle of Maryland corporate law, and instead ask this Court to review the MBNA board's actions in connection with the Merger pursuant to the heightened forms of judicial scrutiny imposed under the seminal Delaware cases of <u>Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.</u>, 506 A.2d 173 (Del. 1985), and <u>Unocal Corp. v. Mesa Petroleum Co.</u>, 493 A.2d 946 (Del. 1985). (Compl. ¶¶ 178, 184) But as explained above, Maryland law does not recognize these heightened standards of

review, and, thus, Counts Nine and Ten, which are premised entirely on such heightened standards, should be dismissed.

Even under Revlon -- assuming it applied under Maryland law, which it does not -- Plaintiffs' claim that the MBNA directors breached their fiduciary duties by failing to conduct an auction should fail. (Compl. ¶ 179) It is well-understood that there is "no single blueprint" for directors to follow in fulfilling so-called Revlon duties, and such duties "do not demand that every change in control of a Delaware corporation be preceded by a heated bidding contest." See, e.g., Barkan v. Amsted Indus., 567 A.2d 1279, 1286 (Del. 1989); Herd v. Major Realty Corp., C.A. No. 10707, 1990 WL 212307, at *9 (Del. Ch. Dec. 21, 1990) (dismissing Revlon claim and finding directors' failure to conduct auction or market check was not unreasonable); Freedman v. Rest. Assocs. Indus., C.A. No. 9212, 1990 WL 135923, at *6 (Del. Ch. Sept. 19, 1990) (dismissing Revlon claim that directors breached fiduciary duties by failing to conduct auction).

### 2. Plaintiffs' allegations that the Outside Directors failed to obtain the highest Merger price do not state a claim under Maryland law.

Putting aside Plaintiffs' attempt to impermissibly graft onto Maryland corporate law the heightened standards of review employed in Delaware, Plaintiffs' allegations fall far short of the mark for stating a claim for breach of fiduciary duty. Plaintiffs' claims fail as a matter of law -- Maryland law -- for several reasons.

*First*, as explained above, decisions made by an independent, disinterested board of directors are protected by the business judgment presumption. See, e.g., Danielewicz, 769 A.2d at 296 (Maryland law is "well established that courts generally will not interfere with the internal management of a corporation and that the conduct of the corporation's affairs are placed in the hands of the board of directors and if the majority of the board properly exercises its business judgment, the directors are not ordinarily liable"). Here,

28

Plaintiffs fail to allege *any* facts that establish that a *majority of the Outside Directors* acted

disloyally or failed to act independently or in good faith in connection with the Merger. See,

supra, Part III.B.

      *Second*, Plaintiffs' anemic attempts to rebut the business judgment

presumption should fail. Plaintiffs allege that the directors "disregarded their duty to get the

highest price from all possible bidders for MBNA" (Compl. ¶ 181), a duty Plaintiffs describe

as "that of an auctioneer." (Compl. ¶ 184 see also Compl. ¶ 179 ("When Revlon Duties arise,

the board has a duty to . . . auction the company fairly.")) However, even if Plaintiffs'

allegations had some basis in fact, Plaintiffs' claim would fail as a matter of law -- Maryland

law.

      As the Jasinover court stated recently:

> Maryland law is less restrictive than the view of Delaware law
> that Plaintiff espouses. ***Maryland does not require an***
> ***auction when the decision is made to sell a corporation.***
> There is no requirement that the Board fully shop the
> company to multiple bidders and have a so-called 'level
> playing field' for all bidders. There will be a need to market-
> check or test the Board's decision, but the Board is free to lock
> up an attractive deal and use post-agreement methods to do so.

Jasinover, 2004 WL 3135516, at *9 (emphasis added); see also Hudson, 2004 WL 1982383,

at *16 (directors have no duty to obtain highest value reasonably available for shareholders).

      Under Maryland law, the MBNA Board was free to enter into -- and lock up

-- an agreement with BAC if it viewed it as an "attractive" deal for the shareholders.

