IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------x
IN RE MBNA CORPORATION            :
DERIVATIVE AND CLASS              :      Lead Case No. 1:05-CV-00327-
LITIGATION                        :      GMS
                                  
This Document Relates To:         :
ALL ACTIONS.                      :      CLASS AND DERIVATIVE
                                  :      ACTION
---------------------------------------------------x


## COMPENDIUM OF UNREPORTED OPINIONS TO OPENING BRIEF IN SUPPORT OF THE MBNA OUTSIDE DIRECTOR DEFENDANTS' MOTION TO DISMISS

                                        Edward P. Welch (I.D. # 671)
                                        Edward B. Micheletti (I.D. # 3794)
                                        SKADDEN, ARPS, SLATE,
                                          MEAGHER & FLOM LLP
                                        One Rodney Square
                                        P.O. Box 636
                                        Wilmington, Delaware 19899
                                        (302) 651-3000
                                        Attorneys for the MBNA
                                        Outside Director Defendants

Of Counsel:
Jay B. Kasner
Susan L. Saltzstein
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
4 Times Square
New York, New York 10036-6522
(212) 735-3000

DATED: January 20, 2006

1

# INDEX

CASES                                                                                                       TAB NO.

Cincinnati Bell Cellular Sys. Co. v. Ameritech Mobile Phone Serv. of Cincinnati,
    Inc., C.A. No. 13389, 1996 WL 506906 (Del. Ch. Sept. 3, 1996) ...................... 1

In re Citigroup Inc. S'holders Litig.,
    C.A. No. 19827, 2003 WL 21384599 (Del. Ch. June 5, 2003) ......................... 2

Criden v. Steinberg,
    C.A. No. 17082, 2000 WL 354390 (D. Del. Mar. 23, 2000) ............................ 3

In re Encore Computer Corp. S'holders Litig.,
    C.A. No. 16044, 2000 WL 823373 (Del. Ch. June 16, 2000) ........................ 4

Ercole v. Conectiv & Coventry Health Care of Del., Inc.,
    C.A. No. 03-186 GMS, 2003 WL 21104926 (D. Del. May 15, 2003) .............. 5

In re Frederick's of Hollywood, Inc. S'holders Litig.,
    C.A. No. 15944, 2000 WL 130630 (Del. Ch. Jan. 31, 2000) ............................ 6

Freedman v. Rest. Assocs. Indus.,
    C.A. No. 9212, 1990 WL 135923 (Del. Ch. Sept. 19, 1990) ............................ 7

In re Freeport-McMoran Sulphur, Inc. S'holders Litig.,
    C.A. No. 16729, 2001 WL 50203 (Del. Ch. Jan. 11, 2001) ............................ 8

Herd v. Major Realty Corp.,
    C.A. No. 10707, 1990 WL 212307 (Del. Ch. Dec. 21, 1990) ........................... 9

Hudson v. Prime Retail, Inc.,
    C.A. No. 24-C-03-5806, 2004 WL 1982383 (Md. Cir. Ct. Apr. 1, 2004) ........ 10

Jacobs v. Yang,
    C.A. No. 206, 2004 WL 1728521 (Del. Ch. Aug. 2, 2004) ............................ 11

Jasinover v. Rouse Co.,
    C.A. No. 13-C-04-59594, 2004 WL 3135516 (Md. Cir. Ct. Nov. 4, 2004) ...... 12

Jolly Roger Fund LP v. Sizeler Property Investors, Inc.,
    C.A. No. Civ. RDB 05-841, 2005 WL 2989343 (D. Md. Nov. 3, 2005) .......... 13

Knox v. Rosenberg,
    No. H-99-0123 (S.D. Tex. Sept. 28, 1999) .................................................................. 14

Lewis v. Leaseway Transp. Corp.,
    C.A. No. 8720, 1990 WL 67383 (Del. Ch. May 16, 1990) .............................................. 15

Litt v. Wycoff,
    C.A. No. 19083-NC, 2003 WL 1794724 (Del. Ch. Mar. 28, 2003) ................................. 16

Manzo v. Rite Aid Corp.,
    C.A. No. 18451-NC, 2002 WL 31926606 (Del. Ch. Dec. 19, 2002) ................................ 17

Nebenzahl v. Miller,
    C.A. No. 13206, 1993 WL 488284 (Del. Ch. Nov. 8, 1993) ........................................... 18

Official Committee of Unsecured Creditors of Integrated Health Servs., Inc. v.
    Elkins, C.A. No. 20228, 2004 WL 1949290 (Del. Ch. Aug. 24, 2004) ........................... 19

Pogostin v. Rice,
    C.A. No. 6235, 1983 WL 17985 (Del. Ch. Aug. 12, 1983) ............................................. 20

Porter v. Texas Commerce Bancshares, Inc.,
    C.A. No. 9114, 1989 WL 120358 (Del. Ch. Oct. 12, 1989) ............................................ 21

Rattner v. Bidzos,
    C.A. No. 19700, 2003 WL 22284323 (Del. Ch. Oct. 7, 2003) ........................................ 22

Seibert v. Harper & Row, Publishers, Inc.,
    C.A. No. 6639, 1984 WL 21874 (Del. Ch. Dec. 5, 1984) ............................................... 23

Sekuk Global Enters. Profit Sharing Plan v. Kevenides,
    C.A. No. 24-C-03-007496, 2004 WL 1982508 (Md. Cir. Ct. May 25, 2004) ................. 24

Sussex County Senior Servs., Inc. v. Carl J. Williams & Sons, Inc.,
    C.A. No. 99-473-GMS, 1999 WL 33220035 (D. Del. Dec. 29, 1999) ............................ 25

In re Walt Disney Co. Derivative Litig.,
    C.A. No. 15452, 2005 WL 2056651 (Del. Ch. Aug. 9, 2005) ......................................... 26

In re Wheelabrator Tech. Inc. S'holders Litig.,
    C.A. No. 11495, 1992 WL 212595 (Del. Ch. Sept. 1, 1992) .......................................... 27

# TAB 27

Not Reported in A.2d                                                                                        Page 1
Not Reported in A.2d, 1992 WL 212595 (Del.Ch.), 18 Del. J. Corp. L. 778
**(Cite as: 1992 WL 212595 (Del.Ch.), 18 Del. J. Corp. L. 778)**

▻

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Chancery of Delaware, New Castle County.
**In re WHEELABRATOR TECHNOLOGIES INC. SHAREHOLDERS LITIGATION.**
C.A. No. 11495.

