# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
| --- | --- |
| IN RE MBNA CORPORATION<br>DERIVATIVE AND CLASS LITIGATION | Lead Case No. 1:05-cv-00327-GMS |
| This Document Relates To:<br><br>ALL ACTIONS | |

## REPLY BRIEF OF NOMINAL DEFENDANTS MBNA CORPORATION AND BANK OF AMERICA CORPORATION, THE MBNA "INSIDER DEFENDANTS" AND DEFENDANTS RANDOLPH D. LERNER AND KENNETH L. LEWIS IN SUPPORT OF THEIR MOTION TO DISMISS

Richard H. Morse (No. 531)
rmorse@ycst.com
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600

*Attorneys for nominal defendants MBNA*
*Corporation and Bank of America Corporation*
*and defendants Bruce L. Hammonds, Kenneth*
*A. Vecchione, Richard K. Struthers, John R.*
*Cochran, III, Lance L. Weaver, Charles C.*
*Krulak, Michael G. Rhodes, John W. Scheflen,*
*Randolph D. Lerner and Kenneth L. Lewis*

Of Counsel:

Richard J. Urowsky
Richard C. Pepperman II
Ryan C. Williams
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-4000

April 5, 2006

## TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT ..............................................................................................................2

I.      Plaintiffs' Derivative Claims Should Be Dismissed ...............................................2

      A.      Plaintiffs Lack Standing to Assert Derivative Claims ................................2

      B.      Plaintiffs Have Not Alleged Facts Sufficient to
              Demonstrate That Their Failure to Serve a Demand Upon
              BAC's Board Was Excused .......................................................................5

II.     There Is No Direct Shareholder Cause of Action against Officers and
      Directors of a Maryland Corporation for Breach of Fiduciary Duties....................7

III.    Plaintiffs' Supposed "Direct" Claims Also Fail as a Matter of Law ......................9

      A.      The MBNA Board's Approval of the BAC Merger Was a
              Valid Exercise of the Board's Business Judgment ......................................9

      B.      Plaintiffs Have Failed to Allege Any Materially Misleading
              Omissions from the Proxy Statement .......................................................14

             1.      The Merger Negotiations ..............................................................15

             2.      Hammonds' Statement in the June 2005 *Business
                     Week* Article ................................................................................16

             3.      The UBS Fairness Opinion ...........................................................17

      C.      Plaintiffs' Claims on Behalf of the Putative "Holder Class"
              Are Unduly Speculative and Preempted by Federal Law...........................18

IV.     Plaintiffs' Claim Against Kenneth Lewis for Alleged Aiding and
      Abetting a Violation of Fiduciary Duties Should be Dismissed............................19

V.      Plaintiffs' Claims Against Randolph Lerner Should Be Dismissed ......................19

CONCLUSION...........................................................................................................20

# TABLE OF AUTHORITIES

*Page(s)*

## FEDERAL CASES

*Blasband* v. *Rales*, 979 F.2d 324 (3d Cir. 1992)....................................................................4

*Bradfisch* v. *Templeton Funds, Inc.*,
    319 F. Supp. 2d 897 (S.D. Ill. 2004)..............................................................................8

*Burns* v. *Friedli*, 241 F. Supp. 2d 519 (D. Md. 2003) ...........................................................11

*Caven* v. *Miller* (*In re Paracelsus Sec. Litig.*), No. H-96-4291,
    1998 U.S. Dist. LEXIS 5484 (S.D. Tex. Mar. 7, 1998)....................................................4

*Delmarva Sash & Door Co. of Maryland, Inc.* v. *Andersen Windows, Inc.*,
    218 F. Supp. 2d 729 (D. Md. 2002) ................................................................................8

*Heit* v. *Tenneco, Inc.*, 319 F. Supp. 884 (D. Del. 1970) ........................................................2

*Jolly Roger Fund, L.P.* v. *Sizeler Prop. Investors, Inc.*, No. RDB 05-841,
    2005 WL 2989343 (D. Md. Nov. 3, 2005) ....................................................................2

*Kaufman* v. *Safeguard Scientific, Inc.*,
    587 F. Supp. 486 (E.D. Pa. 1984) ..................................................................................6

*Keyser* v. *Commonwealth Nat'l Financial Corp.*,
    644 F. Supp. 1130 (M.D. Pa. 1986) ..............................................................................13

*Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Dabit*,
    547 U.S. __, 2006 WL 694137 (Mar. 21, 2006)..........................................................2, 18

*Phillips* v. *LCI International, Inc.*, 190 F.3d 609 (4th Cir. 1999)..........................................12

*Pittsburgh Terminal Corp.* v. *Baltimore & Ohio R. Co.*,
    680 F.2d 933 (3d Cir. 1982)............................................................................................8

*Prince* v. *Palmer*, No. 04-5494, 148 Fed. Appx. 249,
    2005 WL 2174643 (6th Cir. July 13, 2005)....................................................................4

*Romero* v. *U.S. Unwired*, Nos. Civ. A. 04-2312 & 04-2436,
    2005 WL 2050280 (E.D. La. Aug. 11, 2005) ................................................................17

*Stepak* v. *Addison*, 20 F.3d 398 (11th Cir. 1994)..................................................................6

*Strougo* v. *Bassini*, 282 F.3d 162 (2d Cir. 2002) ..................................................................8

## STATE CASES

*Abbey* v. *E.W. Scripps Corp.*, No. 13397,
    1995 WL 478957 (Del. Ch. Aug. 9, 2005) ....................................................17

*Alidia* v. *Internet.com Corp.*, No. 17235-NC,
    2002 WL 31584292 (Del. Ch. Nov. 6, 2002) ...............................................11

*Aronson* v. *Lewis*, 473 A.2d 805 (Del. 1984) ...........................................................6

*Ash* v. *McCall*, No. Civ. A. 17132,
    2000 WL 1370341 (Del. Ch. Sept. 15, 2000) ................................................4

*Bayberry Associates* v. *Jones*, 783 S.W.2d 553 (Tenn. 1990)..............................8

*Bershad* v. *Curtiss-Wright Corp.*, 535 A.2d 840 (Del. 1987).............................15

*Biondi* v. *Scrushy*, 820 A.2d 1148 (Del. Ch. 2003) .............................................7

*Booth* v. *Robinson*, 55 Md. 419 (Md. 1881) .........................................................9

*Crescent/Machine I Partners, L.P.* v. *Turner*,
    846 A.2d 963 (Del. Ch. 2000)........................................................................11

*Danielewicz* v. *Arnold*, 769 A.2d 274 (Md. Ct. Spec. App. 2001) .......................3, 8

*Decker* v. *Clausen*, Nos. 10,684 and 10,685,
    1989 WL 133617 (Del. Ch. Nov. 6, 1989) ...................................................10

