IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------x

IN RE MBNA CORPORATION     :
DERIVATIVE AND CLASS         :      Lead Case No. 1:05-cv-00327-
LITIGATION                           :      GMS

This Document Relates To:        :
ALL ACTIONS.                 :      CLASS AND DERIVATIVE
                               :      ACTION

-------------------------------------------------------------x

## REPLY BRIEF IN SUPPORT OF THE MBNA
## OUTSIDE DIRECTOR DEFENDANTS' MOTION TO DISMISS

<div style="margin-left:45%">

Edward P. Welch (I.D. # 671)
Edward B. Micheletti (I.D. # 3794)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000
Attorneys for the MBNA
Outside Director Defendants

</div>

Of Counsel:
Jay B. Kasner
Susan L. Saltzstein
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036-6522
(212) 735-3000

DATED: April 5, 2006

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................................. i

PRELIMINARY STATEMENT ...........................................................................1

ARGUMENT ........................................................................................................2

I.  THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT
    MATTER JURISDICTION. ........................................................................2

II. PLAINTIFFS HAVE NO BASIS FOR PURSUING THEIR CLAIMS
    AGAINST THE OUTSIDE DIRECTORS. ..................................................4

    A.  Under Maryland Law, Breach Of Fiduciary Duty Claims Are
        Derivative. ...........................................................................................5

    B.  Plaintiffs Lost Standing As A Result Of The BAC Merger. ................7

    C.  Plaintiffs Have Not Alleged That Demand On The BAC Board
        Was Excused. .......................................................................................9

III. IN THE ALTERNATIVE, THE COMPLAINT SHOULD BE DISMISSED
     FOR FAILURE TO STATE A CLAIM. .....................................................11

    A.  Plaintiffs Have Failed To Plead Around The Business Judgment
        Rule. ...................................................................................................11

    B.  Plaintiffs' reliance on so-called *Revlon* duties as the basis for their
        attack on the BAC Merger process must fail. ...................................15

    C.  The Complaint Should Be Dismissed In Its Entirety Because The
        Outside Directors Are Not Subject To Liability For Money
        Damages. .............................................................................................18

    D.  Plaintiffs' "Holder Class Claims" Should Be Dismissed. .................19

CONCLUSION ...................................................................................................20

# TABLE OF AUTHORITIES

CASES                                                                                    PAGE(S)

*Biondi v. Scrushy,*
   820 A.2d 1148 (Del. Ch. 2003) ................................................................. 9, 10

*Blackmore Partners L.P. v. Link Energy LLC,*
   C.A. No. 454-N, 2005 WL 2709639 (Del. Ch. Oct. 14, 2005) ....................................... 13

*Brayall v. Dart Indus., Inc.,*
   C.A. No. 87-1525-WF, 1988 WL 72766 (D. Mass. Feb. 3, 1988) ..................................... 3

*CTS Corp. v. Dynamics Corp. of Am.,*
   481 U.S. 69 (1987) ...................................................................................... 6

*Cede & Co. v. Technicolor,*
   634 A.2d 345 (Del. 1993) ............................................................................. 13

*Danielewicz v. Arnold,*
   769 A.2d 274 (Md. Ct. Spec. App. 2001) ..................................................... 8, 9

*Decker v. Clausen,*
   C.A. Nos. 10684, 10685, 1989 WL 133617 (Del. Ch. Nov. 6, 1989) ............................ 15

*Elf Aquitaine, Inc. v. Placid Oil Co.,*
   624 F. Supp. 994 (D. Del. 1985) .................................................................... 4

*Felker v. Anderson,*
   C.A. No. 04-0372-CV-W-ODS, 2005 WL 602974 (W.D. Mo. Feb. 11, 2005) ............... 6

*In re First Interstate Bancorp Consol. S'holder Litig.,*
   729 A.2d 851 (Del. Ch. 1998) ................................................................. 7, 8

*In re Frederick's of Hollywood, Inc. S'holders Litig.,*
   C.A. No. 15944, 2000 WL 130630 (Del. Ch. Jan. 31, 2000) ...................................... 13

*In re Freeport-McMoran Sulphur, Inc. S'holders Litig.,*
   C.A. No. 16729, 2001 WL 50203 (Del. Ch. Jan. 11, 2001) ....................................... 13

*In re General Motors (Hughes) S'holder Litigation,*
   C.A. No. 260, 2005, 2006 WL 722198 (Del. Mar. 20, 2006) ...................................... 20

*Green v. Howard R. Young Corr. Inst.,*
   229 F.R.D. 99 (D. Del. 2005) ......................................................................... 2

*Grill v. Hoblitzell*,
    771 F. Supp. 709 (D. Md. 1991) ................................................................................ 19

*Grobow v. Perot*,
    526 A.2d 914 (Del. Ch. 1987), *aff'd*, 539 A.2d 180 (Del. 1988) ............................... 10, 11

*Indurated Concrete Corp. v. Abbott*,
    74 A.2d 17 (Md. 1950) ..................................................................................................... 6

*Jasinover v. Rouse Co.*,
    C.A. No. 13-C-04-59594, 2004 WL 3135516 (Md. Cir. Ct. Nov. 4, 2004) .......... 7, 14, 16

*Jolly Roger Fund LP v. Sizeler Prop. Investors, Inc.*,
    C.A. No. RDB 05-841, 2005 WL 2989343 (D. Md. Nov. 3, 2005) ................................. 6

*Lewis v. Ward*,
    852 A.2d 896 (Del. 2004) .................................................................................................. 8

*Litig. Trust of MDIP, Inc. v. Rapoport*,
    C.A. No. 03-779-GMS, 2005 WL 1242157 (D. Del. May 25, 2005) ............................ 2, 3

*In re MONY Group Inc., S'holder Litig.*,
    852 A.2d 9 (Del. Ch. 2004) ...................................................................................... 14, 17

*McMillan v. Intercargo Corp.*,
    768 A.2d 492 (Del. Ch. 2000) ........................................................................................ 19

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*,
    C.A. No. 04-1371, 2006 WL 694137 (U.S. Mar. 21, 2006) ..................................... 19, 20

*Merritt v. Colonial Foods, Inc.*,
    499 F. Supp. 910 (D. Del. 1980) ...................................................................................... 2

*Orman v. Cullman*,
    C.A. No 18039, 2004 WL 2348395 (Del. Ch. Oct. 20, 2004) ......................................... 18

*PAAC v. Rizzo*,
    502 F.2d 306 (3d Cir. 1974) ........................................................................................ 3, 4

*Porter v. Texas Commerce Bancshares, Inc.*,
    C.A. No. 9114, 1989 WL 120358 (Del. Ch. Oct. 12, 1989) ............................................. 8

*In re Prudential Ins. Co. Derivative Litig.*,
    659 A.2d 961 (N.J. Super. Ct. App. Div. 1995) ............................................................. 10

ii

*Saito v. McCall,*
　　C.A. No. 17132-NC, 2004 WL 3029876 (Del.Ch. Dec. 20, 2004) ................................. 8, 9

