UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

-----------------------------------------------------------x
IN RE MBNA CORPORATION
DERIVATIVE AND CLASS
LITIGATION

This Document Relates To:

ALL ACTIONS.

-----------------------------------------------------------x

Lead Case No. 1:05-cv-00327-GMS

**PLAINTIFFS' SUR-REPLY MEMORANDUM RELATING TO
THE ISSUE OF SUBJECT MATTER JURISDICTION**

CHIMICLES & TIKELLIS, LLP
PAMELA S. TIKELLIS (#2172)
DANIEL J. BROWN (#4688)
One Rodney Square
P.O. Box 1035
Wilmington, DE 19899
Telephone: 302/656-2500
Facsimile: 302/656-9053

Liaison Counsel for Plaintiffs

ROBBINS UMEDA & FINK, LLP
JEFFREY P. FINK
610 West Ash Street, Suite 1800
San Diego, CA 92101
Telephone: 619/525-3990
Facsimile: 619/525-3991

PASKOWITZ & ASSOCIATES
LAURENCE PASKOWITZ
ROY JACOBS
60 East 42nd Street, 46th Floor
New York, NY 10165
Telephone: 212/685-0969
Facsimile: 212/685-2306

Dated: December 11, 2006

Co-Lead Counsel for Plaintiffs

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..............................................................................................1

ARGUMENT...........................................................................................................................6

A. Plaintiffs Have Asserted An Explicit and
   Substantial Federal Claim ...........................................................................................6

B. The Need to Decide Federal Law in Adjudicating Plaintiffs'
   Common Law Claims Confers Federal Subject Matter on
   this Court Under the Supreme Court's Decision in *Grable* ........................................8

C. Diversity Jurisdiction Continues to Exist Despite Consolidation..........................10

D. Pendent Jurisdiction May be Properly Exercised
   Over All of Plaintiffs' Claims...................................................................................11

E. In the Event this Court Finds a Lack of Subject
   Jurisdiction, this May be Cured by Amendment ....................................................12

CONCLUSION.....................................................................................................................14

# TABLE OF AUTHORITIES

**CASES**                          **PAGE**

*Berkshire Fashions, Inc. v. The M.V. Hakusan II,*
   954 F.2d 874 (3d Cir. 1992) ...................................................................................13

*Brayall v. Dart Indis., Inc.,*
   1988 WL 72766 (D. Mass. Feb. 3, 1988)……………………………………..12 n.13

*Buxbaum v. Deutsche Bank,*
   2000 U.S. Dist. LEXIS 5838 (S.D.N.Y. Mar. 7, 2000) ..................................4 n.5

*Cella v. Togum Constructeur Ensemleier En Industrie Alimentaire,*
   173 F.3d 909 (3d Cir. 1999) ................................................................................5, 10

*Christopher v. First Mut. Corp.,*
   2006 U.S. Dist. LEXIS 2255 (E.D. Pa. Jan. 20, 2006) ....................................11

*Exxon Mobil Corp. v. Allapattah Servs.,*
   545 U.S. 546, 125 S. Ct. 2611 (2005).................................................................10

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,*
   545 U.S. 308 (2005).........................................................................................5, 7, 9

*HB Gen. Corp. v. Manchester Partners,*
   95 F.3d 1185 (3d Cir. 1996) ..................................................................................7

*Johnson v. Manhattan Railway Co.,*
   289 U.S. 479 (1933)................................................................................................9

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
   511 U.S. 375 (1994).................................................................................................7

*Lindsay v. Gov't Emples. Ins. Co.,*
   438 F.3d 416 (D.C. Cir. 2006)..............................................................................10

*Litig. Trust of MDIP, Inc. v. Rapoport,*
   2005 WL 1242157 (D. Del. May 25, 2005)..................................................11, 12

*Lyon v. Whisman,*
   45 F.3d 758 (3d Cir. 1995) ....................................................................................7

*MCI Worldcom Secs. Litig.*,
     2000 U.S. Dist. LEXIS 7230 (S.D.N.Y. April 11, 2000) ....................................................4

