# EXHIBIT A

# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MALCOLM ROSENWALD,                              :

               Plaintiff,                  :

         v.                                         :

LAURA S. UNGER, BENJAMIN R.                     :    Civil Action No. _____
CIVILETTI, WILLIAM H. JEWS,                     :
JAMES H. BERICK, MARY H. BOIES,                 :
BRUCE L. HAMMONDS, RANDOLPH C.                  :
LERNER, STUART L. MARKOWITZ,                    :
WILLIAM H. MILSTEAD and                         :
THOMAS G. MURDOUGH, JR.,                        :
                             :

               Defendants,                 :

                             :

MBNA CORPORATION,                               :

            Nominal Defendant.             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## NOTICE OF REMOVAL

        Pursuant to 28 U.S.C. § 1446, defendant Bruce L. Hammonds with the consent of all defendants hereby gives notice of the removal of this action to this Court from the Circuit Court for Baltimore City, Maryland, where it is pending as Case No. 24-C-05-006704. Because federal courts have original jurisdiction over this action under 28 U.S.C. § 1331, and the other prerequisites for removal are met, this action is removable pursuant to 28 U.S.C. § 1441. The specific grounds for removal are as follows.

**Procedural Matters**

1.      Plaintiff filed this action in the Circuit Court for Baltimore City,

Maryland, on July 11, 2005.  Defendant Bruce L. Hammonds, a Director and the President and

Chief Executive Officer of nominal defendant MBNA Corporation ("MBNA"), did not receive a

copy of the complaint, through service or otherwise, until July 20, 2005 at the earliest.  (Copies

of the summons and complaint are attached hereto as Exhibits A and B.)  No other process,

pleadings or orders have been served upon Mr. Hammonds.  As prescribed by 28 U.S.C.

§ 1446(b), Mr. Hammonds has filed this Notice of Removal within 30 days of his receipt of the

complaint.

2.      The Circuit Court for Baltimore City is located within the geographical

boundaries of the United States District Court for the District of Maryland, Northern Division.

28 U.S.C. § 100(1).  Mr. Hammonds will promptly file a copy of this Notice with the Clerk of

the Circuit Court for Baltimore City pursuant to 28 U.S.C. § 1446(d).

3.      No admission of fact or liability is intended by this Notice of Removal,

and all defenses, affirmative defenses and motions are hereby reserved.  Mr. Hammonds also

files this Notice of Removal subject to, and without waiving, any objections to personal

jurisdiction he may have.  *See, e.g., Morris & Co.* v. *Skandinavia Ins. Co.*, 279 U.S. 405, 409

(1929).

**Federal Question Jurisdiction**

4.    This action arises under federal law within the meaning of 28 U.S.C.

§ 1331, and is therefore removable to this Court under 28 U.S.C. § 1441. In *Grable & Sons*

*Metal Products, Inc.* v. *Darue Engineering & Manufacturing*, 125 S. Ct. 2363, 2367 (2005), the

Supreme Court held that federal "arising under" jurisdiction exists over state-law claims if those

claims raise a contested and substantial federal question and "federal jurisdiction is consistent

with congressional judgment about the sound division of labor between state and federal courts

governing the application of § 1331."

5.    Plaintiff's state-law claims necessarily raise disputed and substantial

federal issues. All three of plaintiff's claims are premised on the allegation that MBNA and

certain of its officers made materially false and misleading public statements in violation of

Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5

thereunder, 17 C.F.R. § 240.10b-5. *See* Complaint ¶¶ 20-36. In support of this alleged violation

of federal securities law, plaintiff relies on, among other things, Regulation S-X (17 C.F.R.