Jasinover, 2004 WL 3135516, at *8-9 ("[T]he Board is free to lock up an attractive deal.").[16]

---

[16]  For this reason, Plaintiffs' allegations relating to certain provisions in the Merger agreement
fall wide of the mark. See, e.g., Compl. ¶ 180 ("The Director Defendants breached their
Revlon duties . . .by agreeing to a 'no shop' provision in the merger agreement. . . and by
granting Bank of America an option to acquire up to approximately 249.8 million shares of
MBNA common stock.")

The Merger need "not have been the 'perfect deal' or even the 'best deal,'" but it was a

reasonable deal, and that is all Maryland law requires. Id. at *10. Other than stating in the

most conclusory fashion that the director defendants agreed "to sell MBNA at a potentially

unfair price" (Compl. ¶ 170), Plaintiffs do not -- because they cannot -- allege facts to support

that BAC did not pay a "reasonable" price for MBNA. This fails to state a claim, even under

Delaware law. Lewis v. Leaseway Transp. Corp., C.A. No. 8720, 1990 WL 67383, at *5

(Del. Ch. May 16, 1990) (dismissing complaint alleging only that merger price was unfair);

Porter, 1989 WL 120358, at *5 ("[P]laintiffs' repeated allegations of the inadequacy of the

merger price do not themselves create a claim . . . .").

   Any suggestion that MBNA failed to conduct a market check before entering

into the merger agreement with BAC is likewise insufficient to state a claim. (Compl. ¶ 180)

Plaintiffs repeatedly allege in their Complaint facts that preclude them from credibly making

this argument. (See, e.g., Compl. ¶ 171 (admitting that certain directors met to discuss

"possible strategic alternatives . . . including hypothetical scenarios involving a business

combination"); (Compl. ¶¶ 3, 86 (acknowledging MBNA's consideration of a potential deal

with Wachovia); (Compl. ¶ 3 (conceding that to "effect a sale of the Company," "MBNA

retain[ed] Joseph Perella, a noted investment banker . . . [as well as] UBS Inc. as MBNA's

investment advisor")) Moreover, the members of the MBNA Board met with MBNA

management, their financial advisors and their outside counsel to discuss strategic

alternatives. (Compl. ¶ 83) Maryland law is clear that "[i]n performing his duties, a director

is entitled to rely on any information, opinion, report, or statement" presented by the kind of

experts on which the Outside Directors here relied. Jasinover, 2004 WL 3135516, at *9,

citing Md. Code Ann., Corps. & Ass'ns § 2-405.1(b)(1).

   Nor do Plaintiffs get traction by arguing that the Merger process was

defective because Hammonds "wanted to find a strategic buyer for the Company which

would [ensure] . . . Hammonds himself would be kept on at the new Company in an executive position of influence, [and] Hammonds' close friends would be offered employment in the new entity." (Compl. ¶ 2) As Maryland's highest court made clear in Wittman, allegations relating to future employment are insufficient to rebut the business judgment presumption. See 707 A.2d at 425 ("[T]he fact that many of the appellees were likely to become directors of the new corporation did not justify judicial intervention."). Equally unhelpful is Plaintiffs' argument that the merger negotiations were unfair because Hammonds allegedly negotiated the deal with BAC by himself. (See, e.g., Compl. ¶ 86) See, e.g., In re MONY Group Inc. S'holder Litig., 852 A.2d 9, 20 (Del. Ch. 2004) (rejecting, even under more stringent Delaware standards, plaintiffs' "lone wolf" theory that since "the Board relied upon [its CEO] to determine and explore alternatives it breached its fiduciary duties," because "[a] board appropriately can rely on its CEO to conduct negotiations").[17]

For all of these reasons, Counts Nine and Ten should be dismissed.