Submitted: June 1, 1992.
Decided: Sept. 1, 1992.
**\*\*783** Joseph A. Rosenthal and Kevin Gross, of Rosenthal, Monthait, & Gross, P.A., Carolyn D. Mack, of Greenfield & Chimicles, Wilmington, Steven G. Schulman and Lee S. Shalov, of Milberg, Weiss, Bershad, Specthrie & Lerach;  Abbey & Ellis;  Goodkind, Labaton & Rudoff;  Law Offices of Joseph H. Weiss;  and Law Offices of Curtis V. Trinko, all of New York City;  and Schiffrin & Craig, Ltd., Chicago, Ill., for plaintiffs.

**\*\*784** David C. McBride and Bruce L. Silverstein, of Young, Conaway, Stargatt & Taylor, Wilmington, for defendants Wheelabrator Technologies, Inc. and the Individual defendants.

Henry E. Gallagher, Jr., and John C. Kairis, of Connolly, Bove, Lodge & Hutz, Wilmington, and Ernest Summers, III, of Waste Management, Inc., Oak Brook, Ill., for defendant Waste Management, Inc.

MEMORANDUM OPINION

JACOBS, Vice Chancellor.

\*1 Beginning on April 5, 1990, the plaintiffs, who are shareholders of Wheelabrator Technologies, Inc. ("WTI"), filed several shareholder class actions challenging a proposed merger between WTI and Waste Management, Inc. ("Waste"). Named as defendants were WTI, its board of directors, and Waste. The actions were later consolidated, and the plaintiffs filed a Consolidated Amended Class Action Complaint on August 10, 1990. Following expedited discovery, the plaintiffs moved to preliminarily enjoin the merger. By Opinion dated September 6, 1990, the Court denied that motion. *In re Wheelabrator Technologies, Inc. Shareholders Lit.*, Del.Ch., Cons.C.A. No. 11495, Jacobs, V.C.

(Sept. 6, 1990) ("*Wheelabrator 1* "). WTI's stockholders approved the merger the following day.

The plaintiffs then filed a Second Amended Consolidated Class Action Complaint (the "complaint"), seeking declaratory relief and money damages, or, alternatively, rescission of the merger. On August 12, 1991, the defendants moved to dismiss the complaint pursuant to Chancery Court Rule 12(b)(6). The parties briefed that motion, and orally argued it on March 13, 1992. Thereafter, the parties submitted supplemental briefs at the Court's request. This is the Opinion of the Court adjudicating the defendants' motion to dismiss the complaint.

I. *PERTINENT FACTS* [FN1]
WTI is a publicly held Delaware corporation in the business of developing and providing refuse-to-energy services.  Waste provides **\*\*785** international waste management services to commercial, industrial, and municipal customers. In August, 1988, Waste acquired a 22% equity interest in WTI, and as a result, Waste became entitled to (and did) designate four of WTI's eleven directors.

Between December, 1989 and March, 1990, Waste decided that its best interests would be served by increasing its investment in WTI to a majority equity position.  On March 23, 1990, principals of Waste and WTI met to discuss what ultimately became the merger agreement.  On March 30, 1990, WTI's board of directors (excluding Waste's director-designees) unanimously approved the merger agreement, under which Waste would acquire an additional 33% of WTI's common stock and become a 55% stockholder of WTI.  The acquisition would take the form of a stock-for-stock merger of a Waste subsidiary into WTI.  Each share of WTI common stock would be converted into .574 shares of newly issued WTI stock and .469 shares of Waste common stock.  That exchange ratio would allow WTI's stockholders to receive a 10% premium over the market value of the WTI shares being given up in the merger. [FN2]  As part of the merger agreement, Waste and WTI also executed five other separate agreements, denominated "Ancillary Agreements." [FN3]

On July 30, 1990, WTI and Waste disseminated to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.




Case 1:05-cv-00327-GMS    Document 44-12    Filed 01/20/2006    Page 6 of 15

Not Reported in A.2d    Page 2
(Cite as: 1992 WL 212595, *1 (Del.Ch.), 18 Del. J. Corp. L. 778, **785)

WTI's shareholders a joint proxy statement stating that the boards of both corporations advocated shareholder approval of the merger agreement as outlined above. As earlier stated, a majority of WTI's stockholders (excluding Waste) approved the merger on September 7, 1990.

**786 After the merger two events transpired that are subjects of the complaint. First, on November 17, 1990, WTI announced that it would write-off approximately $40 million of merger-related restructuring charges against its third quarter earnings. As a result, WTI would report a $7.2 million third-quarter loss instead of enjoying a $32.7 million gain. Second, in late December, 1990, Waste announced that its subsidiary, Waste Management International, expected its 1990 revenues to be more than double the previous year's level of $388 million. [FN4]

## II. THE CONTENTIONS

In their complaint the plaintiffs seek declaratory relief and compensatory and/or rescissory damages, or, alternatively, rescission of the merger. Count I of the complaint alleges that WTI and its directors breached their duty to make adequate disclosure to WTI's shareholders by distributing a proxy statement that was materially false and misleading in various respects. Count II claims that WTI and its directors, aided and abetted by Waste, breached their duties under *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*, Del.Supr., 506 A.2d 173 (1986) ("*Revlon* "), to maximize shareholder value in the merger transaction. Count III charges that WTI and its directors breached their duty of care to WTI's shareholders by entering into the merger agreement and recommending its approval by shareholders. Count IV avers that WTI and its directors, aided and abetted by Waste, breached their duty of loyalty to WTI's shareholders.

*2 The defendants argue that the complaint (or portions thereof) must be dismissed for the following reasons: (a) the complaint fails to allege any actionable disclosure violations; (b) therefore, the shareholder vote approving the merger operated as a fully informed ratification barring the plaintiffs' other claims; (c) an exculpatory provision in WTI's certificate of incorporation bars the plaintiffs' money damage claims against WTI's directors for breach of their *Revlon* duties and their duties of care and disclosure; (d) as a corporate entity, WTI owed no fiduciary duties to its shareholders, and cannot be held vicariously liable for its directors' breaches of fiduciary duty; (e) Waste owed no fiduciary duties to WTI's shareholders, since it **787 was not a majority stockholder before the merger; (f) Waste's designees on the WTI board violated no fiduciary duty because those directors did not participate in the merger negotiations or deliberations on WTI's behalf; and (g) WTI's directors did not breach any duties prescribed by *Revlon*. [FN5]

To succeed on this motion to dismiss, the defendants must demonstrate that the plaintiffs are not entitled to the relief they seek under any set of facts that could be proven to support their claims. *Rabkin v. Philip A. Hunt Chemical Corp.*, Del.Supr., 498 A.2d 1099, 1104 (1985). In applying this standard, the Court will draw all reasonable inferences from the well-pleaded allegations of the complaint, which, for purposes of the motion, are taken as true. However, inferences and conclusions of fact that are unsupported by specific factual allegations will not be accepted as true. *Grobow v. Perot*, Del.Supr., 539 A.2d 180, 187 n. 6 (1988).