*In re General Motors (Hughes) S'holder Litig.*, No. 20269,
    2005 WL 1089021 (Del. Ch. May 4, 2005)..................................................19

*Grobow* v. *Perot*,
    526 A.2d 914 (Del. Ch. 1987)........................................................................6

*Hudson* v. *Prime Retail, Inc.*, No. 24-C-03-5806,
    2004 WL 1982383 (Md. Cir. Ct. Apr. 1, 2004).............................................14

*Indurated Concrete Corp.* v. *Abbott*, 74 A.2d 17 (Md. 1950) ..............................7

*In re JCC Holdings Co. S'holder Litig.*,
    843 A.2d 713 (Del. Ch. 2003).......................................................................17

*Jasinover* v. *Rouse Co.*, No. 13-C-04-59594,
    2004 WL 3135516 (Md. Cir. Ct. Nov. 4, 2004) ..........................................10, 13, 15

*Kessler* v. *Sinclair*, 641 N.E.2d 135 (Mass. App. Ct. 1994)...................................................4

*Krim* v. *ProNet, Inc.*, 744 A.2d 523 (Del. Ch. 1999)............................................................15

*Kysor Industrial Corp.* v. *Margaux, Inc.*,
    674 A.2d 889 (Del. Super. Ct. 1996) ...........................................................13

*Levine* v. *Smith*, 591 A.2d 194 (Del. 1991) .........................................................6

*Lewis* v. *Anderson*, 477 A.2d 1040 (Del. 1984)..................................................2, 3

*Lewis* v. *Ward*, 852 A.2d 896 (Del. 2004) .........................................................3, 4

*Manzo* v. *Rite Aid Corp.*, No. 18451-NC,
    2002 WL 31926606 (Del. Ch. Dec. 19, 2002)................................................17

*Matador Capital Mgmt. Corp.* v. *BRC Holdings, Inc.*,
    729 A.2d 280 (Del. Ch. 1998).....................................................................17

*McMillan* v. *Intercargo Corp.*, 768 A.2d 492 (Del. Ch. 2000) ............................................19

*In re MONY Group, Inc. S'holder Litig.*,
    852 A.2d 9 (Del. Ch. 2004)........................................................................10

*Parnes* v. *Bally Entm't Corp.*, 722 A.2d 1243 (Del. 1999) ....................................................11

*In re Prudential Ins. Co. Derivative Litig.*,
    659 A.2d 961 (N.J. Super. 1995) ................................................................6

*In re Pure Resources, Inc. S'holders Litig.*,
    808 A.2d 421 (Del. Ch. 2002).....................................................................17

*Rand* v. *Western Air Lines, Inc.*, No. 8632,
    1994 WL 89006 (Del. Ch. Feb. 25, 1994), *aff'd*, 659 A.2d 228 (Del. 1995) .................13

*Revlon* v. *MacAndrews & Forbes Holdings, Inc.*,
    506 A.2d 173 (Del. 1985) ..........................................................................9

*Saadeh* v. *Saadeh, Inc.*, 819 A.2d 1158 (Md. Ct. Spec. App. 2003) ......................................19

*Skeen* v. *Jo-Ann Stores, Inc.*, 750 A.2d 1170 (Del. 2000) ......................................................17

*Spiegel* v. *Buntrock*, 571 A.2d 767 (Del. 1990).................................................................6

*Tafflin* v. *Levitt*, 608 A.2d 817 (Md. Ct. Spec. App. 1992) ....................................................7

*Toner* v. *Baltimore Envelope Co.*, 498 A.2d 642 (Md. 1985) ................................................7

*Waller* v. *Waller*, 49 A.2d 449 (Md. 1946)...........................................................................7, 8

*Werbowsky* v. *Collomb*, 766 A.2d 123 (Md. 2001) ............................................................7, 8, 9

*In re Wheelabrator Techs., Inc. S'holders Litig.*,
    663 A.2d 1194 (Del. Ch. 1995)......................................................................................11

*Wittman* v. *Crooke*, 707 A.2d 422 (Md. Ct. Spec. App. 1998)............................................9, 14

*Yanow* v. *Scientific Leasing, Inc.*,
    1988 WL 8772 (Del. Ch. Feb. 8, 1988) .........................................................................13

*Zapata Corp.* v. *Maldonado*, 430 A.2d 779 (Del. 1980) ......................................................6

## STATUTES AND RULES

Md. Code Ann. Corps. & Ass'ns § 2-405.1 .........................................................................8, 10

Md. Code Ann. Cts. & Jud. Proc. § 5-418 ..........................................................................19

15 U.S.C. § 78bb(f)............................................................................................................18

Fed. R. Civ. P. 23.1 ..........................................................................................................6

## PRELIMINARY STATEMENT

Despite submitting a 69-page answering brief, plaintiffs have not demonstrated that the allegations of their Amended Complaint state a claim.

*First*, plaintiffs cannot assert derivative claims on behalf of either MBNA (which no longer exists) or Bank of America Corporation ("BAC"). Under the continuous ownership rule, plaintiffs lost standing to assert derivative claims following the merger of MBNA into BAC. Plaintiffs' receipt of BAC shares pursuant to the merger does not bring their claims within any recognized exception to the rule. And, even if plaintiffs continued to possess standing, they have not alleged sufficient facts to demonstrate that their failure to make a demand upon the BAC board was excused. The failure to plead demand futility is alone reason to dismiss plaintiffs' derivative claims.

*Second*, plaintiffs cannot assert purportedly "direct" claims against MBNA's former officers and directors. Under Maryland law, which governs such claims, a corporation's officers and directors do not owe any fiduciary duties directly to shareholders but rather to the corporation. Accordingly, such duties are enforceable only by the corporation itself or through a derivative suit brought on its behalf, and plaintiffs lack standing to assert such derivative claims. The out-of-state authorities on which plaintiffs principally rely either misinterpret or simply ignore Maryland law.

*Third*, even if plaintiffs could assert fiduciary duty claims against MBNA's officers or directors, those claims would fail as a matter of law. The decision of the MBNA board to approve the proposed BAC merger was a sound exercise of the board's business judgment, which was ratified by a majority of MBNA's shareholders. Plaintiffs likewise have not identified any material omissions from the Proxy Statement

announcing the merger.  Indeed, they fail even to address in their brief the majority of

alleged "omissions" challenged in their Amended Complaint.  Similarly, plaintiffs'

claims on behalf of the so-called "Holder Class" are legally defective.  Those claims

depend upon a wholly conjectural and implausible theory of injury that cannot support a

cause of action and, in any event, are preempted by federal law.  *See Merrill Lynch,*

*Pierce, Fenner & Smith, Inc.* v. *Dabit*, 547 U.S. ____, 2006 WL 694137 (Mar. 21, 2006).