*Spatola v. Novastar Fin., Inc.,*
　　No. 24-C-04-007513 (Cir Ct. Baltimore City Feb. 16, 2006) ........................................... 6

*Strougo v. Bassini,*
　　282 F.3d 162 (2d Cir. 2002) ................................................................................................ 5

*Taffin v. Levitt,*
　　608 A.2d 817 (Md. Ct. Spec. App. 1992) ....................................................................... 6

*In re Talley Indus., Inc. S'holders Litig.,*
　　C.A. No. 15961, 1998 WL 191939 (Del. Ch. Apr. 13, 1998) ...................................... 9, 10

*Toner v. Baltimore Envelope Co.,*
　　498 A.2d 642 (Md. 1985) ................................................................................................... 7

*In re Tower Air, Inc.,*
　　416 F.3d 229 (3d Cir. 2005) ................................................................ 1, 11, 12, 14, 15

*In re Toys "R" Us, Inc., S'holder Litig.,*
　　877 A.2d 975 (Del. Ch. 2005) ............................................................................ 14, 17, 18

*United Mine Workers of Am. v. Gibbs,*
　　383 U.S. 715 (1966) ........................................................................................................... 2

*Waller v. Waller,*
　　49 A.2d 449 (Md. 1946) ..................................................................................................... 5

*Werbowsky v. Collomb,*
　　766 A.2d 123 (Md. 2001) ............................................................................................... 5, 6

*Wittman v. Crooke,*
　　707 A.2d 422 (Md. Ct. Spec. App. Mar. 27, 1998) ......................................................... 16

*Yanow v. Scientific Leasing, Inc.,*
　　C.A. Nos. 9536, 9561, 1988 WL 8772 (Del. Ch. Feb. 8, 1988) .................................. 2, 17

STATUTES                                                                 PAGE(S)

Fed. R. Civ. P. 23.1 ........................................................................................ 11

28 U.S.C. § 1367(a) ........................................................................................ 3

28 U.S.C. § 1367(c)(2) ..................................................................................... 2

Maryland Corp. Code § 2-405.1(g) ................................................................. 5

Kenneth B. Abel, *The Maryland Corporation: Legal Aspects of Organization &*
    *Operation* § VI(H) (2004) ......................................................................... 16

James J. Hanks, Jr., *Maryland Corporation Law* § 6.9 ............................... 19

## PRELIMINARY STATEMENT

As explained herein, all of the claims in the Complaint against the Outside Directors should be dismissed. Nothing in Plaintiffs' 69-page answering brief should change that result.

*First*, the Complaint should be dismissed on subject matter jurisdiction grounds. It is evident from Plaintiffs' answering brief (as well as the Complaint) that the lone count that raises a federal claim is now an afterthought in this litigation, and is unrelated to Plaintiffs' state law claims involving the BAC Merger.

*Second*, the Complaint should be dismissed on standing grounds because under Maryland law – which applies here, as MBNA is a Maryland company – breach of fiduciary duty claims are derivative, not direct, in nature and Plaintiffs' standing to pursue them was extinguished when the BAC Merger closed.

*Third*, the Complaint should be dismissed as to the Outside Directors because Plaintiffs have not pled around Maryland's version of the business judgment rule. Plaintiffs argue that their Complaint passes muster under (what they perceive as) lax federal pleading standards; but even the decision on which they base this argument, *In re Tower Air, Inc.*, 416 F.3d 229 (3d Cir. 2005), requires Plaintiffs to raise allegations that rebut the business judgment presumption, something which Plaintiffs have not done. Though Plaintiffs attempt to conflate the Outside Directors with Mr. Hammonds and the insider defendants, Plaintiffs have alleged nothing in particular about the Outside Directors, and do not even identify them by name in their answering brief. Plaintiffs have not alleged that any of the Outside Directors acted disloyally to the Company; acted in their own self-interest; sold any securities (based on inside information or otherwise); committed mismanagement or waste; made any particular misrepresentations to the public; or ignored "red flags" about MBNA's financial condition. Plaintiffs do not even contest the argument raised in the Outside Directors' opening brief that all of the fiduciary duty claims raised against them must be dismissed because, as alleged, a majority of the MBNA board was disinterested and independent, and thus the business judgment rule applies to shield the board's decision-making.

Instead, Plaintiffs repeatedly refer to the stock option provided to BAC in connection with the BAC Merger, going so far as to describe such an option grant as a "universally condemned" practice. (Plaintiffs' Answering Brief ("Ans. Br.") 3) Plaintiffs, however, fail to offer *any* authority, let alone Maryland authority, for this sweeping proposition. They also overlook that even Delaware courts – which, unlike Maryland courts, employ a heightened form of judicial scrutiny to "deal protection" provisions – have upheld such stock option grants. *See, e.g., Yanow v. Scientific Leasing, Inc.*, C.A. No. 95361998 WL 8772, at *5 n.6 (Del. Ch. Feb. 8, 1988) (stock option grant to acquiror was not a "lock up option that would preclude higher bids").

For these reasons, and as discussed further below, the Complaint should be dismissed in its entirety as against the Outside Directors.

**ARGUMENT**

**I.    THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION.**

Plaintiffs bear the burden of demonstrating that the Court has subject matter jurisdiction over a particular dispute. *See, e.g., Green v. Howard R. Young Corr. Inst.*, 229 F.R.D. 99, 102 (D. Del. 2005). It is well-settled that despite a federal court's ability "to decide ancillary questions of state law," that does not mean "it must tolerate a litigant's effort to impose upon it what is in effect only a state law case." *United Mine Worker of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). Where, as here, it appears that state law claims constitute the real body of a case and the federal claim is only an appendage, the court may dismiss such claims for lack of subject matter jurisdiction. *See, e.g.,* 28 U.S.C. § 1367(c)(2); *Litig. Trust of MDIP, Inc. v. Rapoport*, C.A. No. 03-779-GMS, 2005 WL 1242157, at *5 (D. Del. May 25, 2005) (Sleet, J.) (refusing to exercise supplemental jurisdiction over state law claims where such claims predominated in terms of the facts alleged and the damages sought by the plaintiffs); *Merritt v. Colonial Foods, Inc.*, 499 F. Supp. 910, 915 (D. Del. 1980) (dismissing district court action in which four state law claims predominated over one federal claim that was employed merely to bring the state claims within

the jurisdiction of the court). The Court also should decline to extend supplemental jurisdiction over state law claims that have no nexus to the federal claims that provide the Court with subject matter jurisdiction. *See, e.g.,* 28 U.S.C. § 1367(a); *PAAC v. Rizzo,* 502 F.2d 306, 313 (3d Cir. 1974) (finding district court erred in exercising jurisdiction over state claim that did not derive "from a 'nucleus of operative fact' common with" federal claims).[1]