*Merritt v. Colonial Foods,*
     499 F. Supp. 910 (D. Del. 1980)..................................................................................9 n.10

*Musick, Peeler & Garrnett v. Employers Insurance of Wausau,*
     508 U.S. 286 (1993)......................................................................................................2

*Nanavati v. Burdette Tomlin Memorial Hospital*,
     857 F.2d 96 (3d Cir. 1988) ..................................................................................5, 6, 7, 11

*Orman v. Charles Schwab & Co.,*
     285 Ill. App. 3d 937 (Ill. App. 1996) ..............................................................................9

*PAAC v. Rizzo,*
     502 F.2d 306 (3d Cir. 1974)..........................................................................................11 n.12

*Phillips v. LCI Int'l Inc.,*
     190 F.3d 609 (4th Cir. 1999) ........................................................................................4

*PNC Bank, N.A. v. PPL Elec. Utils. Corp.,*
     2006 U.S. App. LEXIS 15850 (3d Cir. June 23, 2006) ..................................................4, 8

*United Mine Workers v. Gibbs,*
     383 U.S. 715 (1966).......................................................................................................7


**STATUTES AND RULES**

28 U.S.C. §1331...................................................................................................................1, 2

28 U.S.C. §1332...................................................................................................................2

28 U.S.C. §1367...................................................................................................................2

15 U.S.C. §78j(b)..................................................................................................................1

15 U.S.C. §78n(a).................................................................................................................12

15 U.S.C. §78t(a)..................................................................................................................12

15 U.S.C. §78u-4 ..................................................................................................................2

Rule 23 of the Federal Rules of Civil Procedure ................................................................. *passim*

# **PRELIMINARY STATEMENT**

Plaintiffs respectfully submit this Memorandum of Law pursuant to this Court's Order dated November 27, 2006, permitting plaintiff to address the question of subject matter jurisdiction, which was raised for the first time in this action in the April 5, 2006 motion to dismiss reply brief filed by the MBNA Outside Directors (D.I. No. 53).[1]

This class and shareholder's derivative action consists of three consolidated actions, two of which were separately filed in this Court by plaintiffs Lemon Bay Partners ("Lemon Bay") and Donald F. Benoit ("Benoit"). The *Lemon Bay* complaint was filed on May 25, 2005 in the wake of allegations that MBNA and its top executives had committed a securities fraud which cost the Company billions of dollars in market value. The Complaint asserted federal question jurisdiction based on claims for contribution brought under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), pursuant to which there is a private right of action for contribution, and Section 21D of the Private Securities Litigation Reform Act ("the PSLRA"), 15 U.S.C. § 78u-4, which governs the application of any private right of action

---

[1] The only previous time defendants have spoken with regard to subject matter jurisdiction was in connection with their *removal* of one of the constituent actions herein, *Rosenwald v. Unger, et al.*, which contained only state-law based claims and was commenced in Maryland State Court. At that time, defendants asserted in their Notice of Removal that: (1) "[t]his action arises under federal law within the meaning of 28 U.S.C. § 1331..."; (2) "Plaintiff's state law claims necessarily raise disputed and substantial federal issues; (3) "There is no question that a federal forum may entertain these issues without disturbing any Congressionally approved balance of federal and state judicial responsibilities"; and (4) it was appropriate for the case to proceed in federal court where it could join "two closely-related derivative actions, seven closely-related securities class actions, and one closely-related ERISA action...currently pending in the District of Delaware." A true and correct copy of defendants' Notice of Removal is attached to the accompanying Declaration of Laurence D. Paskowitz, dated December 11, 2006, as Exhibit A.

1

for contribution asserted pursuant to the Exchange Act.[2]  Jurisdiction was alleged under 28 U.S.C. § 1331 and, as to related state law claims, 28 U.S.C. § 1367 (providing for supplemental jurisdiction).  The *Lemon Bay* claims, asserted derivatively on behalf of MBNA, named various MBNA officers and director as defendants, including MBNA Chairman and CEO Bruce L. Hammonds ("Hammonds").