§ 210.4-01(2)(1)), which "states that financial statements filed with the SEC which are not

prepared in compliance with GAAP are presumed to be misleading and inaccurate." Complaint

¶ 23. Because each of plaintiff's state-law claims is premised on an alleged violation of federal

law, the outcome of this case necessarily will depend on the resolution of disputed and

substantial federal issues. Those issues include, among others, whether the statements alleged to

be false and misleading fall within the safe-harbor provision for "forward-looking" statements

established by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, *et seq.*

6.    There is also no question that "a federal forum may entertain these issues

without disturbing any congressionally approved balance of federal and state judicial

responsibilities." *Grable & Sons Metal Prods.*, 125 S. Ct. at 2368. To the contrary, Congress

- 3 -

has vested the federal courts with exclusive jurisdiction over claims arising under the Securities

Exchange Act. 15 U.S.C. § 78aa.

       7.    Plaintiff acknowledges in his complaint that "class action suits have been

commenced in the United States District Court for the District of Delaware" asserting violations

of the Securities Exchange Act based on the same allegations at issue in this action.  Complaint

¶ 31.  In fact, two closely-related derivative actions, seven closely-related securities class actions

and one closely-related ERISA action are currently pending in the District of Delaware.  With

the removal of this action to federal court, this case now can be transferred to the District of

Delaware pursuant to 28 U.S.C. § 1404(a) where it can be consolidated with the other two

derivative actions pending in that District and can proceed in a coordinated fashion with the

other closely-related cases.

       8.    All of the other defendants in this action have authorized the undersigned

counsel to represent that they consent to removal and that they will file signed written consents.

**Conclusion**

    This Court has original jurisdiction over this action under 28 U.S.C. § 1331.  All

procedural prerequisites to removal have been met.  Accordingly, removal to this Court under

28 U.S.C. § 1441 is proper and effected hereby.

    Dated:  August 19, 2005

- 4 -

Respectfully submitted,

*Troy A. P̶̶*

Troy A. Priest (Federal Bar # 12022)
BROWN & SHEEHAN LLP
The Tide Building, Suite 300
1010 Hull Street
Baltimore, Maryland  21230
(410) 296-8500

*Attorneys for Defendant*
*Bruce L. Hammonds*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of August, 2005, a copy of the foregoing Defendant

Bruce L. Hammonds's Notice of Removal was sent via hand delivery to Charles J. Piven, Esquire,

Marshall Perkins, The World Trade Center – Baltimore, Suite 2525, 401 East Pratt Street, Baltimore,

Maryland 21202; via Federal Express overnight delivery to Irving Bizar, Esquire, Ballon Stoll Bader &

Nadler, P.C., 1450 Broadway – 14th  Floor, New York, New York 10018; and by first class mail,

postage prepaid on Richard L. Brusca, Esquire, Skadden, Arps, Slate, Meagher & Flom, LLP, 1440 New

York Avenue, N.W., Washington, D.C. 2005.

*Troy A. P̶̶*

Troy A. Priest

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

MALCOLM ROSENWALD

## DEFENDANTS

LAURA S. UNGER, ET AL.

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

SEE ATTACHED

Attorneys (If Known)

SEE ATTACHED

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | **PERSONAL PROPERTY** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | ☐ 370 Other Fraud | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 371 Truth in Lending | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 380 Other Personal Property Damage | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 385 Property Damage Product Liability | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | |
| ☐ 290 All Other Real Property | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | | |
| | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 443 Housing/ Accommodations | ☐ 530 General | | |
| | ☐ 444 Welfare | ☐ 535 Death Penalty | | |
| | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | |
| | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. Section 1446

Brief description of cause:
Shareholder Derivative Action

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____ DOCKET NUMBER _____

DATE 8/19/05

SIGNATURE OF ATTORNEY OF RECORD _Troy A. P...._

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.      (a) Plaintiffs-Defendants. Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.     Jurisdiction. The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.    Residence (citizenship) of Principal Parties. This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.     Nature of Suit. Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.      Origin. Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI.     Cause of Action. Report the civil statute directly related to the cause of action and give a brief description of the cause. Do not cite jurisdictional statutes unless diversity.        Example:        U.S. Civil Statute: 47 USC 553
                                            Brief Description: Unauthorized reception of cable service

VII.    Requested in Complaint. Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.   Related Cases. This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

Date and Attorney Signature. Date and sign the civil cover sheet.

## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

```
-----------------------------------------------------------------x
MALCOLM ROSENWALD,                              :
                                                :
              Plaintiff,                        :
       v.                                       :
                                                :
LAURA S. UNGER, BENJAMIN R. CIVILETTI,          :
WILLIAM H. JEWS, JAMES H. BERICK,               :      Civil Action No. _____
MARY H. BOIES, BRUCE L. HAMMONDS,               :
RANDOLPH C. LERNER, STUART L.                   :
MARKOWITZ, WILLIAM H. MILSTEAD and              :
THOMAS G. MURDOUGH, JR.,                        :
                                                :
              Defendants.                       :
                                                :
MBNA CORPORATION,                               :
                                                :
              Nominal Defendant.                :
                                                :
                                                :
-----------------------------------------------------------------x
```

Attachment to Civil Sheet

Plaintiff:

Malcolm Rosenwald

Attorneys for Plaintiff:

Charles J. Piven, Esquire,
Marshall Perkins
The World Trade Center – Baltimore
Suite 2525
401 East Pratt Street
Baltimore, Maryland 21202

Irving Bizar, Esquire
Ballon Stoll Bader & Nadler, P.C.
1450 Broadway – 14th Floor
New York, New York 10018

Defendants:

Laura Unger, Benjamin R. Civiletti, William
H. Jews, James H. Berick, Mary H. Boies,
Randolph D. Lerner, Suart L. Markowitz,
William H. Milstead, and Thomas G.
Murdough, Jr.

Attorney for Defendants:

Richard L. Brusca, Esquire
Skadden, Arps, Slate, Meagher &
Flom, LLP
1440 New York Avenue, N.W.,
Washington, D.C. 2005

Defendant:

Bruce L. Hammonds

Attorney for Defendant:

Troy A. Priest
BROWN & SHEEHAN LLP
The Tide Building, Suite 300
1010 Hull Street
Baltimore, Maryland 21230

Nominal Defendant:

MBNA Corporation

Attorney for Nominal Defendant:

Troy A. Priest
BROWN & SHEEHAN LLP
The Tide Building, Suite 300
1010 Hull Street
Baltimore, Maryland 21230

# EXHIBIT B

**CONCORDANCE OF FEDERAL JURISDICTION ISSUES AMONG THE FOLLOWING COMPLAINTS**

| ISSUE UNDERLYING FEDERAL CLAIMS | IN RE MBNA SECURITIES LITIGATION Case No. 1:05-CV-00272-GMS (Complaint Paragraphs) | IN RE MBNA CORP. DERIVATIVE AND CLASS LITIGATION Lead Case No. 1:05-CV-00327-GMS (Complaint Paragraphs) |
|---|---|---|
| Jurisdiction pursuant to 28 U.S.C § 1331 (Federal Question Jurisdiction) | 11 | 18 |
| Jurisdiction based on Section 10(b) of the Securities Exchange Act of 1934 15 U.S.C. § 78j(b) | 11 | 18 |
| Bruce L. Hammonds MBNA President and Chief Executive Officer named as a defendant pursuant to Section 10(b) of the Securities Exchange Act of 1934 | 17 | 22 |
| Kenneth A. Vecchione MBNA Vice-Chairman named as a defendant pursuant to Section 10(b) of the Securities Exchange Act of 1934 | 18 | 23 |
| Richard K. Struthers MBNA Vice-Chairman named as a defendant pursuant to Section 10(b) of the Securities Exchange Act of 1934 | 19 | 24 |
| John R. Cochran, III MBNA Chief Operating Officer named as a defendant pursuant to Section 10(b) of the Securities Exchange Act of 1934 | 20 | 25 |