**C.     The Complaint Should Be Dismissed In Its Entirety Because The Outside Directors Are Not Subject To Liability For Money Damages.**

The Maryland General Corporation Law permits every Maryland corporation to include in its charter a provision "expanding or limiting the liability of its directors and officers to the corporation or its stockholders as described under section 5-418 of the Courts and Judicial Proceedings Article." Md. Code Ann., Corps. & Ass'ns § 2-405.2. Section 5-418 states that a corporation's charter "may include any provision expanding or limiting

---

[17]    Plaintiffs also erroneously argue that Hammonds made a false and misleading statement "in derogation of [his] duty of candor and his Revlon duties" when he allegedly told "Business Week" that there was "no 'For Sale' sign on MBNA's Wilmington (Del.) headquarters." (Compl. ¶ 181) *First*, Plaintiffs' reliance on Hammonds' "Revlon duties" ignores, once again, the aforementioned distinctions between Maryland and Delaware law. *Second*, there was in fact no "For Sale" sign on MBNA's headquarters, and Plaintiffs do not offer any allegations to suggest otherwise.

liability of its directors or officers to the corporation or its stockholders for money damages, with only two exceptions: (i) actual receipt of an improper benefit or profit in money, property, or services, and (ii) active and deliberate dishonesty." Md. Code Ann., Cts. & Jud. Proc. § 5-418. In other words, Section 5-418 allows a corporation in its charter to insulate directors from liability stemming from *all claims short of fraud.* [18]  See Hanks, Jr., Maryland Corporation Law at § 6.9.

Article VII of the MBNA charter imposes the maximum possible limitation under Maryland law on directors' potential liability for money damages. (Ex. B) Specifically, Article VII(a) provides that "[t]o the fullest extent that limitations on the liability of directors and officers are permitted by the Maryland General Corporation Law, no director or officer of the Corporation shall have any liability to the Corporation or its stockholders for damages. This limitation on liability applies to events occurring at the time a person serves as director or officer of the Corporation whether or not such person is a director or officer at the time of any proceeding in which liability is asserted." (Id.)

Plaintiffs describe their "claims" against the Outside Directors for money damages in many different ways -- alternately purporting to allege breaches of duties of care, loyalty, candor, disclosure, oversight and more. (See, e.g., Compl. ¶¶ 135, 150, 153, 164, 187) Critically, fraud was not among them. As a result, all of Plaintiffs' claims against the Outside Directors fall within the protections offered by Article VII(a) of the MBNA Charter, and should therefore be dismissed. See Grill, 771 F. Supp. at 712 (dismissing waste and mismanagement claims that did not constitute "situations involving 'active and deliberate dishonesty,"); see also Knox v. Rosenberg, No. H-99-0123, slip op. at 17 (S.D. Tex. Sept. 28,

---

[18]  Maryland's director exculpation statute provides even greater protection than Delaware's statute, which permits corporations to eliminate monetary liability on the part of directors only for breaches of the duty of care. See 8 Del. C. § 102(b)(7).

32

1999) (dismissing mismanagement claims against directors of a Maryland corporation because complaint contained no allegations of improper benefit or profit involving money, property or services, or active and deliberate dishonesty); Hayes v. Crown Cent. Petroleum Corp., 249 F. Supp. 2d 725, 734 (E.D. Va. 2002) (dismissing claim against Maryland directors that price received in merger was inadequate, noting that plaintiff stockholders "failed to plead facts suggesting either improper benefit or profit or active and deliberate dishonesty which would defeat application of the charter provision"), aff'd, 78 Fed. Appx. 857 (4th Cir. 2003).

### D.     Plaintiffs' "Holder Claims" Should Be Dismissed.

Count Eight purports to bring a breach of fiduciary duty claim *for damages* "on behalf of [a purported] Holder Class." (Compl. ¶ 163) Plaintiffs define this putative "holder" class as comprising "all shareholders who held the shares of MBNA on January 19, 2005, before the commencement of the Class Period in the related securities fraud class action cases, and who continued to hold the stock through at least April 22, 2005, and were damaged thereby."[19] (Id. ¶ 7(a)) Plaintiffs assert, without being specific, that all MBNA individual defendants "had actual or constructive knowledge that they had either caused MBNA to improperly misrepresent the business and prospects of the Company, or breaches [sic] their duties of oversight in failing to be informed and active in the ultimate management of the Company." (Id. ¶ 166)[20] This allegedly harmed the so-called "holder" class.