For the reasons explained below, I conclude that the motion to dismiss must be granted with respect to (i) all but one of the plaintiffs' disclosure claims, (ii) the *Revlon* claims, (iii) the claims against WTI other than for equitable fraud, (iv) the claims against Waste and its designees to the WTI board, and (v) the plaintiffs' money damage claims against WTI's directors for breach of the duty of care. In all other respects the motion will be denied. The Court addresses the plaintiffs' disclosure claims in Part III of this Opinion. In Part IV the Court treats the plaintiffs' *Revlon* claims, and in Part V it considers the arguments advanced separately on behalf of specific defendants. Finally, in Part VI the Court considers the defense based upon WTI's exculpatory certificate provision.

## III. THE DISCLOSURE CLAIMS

Since the legal sufficiency of the plaintiffs' disclosure claims determines whether the Court reaches the issue of shareholder ratification, those claims are addressed first. Had no disclosure claim survived, the Court would conclude (for present purposes) that the directors' actions were ratified by a fully informed shareholder vote. *Smith v. Van Gorkom*, Del.Supr., 488 A.2d 858, 890 (1985).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.




Case 1:05-cv-00327-GMS    Document 44-12    Filed 01/20/2006    Page 7 of 15

Not Reported in A.2d                                                                                                     Page 3
(Cite as: 1992 WL 212595, *2 (Del.Ch.),  18 Del. J. Corp. L. 778, **788)

Since **788 one disclosure claim does survive, the Court will not reach the ratification issue.

*3 With one new addition (and a few new twists), the plaintiffs' disclosure claims are identical to those earlier presented on the preliminary injunction motion. Thus, the plaintiffs repeat their claim that the proxy statement was false, misleading, and incomplete in its disclosures relating to comparable transactions and companies and the adequacy of the premium received by shareholders ("the comparables"); the Ancillary Agreements and their value to WTI; the financial condition of Waste, including potential material criminal and/or civil liabilities; and the merger negotiations and board deliberations. (*See* Sec.Am.Comp., ¶¶ 34(A)-(D).) The only new disclosure claim is that the proxy statement failed to disclose the $40 million merger-related charge against earnings that WTI announced approximately three months after the merger. (*See id.,* ¶ 34(E).)

To state a cognizable claim for breach of the duty of disclosure, the alleged disclosure violations must be material. *Rosenblatt v. Getty Oil Co.,* Del.Supr., 493 A.2d 929 (1985). [FN6] In *Wheelabrator 1,* the Court ruled that the plaintiffs would probably not succeed in establishing their disclosure claims, because the plaintiffs had not established the materiality of certain of the alleged improper disclosures, and the proxy statement itself negated certain of their other claims that material facts had been misrepresented or omitted. That preliminary ruling, to be sure, does not preclude the plaintiffs from realleging in their complaint their previously rejected claims. But, by the same token, neither does it preclude the Court from applying its previous analysis on this motion to dismiss (subject, of course, to the constraints governing Rule 12(b)(6) motions). Applying that selfsame approach, I conclude that the plaintiffs' disclosure claims, with one exception, fare no better now than they did before. [FN7]

**789 For the reasons now discussed, only one of the disclosure claims survives the dismissal motion.

A. *Disclosures Concerning the "Comparables"*

In *Wheelabrator 1,* I concluded that the purpose of the proxy disclosures relating to the "comparables" was simply to recite the information and analysis that WTI's financial advisors had provided to the WTI board in connection with the merger. As thus viewed, those disclosures were not materially false or misleading. *See Wheelabrator 1, supra,* at 13-14. Despite that ruling, the plaintiffs argue that on this motion the Court must now credit their allegation that these disclosures were intended to persuade WTI's shareholders that the merger was a "good deal." (*See* Or.Arg.Tr. at 49-62.) I cannot agree. The Court based its earlier (preliminary) conclusion upon the express language of the proxy statement, which was--and still is--incorporated into the complaint by reference. *See supra* note 6. That proxy language plainly discloses that the purpose of these disclosures was to recount the investment bankers' presentations to the board. In my view, no reasonable shareholder could read the disclosure language as an advocacy statement. [FN8] What the plaintiffs have done is mischaracterize in their complaint a particular fact disclosed in the proxy statement. Based on that mischaracterization the plaintiffs then claim that the fact was misleadingly disclosed. In such circumstances the Court is hardly bound to accept as true a demonstrable mischaracterization and the erroneous allegation that flows from it. Nothing plaintiffs have presented alters my previous evaluation of this disclosure claim.

B. *Disclosures Relating to the Ancillary Agreements*

*4 To support their disclosure claim relating to the Ancillary Agreements, the plaintiffs argue:
**790 Defendants have represented that the Ancillary Agreements were a "meaningful benefit" to WTI's shareholders. (Proxy at 29) The statement is misleading since defendants failed to clearly and candidly disclose the directors' failure to obtain any quantification of the benefits which would flow from said agreements, as well as several salient factors detracting from or refuting any such purported benefits. (Complaint ¶ 25) Again, once defendants chose to speak, they had a fiduciary duty to tell the whole truth. Certainly some shareholders would find defendants' lack of valuation concerning the Ancillary Agreements as affecting the "total mix" of information in deciding whether to approve the proposed merger transaction.
(Pl.Ans.Br. at 38-39.)

The flaw in this claim lies in its premise that the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.




proxy statement did not "clearly and candidly disclose the directors' failure to obtain any quantification of the benefits which would flow from [the Ancillary Agreements.]" That premise is fatally undercut by the proxy disclosure that WTI's financial advisors "made no attempt to quantify the benefits which might be achieved pursuant to these agreement[s]." (Proxy St. at 39.) In addition, the second (and unstated) premise of the plaintiffs' disclosure claim--that a qualitative prediction must be quantified if it relates to value--is not supported by any authority cited to or located by this Court. *See In re Dataproducts Corp. Shareholders Lit.*, Del.Ch., C.A. No. 11164, Jacobs, V.C., Mem.Op. at 17-18 (Aug. 22, 1991). Accordingly, no further disclosure was required. *Wheelabrator 1, supra,* at 18 (citing *In re Genentech, Inc. Shareholders Lit.*, Del.Ch., Cons. C.A. No. 11377, Chandler, V.C., Mem.Op. at 21 (June 6, 1990)).