       *Finally*, plaintiffs' claim against Kenneth Lewis, BAC's chairman and

CEO, for aiding and abetting an alleged breach of fiduciary duties by MBNA's officers

and directors should be dismissed as well.  Even if Maryland did recognize such a cause

of action, plaintiffs have not adequately alleged an underlying breach, nor have they

alleged that Lewis knowingly participated in any such breach.  In addition, plaintiffs'

claims against Randolph Lerner, MBNA's former chairman, fail given MBNA's charter.

## ARGUMENT

**I.**    **Plaintiffs' Derivative Claims Should Be Dismissed.**

    **A.**    **Plaintiffs Lack Standing to Assert Derivative Claims.**

       Under the continuous ownership rule, which applies in both Maryland and

Delaware, a plaintiff who ceases to be a shareholder in the corporation on whose behalf a

derivative suit is filed loses standing to assert claims on the entity's behalf.  *See, e.g.*,

*Jolly Roger Fund, L.P.* v. *Sizeler Prop. Investors, Inc.*, No. RDB 05-841, 2005 WL

2989343, at *7 (D. Md. Nov. 3, 2005); *Heit* v. *Tenneco, Inc.*, 319 F. Supp. 884, 886 (D.

Del. 1970).  Upon completion of the merger between MBNA and BAC, plaintiffs ceased

to be shareholders of MBNA and thus lost standing to assert derivative claims on

MBNA's behalf.  *See, e.g.*, *Lewis* v. *Anderson*, 477 A.2d 1040, 1049-50 (Del. 1984).

Likewise, under the continuous ownership rule, a plaintiff cannot assert claims on behalf of a company based on events that occurred before he or she acquired shares in the company. *See, e.g., Danielewicz* v. *Arnold*, 769 A.2d 274, 281 (Md. Ct. Spec. App. 2001); *Lewis*, 477 A.2d at 1046. Plaintiffs were not BAC shareholders when they filed their Amended Complaint or at the time of the events at issue, and therefore they cannot assert derivative claims on BAC's behalf based on those events.

Plaintiffs do not argue that their claims fall within any recognized exception to the continuous ownership rule.[1] They instead contend that they should be allowed to assert derivative claims on behalf of BAC because those claims passed to BAC upon completion of the merger and they are now BAC shareholders. (Pls. Ans. Br. at 57-58.) In both *Lewis* v. *Anderson*, 477 A.2d 1040 (Del. 1984), and *Lewis* v. *Ward*, 852 A.2d 896 (Del. 2004), however, the Delaware Supreme Court rejected post-merger derivative claims by plaintiffs who, like plaintiffs here, exchanged their shares in the acquired company for shares in the acquiring company pursuant to the merger. Applying the continuous ownership rule, the Court in both cases held that plaintiffs' standing to assert derivative claims was extinguished by virtue of the merger. *See Lewis*, 477 A.2d at 1042-43; *Ward*, 852 A.2d at 897-98.

Plaintiffs argue that the transactions in *Lewis* and *Ward* are distinguishable from the MBNA-BAC merger because the acquired company in those other cases became

---

[1] In *Lewis*, the Court recognized two narrow exceptions to the general rule requiring that a stockholder demonstrate continuous ownership from the time of the challenged events to the termination of the litigation: (1) "where the merger itself is the subject of a claim of fraud" designed solely to extinguish derivative claims, and (2) where the merger was a mere "reorganization," *i.e.*, a transaction that "in reality . . . does not affect plaintiff's ownership of the business enterprise." 477 A.2d at 1046 n.10. Plaintiffs do not argue that their derivative claims fall within either of these narrow exceptions.

a wholly-owned subsidiary of the acquiring company. (Pls. Ans. Br. at 58 & n.30.) As subsequent decisions make clear, that distinction—which is not discussed in the *Lewis* and *Ward* opinions—has no legal significance. For example, the derivative plaintiff in *Prince* v. *Palmer*, No. 04-5494, 148 Fed. Appx. 249, 2005 WL 2174643 (6th Cir. July 13, 2005), similarly acquired stock in a new company in exchange for his existing shares pursuant to a stock-for-stock merger. Applying Delaware law, the Sixth Circuit rejected plaintiffs' argument that "his continuing, though diluted, interest in the new corporation" entitled him to maintain his derivative suit under the continuous ownership rule. 148 Fed. Appx. at 251-52. Likewise, in *Ash* v. *McCall*, No. Civ. A. 17132, 2000 WL 1370341, at *11 (Del. Ch. Sept. 15, 2000), the Delaware Chancery Court rejected an argument that shareholders maintained standing to assert derivative claims for pre-merger breaches of fiduciary duties "because they were shareholders of [the acquired company] and became shareholders of [the acquiring company] in connection with the merger." As the *Ash* court held, under "settled law in Delaware," a plaintiff who "ceases to be share-holder whether by merger or for any other reason . . . loses standing to continue a derivative suit." 2000 WL 1370341, at *11 (quoting *Lewis*, 477 A.2d at 1049).

Plaintiffs' reliance on *Kessler* v. *Sinclair*, 641 N.E.2d 135 (Mass. App. Ct. 1994), and *Caven* v. *Miller* (*In re Paracelsus Sec. Litig.*), No. H-96-4291, 1998 U.S. Dist. LEXIS 5484 (S.D. Tex. Mar. 7, 1998), is misplaced. Both decisions predated the Delaware Supreme Court's decision in *Ward* and relied upon the Third Circuit's charac-terization of Delaware law in *Blasband* v. *Rales*, 979 F.2d 324 (3d Cir. 1992). In *Blasband*, the Third Circuit predicted that Delaware courts would recognize continued standing to assert derivative claims following a stock-for-stock merger. The Delaware

Supreme Court later rejected this ruling as "inconsistent with the clear holding of *Lewis*

v. *Anderson.*" *Ward*, 852 A.2d at 903.

In short, plaintiffs lost standing to prosecute their derivative claims after

MBNA merged with BAC. Those claims therefore should be dismissed.

**B.    Plaintiffs Have Not Alleged Facts Sufficient to Demonstrate That
Their Failure to Serve a Demand Upon BAC's Board Was Excused.**

Plaintiffs' derivative claims also should be dismissed for failure to serve a

demand upon the board of either MBNA or BAC or to demonstrate that such demand was

excused.[2]  Plaintiffs argue that demand upon BAC's board was excused because the

board has not asserted the claims at issue in this case and also agreed, as part of the

merger agreement, to assist in defending against those and similar claims. (Pls. Ans. Br.

at 60.) Plaintiffs acknowledge that Delaware law controls whether demand was excused

because BAC is a Delaware corporation. (*Id.* at 15.)