Plaintiffs have not shown that this Court's supplemental jurisdiction should be extended over the state law breach of fiduciary duty claims that comprise ten out of the Complaint's eleven counts. Plaintiffs' lone federal cause of action (Count One, for contribution, pursuant to the federal securities laws) is focused only on the claims raised in the Securities Complaint – *i.e.,* the purported false and misleading disclosures allegedly made in the first quarter of 2005 about the Company's finances. (Compl. ¶ 116) The Outside Directors are not defendants in the Securities Action, and Plaintiffs do not name the Outside Directors as defendants in connection with their contribution claim. (Compl. ¶ 115) Rather than focus on their contribution claim – the proffered basis for this Court's subject matter jurisdiction – Plaintiffs spend nearly all of their 69-page answering brief addressing their state law claims relating to the BAC Merger, which have no nexus whatsoever to the issues underlying the Securities Action or the contribution claim. In fact, Plaintiffs spend a grand total of only *three sentences* on their contribution claim – one line of text and a footnote on page 16, and one line of text on page 63. Plaintiffs' contribution claim is not even addressed in the eleven points described in Plaintiffs' brief as their "summary of argument." (Ans. Br. 4-7)

Plaintiffs' federal claim is an afterthought in this action. Allowing the state law claims to proceed on a supplemental jurisdiction theory "would truly permit the tail to wag the dog . . . something the court will not permit." *Litig. Trust,* 2005 WL 1242157, at *5. At a minimum, the

---

[1] *See also Brayall v. Dart Indus., Inc.,* C.A. No. 87-1525-WF, 1988 WL 72766, at *2-5 (D. Mass. Feb. 3, 1988) (dismissing state law claims where the proof necessary for the state law claims raises factual and legal issues distinct from the federal claim).

state law claims against the Outside Directors relating to the BAC Merger should be dismissed, as Plaintiffs have not shown, nor could they show, any nexus between the issues underlying those claims and the issues underlying the lone federal claim. *PAAC*, 502 F.2d at 313.[2]

## II.     PLAINTIFFS HAVE NO BASIS FOR PURSUING THEIR CLAIMS AGAINST THE OUTSIDE DIRECTORS.

The parties agree that Maryland law should govern all seven counts of the Complaint that name the Outside Directors. (Ans. Br. 15)  Each of those seven counts raises claims against the Outside Directors for breach of fiduciary duty. (Outside Directors' Opening Brief ("Op. Br.") 13 n.9)  As explained in the Outside Directors' opening brief, claims for breach of fiduciary duty under Maryland law are derivative in nature, because the obligation of a director of a Maryland corporation "runs . . . *to the corporation* and not, at least directly, to the shareholders." (Op. Br. 12, citing *Werbowsky v. Collomb*, 766 A.2d 123, 133 (Md. 2001))  As a result, pursuant to the black-letter "contemporaneous ownership" rule, all seven counts against the Outside Directors should be dismissed because Plaintiffs – former MBNA stockholders – lost standing to pursue derivative claims against MBNA's board of directors when they ceased being stockholders of MBNA by reason of the BAC Merger. (Op. Br. 13-14, citing *Danielewicz v. Arnold*, 769 A.2d 274, 281-82 (Md. Ct. Spec. App. 2001))

Notwithstanding the Maryland authority that clearly establishes the derivative nature of Plaintiffs' claims, Plaintiffs continue to argue that claims relating to the BAC Merger are direct in nature. (Ans. Br. 21-26)  Plaintiffs also argue that to the extent they have raised derivative claims

---

[2]     It was not until reviewing Plaintiffs' 69-page answering brief – which is virtually silent on the federal contribution claim – that it became apparent Plaintiffs considered their lone federal claim an afterthought. Further, Defendants' decision to seek the removal of a state court action, in order to join it with two other similar actions already pending in the District of Delaware, should have no bearing on this Court's determination of whether subject matter jurisdiction exists. *First,* "parties cannot confer or consent to subject-matter jurisdiction where it does not exist." *Elf Aquitaine, Inc. v. Placid Oil Co.*, 624 F. Supp. 994, 1000 n.10 (D. Del. 1985). *Second,* the complaint that was removed from Maryland state court is significantly different than the Complaint at issue on this motion. Before removal, the state court complaint was focused only on the public disclosures made in the first quarter of 2005. After removal, the operative complaint was amended to focus almost entirely on claims attacking the BAC Merger process.

in this action,[3] they have standing to raise them as BAC stockholders on behalf of BAC. (Ans. Br. 57-60) Both arguments are without merit.

**A.    Under Maryland Law, Breach Of Fiduciary Duty Claims Are Derivative.**

Plaintiffs' first attempt to reacquire standing requires them to ignore the nature of fiduciary duty claims under Maryland law. The latest word on this issue from the Maryland Court of Appeals – Maryland's highest state court – confirms that a director's fiduciary "obligation *runs . . . to the corporation* and *not*, at least directly, *to the shareholders.*" *Werbowsky*, 766 A.2d at 133 (Md. 2001) (emphasis added). This conclusion is compelled by settled Maryland legal principles that have been in place for over a half-century. *See, e.g., Waller v. Waller*, 49 A.2d 449, 452 (Md. 1946) ("Where directors commit a breach of trust, they are liable to the corporation, not to its creditors or stockholders, and any damages recovered are assets of the corporation, and the equities of the creditors and stockholders are sought and obtained through the medium of the corporate entity.").

In arguing that this binding Maryland authority should be upended, Plaintiffs completely ignore every Maryland *state law* case cited by the Outside Directors in their opening brief on this point (Ans. Br. 12) – including *Werbowsky* and *Waller.* Plaintiffs also ignore Maryland's Corporate Code, which codifies Maryland's version of the business judgment rule and gives rise to Plaintiffs' breach of fiduciary duty claims, explaining that "[n]othing in this section creates a duty of any director of a corporation enforceable *otherwise than by the corporation or in the right of the corporation.*" Md. Code Ann., Corps & Ass'ns ("MCC") § 2-405.1(g) (emphasis added).

Rather than address this Maryland authority, Plaintiffs instead rely on a series of federal court decisions. (Ans. Br. 23) For example, Plaintiffs rely on the Second Circuit's decision in *Strougo v. Bassini*, 282 F.3d 162 (2d Cir. 2002), which held that Maryland law recognizes fiduciary duties owed by directors to both the company and its stockholders. However, in

---

[3]    Plaintiffs concede that the fiduciary duty claims relating to the false and misleading disclosures allegedly made in the first quarter of 2005 are derivative claims. (Ans. Br. 15-16)

reaching this conclusion, the *Strougo* court failed to cite to the Maryland Court of Appeals'

decision in *Werbowsky*, which confirmed that directors' fiduciary obligations flow only to the

corporation. *Werbowsky*, 766 A.2d at 133. In contrast, the most recent federal court to address

this issue acknowledged *Werbowsky*, and its holding that fiduciary duty claims under Maryland

law may be brought only by the corporation, not stockholders. *See, e.g., Jolly Roger Fund LP v.