The similar *Benoit* derivative complaint, filed on June 6, 2005, asserted both federal question jurisdiction and diversity jurisdiction under 28 U.S.C. § 1332.  Defendants have never contested that complete diversity exists between plaintiff Benoit and all defendants.

The *Rosenwald* action, as discussed previously, asserted only state law claims, and was filed in the Circuit Court for the City of Baltimore, Maryland.  Pursuant to the removal petition filed with the consent and approval of all defendants, *Rosenwald* was removed to the District of Maryland, and then transferred to this Court.  On August 23, 2005 this Court entered an Order consolidating *Lemon Bay* and *Benoit,* and providing for the filing of a Consolidated Derivative and Class Complaint (D.I. No. 28).  On November 21, 2005, plaintiffs (including plaintiff Rosenwald) filed a Consolidated Amended Shareholder's Class and Derivative Complaint ("the Complaint") (D.I. No 31).  On January 20, 2006 defendants filed the presently-pending motions to dismiss (D.I. Nos. 38-44).

---

[2]  Prior to Congress having enacted an express provision governing contribution under the PSLRA, the United States Supreme Court recognized that a federal cause of action existed for contribution pursuant to Section 10(b) of the Exchange Act and Rule 10b-5.  *See Musick, Peeler & Garrnett v. Employers Insurance of Wausau*, 508 U.S. 286 (1993).

The present Complaint continues the allegations that the defendants are liable for contribution for securities fraud under two federal statutes, Section 10(b) of the Exchange Act and Section 21D of the PSLRA. Far from being an insubstantial part of the Complaint, as the Outside Directors now aver, the federally-based allegations form an integral part of plaintiffs' claims. *See* Cplt. ¶¶ 8-14, 48-82, and 114-26.[3] Indeed, plaintiffs allege that the securities fraud was part and parcel of an inter-related and continuing scheme by MBNA insiders to enrich themselves at the expense of the MBNA shareholders. The scheme began with excessive compensation and perquisites, continued with securities fraud, and then culminated in an unfair merger with Bank of America. As alleged in the Complaint, the revelation of the securities fraud was the impetus and motivation for the later merger[4], and it is among the primary reasons MBNA shareholders were deprived of a premium merger bid:

> As a consequence of this asserted wrongdoing [the securities fraud], MBNA and successor-in-interest Bank of America stand to lose many millions of dollars relating to the class action, including defense costs, and potential payment made in settlement, or as a consequences of an adverse jury verdict. Additionally, upon revelation of the omitted material facts, MBNA shares dropped considerably, and the Company thereby lost over $5.8 billion in market value. ***This drop, and the concomitant risk of liability, deprived the MBNA shareholders of the premium bid for the Company that could have been obtained had the fiduciary breaches not occurred.***

---

[3] A compendium summarizing the overlapping claims between the federal securities action and this action, and listing the federal issues raised by the Complaint, is submitted herewith for the Court's convenience as Exhibit B to the accompanying Paskowitz Declaration.

[4] As discussed in Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss dated March 6, 2006 (D.I. No. 47): "[M]ost importantly, the Insider Defendants extracted an agreement from BAC as part of the merger, to indemnify these Defendants from liability, and cooperate with them and to use BAC's best efforts to defend and defeat the claims stemming from being named personally as defendants in both the Securities Class Action and the present action with regard to the derivative claims against them." Pltfs. Opp. Br. at 11, *citing* Cplt. ¶¶ 2, 84, 90, 95.

Cplt. ¶ 14 (emphasis added).

Plaintiffs plainly assert that the merger and the securities fraud were part of a continuum of misconduct, which included yet another fraud by defendant Hammonds in connection with his denial that MBNA was not for sale in the midst of a search for a merger partner:

> Having milked MBNA for exorbitant compensation for years, Hammonds is alleged to have further feathered his nest by resorting to securities fraud and insider trading. Then, having exhausted that means of self-enrichment, Hammonds orchestrated a merger which deprived MBNA shareholders of billions of dollars in value, while providing a windfall to Hammonds of tens of millions of dollars (plus a lucrative new job with BAC). *Hammonds' aggravated misconduct included the dissemination of false public statements that MBNA was not for sale, which were designed to depress the stock price, and further Hammonds' personal agenda*: the sale of MBNA to a hand-picked acquirer who would provide him the benefits he desired, including an attractive post-merger position.