| ISSUE UNDERLYING FEDERAL CLAIMS | IN RE MBNA SECURITIES LITIGATION Case No. 1:05-CV-00272-GMS (Complaint Paragraphs) | IN RE MBNA CORP. DERIVATIVE AND CLASS LITIGATION Lead Case No. 1:05-CV-00327-GMS (Complaint Paragraphs) |
|---|---|---|
| Charles C. Krulak Chief Accounting Officer of MBNA named as a defendant pursuant to Section 10(b) of the Securities Exchange Act of 1934 | 21 | 27 |
| Defendants made misstatements to the public to inflate MBNA's stock price | 3, 4, 9 | 8, 49, 52 |
| Defendants were in possession of material negative non-public information which made their public statements materially misleading | 63, 91, 111 | 9, 77 |
| On January 20 2005 Defendants issued a misleading Press Release entitled "MBNA Reports Fourth Quarter Earnings of $.59 per Common Share - Increases Dividend 17% to $.59 Per Common Share - Announces New $2 billion Common Stock Repurchase Program." | 80, 82 | 64, 77 |
| In the January 20, 2005 Press Release defendants reported MBNA's 4Q financial results | 80 | 64, 77 |
| The January 20, 2005 Press Release was materially misleading in that the value of the MBNA's IO strip receivables were overstated | 82 | 9, 77 |
| On January 21, 2005, defendants Hammonds, Vecchione, and Cochran held an earnings conference call during which MBNA gave earnings | 83 | 65, 77 |

2

| ISSUE UNDERLYING FEDERAL CLAIMS | IN RE MBNA SECURITIES LITIGATION Case No. 1:05-CV-00272-GMS (Complaint Paragraphs) | IN RE MBNA CORP. DERIVATIVE AND CLASS LITIGATION Lead Case No. 1:05-CV-00327-GMS (Complaint Paragraphs) |
|---|---|---|
| guidance of 12 percent over the next several years. 2005 earnings growth was represented as 10 percent | | |
| The January 21, 2005 Conference Call was materially misleading because it failed to disclose, inter alia that the IO strip receivables were materially over-valued. | 86 | 77 |
| MBNA's 4Q 2004 financial statements were materially false | 86 | 9, 77 |
| On April 21, 2005 defendants shocked the market by disclosing MBNA had earned only $0.02 cents per share in 1Q 2005 – a 94% decline from the $0.59 per share it reported in Q4 2004. Defendants now stated that 2005 EPS growth would be "significantly below" the prior 10 percent growth estimate. | 59 | 11, 78 |
| MBNA's stock price plummeted from its closing price of $23.11 on April 20, 2005 to below $19 per share on extremely high trading volume | 8, 60 | 11, 80 |
| As a result of the defendants' intentional misstatements the price of MBNA shares were artificially inflated during the Class Period | 3, 9, 63, 88, 99 | 81 |

| ISSUE UNDERLYING FEDERAL CLAIMS | IN RE MBNA SECURITIES LITIGATION Case No. 1:05-CV-00272-GMS (Complaint Paragraphs) | IN RE MBNA CORP. DERIVATIVE AND CLASS LITIGATION Lead Case No. 1:05-CV-00327-GMS (Complaint Paragraphs) |
|---|---|---|
| Defendants sold their own MBNA shares into the market during the class period | 9 | 74 |
| Defendant Hammonds sold over $9 million worth of MBNA stock during the class period | 100(a) | 12, 82 |
| Defendant Vecchione sold $2.6 million of his MBNA shares during the class period | 100(b) | 82 |
| Defendant Struthers sold $12.2 million of his MBNA shares during the class period | 100(e) | 82 |
| Defendant Krulak sold $13.2 million of his MBNA shares during the class period | 100(d) | 82 |
| Defendant Cochran sold $14 million of his MBNA shares during the class period | 100(c) | 82 |
| Defendants acted with scienter in defrauding purchasers of MBNA stock during the class period | 90-102, 113 | 117 |
| Each asserts Count I of the Complaints for Violation of Section 10(b) of the Exchange Act against defendants Hammonds, Vecchione, Struthers, Cochran, Weaver, and Krulak | 107-117 | 114-126 |
| In violating Section 10(b) of the Securities Exchange Act of 1934 defendants to carried out a | 108 | 118 |