---

[19]   The Complaint seeks to draw a distinction between the "holder class" and the "merger class." The latter is said to consist of "all MBNA shareholders whose MBNA shares will be exchanged for Bank of America shares by reason of the merger that was accomplished by means of a deceptive proxy statement, at an unfair price, and without an auction designed to elicit a bid at full value." (Compl. ¶ 7(b))

[20]   Count Eight largely mirrors Count Three. (Compare Compl. ¶ 136 with Compl. ¶ 166) For this reason, Count Eight should be dismissed for the same reason that Count Three should be dismissed -- Plaintiffs have failed to offer any specific factual support for their claim.

The unstated premise of Plaintiffs' purported injury dooms their claim. Plaintiffs argue that had they known that the true value of their shares was less than the market value, they would have sold their shares to capture that windfall before the market realized its mistake. Put differently, Plaintiffs' damages theory is that they should be compensated because Defendants' alleged wrongdoings induced them to refrain from selling their stock at a price that would not have existed but for the wrongdoing itself. Courts have long rejected claims for damages based on this type of "injury" because stockholders who missed an opportunity to take advantage of an artificial rise in a stock price have not suffered a legally cognizable loss. For example, in Blue Chip Stamps v. Manor Drug Stores, the United States Supreme Court, in refusing to extend the federal securities laws to cover persons claiming to have held onto their shares because of misrepresentations, explained the problems with providing a remedy to such "holders":

> [A] putative plaintiff, who neither purchases nor sells securities but sues instead for intangible economic injury such as loss of a non-contractual opportunity to buy or sell, is more likely to be seeking a largely conjectural and speculative recovery . . . .

421 U.S. 723, 734-35 (1975). See also Manzo v. Rite Aid Corp., C.A. No. 18451-NC 2002 WL 31926606, at *5 (Del. Ch. Dec. 19, 2002) (dismissing plaintiff's claim for failure to state a cognizable injury, and stating that "awarding money damages to compensate plaintiff for the return she could have earned had she invested elsewhere -- as she was free to do, but didn't do -- amounts to speculation founded upon uncertainty"), aff'd, 825 A.2d 239 (Del. 2003); see also Henne v. Balick, 146 A.2d 394, 396 (Del. 1958) (holding that under Delaware law, damages may not be based upon mere "speculation or conjecture").

Because Plaintiffs have failed to allege actual, quantifiable damages, an essential element of their "Holder Class" claims, Count Eight of the Complaint should be dismissed. Manzo, 2002 WL 31926606, at *5.

34

**E.    Defendants Did Not Breach Their Duty Of Disclosure Because The Proxy Materials Submitted To The Shareholders Were Complete And Accurate.**

As described in Section VII of the opening brief filed by the Inside Directors, which is hereby incorporated by reference, Count Eleven fails to state a claim for breach of the duty of disclosure. Accordingly, because the shareholders were fully and adequately informed when they voted to approve the Merger (Compl. ¶ 17), the actions of the MBNA board in connection with the Merger have been ratified by the shareholders, and, thus, the merger related claims have been extinguished. See, e.g., Wittman, 707 A.2d at 425-26 (dismissing merger-related claims, finding that defendants could not be liable for acts ratified by the shareholders where defendants had made shareholders aware of any interest they may have had in the transaction -- including that defendants would be directors in the surviving company); Hudson, 2004 WL 1982383, at *15-16 (affirming dismissal based on ratification, because "the process by which the directors arrived at the merger consideration and allocation [was] disclosed in the proxy materials" before shareholder vote).

## CONCLUSION

For the foregoing reasons, the Outside Directors respectfully request that all claims against them be dismissed.

/s/ Edward P. Welch
Edward P. Welch (I.D. # 671)
Edward B. Micheletti (I.D. #3794)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899
(302) 651-3000
Attorneys for the MBNA
Outside Director Defendants

Of Counsel:
Jay B. Kasner
Susan L. Saltzstein
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
4 Times Square
New York, New York  10036-6522
(212) 735-3000

DATED:  January 20, 2006

441131.07-Wilmington Server 1A - MSW