The plaintiffs also claim that the proxy statement misleadingly failed to disclose the value of certain "costs" to WTI associated with the Ancillary Agreements. One such claimed cost was WTI's having abandoned its international waste disposal business in exchange for an option to purchase shares of Waste Management International at a discount (which, plaintiffs contend, was less valuable). That cost, plaintiffs urge, was substantial and material, as evidenced by Waste's post-merger announcement (in December, 1990) that Waste Management International's revenues in 1990 would be twice the 1989 level. (Sec.Am.Comp., ¶¶ 25(A), 30.) Thus, plaintiffs conclude, WTI would have profited more by competing with Waste **791 Management International than by gaining the right to purchase its shares at a discount.

But the complaint does not allege that the directors knew of or attributed any specific dollar value to that Ancillary Agreement. Nor do plaintiffs cite authority for their unstated premise that the directors had a fiduciary or other affirmative duty to place a dollar value on that agreement when disclosing its terms. The proxy statement clearly disclosed that WTI would be giving up its international waste disposal business in exchange for the option. (*See* Proxy St. at 52.) So far as the complaint reveals, that disclosure provided the stockholders with essentially the same information that the directors had when they evaluated this particular agreement.

*5 The other alleged cost of the Ancillary Agreements was WTI's having taken over Waste's medical waste business, which (the plaintiffs allege) was unprofitable and politically unpopular. (Sec.Am.Comp., ¶ 25(B).) That claim labors under a similar infirmity, namely the implicit (and unsupported) assumption that the defendants had an underlying affirmative duty to place a dollar value on that "cost" and then disclose that value. Since no such duty exists here, this claim also fails.

For these reasons the disclosure claims relating to the Ancillary Agreements are legally insufficient.

C. *Disclosures Relating to Waste*

The plaintiffs next allege that the proxy statement failed to disclose certain information essential to determining Waste's value. They first allege that there were undisclosed "potentially material criminal and civil liabilities of Waste arising from its waste-handling activities." These included potential liabilities arising out of a contract between the United States Army and Chemical Waste Management (Waste's 78% subsidiary) that was being investigated by the Army and the Federal Bureau of Investigation. (Sec.Am.Comp., ¶ 26(B).) The complaint, however, alleges no facts from which one could infer that that information was material; it alleges only (and in conclusory terms) that the information was "potentially" material. (*Id.*)

The plaintiffs also claim that there were other inadequate disclosures relating to Waste, namely that the proxy statement (i) contained no projections of or other information about Waste's value, other than financial statements and valuations by Lazard and Salomon, which were based on public information (*see id.,* ¶ 26(A)); and (ii) falsely implied that Waste was financially robust and growing (*see* **792 *id.,* ¶ 26(C)). Once again, however, the plaintiffs have not coherently articulated a basis for imposing a duty to disclose information in addition to what was actually disclosed. Moreover, the proxy statement factually negates both disclosure claims. As noted in *Wheelabrator 1, supra,* at 16:
[T]he record does not support the plaintiffs' claim that the Proxy disclosures concerning Waste are insufficient. The Proxy Statement contains detailed disclosures of Waste's business and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.




Case 1:05-cv-00327-GMS    Document 44-12    Filed 01/20/2006    Page 9 of 15

Not Reported in A.2d  
(Cite as: 1992 WL 212595, *5 (Del.Ch.), 18 Del. J. Corp. L. 778, **792)

Page 5

management (Proxy St. at 79-80, 83-94), and of its historical financial data and pro forma financial statements. (*Id.* at 19-21, 62-63).

Since the plaintiffs have no new support for their resurrected claims, those claims will be dismissed.

D. *Disclosure Relating to the Post-Merger Restructuring Charge*

The plaintiffs do advance one new disclosure claim:

On November 17, 1990, WTI announced its third quarter and nine-month financial results. WTI took a $40 million pretax restructuring charge related to the merger with Waste. According to WTI's Form 10-Q for the quarter ended September 30, 1990, the charge "reflects the anticipated costs of realigning the Company's operations to fully realize the potential benefits of the integration with [Waste], and includes employee severance, relocation and other related charges." This $40 million charge was sufficient to turn a $32.7 million quarterly gain from operations into a $7.2 miillion [sic] loss. The Proxy Statement, though it includes projections for WTI through December 31, 1990, makes no mention of a $40 million charge as a result of the merger.
*6 (Sec.Am.Comp., ¶ 29.)

This claim is deficient because the complaint does not allege that at the time of the merger WTI's directors knew or should have known that WTI would write off $40 million as a restructuring charge against earnings. The merger was approved on September 7, 1990, two months before WTI publicly filed its Form 10-Q disclosing that write-off. Even if that information were material, WTI's directors cannot be faulted for failing to disclose what (so far as the complaint reveals) was, at that point, unknown and unknowable. *In re Anderson, Clayton Shareholders Lit.,* Del.Ch., 519 A.2d 669, 693 (1986).

The plaintiffs insist that one can infer from the pleaded facts that the defendants knew or should have known about the restructuring **793 charge at the time of the vote on the merger. [FN9] I cannot agree. The plaintiffs have pointedly *not* alleged that WTI's directors knew or could have known about the restructuring charge at that time, and the proxy statement itself specifically disclaimed any predictions of post-merger results. (*See id.* at 15-18; Proxy St. at 18-19.) The plaintiffs cannot fill by inference a factual void they created in their own pleading. Therefore, this new disclosure claim will also be dismissed.

E. *Disclosures Concerning the Merger Negotiations and Board Deliberations*

The one disclosure claim that the Court finds to be legally sufficient concerns the merger negotiations and WTI's board deliberations. The plaintiffs allege that Waste dictated the terms of the transaction to WTI's board, and that WTI and Waste engaged in only one day of negotiations. If true, that alleged fact contradicts the proxy statement disclosure that there were substantial merger negotiations that took place over the course of one week. (*See* Proxy St. at 30.) That disputed fact would also be material: it would create a doubt in the shareholders' minds whether the directors adequately represented the shareholders' interests during the negotiations. A substantial likelihood exists that a reasonable shareholder would find that fact important in deciding whether to vote for the merger. *Rosenblatt v. Getty Oil Co., supra.*

The defendants respond that the plaintiffs are simply pejoratively characterizing the events leading up to the merger, and that WTI's directors had no duty to adopt that sinister characterization and confess to the plaintiffs' charges of wrongdoing. That argument cannot succeed, because what the plaintiffs complain of is an omission to disclose a material *fact*. Although the apparent lack of factual support for this allegation gives me reason for concern, [FN10] that concern **794 is not a valid basis to dismiss the claim at this procedural stage.