Section 6.7 of the Merger Agreement states that "[i]n the event of any

threatened or actual claim . . . in which . . . a director, officer or employee of [MBNA]

. . . is, or is threatened to be, made a party" based in whole or in part on the fact that (i) he

or she is or was an officer, director or employee of MBNA or (ii) the merger agreement

or any transactions relating to the agreement, the parties will "cooperate and use their

best efforts to defend against [the claim] and respond thereto."[3]  This provision also

---

[2] Plaintiffs make no attempt to defend their failure to serve a demand upon the MBNA board prior to the merger. (Pls. Ans. Br. at 62-63.) Of course, plaintiffs could not make a demand upon the BAC board prior to serving their Amended Complaint because they were not BAC shareholders at that time.

[3] The merger agreement is Appendix A to the Proxy Statement, which is attached as Exhibit C to the Affidavit of Richard C. Pepperman, sworn to Jan. 20, 2006 ("First Pepperman Aff."). Section 6.7 appears at pages A-41 to A-42 of the merger agreement.

provides that all existing rights to indemnification and insurance will be maintained in place for no less than six years. This language is standard in merger agreements and provides no basis for concluding that a demand upon the board of the acquiring company is excused. *See Grobow* v. *Perot*, 526 A.2d 914, 925 (Del. Ch. 1987). Indeed, if plaintiffs were correct that this language renders demand upon the board of the acquiring company futile, the futility exception would apply in virtually every case in which derivative claims are asserted against officers and directors of an acquired entity after a merger. *See In re Prudential Ins. Co. Derivative Litig.*, 659 A.2d 961, 973 (N.J. Super. 1995).

Nor are plaintiffs correct that demand is excused simply because the BAC board thus far has elected not to assert the claims at issue. A decision by a corporation's board of directors not to pursue a cause of action is an exercise of the board's business judgment that is entitled to respect. *See Spiegel* v. *Buntrock*, 571 A.2d 767, 773-74 (Del. 1990); *Aronson* v. *Lewis*, 473 A.2d 805, 813 (Del. 1984); *Zapata Corp.* v. *Maldonado*, 430 A.2d 779, 784 (Del. 1980); *see also Kaufman* v. *Safeguard Scientific, Inc.*, 587 F. Supp. 486, 489 (E.D. Pa. 1984).

To survive a motion to dismiss, a derivative plaintiff "must allege with particularity facts that 'create a reasonable doubt that' the board's refusal was in fact made on an informed basis, in good faith, and with the corporation's best interests in mind." *Stepak* v. *Addison*, 20 F.3d 398, 403 (11th Cir. 1994) (quoting *Levine* v. *Smith*, 591 A.2d 194, 211 (Del. 1991)); *see also* Fed. R. Civ. P. 23.1. Plaintiffs have not alleged such facts here, much less with the requisite particularity. They allege no facts regarding the composition of BAC's board and, in fact, do not identify a single member of the BAC

- 6 -

board by name, except for Kenneth Lewis. There is no allegation that the BAC board was unaware of plaintiffs' derivative claims when it approved the merger agreement; to the contrary, plaintiffs allege that BAC's board "has already pre-judged the merits of this action." (Am. Compl. ¶ 106.) Moreover, the Amended Complaint is devoid of any factual allegation that would give rise to any doubt that the BAC board has acted on an informed basis, in good faith and with BAC's best interest in mind. Plaintiffs thus have offered no basis for this Court to second-guess the judgment of BAC's board or to give plaintiffs managerial authority over claims rightfully belonging to BAC.[4]

## II.    There Is No Direct Shareholder Cause of Action against Officers and Directors of a Maryland Corporation for Breach of Fiduciary Duties.

Maryland law is clear that the fiduciary duties of a corporation's directors and officers "run[] . . . to the corporation and not, at least directly, to the shareholders." *Werbowsky* v. *Collomb*, 766 A.2d 123, 133 (Md. 2001); *see also Waller* v. *Waller*, 49 A.2d 449, 454 (Md. 1946) (fiduciary duties "which the law imposes upon all officers and directors" properly belong to the corporation itself rather than to stockholders).[5]    There-

---

[4] Contrary to plaintiffs' assertion (Pls. Ans. Br. at 61), *Biondi* v. *Scrushy*, 820 A.2d 1148 (Del. Ch. 2003), is not to the contrary. *Biondi* involved "an odd confluence of unusual and highly troubling facts," including personal ties between the corporation's CEO and members of the special litigation committee ("SLC"), a "begrudging and, at worst, inadequate, original delegation of authority" to the SLC, and the "strange decision" by the board of directors to appoint an outside law firm not under the SLC's control to conduct an investigation. 820 A.2d at 1165. In light of these "unusual" facts, the court held that "the SLC cannot demonstrate its independence." *Id.* at 1166. Plaintiffs have not alleged a basis to question the independence of BAC's board.

[5] Plaintiffs cite two Maryland cases containing statements that officers and directors owe duties to both the corporation and its shareholders. *Toner* v. *Baltimore Envelope Co.*, 498 A.2d 642, 648 (Md. 1985); *Indurated Concrete Corp.* v. *Abbott*, 74 A.2d 17, 20 (Md. 1950). Neither of these cases, however, suggests that officers or directors owe any such duties *directly* to shareholders or that a shareholder could enforce such duties through a direct action on his or her own behalf rather than derivatively on behalf of the corporation. Plaintiffs also rely upon *Tafflin* v. *Levitt*, 608 A.2d 817 (Md. Ct. Spec. App. 1992), a case that, if anything, undermines their position. *See* 608 A.2d at 819-20 (purportedly direct claim by depositors in insolvent S&L against former officers and directors stated derivative claim belonging to S&L and its receivers).

fore, any "violation of rights common to all the stockholders" can "be redressed only by an action brought by the corporation or its receivers." *Waller*, 49 A.2d at 454. Any doubt on this subject was conclusively resolved by the Maryland legislature's 1999 amendment to Maryland's corporate code adding Section 2-405.1(g), which provides: "Nothing in this section creates a duty of any director of a corporation *enforceable otherwise than by corporation or in the right of the corporation*." Md. Code Ann. Corps. & Ass'ns § 2-405.1(g) (emphasis added).[6]

Plaintiffs have not cited a single Maryland case that allowed a shareholder to assert a direct cause of action against corporate officers or directors for breach of fiduciary duties, and they completely ignore the Maryland statute. Instead, plaintiffs rely on a handful of federal-court decisions and a state-court decision from Tennessee. (Pls. Ans. Br. at 23.) None of these cases discusses or even mentions either the Maryland Court of Appeals' 2001 *Werbowsky* decision or the Maryland legislature's 1999 enactment of Section 2-405.1(g).[7] The decisions also are contrary to prior decisions of the Maryland Court of Appeals recognizing that the fiduciary duties of officers and directors are owed directly to the corporation and any claim for breach of such duties belongs to the corporation. *See, e.g., Waller*, 49 A.2d at 454; *Danielewicz*, 769 A.2d at 283 ("Where

---

[6] The 1999 amendment to Maryland Code Corps. and Ass'ns § 2-405.1 added Sections 2-405.1(e) through 2-405.1(g). *See* Chapter 300, 1999 Md. Laws 2225-2226 (attached as Exhibit A to Affidavit of Richard C. Pepperman, II, sworn to April 5, 2006 ("Second Pepperman Aff.").