Sizeler Prop. Investors, Inc.*, C.A. No. RDB 05-841, 2005 WL 2989343, at *6 (D. Md. Nov. 3,

2005) (under Maryland law, "an action that causes harm to a corporation and incidentally injures

shareholders by diminishing or destroying the value of their stock *is not a direct action*")

(emphasis added). The court in *Jolly Roger* expressly distinguished *Strougo* on the grounds that

the *Strougo* court ignored the *Werbowsky* decision. *Id.* at *5.

　　　　In addition to relying on inapposite federal authority such as *Strougo*, Plaintiffs also cite

to a number of Delaware Court of Chancery decisions in support of their view, despite their

concession that Maryland law applies to their breach of fiduciary duty claims.[4] (Ans. Br. 24-25;

26 n.12) And even the few Maryland state court cases Plaintiffs bother to acknowledge are either

*supportive* of the Outside Directors' position,[5] or entirely inapposite.[6] In short, Plaintiffs have

---

[4]　　　Plaintiffs suggest that the Court should look to Delaware law by analogy and hold that
Maryland law permits stockholders to bring direct breach of fiduciary duty claims because
Delaware law permits stockholders to do so. (Ans. Br. 24-25) That Maryland courts will
sometimes look to Delaware law for guidance on novel issues of corporate law, however, is no
reason to override binding Maryland Court of Appeals authority on such issues. To do so would
be unconstitutional. *See, e.g., CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 91 (1987).

[5]　　　*See Indurated Concrete Corp. v. Abbott*, 74 A.2d 17, 22 (Md. 1950) (citing *Waller*
affirmatively, recognizing that "[a]n action at law to recover for an injury to a corporation can be
brought only in the name of the corporation itself acting through its board of directors"); *Taffin v.
Levitt*, 608 A.2d 817, 820 (Md. Ct. Spec. App. 1992) (predating *Werbowsky* by 9 years, but
noting that fraudulent transfer claims raised by depositors of insolvent savings and loan
association were *derivative* in nature); *Spatola v. Novastar Fin., Inc.*, No. 24-C-04-007513, Mem.
at 4 (Cir. Ct. Balt. Feb. 16, 2006) (citing *Werbowsky* in connection with a *derivative* demand
refused case under Delaware law); *Felker v. Anderson*, C.A. No. 04-0372-CV-W-ODS, 2005 WL
602974, at *3-*4 (W.D. Mo. Feb. 11, 2005) (involving Missouri federal court analyzing
*derivative* stockholder claims under Maryland law).

6

provided no reason for this Court to stray from the holding in *Werbowsky* that fiduciary duty claims under Maryland law are derivative, not direct, in nature.[7]

**B.   Plaintiffs Lost Standing As A Result Of The BAC Merger.**

Plaintiffs next attempt to regain standing by plowing through the bright line drawn by the "contemporaneous ownership" rule, pursuant to which a plaintiff who owns stock in a Maryland company loses standing to pursue derivative claims when the plaintiff ceases to be a shareholder – including by reason of a merger, such as the BAC Merger here. (Op. Br. 13, citing *Ettridge v. TSI Group, Inc.*, 548 A.2d 813, 817-18 (Md. 1988) and *Danielewicz,* 769 A.2d at 281-82)

Plaintiffs acknowledge, as they must, that they have lost standing as MBNA stockholders to pursue claims on behalf of MBNA, which no longer exists as a result of the BAC Merger. (Ans. Br. 62-63)  Instead, Plaintiffs argue that the contemporaneous ownership rule does not extinguish their ability *as BAC stockholders* to pursue the exact same derivative claims they are constrained from pursuing as MBNA stockholders.  (Ans. Br. 57)  Plaintiffs even go so far as to suggest that this is how the contemporaneous ownership rule is applied in Delaware.  Not so.

Under Delaware law, a stock-for-stock merger with a large public company, such as BAC, results in the application of the contemporaneous ownership rule, and deprives plaintiffs of standing to pursue derivative claims – whether or not they continue on as stockholders of the acquiring company.  *See, e.g., In re First Interstate Bancorp Consol. S'holder Litig.*, 729 A.2d

---

(cont'd from previous page)
[6]      *See Toner v. Baltimore Envelope Co.,* 498 A.2d 642, 647 (Md. 1985) (dealing with dispute involving closely held company, not a publicly, exchange-traded company like MBNA, and focusing on relationship between majority and minority stockholders, not directors and shareholders); *Jasinover v. Rouse Co.,* C.A. No. 13-C-04-59594, 2004 WL 3135516, at *13 (Md. Cir. Ct. Nov. 4, 2004) (ignoring *Werbowsky,* but denying preliminary injunction without reaching issue of standing after finding that claim would ultimately have failed anyway had merits been reached because plaintiff had a "low probability of being able to prevail on the merits").

[7]      The Outside Directors acknowledge that Maryland law has left open the possibility that stockholders may bring direct claims against directors, but only in narrow, unique circumstances not present here. *See, e.g., Waller,* 49 A.2d at 453 (leaving open theoretical possibility of direct action against director or officer for breach of contract or interference with voting rights).

851 (Del. Ch. 1998) (holding that plaintiff stockholders' ability to pursue derivative claims on

behalf of First Interstate was extinguished as a result of a stock-for-stock merger with Wells

Fargo); *see also Lewis v. Ward*, 852 A.2d 896, 903-04 (Del. 2004) (rejecting plaintiffs' request to

ignore application of contemporaneous ownership rule in context of stock-for-stock mergers).

The plaintiffs in *First Interstate* made the same argument made by the Plaintiffs here, asking the

court to modify the contemporaneous ownership rule because they received stock consideration in

a merger. *First Interstate*, 729 at 867. The Court rejected this argument, holding that such an

exception "would not apply to 'mergers with outside or pre-existing corporations with substantial

assets.'" *Id.* A near identical argument also was rejected by the Delaware Supreme Court in

*Lewis v. Ward.* 852 A.2d at 904 (holding that "we ratify and reaffirm the general rule" that

derivative claims are extinguished by mergers, including stock-for-stock mergers).[8]

     Nevertheless, Plaintiffs claim that they have standing to pursue their claims here because

they are bringing these claims as "direct shareholders of the exact entity on whose behalf the

claim is brought, BAC." (Ans. Br. 58) Yet, in making this argument, Plaintiffs ignore the basic

requirement of the contemporaneous ownership rule – that plaintiffs actually be stockholders at

the time the purported claims arise. *See, e.g., Danielewicz*, 769 A.2d at 281 (the rule provides

that a "'shareholder does not have standing to recover against directors for acts which took place

prior to the shareholder becoming a shareholder'"); *Saito v. McCall*, C.A. No. 17132-NC, 2004

WL 3029876, at *4 (Del. Ch. Dec. 20, 2004) ("To survive a motion to dismiss, a derivative

plaintiff shall allege that the plaintiff was a shareholder . . . at the time of the transaction of which

the plaintiff complains."). Here, Plaintiffs became BAC stockholders when the Merger closed on

January 1, 2006. (Ans. Br. 57, 62) Not only were Plaintiffs not BAC stockholders at the time

---

[8]     Plaintiffs' attempt to sidestep the principles set forth in *Porter v. Texas Commerce Bancshares, Inc.*, C.A. No. 9114, 1989 WL 120358 (Del. Ch. Oct. 12, 1989), also misses the point. That case clearly sets forth the general rule under Delaware law that a "merger in which a corporation's shareholders received stock in another corporation, other securities or cash, *will always result in termination of the right of the pre-merger shareholders to sue on behalf of the company.*" *Id.* at *5 (emphasis added).

they filed the Complaint, they were not BAC stockholders at the time of any of the alleged

wrongful conduct identified in the Complaint. By definition, Plaintiffs cannot satisfy the

standards of the contemporaneous ownership rule, and have no standing to pursue their claims.