Pltfs. Opp. Br. at 16, *citing* Cplt. ¶¶15, 86, 94 (emphasis added).[5]

Only the Outside Directors argue that subject matter jurisdiction is somehow lacking in this action. The other defendants--MNBA, Bank of America, Hammonds, Vecchione, Struthers, Cochrane, Weaver, Krulak, Rhodes, Scheflen, Lerner and Lewis-- have raised no such contention. Any assertion that subject matter jurisdiction is absent is not well-taken, as there are at least four separate bases that establish such jurisdiction:

---

[5] The key issue of whether Hammonds had a duty of disclosure under the circumstances alleged in the Complaint turns on a sharply disputed issue of federal law, and both plaintiffs and defendants have cited federal decisions decided under Section 10(b) of the Exchange Act as determinative of this issue. *Cf.* Plts. Opp. Br. at 24-25 *citing inter alia In re MCI Worldcom Secs. Litig.*, 2000 U.S. Dist. LEXIS 7230, at *14-15 (S.D.N.Y. April 11, 2000) and *Buxbaum v. Deutsche Bank*, 2000 U.S. Dist. LEXIS 5838 (S.D.N.Y. Mar. 7, 2000) *with* Reply Brief of Defendants MBNA *et al*, dated April 5, 2006 (D.I. No. 49), p. 12 n.13, citing *Phillips v. LCI Int'l Inc.*, 190 F.3d 609 (4th Cir. 1999)(interpreting federal disclosure requirements relating to merger negotiations). Thus, in addition to plaintiffs' explicitly federal claims, the state law claims raise a pivotal issue whose resolution turns on the "construction or application of federal law." This creates an additional, independent basis for federal subject matter jurisdiction. *See PNC Bank, N.A. v. PPL Elec. Utils. Corp.*, 2006 U.S. App. LEXIS 15850, at *7 n.3 (3d Cir. June 23, 2006). *See infra*, pp. 8-9.

4

(1) **Explicit Federal Question Jurisdiction.** Federal question jurisdiction is explicitly alleged under 28 U.S.C. § 1331 and almost all defendants are alleged to be liable for contribution under Section 10(b) of the Exchange Act and Section 21D of the PSLRA.

(2) **Diversity Jurisdiction.** Plaintiff Benoit, whose claims have now been consolidated, invoked the jurisdiction of this Court by alleging compete diversity under 28 U.S.C. § 1332. Since jurisdiction is measured at the time the first complaint is filed, diversity jurisdiction remains even following consolidation, and even if non-diverse parties are named in a consolidated pleading.[6]

(3) **Implied Federal Question Jurisdiction.** As noted, a crucial issue in this case, defendant Hammonds' duty to disclose merger efforts, turns on the construction and application of federal law. In such a case, there is federal question jurisdiction, even though the issue arises in the course of deciding a claim asserted under state law.[7]

(4) **Pendent Jurisdiction.** Although the Outside Directors contend that the state claims are unrelated to the federal claims, all the claims are part of an inter-related course of fiduciary misconduct, with the federal claims providing a large part of the motive for the unfair merger, and the securities fraud being a primary cause for the merger consideration being unfairly low. Where federal claims provide the background and motive for subsequent misconduct which gives rise to claims under state law, the Court should exercise its pendent jurisdiction.[8]

For these reasons, the Outside Directors' contentions regarding subject matter jurisdiction are unfounded, and must be rejected.

---

[6] See *Cella v. Togum Constructeur Ensemleier En Industrie Alimentaire*, 173 F.3d 909, 913 (3d Cir. 1999), *citing with approval Webb v. Just in Time, Inc.*, 769 F. Supp. 993, 996 (E.D. Mich. 1991)(holding that the court should determine presence or absence of diversity jurisdiction by analyzing each case separately even though cases had been consolidated).

[7] See *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005); *PNC Bank, N.A. v. PPL Elec. Utils. Corp.*, 2006 U.S. App. LEXIS 15850, at *7 n.3 (3d Cir. June 23, 2006).