4

| ISSUE UNDERLYING FEDERAL CLAIMS | IN RE MBNA SECURITIES LITIGATION Case No. 1:05-CV-00272-GMS (Complaint Paragraphs) | IN RE MBNA CORP. DERIVATIVE AND CLASS LITIGATION Lead Case No. 1:05-CV-00327-GMS (Complaint Paragraphs) |
|---|---|---|
| plan, scheme and course of conduct which was intended to and deceived the investing public including the class members | | |
| In violating Section 10(b) of the Securities Exchange Act of 1934 defendants employed devices, schemes, and artifices | 109 | 119 |
| In violating Section 10(b) of the Securities Exchange Act of 1934, the defendants artificially inflated and maintained the market price of MBNA common stock | 109 | 118 |
| Defendants employed devices, schemes, and artifices to defraud; made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and engaged in acts, practices and a course of business which operated as a fraud and deceit upon the purchasers of MBNA's common stock | 109 | 119 |
| In violating Section 10(b) of the Securities Exchange Act of 1934, the defendants caused members of the Class to purchase MBNA stock at artificially inflated prices during the class period | 109 | 118 |
| As a result of defendants making affirmative statements and reports, or participation in the | 110 | 120 |

5

| ISSUE UNDERLYING FEDERAL CLAIMS | IN RE MBNA SECURITIES LITIGATION Case No. 1:05-CV-00272-GMS (Complaint Paragraphs) | IN RE MBNA CORP. DERIVATIVE AND CLASS LITIGATION Lead Case No. 1:05-CV-00327-GMS (Complaint Paragraphs) |
|---|---|---|
| making of affirmative statements and reports to the investing public, they each had a duty to disseminate truthful information promptly that would be material to investors in compliance with the integrated disclosure provisions of the SEC as embodied in SEC Regulation S-X (17 C.F.R. § 210.01 et seq.) and S-K (17 C.F.R. § 229.10 et seq.) and other SEC regulations | | |
| Defendants, individually and in concert, directly and indirectly, by the use of the mails or other means or instrumentalities of interstate commerce, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, business practices, performance, operations and future prospects of MBNA as specified herein | 111 | 121 |
| By virtue of the allegations pleaded in this Count I, defendants each violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 | 116 | 124 |

6

FEDERAL JURIDICTION BASED ON APPLICATION OF
*GRABLE & SONS METAL PRODS., INC. v. DARU ENG'G & MFG.*

| STATEMENTS ADDRESSING THE UNFAIR BUYOUT OF THE MBNA PUBLIC SHAREHOLDERS AND HOW DEFEDANT HAMMOND 'S MATERIALLY FALSE STATEMENTS WRONGFULLY DEPRESSED THE PRICE OF MBNA SHARES, AND WHICH CONFER FEDERAL JURISDICTION ON THIS COURT UNDER GRABLE | DEFENDANTS' BRIEF REFERENCES DEMONSTRATING THAT THE ANALSYES OF THE FALSE SATEMENTS IMPLICATE A CRITICAL ISSUE OF FEDERAL LAW | PLAINTIFFS' BRIEF REFERENCES DEMONSTRATING THAT THE ANALSYES OF THE FALSE SATEMENTS IMPLICATE A CRITICAL ISSUE OF FEDERAL LAW | IN RE MBNA CORP. DERIVATIVE AND CLASS LITIGATION Lead Case No. 1:05-CV-00327-GMS (Complaint Paragraphs) |
|---|---|---|---|
| [D]uring the same week that MBNA was making vigorous efforts to sell itself, and Bank of America were negotiating the merger deal, Defendant Hammonds was publicly declaring announcing that the Company was not for sale. | Denying that Hammond's statements were misleading and citing *Philips v. LCI Int'l*, inc. 190 F. 3d 609 (4th Cir. 1999). (Insider Defendants' Reply Memorandum, p. 12) | Statements by corporate executives denying that a company is for sale when it is actively looking to find a merger partner have repeatedly been held to constitute fiduciary wrongdoing. Thus, Hammonds' misleading statement to *Business Week* to the effect that MBNA was not for sale during the time he was engaged in active efforts to sell | 171 |