Since this disclosure claim is legally sufficient, the Court does not reach the issue of the effect of shareholder ratification. For present purposes the shareholder vote approving of the merger will not be presumed to have been fully informed. *See Smith v. Van Gorkom,* 488 A.2d at 890. Because shareholder ratification is the only defense that the defendants have interposed against the plaintiffs' duty of loyalty and duty of care claims against WTI's directors, *see supra* note 5, those claims will survive this motion. [FN11]

IV. THE REVLON CLAIMS

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.




Case 1:05-cv-00327-GMS    Document 44-12    Filed 01/20/2006    Page 10 of 15

Not Reported in A.2d                                                                  Page 6
(Cite as: 1992 WL 212595, *7 (Del.Ch.), 18 Del. J. Corp. L. 778, **794)

*7 The most problematic claims concern the alleged breach of the directors' so-called *Revlon* duty to maximize shareholder value in a sale of corporate control. The defendants urge dismissal of these claims, arguing that *Paramount Communications, Inc. v. Time Inc.,* Del.Supr., 571 A.2d 1140 (1989) ("*Paramount* "), is the controlling authority for when *Revlon* duties attach, and that under *Paramount* no *Revlon* duties were triggered here.

The plaintiffs counter by arguing that *Barkan v. Amsted Industries, Inc.,* Del.Supr., 567 A.2d 1279 (1989) ("*Barkan* ") is the controlling authority, and that under *Barkan* the directors' *Revlon* duties were triggered and violated. The plaintiffs further contend that *Paramount* and *Barkan* are consistent, but that even if the Court finds to the contrary, the triggering requirements of *Paramount* were satisfied as well.

As for when *Revlon* duties are triggered, the Supreme Court's pronouncements in *Barkan* and *Paramount* are not easily reconciled, for they appear to flow from different premises. The premise of *Barkan* is that "the general principles announced in *Revlon* [and in other cited decisions] govern this case and every case where a fundamental change of corporate control occurs or is contemplated." 567 A.2d at 1286 (footnote omitted). Reasoning from that premise, the *Barkan* Court continued:

This Court has found that certain fact patterns demand certain responses from the directors.... *Revlon* is merely **795 one of an unbroken line of cases that seek to prevent the conflicts of interest that arise in the field of mergers and acquisitions by demanding that directors act with scrupulous concern for fairness to shareholders.... When the board is considering a single offer and has no reliable grounds upon which to judge its adequacy, this concern for fairnss demands a canvas of the market to determine if higher bids may be elicited. When, however, the directors possess a body of reliable evidence with which to evaluate the fairness of a transaction, they may approve that transaction without conducting an active survey of the market.

*Id.* at 1286-87 (citations omitted).

Under *Barkan* it appears that a board becomes subject to *Revlon* duties whenever "a fundamental change of corporate control occurs or is contemplated," *id.* at 1286, and that the nature of those duties depends upon particular factual circumstances. *Barkan* holds that when only one bidder is present, the directors have a duty to be adequately informed of the value of their own company before committing it to a change-of-control transaction. If the directors act without that knowledge they breach that duty, unless they first conduct an auction or canvass the market.

The premise of *Paramount* appears more narrow. There the Supreme Court stated that *Revlon* duties arise when "the dissolution or break-up of the corporate entity [is] inevitable." 571 A.2d at 1150. The Supreme Court then described two circumstances where that event will generally occur:

*8 Under Delaware law there are, generally speaking and without excluding other possibilities, two circumstances which may implicate *Revlon* duties. The first, and clearer one, is when a corporation initiates an active bidding process seeking to sell itself or to effect a business reorganization involving a clear breakup of the company. However, *Revlon* duties may also be triggered where, in response to a bidder's offer, a target abandons its long-term strategy and seeks an alternative transaction involving the break-up of the company.

*Id.* (citation and footnote omitted). Thus, *Paramount* suggests that *Revlon* duties arise only (i) in the two enumerated scenarios and (ii) in circumstances involving undefined "other possibilities."

The plaintiffs contend that *Paramount* and *Barkan* are reconcilable if *Paramount*'s "other possibilities" category is understood to include **796 *Barkan*'s formulation that *Revlon* duties arise whenever "a fundamental change of corporate control occurs or is contemplated." The plaintiffs' attempted reconciliation is problematic. A "fundamental change of corporate control" need not involve the "dissolution" or "breakup" of a company. Moreover, *Paramount* expressly rejects the proposition that *Revlon* duties automatically arise whenever a corporate transaction "might be construed as putting a corporation either 'in play' or 'up for sale' " [FN12]--two situations arguably satisfying the *Barkan* "fundamental change of corporate control" standard. Because *Barkan* appears not to fit within *Paramount*'s categories, it would be difficult to conclude with confidence that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.




Case 1:05-cv-00327-GMS    Document 44-12    Filed 01/20/2006    Page 11 of 15

Not Reported in A.2d                                                                           Page 7
(Cite as: 1992 WL 212595, *8 (Del.Ch.), 18 Del. J. Corp. L. 778, **796)

the *Barkan* formulation was intended as one of *Paramount's* "other possibilities."

It is, of course, possible that *Paramount* rejects the more generic *Barkan* formulation of when *Revlon* duties arise, and, thus, overrules *Barkan sub silentio* on that point. Absent a clear indication to that effect by our Supreme Court, however, I am not prepared to so conclude. *Paramount* gives no such clear indication; indeed, it does not even cite *Barkan,* a case the Supreme Court decided only three months earlier.

Fortunately, this case does not require the Court to reconcile the standard of *Paramount* with that of *Barkan,* for under either standard the plaintiffs have failed to plead a cognizable *Revlon* claim. The plaintiffs clearly have not satisfied the requirements of *Paramount.* [FN13] And, even assuming (but without deciding) that *Revlon* duties were triggered under the *Barkan* standard, no facts are alleged that support a cognizable claim that those duties were breached here. That is, even if there occurred a "fundamental change of corporate control" [FN14] that triggered *Revlon* duties under *Barkan,* the plaintiffs **797 have not alleged that WTI's directors were so uninformed about WTI's value that they violated their *Revlon* duties by not conducting an active survey of the market, or "market check."

*9 What the plaintiffs do allege is that WTI's directors failed to conduct a market check to assure themselves that there were no superior alternative transactions. (Sec.Am.Comp., ¶ 46.) That, without more, is insufficient. Under *Barkan* the plaintiffs must allege that WTI's directors did not have adequate information about the value of WTI. Here, the complaint says nothing about what the directors' did (or did not) know about WTI's value.