[7] In fact, two of these decisions predate both the *Werbowsky* decision and the 1999 enactment of Section 2-405.1(g) and, as such, are of limited relevance. *See Pittsburgh Terminal Corp.* v. *Baltimore & Ohio R.R.. Co.*, 680 F.2d 933, 941 (3d Cir. 1982); *Bayberry Assocs.* v. *Jones*, 783 S.W.2d 553, 563 (Tenn. 1990). A third—the Second Circuit's decision in *Strougo* v. *Bassini*, 282 F.3d 162 (2d Cir. 2002)—involved a complaint originally filed in 1997, before Section 2-405.1(g) was enacted. *Id.* at 166. The remaining two cases merely repeat the holding of *Strougo* without any independent analysis of Maryland statutory or case law. *See Bradfisch* v. *Templeton Funds, Inc.*, 319 F. Supp. 2d 897, 900 (S.D. Ill. 2004); *Delmarva Sash & Door Co. of Maryland, Inc.* v. *Andersen Windows, Inc.*, 218 F. Supp. 2d 729, 734 (D. Md. 2002).

directors commit a breach of trust, they are liable to the corporation, not to its . . .

stockholders, and any damages recovered are assets of the corporation"); *Booth* v.

*Robinson*, 55 Md. 419, 438 (Md. 1881).[8]

      In sum, plaintiffs cannot assert direct claims against MBNA's former

officers and directors for breach of fiduciary duties under Maryland law. As explained

above, plaintiffs also lack standing to assert those claims derivatively on behalf of

MBNA or BAC under the continuous ownership rule.

**III.    Plaintiffs' Supposed "Direct" Claims Also Fail as a Matter of Law.**

    **A.    The MBNA Board's Approval of the BAC Merger Was a Valid Exercise of the Board's Business Judgment.**

      Plaintiffs concede that "in Maryland, the business judgment rule provides

a presumption that the directors satisfied [their] duties" and that plaintiffs thus must

allege facts sufficient to rebut this presumption. (Pls. Ans. Br. at 31.)[9] Under the busi-

ness judgment rule, the decisions of officers and directors of a Maryland corporation in a

change-of-control context, as in any other context, are not subject to judicial second-

guessing absent a showing by plaintiffs of "fraud, self-dealing or unconscionable

---

[8] Plaintiffs' reliance on decisions involving direct shareholder causes of action under Delaware law is misplaced. Although Maryland courts often look to Delaware decisions on novel issues of corporation law where there are no Maryland cases on point, Maryland courts are not bound by those decisions, and the law of the two states on corporate matters can and does diverge on certain issues. *Cf. Werbowsky*, 766 A.2d at 143. Here, there are Maryland cases directly on point, and Delaware has no counterpart to Md. Code Corps. & Ass'ns § 2-405.1(g).

[9] Plaintiffs nevertheless characterize the duties of Maryland directors in the context of a change in control as "*Revlon* duties" (Pls. Ans. Br. at 31) in reference to the Delaware Supreme Court's decision in *Revlon* v. *MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173 (Del. 1985). As explained in the Inside Defendants' Opening Brief at pages 27-28, the *Revlon* decision drew a distinction between ordinary corporate decisions, which are protected by the business judgment rule, and change-of-control decisions, which are subject to heightened scrutiny. *Revlon*, 506 A.2d at 180. Maryland law recognizes no such distinction and thus does not subject change-of-control decisions to heightened scrutiny.

conduct." *Wittman* v. *Crooke*, 707 A.2d 422, 425 (Md. Ct. Spec. App. 1998); *see also*

*Jasinover* v. *Rouse Co.*, No. 13-C-04-59594, 2004 WL 3135516, at *9 (Md. Cir. Ct. Nov.

4, 2004); Md. Code Ann. Corps & Ass'ns § 2-405.1(d). Plaintiffs have made no such

showing here with respect to the MBNA board's decision to approve the BAC merger.[10]

      Plaintiffs argue that they have adequately alleged a cause of action against

MBNA's former officers and directors for breach of fiduciary duties in connection with

the merger based on their allegations that: (1) the MBNA board authorized Bruce

Hammonds, MBNA's CEO, to conduct merger negotiations on the company's behalf;

(2) the MBNA board approved the merger with BAC after an "unduly hurried process;"

(3) the MBNA board "failed to correct" a statement by Hammonds in a June 2005

interview with *Business Week*; and (4) as part of the merger, the MBNA board agreed to

provide BAC with an option to purchase MBNA stock at a reduced price in the event the

merger was not approved. (*See* Pls. Ans. Br. at 27-33.) None of these allegations is

sufficient to rebut the presumption that the MBNA board's approval of the merger was a

valid exercise of its business judgment.

      There is nothing improper about a board's delegating to the company's

CEO responsibility for negotiating a merger. *See, e.g.*, *In re MONY Group, Inc. S'holder*

*Litig.*, 852 A.2d 9, 19 (Del. Ch. 2004) ("A board appropriately can rely on its CEO to

conduct negotiations, and the involvement of an investment banker is not required.");

Md. Code Ann. Corps. & Ass'ns § 2-405.1(b). Hammonds' alleged financial interests in

---

[10] Plaintiffs assert that MBNA's directors were "interested," and thus not entitled to the protections of the business judgment rule, because they were named as defendants in these derivative actions. (Pls. Ans. Br. at 34-35.) Such allegations do not suffice to rebut the presumption that the business judgment rule protected the board's decision. *See, e.g.*, *Decker* v. *Clausen*, Nos. 10,684 and 10,685, 1989 WL 133617, at *2 (Del. Ch. Nov. 6, 1989).

the merger—*i.e.*, the prospect of continued employment with BAC, acceleration of certain stock option grants and continuation of the insurance and indemnification rights he enjoyed with MBNA (Pls. Ans. Br. at 13)—are not unusual in a merger of this kind and provide no basis for inferring that MBNA's directors (the majority of whom had no financial interest in the transaction) were incapable of considering and approving the merger in good faith. *See, e.g., In re Wheelaborator Techs., Inc. S'holders Litig.*, 663 A.2d 1194, 1205 & n.8 (Del. Ch. 1995) (merger properly approved by majority of disinterested directors informed of certain other directors' financial interest in continued employment with acquirer and acceleration of stock-option grants).[11]