*Danielewicz*, 769 A.2d at 281; *Saito*, 2004 WL 3029876, at *4.

**C.    Plaintiffs Have Not Alleged That Demand On The BAC Board Was Excused.**

Even if the Court were to conclude that receiving shares of BAC stock was sufficient to

provide Plaintiffs with continued standing to pursue their claims, Plaintiffs have failed to show –

under Delaware law, because BAC is a Delaware company – why demand on the BAC board

would be excused. Plaintiffs effectively concede that they have offered absolutely no

particularized, specific allegations about any of BAC's directors that support the notion that they

are unable to consider fairly any demand. (Ans. Br. 60-62) Notably, Plaintiffs do not refer to any

BAC board member – other than Ken Lewis – let alone even attempt to identify how many

directors sit on the BAC board. *See, e.g., Biondi v. Scrushy*, 820 A.2d 1148, 1153 (Del. Ch. 2003)

(cited by Plaintiffs, stating that "[u]nder Delaware case law, it is difficult to plead demand futility

by filing a complaint that only identifies one of the nine directors and that does not attempt to

plead breach of fiduciary duty on a particularized basis"). As the Outside Directors explained in

their opening brief, such conclusory allegations of demand futility fail to state a claim. (Op. Br.

15-16, citing *Pogostin v. Rice*, C.A. No. 6235, 1983 WL 17985, at *3 (Del. Ch. Aug. 12, 1983),

*aff'd* 480 A.2d 619 (Del. 1984)). Plaintiffs' lone attempt to argue that a demand on the BAC

board would be futile is based on their allegation that the BAC board of directors "has pledged in

writing to oppose and defend *the very claims plaintiffs have asserted*." (Ans. Br. at 60 (emphasis

added)) Plaintiffs' reasoning fails as a matter of fact and law.

*First*, the specific language upon which Plaintiffs rely to support their assertion is the

typical boilerplate indemnification language found in any standard merger agreement. *See*

Merger Agreement at Section 6.7 Indemnification; Directors' and Officers' Insurance; relevant

excerpt attached hereto as Ex. A; *see also In re Talley Indus., Inc. S'holders Litig.*, C.A. No.

15961, 1998 WL 191939, at *4 n.1 (Del. Ch. Apr. 13, 1998) (recognizing as "typical" and "common[]" the exculpation, indemnification and insurance provisions included in merger agreement). Notably absent from that passage is any mention of these Plaintiffs or their specific claims, as Plaintiffs would have the Court believe.[9]  Plaintiffs have no basis to suggest that their lawsuit was the sole impetus for the inclusion of Section 6.7 in the Merger Agreement. In fact, if the boilerplate language of Section 6.7 were really meant to always prohibit the board of the surviving corporation from ever bringing a derivative claim against directors and officers of the absorbed entity, then the futility exception always would swallow the demand rule in the stock-for-stock context. *See, e.g., In re Prudential Ins. Co. Deriv. Litig.*, 659 A.2d 961, 973 (N.J. Super. Ct. App. Div. 1995) ("[R]outine excuse of demand based on the existence of such standard exclusions would eviscerate the demand requirement. . . . Pleading that the board would be swayed by the existence of the afore-mentioned policies is insufficient to show lack of director interest."). Therefore, Plaintiffs' assertion that the BAC board, by indemnifying MBNA's directors and officers, specifically contracted away its ability to bring suit on "the very claims plaintiffs have asserted" should be rejected.

*Second,* written indemnity and insurance obligations do not "preordain that the Board would reject a demand that otherwise had merit." *Grobow v. Perot*, 526 A.2d 914, 925 n.14 (Del. Ch. 1987) (granting motion to dismiss for failure to plead demand futility, holding that "[i]ndemnification as an adjunct to a business transaction is not illegal or necessarily imprudent. The corporation's obligation to indemnify a director is not unlimited. Accordingly, it would be incorrect to conclude that the mere presence of the indemnity provision in the buy-out agreement

---

[9]     For this reason, Plaintiffs' reliance on *Biondi* – which, unlike here, involved public statements about the *specific* directors implicated and the *specific* acts complained of -- is misplaced. (*See* Ans. Br. at 61 (citing *Biondi* 820 A.2d at 1148)) In *Biondi*, the court was reluctant to accept that a special committee of directors could impartially investigate the conduct of other directors because the chairman of the committee "publicly and prematurely issued statements exculpating one of the key company insiders." *Id.* at 1166.

would [contractually obligate] the Board [to] reject a demand that otherwise had merit."), *aff'd*,

539 A.2d 180 (Del. 1988).

For these reasons, Plaintiffs' lone attempt to justify their failure to make a demand on the

BAC board must fail.

### III.    IN THE ALTERNATIVE, THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

As explained above, there are three independent and powerful reasons why the Court

should dismiss the claims against the Outside Directors without reaching the merits of those

claims: (1) lack of subject matter jurisdiction; (2) the contemporaneous ownership rule; and (3)

failure to make a particularized showing that demand is excused. To the extent the Court does

consider the merits, each of the counts of the Complaint that names the Outside Directors should

also be dismissed for failure to state a claim.

### A.    Plaintiffs Have Failed To Plead Around The Business Judgment Rule.

As the Outside Directors explained in their opening brief, Maryland law requires a

plaintiff to allege facts sufficient to rebut the statutory business judgment presumption in order to

state a fiduciary duty claim. (Op. Br. 22, citing *Hudson v. Prime Retail, Inc.*, C.A. No. 24-C-03-

5806, 2004 WL 1982383, at *1 (Md. Cir. Ct. Apr. 1, 2004))  Plaintiffs suggest, however, that

under federal law – as opposed to Maryland state law – they are not required to plead facts in

their Complaint that set forth a claim for breach of fiduciary duty. (Ans. Br. 16-19, citing *In re

Tower Air, Inc.*, 416 F.3d 229 (3d Cir. 2005))  This argument misses the point.  Because

fiduciary duty claims are derivative in nature under Maryland law, Plaintiffs must satisfy the

elevated pleading standard controlling shareholder derivative suits.  *See* Fed. R. Civ. P. 23.1

("The complaint shall . . . allege with particularity the efforts, if any, made by the plaintiff to

obtain the action the plaintiff desires from the directors . . . and the reasons for the plaintiff's

failure to obtain the action or for not making the effort."); *see also Tower Air*, 416 F.3d at 236