[8] See *Nanavati v. Burdette Tomlin Memorial Hospital*, 857 F.2d 96, 105-06 (3d Cir. 1988).

## ARGUMENT

### A. Plaintiffs Have Asserted An Explicit and Substantial Federal Claim

The consolidated complaint is replete with allegations concerning the MBNA securities fraud, and plaintiffs' claims for contribution under Section 10(b) of the Exchange Act and 21D of the PSLRA. *See* Cplt. ¶¶ 8-14, 48-82, and 114-26. The Outside Directors assert (Outside Dirs. Br. at 2-3) that the federal claims are only an "appendage" to plaintiffs' case in chief and an "afterthought in this action." They reach this conclusion through an analysis of how much discussion was devoted to plaintiffs' federal claim in the course of briefing the pending motion to dismiss.

This is flawed logic. The reason the brief does not focus more on the federal claim is that, aside from asserting standing issues that affect all of the derivative claims, ***the defendants never challenged the allegations relating to the federal cause of action.*** The topics that were briefed were determined by the defendants' decision as to which claims they sought to dismiss. The fact ***defendants*** focused on the state law claims on the briefing does not lead logically to their conclusion that the federal claim lacks importance to this litigation. Indeed, the cause of action for contribution under federal law was plaintiffs' original claim, and thus hardly qualifies as an "afterthought."

Aside from focusing on how much of the briefing focused on the state law claims (which was the result of defendants' strategic decision not to challenge the substance of plaintiffs' federal contribution claim), the Outside Directors fail to explain why they believe the state law claims bear no relation to the federal claim. As we have shown, all of the claims are part of a common scheme, with the securities fraud constituting the

background for the later unfair merger, the motive for orchestrating that merger, and a primary reason the merger price did not reflect fair value. As the state law claims are an offshoot of the original federal claims, it is specious to say they are "unrelated." In *Nanavati v. Burdette Tomlin Memorial Hospital*, 857 F.2d 96, 105-06 (3d Cir. 1988), the Third Circuit held that federal and state claims are sufficiently intertwined where the facts that gave rise to the federal cause of action were important "background facts" and relevant to the issue of defendants' motives. That some facts differed between the federal and state claims was not dispositive as "total congruity between the operative facts of the two cases is unnecessary." *Id.* at 105. *See also*, *Lyon v. Whisman*, 45 F.3d 758, 760 (3d Cir. 1995)("In *Nanavati,* we found that the district court had the power to adjudicate a slander claim asserted by an antitrust defendant, noting that 'a critical background fact (the enmity between the two physicians) is common to all claims.'").

      Here, the federal claim provides far more than just a "critical background fact," but rather it is essential to plaintiffs' showing of motive, bad faith, and the reasons for the inadequacy of the merger price (which stem from both the pecuniary effects of the federal securities fraud, and all defendants' insistence in connection with the execution of the merger agreement that Bank of America indemnify them for what could be billions of dollars in damages arising out of that federal fraud). It would be absurd for the facts underlying the federal securities claims to be litigated in both federal and state court. These causes of action are sufficiently interlinked that the parties "would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725(1966). *See also, Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 397 (1994)(ancillary jurisdiction may be properly asserted "to permit disposition by a

single court of claims that are, in varying respects and degrees, factually interdependent…"); *HB Gen. Corp. v. Manchester Partners*, 95 F.3d 1185, 1198 (3d Cir. 1996)("Claims are part of the same case or controversy if they share significant factual elements.").

For all of these reasons, the Court should reject the Outside Directors' contentions as unfounded.

### B. The Need to Decide Federal Law in Adjudicating Plaintiffs' Common Law Claims Confers Federal Subject Matter on this Court Under the Supreme Court's Decision in *Grable*

In removing the *Rosenwald* action to federal court, the defendants specifically relied on the Supreme Court's decision in *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005). Under *Grable*, a court may exercise original jurisdiction over state law claims that present "an important issue of federal law that sensibly belongs in a federal court." *Id.* at 315. The Third Circuit has interpreted *Grable* to apply where a state law claim "raises a substantial federal question." *PNC Bank, N.A. v. PPL Elec. Utils. Corp.*, 2006 U.S. App. LEXIS 15850, at *7 (3d Cir. June 23, 2006).