7

[D]espite the fact that the merger negotiations were ongoing since early June 2005 on June 13, 2005 in a *Business Week* article authored by Amy Barrett and Mike McNamee and entitled *One Tough Card Game; MBNA's stock is down 25% this year, as it's suddenly a takeover candidate,* Defendant Hammonds was quoted as saying: *"[t]here's no 'For Sale' sign on MBNA's Wilmington (Del.) headquarters."* This statement was totally false and misleading and in derogation of Hammonds' duty of candor and his Revlon duties. In truth and in fact, during this time, MBNA and its advisors were engaged in energetic efforts to sell the Company, Hammonds'

same

the Company "this way," is fully actionable. *Id.* Citing *In re MCI Worldcom Secs. Litig.*, No. 99-CV-3136 (ILG), 2000 U.S. Dist. LEXIS 7230, at *14-*15 (E.D.N.Y. Apr. 11, 2000); *Buxbaum v. Deutsche Bank, A.G.*, No. 98 Civ. 8460 (JGK), 2000 U.S. Dist. LEXIS 5838 (S.D.N.Y. Mar. 7, 2000).

Same

181

8

| | | |
|---|---|---|
| false statement had the affect of artificially depressing the price of MBNA's stock, and thus facilitating a merger with Bank of America at a price which was palatable to Hammonds (who stood to gain very handsomely from such a merger) and Bank of America, but provided MBNA shareholders with less than fair value for their shares. | | |

PENDENT JURIDICTION OVER THE STATE-LAW CLASS CLAIMS AS
RELATED TO THE PLEADED FEDERAL SECURITIES FRAUD CLAIM

| REFERENCES THAT THE MOTIVE FOR THE UNFAIR BUYOUT WAS DIRECTLY RELATED TO THE ALLEGED WRONGDOING WHICH VIOLATED THE SECURITIES EXCHANGE ACT OF 1934 | IN RE MBNA CORP. DERIVATIVE AND CLASS LITIGATION Lead Case No. 1:05-CV-00327-GMS (Complaint Paragraphs) | REFERENCES IN PLAINTIFFS' MEMORANDUM OPPOSITION TO MOTION TO DISMISS DEMONSTRATING THE RELATEDNESS OF THE SECURITIES FRAUD CLAIM AND THE STATE LAW BUY-OUT CLAIMS |
|---|---|---|
| A motive for the buyout was that the liability arising out of the Securities Class Action, wherein Hammonds and the other Insider Defendants were personally named as defendants would be in effect made to go away, by the extraction of broad indemnification from the strategic acquirer. In trade for these essentials, Hammonds was willing to give the acquirer a "show-stopper" in the form of an option to purchase almost 20 percent of MBNA at a price so attractive that no other suitor would consider challenging the acquirer's proposed deal. Thus Hammonds sacrificed the interests of the public shareholders to achieve his own agenda and that of his close colleagues, although the eventual transaction cost the public shareholders *billions* of dollars in lost consideration. | 2 | |

10

| | |
|---|---|
| 14 | 84 |
| Additionally, upon revelation of the omitted material facts, MBNA shares dropped considerably, and the Company thereby lost over $5.8 billion in market value. This drop, and the concomitant risk of liability, deprived the MBNA shareholders of the premium bid for the Company that could have been obtained had the fiduciary breaches not occurred. | Unbeknownst to the investing public, MBNA was in fact for sale, and the Insider Defendants were desperate to find a buyer for the Company. Indeed, defendant Hammonds had a clear agenda. He wanted to find a strategic buyer for the Company which would accede to his conditions that: (i) the acquirer would buy MBNA; (ii) the acquirer would accede the to the payment of enormous sums and the vesting of MBNA options in connection with the transaction; (iii) Hammonds himself would be kept on at the new Company in an executive position of influence; (iv) Hammond's close friends would be offered employment in the new entity; and (v) the liability arising out of the Securities Class Action, wherein Hammonds and the other Insider Defendants were personally named as defendants would be in effect made to go away, by the extraction of broad indemnification from the strategic acquirer. In trade for these essentials, Hammonds was willing to give the acquirer a "show-stopper" in the form of an option to purchase almost 20 percent of MBNA at a price so attractive that no other suitor would consider challenging the acquirer's proposed deal. Thus |