The plaintiffs stress that the complaint also alleges: The board of directors was not advised that it must, and did not, evaluate the adequacy of the merger. The board did not direct Lazard and Salomon to investigate and obtain the best available alternative transaction, limiting the advisors' role simply to determining whether the offer was "fair."
(*Id.,* ¶ 21(D); *see also id.,* ¶¶ 43, 46(A).) That allegation also does not address the directors' knowledge of WTI's value. Fairly read, it charges that WTI's board abdicated to its financial advisors the responsibility of evaluating the merger consideration, yet did not direct those advisors to investigate and obtain the best available alternative transaction. (*See* Pl. Ans. Br. at 68-69.) The focus of that allegation is upon the scope of the financial advisors' investigation, not upon the directors' knowledge of the company's value. While overseeing a faulty investigation might constitute a breach of other fiduciary duties owed by directors under more general principles, that conduct does not constitute a breach of *Revlon* duties as described in *Barkan.* [FN15] Because the complaint fails to allege a breach of *Revlon* duties under the standards of either *Barkan* or *Paramount,* the plaintiffs' *Revlon* claims must be dismissed.

**798 V. CLAIMS AGAINST PARTICULAR DEFENDANTS

The defendants next urge the dismissal of all claims against particular defendants. They contend that no claim is stated against (i) WTI, because a corporate entity owes no fiduciary duties to its shareholders and cannot be held vicariously liable for its directors' breaches of fiduciary duty; (ii) Waste, because it was not a fiduciary, and therefore owed no fiduciary duties to WTI's shareholders before the merger; and (iii) Waste's designees on the WTI board, because those directors did not participate in the merger negotiations or deliberations. I address each argument in turn.

First, while it is correct that the corporate entity as such is not a fiduciary to its stockholders and cannot be held liable to them on that basis, the corporation can be held liable in cases involving fraud or affirmative misconduct. *Gaffin v. Teledyne, Inc.,* Del. Ch., C.A. No. 5786, Hartnett, V.C., Mem.Op. at 6-7 (Oct. 9, 1987) (citing *Radol v. Thomas,* 6th Cir., 772 F.2d 244, 258 (1985), *cert. denied,* 477 U.S. 903 (1986); *Jordan v. Global Natural Resources, Inc.,* S.D.Ohio, 564 F.Supp. 59 (1983); *Bankers Securities Corp. v. Kresge Department Stores, Inc.,* D.Del., 54 F.Supp. 378 (1944)); *see also In re Dataproducts Corp. Shareholders Lit.,* Del.Ch., C.A. No. 11164, Jacobs, V.C., Mem.Op. at 13 (Aug. 22, 1991). A claim for equitable fraud is stated where a plaintiff alleges (a) a false representation (which may be negligent) by the defendant, (b) justifiable reliance by the plaintiff upon that representation, and (c) resulting damage. *Gaffin, supra,* at 7-8. Those allegations must be pleaded with particularity. Ch.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.




Case 1:05-cv-00327-GMS   Document 44-12   Filed 01/20/2006   Page 12 of 15

Not Reported in A.2d                                                                 Page  8
(Cite as: 1992 WL 212595, *9 (Del.Ch.), 18 Del. J. Corp. L. 778, **798)

Ct. Rule 9(b).

*10 The complaint here states a claim for equitable fraud against WTI. The disclosure claims found to be legally sufficient herein are levelled at (among others) WTI. (*See* Sec.Am.Comp., ¶¶ 27(D), 34(D)). The plaintiffs allege that WTI falsely represented that substantial negotiations took place, when in fact they did not. It also avers that the proxy statement was "false, misleading, and incomplete in its descriptions of the merger negotiations and board deliberations, which were material factors for shareholders in evaluating the recommendations of the board of directors and its financial advisors." (*Id.*, ¶ 27.) These allegations, fairly read, claim that the plaintiffs justifiably relied upon the misrepresentation when deciding to approve the merger. And in challenging the adequacy of the merger consideration, the complaint adequately alleges resulting damage. (*Id.*, ¶ 33.)

Second, it is correct that Waste owed no fiduciary duties to WTI's shareholders before the merger, and that Waste's designees **799 on WTI's board violated no fiduciary duties since they did not participate in the merger negotiations on WTI's behalf. Yet, those facts do not necessarily dispose of the plaintiffs' independent claim that Waste and its designees to WTI's board aided and abetted WTI's other directors in breaching their fiduciary duty to WTI's stockholders. To evaluate that latter claim a different analysis must be employed.

To state an aiding and abetting claim against a nonfiduciary, the complaint must allege (i) the existence of a fiduciary relationship, (ii) a breach of that relationship, and (iii) knowing participation by the defendant in the fiduciary's breach. *See Ivanhoe Partners v. Newmont Mining Corp.*, Del.Supr., 535 A.2d 1334, 1344 (1987). Of particular pertinence here is that the complaint must contain factual allegations from which "knowing participation" can be reasonably inferred. *Weinberger v. Rio Grande Indus.*, Del.Ch., 519 A.2d 116, 131 (1986). The allegations in the complaint are wholly conclusory. (Sec. Am. Comp., ¶¶ 10, 11, 49, 61.) Where, as here, it is undisputed that Waste's designees played no role in negotiating or approving the merger, such minimalist pleading will almost certainly be fatal. *See Citron v. E.I. DuPont de Nemours & Co.*, Del. Ch., 584 A.2d 490, 499 & n. 12 (1990); *Greenfield v. Tele-Communications, Inc.*, Del. Ch., C.A. No. 9814, Allen, C., Ltr. Op. at 6-9 (May 10, 1989).

The facts asserted in the complaint do not state a case for knowing participation. Not only were the Waste designees uninvolved, but also Waste was not a majority stockholder when the merger was negotiated and, significantly, plaintiffs do not allege that WTI's board was in some fashion controlled by Waste. *See Deutsch v. Cogan*, Del. Ch., C.A. No. 8808, Hartnett, V.C., Ltr. Op. at 6 (Apr. 11, 1989). Instead, plaintiffs rely on conclusory charges that Waste "dictated" terms to a self-dealing WTI board, after having threatened to dispose of its 22% minority position in WTI if its terms were not met. (Sec. Am. Comp., ¶¶ 17, 19A, 19C.) These allegations, if true, lead to an inference of hard bargaining on the part of Waste--conduct in which Waste had every right to engage--not of complicity in whatever breaches of duty WTI's board may have committed. "Knowing participation" requires more. *See In re Shoe-Town, Inc. Stockholders Lit.*, Del. Ch., C.A. No. 9483, Chandler, V.C., Mem. Op. at 20 (Feb. 12, 1990) (knowing participation sufficiently alleged where the defendant charged with aiding and abetting took an active role in advising the board, the buyer, and the special committee).

*11 **800 For these reasons, all claims against WTI will be dismissed with the exception of the claim for equitable fraud. The claims against Waste and its designees on WTI's board will also be dismissed.