Nor does the process by which MBNA's board identified potential merger partners and approved the BAC merger justify a departure from the business judgment rule. Plaintiffs acknowledge that MBNA's board consulted with outside counsel and two investment banking advisors regarding "consolidation activity in the credit card industry" and "[p]ossible strategic alternatives" including a potential "business combination." (Am. Compl. ¶¶ 3, 83.) Plaintiffs further acknowledge that MBNA explored a possible strategic combination with Wachovia prior to contacting BAC. (*Id.* ¶ 86.) These allega-

---

[11] Plaintiffs rely on four cases applying Delaware law in which a complaint was allowed to proceed based on allegations that a board acquiesced in CEO self-dealing in a merger. (Pls. Ans. Br. at 27.) Each of these cases, however, depended upon application of what one court characterized as "a narrow escape hatch" to the business judgment rule allowing judicial review of a corporate decision "in those *rare* cases where the decision under attack is so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith." *Alidina* v. *Internet.com Corp.*, No. 17235-NC, 2002 WL 31584292, at *4 (Del. Ch. Nov. 6, 2002) (emphasis in original) (internal quotation omitted); *see also Burns* v. *Friedli*, 241 F. Supp. 2d 519, 521-22 (D. Md. 2003). *Parnes* v. *Bally Entm't Corp.*, 722 A.2d 1243, 1246 (Del. 1999); *Crescent/Mach I Partners, L.P.* v. *Turner*, 846 A.2d 963, 981 (Del. Ch. 2000). That "narrow" exception does not apply to the MBNA-BAC merger, particularly under Maryland's deferential standard.

tions make clear that MBNA's board engaged in a thorough decision-making process that should not be second-guessed under the business judgment rule.

Plaintiffs' allegations regarding Hammonds' statement in a June 13, 2005 *Business Week* article that "there's no 'For Sale' sign" on MBNA's headquarters, and the board's "failure to correct" that statement (Pls. Ans. Br. at 28-30, 33), are likewise insufficient to rebut the business judgment presumption.[12] At the time this statement was published, MBNA was not engaged in active merger negotiations with any potential suitor. (Am. Compl. ¶¶ 3, 83, 86 (alleging that Wachovia "determined not to make a bid" for MBNA in "early June 2005" and that MBNA first contacted BAC's management "during the week of June 20").) Moreover, Hammonds' statement was not misleading because, as plaintiffs acknowledge, MBNA had not decided to conduct a public auction of the company, but rather was exploring various "strategic alternatives," one of which was a potential "business combination" with an appropriate partner. (*Id.* ¶¶ 3, 83.) Hammonds' statement that there was no "For Sale" sign on MBNA's headquarters did not mischaracterize this state of affairs and, in any event, is not a basis for holding that MBNA's officers and directors breached their fiduciary duties under Maryland law.[13]

---

[12] A copy of the *Business Week* article—"One Tough Card Game; MBNA's Stock is Down 25% This Year, and It's Suddenly a Takeover Candidate," Amy Barnett and Mike McNamee, *Business Week*, June 20, 2005 at 13—is attached as Exhibit B to the Second Pepperman Aff.

[13] The facts of this case are similar to those in *Phillips* v. *LCI Int'l, Inc.*, 190 F.3d 609 (4th Cir. 1999). The CEO in that case was quoted as saying that "We're not a company that's for sale." 190 F.3d at 612. At the time, the company had engaged in unsuccessful merger negotiations with another company, and two days after the interview, it received a new bid from the company and eventually agreed to a merger. *Id.* The court found that the CEO's statement did not amount to a categorical denial of prior merger negotiations or even a denial that the company was presently engaged in such negotiations. *Id.* at 616. The court further found that, even if the statement was misleading, the "total mix" of information available to investors, including statements in the very article in which the quote appeared, would sufficiently apprise investors of

*(Footnote continued)*

Plaintiffs also challenge the option granted to BAC as part of the merger, which would have authorized BAC to purchase roughly 249 million MBNA shares at a discount of roughly $1.3 billion. (Am. Compl. ¶ 87.) Maryland law is clear, however, that similar "lock-up" provisions are acceptable and that the inclusion of such a provision in a merger agreement is not a basis for questioning the board's decisions. *See Jasinover*, 2004 WL 3135516, at *9 ("[T]he Board is free to lock up an attractive deal."); *see also Rand* v. *Western Air Lines, Inc.*, No. 8632, 1994 WL 89006, at *3, 6 (Del. Ch. Feb. 25, 1994) (rejecting challenge to merger agreement granting acquirer option to purchase 30% of target's outstanding shares at discount to offer price), *aff'd*, 659 A.2d 228 (Del. 1995); *Keyser* v. *Commonwealth Nat'l Fin. Corp.*, 644 F. Supp. 1130, 1146-47 (M.D. Pa. 1986) (approval of option granting acquirer right to purchase 25% of target's shares at discount was not violation of directors' fiduciary duties); *Yanow* v. *Scientific Leasing, Inc.*, 1988 WL 8772, at *5 (Del. Ch. Feb. 8, 1988). Plaintiffs attempt to distinguish *Jasinover* based on the size of the option, but the option granted to BAC was "within the range [of] 2% to 4%" that the *Jasinover* court found would be reasonable even under the "heightened scrutiny" applicable in Delaware. 2004 WL 3135516, at *10 (internal quotation and alteration omitted); *see also Kysor Indus. Corp.* v. *Margaux, Inc.*, 674 A.2d 889, 897 (Del. Super. Ct. 1996) (commentators generally consider breakup fees of from 1 to 5% of a proposed merger's total price to be reasonable).[14]

---

the possibility that the company would be sold. *Id.* at 617-19. Likewise here, the *Business Week* article provided substantial information from which any reasonable investor would have concluded that a takeover of MBNA was possible. For example, the article states that "more analysts and investors figure MBNA will be sold" and identifies Wachovia and HSBC Holdings PLC as potential acquirers. (*See* Second Pepperman Aff. Ex. B, at 134.)

[14] Plaintiffs erroneously assert that the option raised the cost any potential acquirer would have to pay for MBNA by roughly $6 billion. (Pls. Ans. Br. at 2, 40, 50.) Although $6 billion is

*(Footnote continued)*

In any event, plaintiffs' admission that the proposed merger was approved by a majority vote of MBNA's shareholders (Am. Compl. ¶ 17) precludes any attempt to hold MBNA's officers and directors liable for their negotiation or approval of the merger. *See, e.g.*, *Hudson* v. *Prime Retail, Inc.*, No. 24-C-03-5806, 2004 WL 1982383, at *14 (Md. Cir. Ct. Apr. 1, 2004); *Wittman*, 707 A.2d at 425.