(acknowledging the heightened pleading standard imposed in derivative actions).  Plaintiffs have

11

not even attempted to satisfy this heightened pleading standard, given their contention that even conclusory allegations of wrongdoing can suffice to state a claim in federal court. (Ans. Br. 16-17)

Even under the more "relaxed notice pleading standards" imposed by the federal rules, Plaintiffs must still "make out a claim upon which relief can be granted." *Id*. at 236-37. Thus, they still must make *some* allegations that rebut Maryland's codified version of the business judgment presumption. *Id*. at 238 (holding that although federal pleading standards may be less stringent than state law pleading standards, plaintiff was still required to "plead around the business judgment rule" to withstand a motion to dismiss a claim for breach of fiduciary duty). Moreover, even the *Tower Air* court dismissed certain claims for breach of fiduciary duty, not unlike the claims raised here, when it was apparent from the face of the complaint that such claims were without merit. *Id*. at 239 ("The problem . . . is not the facts that are not pleaded, but the facts that are.").

Under any pleading standard, Plaintiffs have failed to state a claim for breach of fiduciary duty against the Outside Directors. Plaintiffs failed to adequately allege that the Outside Directors received any personal benefit from their approval of the Merger, or that they lacked independence. (Op. Br. 23) Plaintiffs also failed to allege any basis for concluding as a matter of law that any of the Outside Directors sold *any* securities (based on inside information or otherwise) (Op. Br. 24); committed mismanagement or waste (Op. Br. 24-25); made any misstatements or omissions to the public (Op. Br. 24); or ignored red flags about MBNA's financial condition at any time (Op. Br. 26). Plaintiffs did not specifically respond to any of these arguments in their 69-page answering brief, preferring instead to lump the Outside Directors together with the Inside Directors when discussing their claims.

Most significantly, however, the Outside Directors demonstrated in their opening brief that the Complaint, *as alleged*, does not establish that a majority of the MBNA board acted disloyally (*i.e.*, by having a material self-interest in the transaction) or failed to act independently or in good faith in connection with the Merger. (Op. Br. 19-20) ***Critically, Plaintiffs do not even***

12

***attempt to rebut this argument.*** As a result, any breach of fiduciary duty claims relating to the BAC Merger – whether considered direct or derivative – should be dismissed. (*See, e.g.,* Op. Br. 28, citing *Danielewicz*, 769 A.2d at 296) *See also Blackmore Partners L.P. v. Link Energy LLC*, C.A. No. 454-N, 2005 WL 2709639, at * 7 (Del. Ch. Oct. 14, 2005) ("the protections of the business judgment rule . . . insulate a board decision from challenge so long as a majority of the directors approving the transaction remain disinterested"); *In re Freeport-McMoran Sulphur, Inc. S'holders Litig.*, C.A. No. 16729, 2001 WL 50203, at *5 (Del. Ch. Jan. 11, 2001) (dismissal warranted where plaintiff failed to rebut business judgment presumption with particularized allegations establishing that a majority of the board was interested in the transaction).[10]

Rather than directly address these pleading deficiencies in their answering brief, Plaintiffs offer three general arguments why the Complaint states a claim against all directors, including the Outside Directors. Each must fail.

*First,* Plaintiffs argue that because Hammonds allegedly engaged in self-dealing, his involvement in the negotiations with BAC taints the decision of the MBNA board to enter into the BAC Merger. (Ans. Br. 33-34) This argument fails because even if Hammonds (or any other insider director) was conflicted in connection with the BAC Merger, that "conflict" does not taint the decision of a majority of disinterested and independent directors, nor change that the business judgment presumption still applies to protect their decision. *See, e.g., Cede & Co. v. Technicolor*, 634 A.2d 345, 363 (Del. 1993) ("This Court has never held that one director's colorable interest in a challenged transaction is sufficient, without more, to deprive a *board* of the protection of the business judgment presumption of loyalty.") (emphasis in original); *In re Frederick's of Hollywood, Inc. S'holders Litig.*, C.A. No. 15944, 2000 WL 130630, at *7 (Del. Ch. Jan. 31, 2000) (dismissing duty of loyalty claim because plaintiff alleged that only one of four directors was interested and because the challenged merger was approved by a majority of disinterested

---

[10]    For this reason, Plaintiffs' reliance on cases where an alleged *interested* board of directors, *dominated* by its CEO, engaged or acquiesced in wrongdoing (Ans. Br. 27), is misplaced.

directors). Similarly, there was no reason for the board to form a special committee (in order to retain the business judgment presumption) where, as here, a majority of directors is alleged to be disinterested and independent. *Id.*

*Second*, Plaintiffs contend that the MBNA board members – including the Outside Directors – impermissibly allowed Hammonds to take the lead in the negotiations with BAC, and then consciously disregarded their duties by "rubber-stamping" his decision to enter into the BAC Merger. (Ans. Br. 34) This contention fails for a number of reasons. As an initial matter, it is not uncommon for one person – sometimes the Chief Executive Officer – to take the lead in negotiations with a potential merger partner. *See, e.g., In re MONY Group Inc., S'holder Litig.*, 852 A.2d 9, 20 (Del. Ch. 2004); *see also In re Toys "R" Us, Inc., S'holder Litig.*, 877 A.2d 975, 1003 (Del. Ch. 2005) (rejecting plaintiffs' contention that transaction was somehow tainted because CEO, an inside director, played a significant role throughout the search and negotiation process with potential suitors). Moreover, Plaintiffs do not allege that the MBNA board was unaware of Hammonds' discussions with BAC's Lewis, or that it had no input into those discussions or had not authorized them. Finally, Plaintiffs' contention is directly countered by facts alleged in the Complaint. *Tower Air*, 416 F.3d 229. Plaintiffs took great pains to explain that the MBNA board, including the Outside Directors, engaged in a thorough search process for potential merger partners, and had hired both legal and (two) financial advisors. (Op. Br. 8-9, citing Compl. ¶¶ 3, 15, 83, 86. Plaintiffs' attempt in their answering brief to draw a negative inference from the hiring of these sophisticated advisors (Ans. Br. 45) is baseless. *See, e.g., Jasinover*, 2004 WL 3135516, at * 9 ("In performing his duties, a director is entitled to rely on any information, opinion, report or statement" provided by his expert advisor).