Here, the state law claims largely turn on the pivotal question of whether defendants were required to accurately disclose the state of merger efforts at the time defendant Hammonds misrepresented that MBNA was "not for sale."[9] As noted *supra*, in the briefing of the motion to dismiss all parties recognized defendants' obligations to disclose (or at least not misspeak) rest on an interpretation of federal law, and cited federal authorities which plaintiffs contend created a duty for defendant Hammonds to

---

[9] *See* Cplt.¶¶ 1-2, 15, 84 ("Unbeknownst to the investing public, MBNA was in fact for sale, and the Insider Defendants were desperate to find a buyer for the Company."); 86 ("The merger price did not reflect MBNA's true value for numerous reasons, including the fact that Hammonds had deflated the stock by falsely denying MBNA was for sale.").

8

speak truthfully regarding MBNA's activities, and which defendants contend absolve Hammonds from any such duty. The issue of what a corporate CEO may or may not say regarding merger plans of a publicly-traded corporation plainly is an "important issue of federal law that sensibly belongs in a federal court." *See Grable,* at 315. The determination of issues such as this should not be subject to as many as fifty different state rules, as the conflicts that may arise could undermine the federal securities laws, and create confusion as to what a speaker's obligations are under these circumstances. As one court observed in an analogous context:

> If each state were allowed to specify the nature of disclosure, brokerage firms would be required to tailor their disclosure statements to each state's law and the carefully-crafted SEC disclosure requirements would have little, if any, influence.... the securities industry is a national market which must be regulated uniformly. To allow plaintiffs' causes of action to survive in the Illinois state courts, the federal uniformity goal will be frustrated, if not destroyed. If different state disclosure requirements must be met by brokerage firms across the nation, uniformity will not exist. If uniformity is not to prevail, neither rule 10b-10 nor the SEC would serve any function or purpose in regulating disclosure. Accordingly, the goals of the federal government would be frustrated.

*Orman v. Charles Schwab & Co.,* 285 Ill. App. 3d 937, 942, 945 (Ill. App. 1996), *aff'd,* 179 Ill.2d 282, 688 N.E.2d 620 (Ill. 1997).

As defendants noted when removing *Rosenwald*: "There is no question that a federal forum may entertain these issues without disturbing any Congressionally approved balance of federal and state judicial responsibilities." Paskowitz Dec., Exh. A, ¶ 6. This statement is even more true now than it was at the time it was made as the federal interests in the resolution of the issues involved in this case have only increased.[10]

---

[10] The situation at bar is plainly distinct from that in *Merritt v. Colonial Foods,* 499 F. Supp. 910 (D. Del. 1980), relied upon by the Outside Directors. There, identical state law claims were pending in the Delaware Court of Chancery, and the exercise of federal

9

### C. Diversity Jurisdiction Continues to Exist Despite Consolidation

Plaintiff Benoit's original complaint was grounded in both federal question jurisdiction and in jurisdiction based on complete diversity.[11] Although *Benoit* has now been consolidated with other actions, consolidation does not merge lawsuits into a single action, "or change the rights of the parties, or make those who are parties in one suit parties in another." *Johnson v. Manhattan Railway Co.*, 289 U.S. 479, 496-97 (1933). The mere fact of consolidation, therefore, cannot destroy diversity jurisdiction, which is measured at the time of the commencement of the suit. As the Third Circuit explained in *Cella, supra*, 173 F.3d at 913, in addressing whether consolidation had affected diversity jurisdiction:

> [C]omplete diversity of citizenship existed--*and continued to exist even after consolidation*--in the first action involving Bosch. See *Webb v. Just in Time, Inc.*, 769 F. Supp. 993, 996 (E.D. Mich. 1991) (holding that the court should determine presence or absence of diversity jurisdiction by analyzing each case separately even though cases had been consolidated); *In re Joint Eastern & Southern Districts Asbestos Litigation,* 124 F.R.D. 538, 541 (S.D.N.Y. 1989) (holding that diversity jurisdiction over an action was not destroyed by consolidation of that action with a second action brought by a plaintiff who was a citizen of the same state as a defendant in the diversity action). Thus, the District Court should have allowed the first action to proceed to the merits. (Emphasis added).