| | | |
|---|---|---|
| | | Hammonds sacrificed the interests of the public shareholders to achieve his own agenda and that of his close colleagues, although the eventual transaction cost the public shareholders *billions* of dollars in lost consideration on the transaction. |
| 90 | | The MBNA Individual Defendants knew that the only way they could escape liability for the damage they, and the former directors and officers of the Company, to whom they remain loyal, inflicted upon MBNA's shareholders during the Class Period was to sell the Company, thereby attempting to pull the rug out from beneath this shareholder derivative action. |
| 94 | | According to newspaper accounts, the merger deal was put together in two hours. Clearly, by agreeing to this transaction, the MBNA Individual Defendants were attempting to insulate themselves from liability in the ongoing federal securities class actions against MBNA and current shareholder derivative litigation, including this action. In order to escape personal liability for their actions and those of their fellow Defendants, the MBNA Individual Defendants negotiated the sale of MBNA to Bank of America on unfair terms to the shareholders, and got Bank of America's agreement to help them defend themselves against the pending accusations. In addition, upon completion of the merger on January 1, 2006, Defendants Cochran, Hammonds, Struthers, Vecchione and Weaver, respectively, will receive approximately $22.7 million, $23 million, $17 |

12

| | | |
|---|---|---|
| million, $5.8 million and $17 million pursuant to their retention agreements with Bank of America. | | |
| In early June 2005, As the MBNA stock was declining and the Company and the MBNA Individual Defendant were facing ruinous liability, the MBNA Director Defendants decided to sell the Company. | 171 | |
| Facing a shareholder revolt, Hammonds appeared to scale back his remuneration, and embrace corporate reform. Soon, however, he (and other insiders focused on their own personal enrichment) turned to securities fraud, which netted them new substantial benefits, including insider trading proceeds through the sale of their shares of MBNA stock at inflated prices. When these machinations were revealed, and MBNA's stock price declined, Hammonds and his team turned to secret merger negotiations whose focus was to allow Hammonds to receive benefits valued at approximately $125 million, including a lucrative new job with acquirer BAC, $22.7 million in severance or retention payments, and a valuable agreement by BAC to pay any judgment that might be personally rendered against him in the pending securities fraud class action. Other insiders also received similar handsome benefits. The Merger price was grossly below the true value of MBNA's public shares, but the benefits rendered to Hammonds and the other insiders, and not shared by the MBNA public shareholders, more than made up for that from their personal perspective. | See generally 1, 2 | 1-2 |

13

| | | |
|---|---|---|
| Fourth, and quite importantly, the Defendants extracted an agreement from BAC as part of the Merger, to indemnify all securities class action and derivative suit defendants from liability (including the MBNA Director Defendants) and cooperate with them and to use BAC's best efforts to defend and defeat these claims. | See generally 2, 107, 173 | 13 |
| Defendant Hammonds and others in MBNA's management, sought out a company that would (i) buy MBNA; (ii) keep Hammonds on at the new company in an executive position of influence; (iii) offer Hammonds' close friends employment with the new entity; and (iv) agree that the liability arising out of the Securities Class Action and this derivative action, in which Hammonds and the other Defendants were personally named as defendants, would be effectively made to disappear through the extraction of broad indemnification from the acquirer. | 2 | 37 |
| Specifically, plaintiffs allege that the MBNA Director Defendants sold MBNA, in large part, in order to escape liability for plaintiffs' shareholder derivative claims, and the class claims. | See generally 4, 107 | 38 |

14