## VI. EFFECT OF EXCULPATORY CERTIFICATE PROVISION

On November 21, 1986, long before the events at issue, WTI amended its certificate of incorporation pursuant to 8 *Del.C.* § 102(b)(7), to add a provision eliminating its directors' personal liability for money damages for specified breaches of fiduciary duty. That provision ("Article FOURTEENTH") tracks the language of § 102(b)(7) and pertinently states:

A director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, except for liability (i) for any breach of the director's duty of loyalty to the Corporation or its stockholders, (ii) for acts or omissions not in good faith or which involve

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.




Case 1:05-cv-00327-GMS    Document 44-12    Filed 01/20/2006    Page 13 of 15

Not Reported in A.2d                                                                                           Page 9
(Cite as: 1992 WL 212595, *11 (Del.Ch.), 18 Del. J. Corp. L. 778, **800)

intentional misconduct or a knowing violation of law, (iii) under Section 174 of the Delaware General Corporation Law, or (iv) for any transaction from which the director derived an improper personal benefit.

(App. to Def. Op. Br., Exh. 3 at 3.) The defendants take the position that by virtue of Article FOURTEENTH, the plaintiffs' duty of care and duty of disclosure claims must be dismissed, as must their *Revlon* claims against WTI's directors, at least insofar as those claims seek monetary damages. [FN16]

The plaintiffs argue that the Court may not consider Article FOURTEENTH on this Rule 12(b)(6) motion, because the complaint does not plead or otherwise refer to that provision. There is authority to support this view. *Boeing Co. v. Shrontz,* Del. Ch., C.A. No. 11273, Berger, V.C., Mem. Op. at 7 (Apr. 20, 1992); *see Rothenberg v. Santa Fe Pacific Corp.,* Del. Ch., C.A. No. 11749, Jacobs, V.C. (May 18, 1992). The defendants did not raise Article FOURTEENTH as an affirmative defense in their Rule 12(b)(6) dismissal motion. They contend, instead, that this Court may and should take judicial notice of WTI's certificate provision. Thus, the Court must **801 resolve a threshold issue: can it judicially notice the contents of a certificate of incorporation of a Delaware corporation on a Rule 12(b)(6) dismissal motion? Having reviewed the pertinent legal authorities and the parties' supplemental briefs, I conclude that it can.

Rule 201(b) of the Delaware Uniform Rules of Evidence states:
A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

Del. Unif.R.Ev. 201(b). The certificate of incorporation of a Delaware corporation falls within the ambit of that Rule. By law it is filed with, and is obtainable by resort to, the office of the Secretary of State of Delaware. *See* 8 *Del. C.* § 101. That office is located within the territorial jurisdiction of Delaware and is a source "whose accuracy cannot reasonably be questioned."

*12 The Court is not barred from taking judicial notice of a Delaware corporation's certificate of incorporation simply because the procedural setting is a motion to dismiss under Rule 12(b)(6). Judicial notice may be taken at any stage of the proceeding. Del.Unif.R.Ev. 201(f). The United States District Court for Delaware has specifically held that publicly filed documents (of which a certificate of incorporation is an example) are judicially noticeable on a motion to dismiss. *Diceon Electronics, Inc. v. Calvary Partners, L.P.,* D.Del., 772 F.Supp. 859, 861 (1991) ("On a motion to dismiss the Court is free to take judicial notice of certain facts that are of public record if they are provided to the Court by the party seeking to have them considered."); *see also Southmark Prime Plus, L.P. v. Falzone,* D.Del., 776 F.Supp. 888, 891-92 (1991) ("[O]n a motion for judgment on the pleadings, as with motions to dismiss pursuant to Rule 12(b), the Court is not strictly limited to the facts addressed in the pleadings; the Court may take judicial notice of additional facts where appropriate."). [FN17]

Having judicial noticed, and then considered, the contents of Article FOURTEENTH, I conclude as a matter of law that that Article bars the plaintiffs' duty of care claim insofar as it seeks **802 monetary damages against WTI's directors. *Rothenberg, supra,* at 9-10. However, because of Article FOURTEENTH's exceptions (which track those of § 102(b)(7)), that provision does not bar (a) the plaintiffs' duty of loyalty claims, (b) any claim that the directors derived an improper personal benefit from the merger, or (c) any claim that the directors' actions were not in good faith or involved intentional misconduct or knowing violations of law. [FN18] *Id.* at 10 n. 6.

* * *

For the foregoing reasons, the pending motion to dismiss will be granted with respect to (i) the plaintiffs' disclosure claims, except for the claim relating to the merger negotiations, (ii) the *Revlon* claims, (iii) all claims against WTI except for the claims of equitable fraud, (iv) all claims against Waste and its designees to the WTI board, and (v) the plaintiffs' money damage claims against WTI's directors for breach of the duty of care. In all other respects the motion will be denied. Counsel shall submit a form of implementing order on notice.

FN1. The facts are derived from both the complaint

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.




Case 1:05-cv-00327-GMS   Document 44-12   Filed 01/20/2006   Page 14 of 15

Not Reported in A.2d                                                                Page 10
(Cite as: 1992 WL 212595, *12 (Del.Ch.), 18 Del. J. Corp. L. 778, **802)

and the documents incorporated therein by reference.

FN2. To support their claim that the merger price was unfair, the plaintiffs argue that the premium received by WTI's shareholders was only 4%. (*See* Sec.Am.Comp., ¶¶ 19(B), 33, 45(A), 55, 60.) The Court disagrees with the plaintiffs' analysis for the reasons stated in its earlier Opinion. *See Wheelabrator 1, supra,* at 5 n. 2. That issue has no impact on the resolution of the pending motion, however.

FN3. The Ancillary Agreements are described in the preliminary injunction Opinion. *Wheelabrator 1, supra,* at 6 n. 3. The terms of only two of those agreements are relevant on this motion. In one, Waste granted WTI an option to purchase 15% of the stock of Waste Management International, Inc. ("Waste Management International") at a discount from the fair market value of such stock at the time the option is exercised. (Waste Management International is a Waste subsidiary that owns most of Waste's interest in waste management service operations outside of North America.) In exchange for that option, WTI agreed to forego its own waste management service operations outside North America for ten years, and not to compete with Waste International in that particular market. In the other agreement, Waste gave WTI an option to purchase Waste's medical-waste disposal business at a 15% discount from fair market value.

FN4. Plaintiffs allege that this announcement evidences the harm caused to WTI by the Ancillary Agreement in which WTI agreed not to operate outside of North America for ten years. *See supra* note 3.