### B.    Plaintiffs Have Failed to Allege Any Materially Misleading Omissions from the Proxy Statement.

Plaintiffs' Amended Complaint identified ten purportedly misleading omissions from the Proxy Statement seeking MBNA shareholder approval of the merger without explaining how any of them would be material to a shareholder's decision. (Am. Compl. ¶ 188(a)-(j).) In their brief, plaintiffs make no effort to show that the large majority of these purported omissions are material.[15] They instead focus on three different purported omissions: (1) the alleged failure to disclose the roles of Hammonds and Joseph Parella (one of MBNA's two outside investment banking advisers) in negotiating the merger and the specific details of those negotiations; (2) the alleged failure to

---

a rough approximation of the gross market value of the total number of shares BAC was eligible to purchase under the option (*id*. at 2-3 n.1), the actual *net* cost increase that a potential third-party acquirer would have faced as a result of the option would be equal to the discount at which BAC was able to purchase those shares—roughly $1.3 billion or approximately 3.7% of the roughly $35 billion total value of the MBNA-BAC merger.

[15] Plaintiffs' brief fails to address the following purported omissions: (1) failure to include "additional information" regarding the circumstances under which the merger could be dilutive to MBNA stockholders and to extend the *pro forma* merger analysis to 2008 (Am. Compl. ¶ 188(a)); (2) failure of BAC to "obtain and fully disclose" an updated fairness opinion using its latest internal projections (*id*. ¶ 188(b)); (3) failure to include information relating to purportedly "foreseeable changes" to BAC's dividend policy (*id*. ¶ 188(d)); (4) absence of information regarding potential dilutive impact on MBNA stockholders if BAC failed to execute a planned share repurchase (*id*. ¶ 188(f)); (5) failure to disclose alleged UBS conflicts of interest (*id*. ¶ 188(h)); and (6) failure to estimate the potential value of the derivative claims (*id*. ¶ 188(i)). None of these alleged "omissions" rendered the Proxy Statement materially misleading. (Inside Defs. Opening Br. at 32-37.)

disclose Hammonds' supposed "false denial" that MBNA was for sale; and (3) the alleged failure to disclose the analysis and assumptions underlying UBS's fairness opinion. (Pls. Ans. Br. at 44-52.) These allegations are insufficient to support plaintiffs' disclosure claim.

### 1.    The Merger Negotiations

Plaintiffs assert that the alleged failure to include in the Proxy Statement a detailed description of the roles played by Hammonds and Parella in negotiating the merger and a blow-by-blow description of the process that led to the merger constituted a materially misleading omission. (Pls. Ans. Br. at 45-46.) As an initial matter, plaintiffs' Amended Complaint does not identify Parella's retention as a material omission or even mention Parella in connection with their disclosure claim. (*See* Am. Compl. ¶¶ 3, 188).[16] Parella is not alleged to have participated in the preparation of the fairness opinion or the proxy materials, and therefore the terms of his employment and the fees he received would not be material to an investor's appraisal of the reliability of that information. Plaintiffs' assertion that the Proxy Statement should have included more detailed information regarding the process by which the merger was negotiated and the specific roles of Hammonds and Parella is contrary to case law holding that such pre-merger negotiations are immaterial as a matter of law. *See, e.g.*, *Bershad* v. *Curtiss-Wright Corp.*, 535 A.2d 840, 847 (Del. 1987) ("Efforts by public corporations to arrange mergers are immaterial . . . as a matter of law, until [after] the firms have agreed on the price and structure of the transaction"); *Krim* v. *ProNet, Inc.*, 744 A.2d 523, 529 (Del. Ch. 1999).

---

[16] Plaintiffs speculate that disclosure of the fees paid to Parella would raise questions about Hammonds' motives. (Pls. Ans. Br. at 46.) It is far more likely, however, that disclosure of Parella's involvement would assure investors that MBNA had relied upon an experienced and capable financial adviser in identifying a potential merger partner.

Likewise, the failure to disclose unsuccessful merger negotiations with Wachovia did not constitute a material omission. *See Jasinover*, 2004 WL 3135516, at *11 (under Maryland law, "the emphasis [in determining materiality] is on what the Board actually did, not what it could have done had it traveled down a different road.").

### 2. Hammonds' Statement in the June 2005 *Business Week* Article

Plaintiffs contend that the Proxy Statement should have discussed Hammonds' statement in the June 13, 2005 *Business Week* article that there was no "For Sale" sign on MBNA's headquarters. (Pls. Ans. Br. at 48.) This assertion is flawed for at least two reasons. First, Hammonds' statement was neither false nor misleading at the time it was made, and thus there was no need to include any disclosure or correction in the Proxy Statement. (*See supra* at 12.) Second, plaintiffs' assertion that Hammonds' statement had the potential to depress MBNA's stock price is contradicted by a review of MBNA's daily closing prices in the days following its publication.[17] The price of MBNA stock continued to fluctuate, with Hammonds' statement having no discernable effect.

### 3. The UBS Fairness Opinion

Plaintiffs complain about the Proxy Statement's description of UBS's fairness opinion, a copy of which was attached to the Proxy Statement. (Pls. Ans. Br. at 49-52.) For example, they contend that UBS selected an unrepresentative sample of competitor companies against which to compare MBNA's implied earnings multiple and underestimated MBNA's 2005 earnings. (*Id.* at 49-50.)[18] These allegations appear

---

[17] A list of MBNA's daily closing share price for each trading day in 2005 is attached as Exhibit B to the First Pepperman Aff.

[18] Plaintiffs purport to estimate MBNA's 2005 annualized earnings as $2.8 billion based on a "back of the envelope" calculation, apparently arrived at by multiplying MBNA's 3Q 2005 earnings by four. (Pls. Ans. Br. at 50.) Such a calculation ignores the fact that MBNA had

*(Footnote continued)*

nowhere in the Amended Complaint. (*Cf.* Am. Compl. ¶ 188.) In any event, "[t]his kind of quibbl[ing] with the substance of a banker's opinion does not constitute a disclosure claim." *In re JCC Holdings Co. S'holder Litig.*, 843 A.2d 713, 721 (Del. Ch. 2003). Nor was MBNA required to disclose the underlying methodologies or projections on which UBS relied in its fairness opinion. As a general matter, "the work and consideration that . . . enter into [an investment banker's] opinion will . . . rarely if ever be material" in the context of a proxy solicitation. *Abbey* v. *E.W. Scripps Corp.*, No. 13397, 1995 WL 478957, at *3 (Del. Ch. Aug. 9, 1995); *see also Skeen* v. *Jo-Ann Stores, Inc.*, 750 A.2d 1170, 1173-74 (Del. 2000) (corporation was not required to disclose "methodologies used" or "ranges of values generated" by investment banker unless inconsistent with disclosed information); *Matador Capital Mgmt. Corp.* v. *BRC Holdings, Inc.*, 729 A.2d 280, 297 (Del. Ch. 1998).[19]

Simply stated, plaintiffs have abandoned most of the omissions alleged in their Amended Complaint, and they have not established that any of the new omissions identified in their Answering Brief are material.