*Third*, Plaintiffs argue that all of the MBNA board members – including the Outside Directors – are conflicted because they (allegedly) agreed to the BAC Merger in order to obtain indemnification for any liability incurred in the Securities Action, as well as this derivative action. (Ans. Br. 34-35) This argument must fail. As an initial matter, the Outside Directors are not

14

even defendants in the Securities Action. In addition, a charge that a director was indemnified is insufficient as a matter of law to state a claim. *See, e.g., Decker v. Clausen,* C.A. No. 10684, 1989 WL 133617, at *2 (granting motion to dismiss; describing plaintiff's argument that provision indemnifying directors against litigation liability rendered directors "interested" in a proposed decision as a "variation[] on the 'directors suing themselves' and 'participating in the wrongs' refrain [that] provide no particularized facts creating a reasonable doubt that the directors are disinterested or independent."). Plaintiffs' argument is also undermined by the facts alleged in the Complaint. *Tower Air,* 416 F.3d 229. As the Outside Directors previously explained, the Complaint clearly alleges that the MBNA board *turned down* an earlier offer from Wachovia before accepting the BAC offer, a fact clearly inconsistent with the theory that Defendants were desperate to sell the Company. (Op. Br. 15, citing Compl. ¶ 86) Similarly, Plaintiffs' attempt to draw a negative inference from Hammonds' "no 'For Sale' sign" comment in *Business Week* runs counter to their theory that he and the other Defendants were desperate to sell the Company at any cost. [11]

**B.    Plaintiffs' Reliance On So-called *Revlon* Duties As The Basis For Their Attack On The BAC Merger Process Must Fail.**

As the Outside Directors conclusively demonstrated in their opening brief, Maryland law does not subject directors that approve a change of control transaction "to a higher duty or greater scrutiny than is applied to any other act of a director." (Op. Br. 27, citing Md. Code Ann., Corps. & Ass'ns § 2-405.1(f)) This includes so-called *Revlon* duties, which are the embodiment of a heightened standard of conduct imposed by *Delaware* courts that require *Delaware* directors that engage in a change of control transaction to obtain the highest value reasonably obtainable. As a

---

[11]    Plaintiffs are also wrong to suggest that the Outside Directors acquiesced in wrongdoing by failing to correct Hammonds' "no 'For Sale' sign" comment. (Ans. Br. 39) In addition to the reasons already set forth in the Outside Directors' opening brief on this point (Op. Br. 31 n.17), there was nothing for the Outside Directors (or any board member) to correct. As the Complaint makes clear, in early June, the MBNA board was exploring *strategic business combinations,* including a potential merger with Wachovia, and the ultimate merger with BAC, and never once determined to "sell" the Company. (Compl. ¶¶ 3, 83, 86)

leading Maryland commentator has explained, Section 2-405.1 of the Maryland Corporate Code "negates the applicability of the *Unocal* and *Revlon* standards in Maryland." *See* Kenneth B. Abel, *The Maryland Corporation: Legal Aspects of Organization & Operation* § VI(H) (2004). This dooms the majority of Plaintiffs' claims relating to the BAC Merger, which are premised on the contention Defendants failed to satisfy *Revlon* duties. (*See, e.g.,* Compl. ¶ 180; Ans. Br. 30)

In an attempt to salvage their claims, Plaintiffs make the strained argument that Maryland law somehow imposes *Revlon* duties as part of a business judgment rule analysis, suggesting that the "presumption that the directors satisfied [their *Revlon*] duties" can be rebutted by alleging facts that show that the MBNA directors failed to "maximize value" in connection with the BAC sale. (Ans. Br. 31) This argument must fail, as Plaintiffs are attempting to shoehorn the Delaware concept of *Revlon* duties into a Maryland corporate law analysis – something the Maryland legislature and the Maryland courts have conclusively rejected. *See* 2-405.1(f); *Jasinover*, 2004 WL 3135516, at *9 ("Maryland law is less restrictive than the view of Delaware law that Plaintiff espouses.").[12]

Plaintiffs also contend that, even if *Revlon* duties do not apply in Maryland, they have stated a claim because the MBNA board entered into the BAC Merger without providing for a valid market check. (Ans. Br. 32-33) Putting aside whether a "market check" is even required under Maryland law, *see Jasinover*, 2004 WL 3135516, at *9 ("the Board is free to lock up an attractive deal"), this contention finds no support in the Complaint, which clearly alleges that the board engaged in a pre-merger market check by exploring strategic options (Op. Br. 30, citing

---

[12]     Plaintiffs' reliance on a snippet of text from a transcript opinion cited by the court in *Wittman v. Crooke*, 707 A.2d 422 (Md. Ct. Spec. App. Mar. 27, 1998), to support their theory that *Revlon* duties exist under Maryland law (Ans. Br. 30), is clearly misplaced. Not only does *Wittman* not cite to the *Revlon* decision, Plaintiffs misquote the *Wittman* opinion and the snippet of text they rely on, which clearly explains that "[directors] have a duty of loyalty to [the Company] and shareholders to do their very best for them, *which they conclude is very good for the Company*." *Id.* at 425 (emphasis added). Nowhere does the court in *Wittman* state that directors are required to obtain *for stockholders* the highest price reasonably available, as the *Revlon* court so concluded.

Compl. ¶¶ 3, 86, 171), and a 6-month post-merger market check (between the time that the
MBNA board publicly announced the BAC Merger and when the stockholders voted to approve
the deal) when any other potential suitor could have come forward with a competing proposal.
(Compl. ¶¶ 17, 91); *see also MONY Group*, 852 A.2d at 22 (holding that five-month post-
agreement market check was sufficient); *Toys "R" Us*, 877 A.2d at 1006-07 (rejecting plaintiffs'
argument that public announcement of deal was not enough to signal potential suitors to make
alternative bids; commenting that, in plaintiffs' view, "[t]he M&A market ... is comprised of
buyers of exceedingly modest and retiring personality, too genteel to make even the politest of
uninvited overtures: a cotillion of the reticent"). Thus, Plaintiffs' argument that the MBNA board
acted improperly by "concealing" the BAC Merger is without merit, and the cases relied on to
support that argument are clearly misplaced. (Ans. Br. 28-30)

Plaintiffs further argue that agreeing to a "no-shop" provision in the BAC Merger
Areement, which limited the ability of the MBNA board to talk with other potential suitors post-
agreement, along with granting a stock option to BAC, is improper whether considered under
Delaware or Maryland law. (Ans. Br. 31) This argument must fail. *First*, Maryland law is clear
that "the Board is free to lock up an attractive deal and use post-agreement methods to do so."
*Jasinover*, 2004 WL 3135516, at *9. Even if the no-shop provision and the stock option could be
fairly described as "locking up" the BAC Merger, it would be permissible to do so under
Maryland law. *Second*, similar deal protection provisions have been upheld under the more
rigorous forms of scrutiny imposed by Delaware courts. *See, e.g., Yanow*, 1988 WL 8772, at *4-
6 (rejecting claim that board's (i) agreeing to a no-shop provision restricting it from negotiating a
transaction at a higher price post-agreement; and (ii) granting of a stock option to acquiror that, if
exercised, would result in acquiror owning about 16.6% of target's shares, violated board's *Revlon*
duties). In fact, in *Yanow*, the Court of Chancery specifically held that the option in that case was
"not a 'lock up' option that would operate to preclude other bids," because its only effect was to

raise the acquisition cost for any alternative suitor.[13] *Id.* at *5 n.6  Moreover, it is inaccurate to

describe these provisions as "preclusive" or as a *"fait accompli"* -- concepts that Plaintiffs steal

from a line of inapposite Delaware cases that employ a heightened form of scrutiny (*i.e.,* the

*Unocal* standard of review). (*See, e.g.,* Ans. Br. 20, citing *Omnicare, Inc. v. NCS Healthcare,*

*Inc.,* 818 A.2d 914, 934-36 (Del. 2003))  Even in these Delaware cases, it is clear that a merger is

not a *fait accompli* when stockholders have the ability to vote against the merger, as the MBNA

stockholders did here. *See Orman v. Cullman*, C.A. No 18039, 2004 WL 2348395, at *7 (Del. Ch.