Given that the *Benoit* case retains diversity jurisdiction, the Court also has ancillary jurisdiction over any claims made on behalf of MBNA shareholders that arise from the same case or controversy as Benoit's diversity claims regardless of whether

---

jurisdiction would be redundant and duplicative of the ongoing proceedings in state court. *See id*. at 916 ("the Court is aware of the identical state law claims currently pending in the Delaware Chancery action. As Vice-Chancellor Brown's August 6, 1980, letter opinion indicates, that court is prepared to proceed with the claims before it in an expeditious fashion.").

[11] The *Benoit* Complaint, at ¶ 2, alleges satisfaction of the $75,000 jurisdictional amount.

these other claims satisfy the jurisdictional amount. *See e.g., Exxon Mobil Corp. v. Allapattah Servs.,* 545 U.S. 546, 125 S. Ct. 2611, 2624-25 (2005); *Lindsay v. Gov't Emples. Ins. Co.,* 438 F.3d 416, 423 (D.C. Cir. 2006)("§ 1367 does authorize supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount specified in the statute setting forth the requirements for diversity jurisdiction.").

Thus, diversity provides yet another basis to reject the assertion that subject matter jurisdiction is lacking.

### D.  Pendent Jurisdiction May be Properly Exercised Over All of Plaintiffs' Claims

The inter-relatedness of plaintiffs' federal claims, other federal issues in this case, and the state law-based claims, has already been discussed thoroughly in Point A, *supra.* The Third Circuit's decision in *Nanavati* remains the leading precedent, and numerous courts within this Circuit have followed *Nanavati* in holding that supplemental jurisdiction should be asserted over state claims that contain facts or issues that overlap with federal claims. *See e.g., Christopher v. First Mut. Corp.,* 2006 U.S. Dist. LEXIS 2255, at *19 (E.D. Pa. Jan. 20, 2006).[12]

---

[12] Cases such as *Nanavati,* where the state claims overlap with the federal claims in terms of background facts or motive, differ from cases where there is no such connection such as *PAAC v. Rizzo,* 502 F.2d 306 (3d Cir. 1974), cited by the Outside Directors. In *PAAC*, the Third Circuit found an insufficient relationship between claims that the Philadelphia Mayor violated federal law by interfering with the operations of an antipoverty agency and slander claims brought against the Mayor by several individuals. Unlike here, in PAAC, each group of claims was wholly independent of the other. 502 F.2d at 313 ("We find that the defamation claim is factually distinct from the claims involving Mayor Rizzo's interference with the operation of PAAC. The defamation claim does not derive from a 'nucleus of operative fact' common with the federal claims. Nor is the defamation claim one which we would 'ordinarily expect' to be tried with the federal claims.").

The Outside Directors' citation to this Court's decision in *Litig. Trust of MDIP, Inc. v. Rapoport,* 2005 WL 1242157 (D. Del. May 25, 2005) does not compel a different result. There, plaintiff's sole federal claim for $450,000 in damages was joined in one complaint with very substantial state law claims. The federal claim had nothing whatsoever to do with the state law claims, and plaintiff said "nary a word" about this federal claim anywhere in its pleading. *Id.* at *5. By contrast here, the federal claims occupy 55 paragraphs in plaintiffs' complaint, and are inextricably intertwined with the state claims. The allegations about the federal securities fraud support a contribution claim under federal law that may amount to more than $5 billion; they constitute "critical background facts" to the merger between MBNA and Bank of America; they supply one of the critical motives for the later breaches of fiduciary duty; and they explain why the merger consideration was inadequate. Plaintiffs' proof of the state law claims thus relies heavily upon the occurrence of the securities fraud, and its aftermath, as well as the obligation federal law places on corporate officers who choose to speak regarding merger efforts. This is a far cry from the situation faced by this Court in *Litig. Trust of MDI, supra.*[13]