FN5. Notably, the defendants do not challenge the legal sufficiency of the plaintiffs' claims against WTI's directors for breach of their duties of care and loyalty. (*See* Def. Rep. Br. at 26 n. 12.) Rather, the defendants urge the dismissal of those claims solely on the basis of the affirmative defenses of shareholder ratification and WTI's exculpatory certificate provision.

FN6. The disclosure claims must also be validated by the contents of the disclosure document. In evaluating the legal sufficiency of the plaintiffs' disclosure claims, the Court may consider the proxy statement, since it was specifically referred to and relied upon in (and is therefore deemed to be incorporated by reference into) the complaint. *Wiener v. The Southern Co.,* Del. Ch., C.A. No. 10525, Jacobs, V.C., Mem.Op. at 11 & n. 7 (Jan. 24, 1992) (and cases cited therein).

FN7. *See In re KDI Corp. Shareholders Lit.,* Del. Ch., Cons. C.A. No. 10278, Berger, V.C., Mem.Op. at 10-11 (Dec. 13, 1990) (The "disclosure claims ... were considered and rejected in connection with plaintiffs' motion for a preliminary injunction. Little more needs to be added in the context of this motion to dismiss.... Disclosure claims do not survive a motion to dismiss simply because they are inserted in the Complaint. There must be some basis from which this Court can infer that the non-disclosures were material....") (citations omitted).

FN8. The challenged proxy disclosures concerning the comparables are preceded by the following statement:
As described above ... Lazard Freres and Salomon Brothers delivered their written fairness opinions to the Board of Directors of WTI. In that connection, Lazard Freres and Salomon Brothers each conducted a review of certain financial information and discussed certain financial analyses prepared by them relating to WTI, [Waste] and the proposed transaction, and made a joint presentation concerning their review to WTI's Board of Directors, as further described below.
(Proxy St. at 37.)

FN9. Those facts are that the charge related directly to the merger, only a short period of time elapsed between the shareholders' approval of the merger and the disclosure of the restructuring charge, and that the magnitude of the charge itself was such that WTI's directors knew or should have known about it at the time of the merger. (*See* Or. Arg. Tr. at 64-67.)

FN10. The Court rejected this claim at the preliminary injunction stage because it lacked sufficient record support. *Wheelabrator 1, supra,* at 16-17. At oral argument on the motion to dismiss, the Court asked plaintiffs' counsel whether, given that ruling, there was any evidentiary basis for this claim. (*See* Or. Arg. Tr. at 75.) Counsel responded that there was, citing the deposition of Mr. James Edward Koenig. The Court has reviewed that deposition, and continues to be of the




Case 1:05-cv-00327-GMS   Document 44-12   Filed 01/20/2006   Page 15 of 15

Not Reported in A.2d
(Cite as: 1992 WL 212595, *12 (Del.Ch.), 18 Del. J. Corp. L. 778, **802)

Page 11

view that on the present record the evidentiary support is scanty at best.

FN11. The defendants have raised WTI's exculpatory certificate of incorporation provision as a defense to the duty of care claims against WTI's directors, but only insofar as those claims seek money damages. These money damage claims are dismissed for the reasons discussed in Part VI of this Opinion.

FN12. *Paramount*, 571 A.2d at 1151.

FN13. Neither of the two *Paramount* scenarios for triggering *Revlon* duties are implicated here. The plaintiffs argue that this case falls under the first, *i.e.*, "when a corporation initiates an active bidding process seeking to sell itself or to effect a business reorganization involving a clear break-up of the company." *Paramount*, 571 A.2d at 1150. However, Waste, not WTI, "initiated" the merger discussions and negotiations. (Am. Comp., ¶ 17). There was no "active bidding process" since there was only one bidder, and it is not altogether clear that the merger constituted a "sale" or "business reorganization," since WTI continues as a corporate entity and its public shareholders remained shareholders (albeit minority owners) of WTI after the merger. Finally, there will be no "break-up of the company."

FN14. The defendants argue that no "change of corporate control" of WTI resulted from the merger, because Waste is a public company and the public shareholders of WTI became shareholders of Waste, another public company. As noted, I need not decide that issue here.

FN15. The plaintiffs' other fiduciary duty claims (Sec. Am. Comp., ¶¶ 54, 59.) survive this motion, even though they rest upon the same set of facts as the *Revlon* claims. *See supra* note 5. Thus, the practical result of dismissing the *Revlon* claim is that the plaintiffs will now be required to establish their fiduciary duty causes of action under a traditional analysis where they will bear the burden of establishing that the directors are not entitled to the presumptions of the business judgment rule.

FN16. Since the Court has determined that the *Revlon* claims must be dismissed on other grounds, *see supra* Part IV, it does not consider the effect of the exculpatory certificate provision on those claims.

FN17. Although Federal Court decisions interpreting Federal Rules of Civil Procedure are not binding, this Court accords them considerable weight when interpreting counterpart Chancery Court Rules. *Cede & Co. v. Technicolor, Inc.*, Del.Supr., 542 A.2d 1182, 1191 n. 11 (1988); *Moran v. Household Int'l, Inc.*, Del. Ch., 490 A.2d 1059, 1073, *aff'd*, Del.Supr., 500 A.2d 1346 (1985). Federal decisions interpreting counterpart Rules of Evidence are entitled to similar deference.

FN18. Nor does Article FOURTEENTH bar the plaintiffs' disclosure claims for monetary damages against WTI's directors, as the defendants urge. The defendants rely upon *In re Dataproducts Corp. Shareholders Lit.*, Del. Ch., C.A. No. 11164, Jacobs, V.C., Mem.Op. at 12-13 (Aug. 22, 1991), where this Court found that an exculpatory certificate provision similar to Article FOURTEENTH barred the plaintiffs' duty of disclosure claims for monetary damages. The defendants' reliance upon *Dataproducts* is misplaced, because in that case:

the complaint [did] not allege that the complained-of disclosure violations were of the kind for which damages are allowed under that certificate provision. Even under liberal "notice pleading" standards the complaint [could not] be fairly read to charge the directors with having acted intentionally or in bad faith, or with having violated a fiduciary duty of loyalty (as distinguished from the duty to exercise appropriate due care).

*Id.* at 12. By contrast, the complaint here specifically alleges that by virtue of the nondisclosures WTI's directors "intended to carry out ... a preconceived plan." (Sec. Am. Comp., ¶ 33.) That is, the complaint here (unlike that in *Dataproducts*) alleges that the breach of the duty of disclosure was an intentional violation of the duty of loyalty. Thus, Article FOURTEENTH does not bar the plaintiffs' monetary damage claims against WTI's directors for breach of their duty of disclosure.

Not Reported in A.2d, 1992 WL 212595 (Del.Ch.), 18 Del. J. Corp. L. 778

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.