---

already reported earnings for 1Q 2005 and 2Q 2005 of, respectively, $31.7 million and $632.1 million. Thus, to arrive at plaintiffs' "back-of-the-envelope" estimate of MBNA's annualized 2005 earnings, MBNA would have had to earn roughly $1.418 billion in 4Q 2005 or more than it had earned in the previous three quarters combined.

[19] *In re Pure Resources, Inc. S'holders Litig.*, 808 A.2d 421 (Del. Ch. 2002), is not to the contrary. That case involved a tender offer by a majority shareholder possessing "large informational advantages" over minority shareholders whose shares were to be acquired. The court thus imposed heightened disclosure obligations, requiring that minority shareholders be provided with a "fair summary of the substantive work performed by the [company's] investment bankers." 808 A.2d at 449-50. Such heightened disclosure obligations have no application here. *Romero* v. *U.S. Unwired*, Nos. 04-2312 & 04-2436, 2005 WL 2050280, at *3 (E.D. La. Aug. 11, 2005).

### C.    Plaintiffs' Claims on Behalf of the Putative "Holder Class" Are Unduly Speculative and Preempted by Federal Law.

Plaintiffs' claims on behalf of the putative "Holder" class are based on a theory of injury—*i.e.*, that plaintiffs were purportedly "injured" by continuing to hold allegedly overvalued shares—that is unduly speculative and not legally cognizable. *See, e.g., Manzo* v. *Rite Aid Corp.*, No. 18451-NC, 2002 WL 31926606 (Del. Ch. Dec. 19, 2002). These claims should be dismissed for that reason alone. (Inside Defs. Opening Br. at 24-26.) The cases from New Jersey, New York and California cited by plaintiffs are outliers and unpersuasive. (*See* Pls. Ans. Br. at 65-66.)

Moreover, the United States Supreme Court recently held that such state-law claims are preempted under the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"). *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Dabit*, 547 U.S. __, 2006 WL 694137 (Mar. 21, 2006). SLUSA preempts state-law claims brought on behalf of a putative class alleging misstatements in connection with the purchase or sale of a security. 15 U.S.C. § 78bb(f). In *Merrill Lynch*, the Supreme Court held that SLUSA also preempts state-law claims where plaintiffs do not allege that class members purchased or sold the securities during the class period but rather that they continued to hold such securities. 2006 WL 694137, at *10 ("fraudulent manipulation of stock prices . . . unquestionably qualifies as fraud in connection with the purchase or sale of securities" and thus is preempted by SLUSA regardless of whether action "is brought by holders [of securities] instead of purchasers or sellers") (internal quotation omitted). Under this decision, plaintiffs' "Holder Class" claims fall within SLUSA and therefore are preempted by federal law.

IV.    **Plaintiffs' Claim against Kenneth Lewis for Alleged Aiding and Abetting a Violation of Fiduciary Duties Should Be Dismissed.**

Plaintiffs have not adequately alleged that MBNA's former officers and directors breached their duty of disclosure.  Plaintiffs therefore cannot assert an aiding and abetting claim against Lewis even if such a claim does exist under Maryland law.  In addition, plaintiffs have failed to allege that Lewis "knowingly participated" in a breach of fiduciary duty.  *See, e.g., Saadeh* v. *Saadeh, Inc.*, 819 A.2d 1158, 1171 (Md. Ct. Spec. App. 2003) ("To be liable in tort, the aider or abettor must have engaged in assistive conduct *that he would know would contribute to the happening of that act*.") (emphasis added).  Here, plaintiffs rely on the conclusory assertions that Lewis "knew that the Proxy failed to disclose all material information" and had the "authority to control the contents of" it.  (Pls. Ans. Br. at 68.)  Such allegations are inadequate.  *In re Gen. Motors (Hughes) S'holder Litig.*, No. 20269, 2005 WL 1089021, at *23 (Del. Ch. May 4, 2005) (conclusory allegation insufficient as a matter of law).

V.    **Plaintiffs' Claims Against Randolph Lerner Should Be Dismissed.**

As explained in Inside Defendants' Opening Brief, the claims against Randolph Lerner, MBNA's former chairman, also should be dismissed based on the provision of MBNA's corporate charter prohibiting the corporation or its stockholders from maintaining any cause of action for monetary damages against a director.  (Defs. Opening Br. at 39.)  Such exclusions are allowable under Md. Code Ann. Cts. & Jud. Proc. § 5-418 where there is no allegation of receipt of any improper monetary or other benefit or active or deliberate dishonesty.  No such allegation is made against Lerner, who is simply lumped together with the other defendants in the Amended Complaint and plaintiffs' Answering Brief.  Given the absence of such allegations, all claims against

Lerner should be dismissed for failure to state a claim upon which relief can be granted.

*See McMillan* v. *Intercargo Corp.*, 768 A.2d 492, 501 (Del. Ch. 2000) (granting motion

for judgment on pleadings based on exculpatory provision in certificate of incorporation).

## CONCLUSION

The claims asserted against the moving defendants should be dismissed

for failure to state a claim upon which relief can be granted.

YOUNG CONAWAY STARGATT & TAYLOR, LLP


*Richard H. Morse*

Richard H. Morse (No. 531)
rmorse@ycst.com
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600

*Attorneys for nominal defendants MBNA Corporation
and Bank of America Corporation and defendants
Bruce L. Hammonds, Kenneth A. Vecchione, Richard K.
Struthers, John R. Cochran, III, Lance L. Weaver,
Charles C. Krulak, Michael G. Rhodes, John W.
Scheflen, Randolph D. Lerner and Kenneth L. Lewis*

Of Counsel:

Richard J. Urowsky
Richard C. Pepperman II
Ryan C. Williams
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

April 5, 2006

## CERTIFICATE OF SERVICE

I, Richard H. Morse, hereby certify that on April 5, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of Court using CM/ECF which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Robert R. Davis, Esquire
> A. Zachary Naylor, Esquire
> Chimicles & Tikellis LLP
> One Rodney Square
> P.O. Box 1035
> Wilmington, DE 19899

> Edward P. Welch, Esquire
> Seth M. Beausang, Esquire
> Skadden Arps Slate Meagher & Flom LLP
> One Rodney Square
> P.O. Box 636
> Wilmington, DE 19899

I further certify that on April 5, 2006, I also caused copies of the foregoing document to be served by hand on the above-listed counsel of record.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_Richard H. Morse_

Richard H. Morse (I.D. No. 531)
17th Floor, Brandywine Building
1000 West Street
P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6651
rmorse@ycst.com

*Attorneys for Nominal Defendants MBNA Corporation and Bank of America Corporation and Defendants Bruce L. Hammonds, Kenneth A. Vecchione, Richard K. Struthers, John R. Cochran, III, Lance L. Weaver, Charles C. Krulak, Michael G. Rhodes, John W. Scheflen, Randolph D. Lerner and Kenneth L. Lewis*

DB01:1815368.1                                                              064261.1001