Oct. 20, 2004) (finding under *Unocal* that deal protection provisions were not a *fait accompli*

because public shareholders were free to reject merger).  In any event, Plaintiffs here do not even

allege – nor could they – that a potential suitor was prevented from making a competing bid due

to the terms of the BAC Merger.

**C.    The Complaint Should Be Dismissed In Its Entirety Because The Outside Directors Are Not Subject To Liability For Money Damages.**

In their opening brief, Defendants explained that Maryland companies are permitted by

statute to include a provision in their charters that exculpates directors from personal liability for

any improper conduct short of fraud. (Op. Br. 31-32, citing MCC § 2-418)  Accordingly, because

MBNA's charter contains such an exculpatory provision, and because Plaintiffs have failed to

allege that the Outside Directors engaged in fraudulent conduct, their claim for money damages

must be dismissed. (Op. Br. 31-33)

---

[13]    Plaintiffs' contention that this incremental cost was approximately $6 billion (Ans. Br. 2 n.1) is misleading.  This is an estimate of the *gross* value of the approximately 250 million shares subject to the stock option.  The true incremental cost of the option to any alternative suitor, however, is the *net* cost of those shares – *i.e.,* the value of the 250 million shares less what BAC would actually have to pay to exercise the option.  According to Plaintiffs, if BAC exercised the option, it would receive the 250 million shares for $1.3 billion less than the gross value of those shares. (Compl. ¶ 16)  This amounts to approximately 3.7% of the total value of the Merger – an incremental cost that courts have found to be clearly within the range of reasonable values from a deal protection standpoint. *See Toys "R" Us*, 877 A.2d at 1018 (approving deal protection measure requiring alternative suitor to pay at least 3.75% more than current merger price).

Plaintiffs do not dispute that MBNA's charter contains a valid § 2-418 charter provision. Instead, they argue – citing to inapposite Delaware authority – that the Court should not consider it on a motion to dismiss, because application of a § 2-418 charter provision is in the nature of an affirmative defense. (Ans. Br. 36)  Plaintiffs once again, however, ignore Maryland law that undermines their argument. *See, e.g., Grill v. Hoblitzell*, 771 F. Supp. 709, 712 (D. Md. 1991) (granting motion to dismiss waste and mismanagement claims pursuant to § 2-418 provision where claims did not constitute "situations involving *'active and deliberate dishonesty'*") (emphasis added).  Plaintiffs also ignore that Delaware courts have routinely dismissed fiduciary duty claims pursuant to exculpatory provisions. *See, e.g., McMillan v. Intercargo Corp.*, 768 A.2d 492, 501-03, n.43 (Del. Ch. 2000) (where "certificate of incorporation bars duty of care claims *and* . . . the well-pled allegations of the complaint fail to support a claim that the defendant directors engaged in non-immunized conduct, the defendant directors meet their affirmative duty to justify dismissal of the entire complaint") (emphasis in original).

Plaintiffs also argue that it would be premature to dismiss their claims pursuant to MBNA's § 2-418 provision because they have raised duty of loyalty claims. (Ans. Br. 64)  Again, Plaintiffs improperly attempt to mix Delaware's apples with Maryland's oranges. As a leading Maryland commentator has explained, § 2-418 allows a Maryland corporation to insulate directors from liability stemming from *all claims short of fraud,* including for breaches of the duty of loyalty. *See* James J. Hanks, Jr., *Maryland Corporation Law*, at § 6.9.  In any event, Plaintiffs here have failed to even state a claim for breach of the duty of loyalty; thus, any remaining care claim – if Plaintiffs have even stated one, and Defendants contend they have not – should be dismissed pursuant to MBNA's § 2-418 provision. *See, e.g., Grill*, 771 F. Supp. at 712.

**D.    Plaintiffs' "Holder Class Claims" Should Be Dismissed.**

Any debate over whether Plaintiffs' holder class claims should be allowed to proceed under Maryland state law was recently ended by the United States Supreme Court. In *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, C.A. No. 04-1371, 2006 WL 694137, at *10 (U.S.

Mar. 21, 2006), the Supreme Court held that the Securities Litigation Uniform Standards Act of

1998 ("SLUSA") – which precludes state law securities class actions premised on "the purchase

or sale of securities" – was intended to preempt state law class actions brought on behalf of a

class of stockholders that *retain* their shares in reliance on false and misleading statements.  In

reaching its conclusion, the Supreme Court reasoned that the fact that a securities class action "is

brought by holders [of securities] instead of purchasers or sellers [of securities] . . . is irrelevant"

for purposes of SLUSA preemption because, in either case, the "fraudulent manipulation of stock

prices . . . unquestionably qualifies as fraud 'in connection with the purchase or sale' of

securities." *Id.*  To hold otherwise would "give rise to wasteful, duplicative litigation." *Id.* at *8.

Thus, Plaintiffs' holder claims should be dismissed.[14]

## CONCLUSION

For the foregoing reasons, and the reasons expressed in their opening brief, the Outside

Directors respectfully request that all claims against them be dismissed.

|  |  |
|---|---|
| | /s/ Edward P. Welch |
| | Edward P. Welch (I.D. # 671) |
| | Edward B. Micheletti (I.D. #3794) |
| | SKADDEN, ARPS, SLATE, |
| Of Counsel: | MEAGHER & FLOM LLP |
| Jay B. Kasner | One Rodney Square |
| Susan L. Saltzstein | P.O. Box 636 |
| SKADDEN, ARPS, SLATE, | Wilmington, Delaware  19899-0636 |
| MEAGHER & FLOM LLP | (302) 651-3000 |
| Four Times Square | Attorneys for the MBNA |
| New York, New York  10036-6522 | Outside Director Defendants |

DATED:  April 5, 2006

---

[14]    The Outside Directors have nothing to add to the well-reasoned arguments made by the Inside Directors concerning the three disclosure points raised in Plaintiffs' answering brief.  The Outside Directors maintain, as they did in their opening brief (Op. Br. 35), that shareholder ratification properly applies here to extinguish all of Plaintiffs' breach of fiduciary duty claims related to the BAC Merger. *See, e.g., In re General Motors (Hughes) S'holder Litig.*, C.A. No. 260, 2005, 2006 WL 722198, at *6 (Del. Mar. 20, 2006) (affirming Rule 12(b)(6) dismissal of breach of loyalty claims relating to merger transaction based on shareholder ratification).

20

450651.10-Wilmington Server 1A - MSW