### E.    In the Event this Court Finds a Lack of Subject Jurisdiction, this May be Cured by Amendment

In plaintiffs' opposition brief in connection with the motions to dismiss, plaintiffs concluded by stating: "Should the Court find any portion of the Complaint lacking,

---

[13] The Outside Directors' reliance on *Brayall v. Dart Indis., Inc.*, 1988 WL 72766 (D. Mass. Feb. 3, 1988) is likewise misplaced. There, the Court found "the immediate issues presented by plaintiffs' motion for a preliminary injunction" to be "exclusively matters of state law" and that "it does not appear that plaintiffs' state law claims are so closely tied to some federal policy that adjudication of all claims in a single proceeding is particularly appropriate." *Id.* at *12, 15. In this case, as we have shown, important federal disclosure issues are implicated by plaintiffs' claims, and it is not apt for the state courts to set national policy regarding these matters.

however, Plaintiffs respectfully request leave to re-plead." Plts. Opp. Br. at 69 (D.I. No. 47).

Although plaintiffs do not now move to re-plead because we believe there is subject matter jurisdiction, and because further motion practice would substantially delay this action, plaintiffs could re-plead based on allegations already in the Complaint. For example, the proxy statement issued in connection with the Merger is alleged to have been deceptive. These allegations could support claims for violations of the federal proxy laws, as set forth in 15 U.S.C. § 78n(a), and SEC Rule 14a-9. The allegations that Hammonds and others violated their disclosure duties concerning the status of efforts to sell MBNA could also support claims under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5, as they are presently asserted to have artificially depressed the stock price, and that this was done willfully. Cplt. ¶ 1 ("this deception depressed the stock price..."); ¶ 89 ("The MBNA Board also stood mute when Hammonds artificially depressed the stock's price by falsely denying that MBNA was for sale...").[14] Amendment in this Circuit is liberally allowed, and this rule encompasses amendments to cure any perceived defects in subject matter jurisdiction. *Berkshire Fashions, Inc. v. The M.V. Hakusan II*, 954 F.2d 874, 887 (3d Cir. 1992).[15]

---

[14]   Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), provides for "control person" liability for persons (such as corporate directors) who were not the primary securities violator but who had the power directly or indirectly to influence that violator.

[15]   Although Plaintiffs are not required to submit an amended complaint until they move to amend or are granted leave to amend, for the Court's convenience a draft amended complaint asserting further bases for subject matter jurisdiction is submitted herewith as Exh. C to the Paskowitz Declaration, so that the Court and the other parties to this matter can see that such an amendment would not be a futile exercise. The additional allegations that could be brought are highlighted and underscored in the Exhibit, and pertain to Paragraphs 18(b-d), 127-45, and G-I in the concluding Demand For Relief.

## CONCLUSION

For the reasons set forth above, plaintiffs respectfully submit that this Court has subject matter jurisdiction over all asserted claims. Should this Court find otherwise, plaintiffs continue their request for leave to re-plead.

Dated: December 11, 2006

                                             CHIMICLES & TIKELLIS, LLP

                                             /s/ Daniel J. Brown
                                             PAMELA S. TIKELLIS (#2172)
                                             DANIEL J. BROWN (#4688)
                                             One Rodney Square
                                             P.O. Box 1035
                                             Wilmington, DE 19899
                                             Telephone: 302/656-2500
                                             Facsimile: 302/656-9053

                                             Liaison Counsel for Plaintiffs

                                             ROBBINS UMEDA & FINK, LLP
                                             JEFFREY P. FINK
                                             610 West Ash Street, Suite 1800
                                             San Diego, CA 92101
                                             Telephone: 619/525-3990
                                             Facsimile: 619/525-3991

                                             PASKOWITZ & ASSOCIATES
                                             LAURENCE PASKOWITZ
                                             ROY JACOBS
                                             60 East 42nd Street, 46th Floor
                                             New York, NY 10165
                                             Telephone: 212/685-0969
                                             Facsimile: 212/685-2306

                                             Co-Lead Counsel for Plaintiffs