IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| _____ | |
| LEMON BAY PARTNERS LLP and | ) |
| DAVID BENOIT, On behalf of | ) |
| Themselves And All Others Similarly | ) |
| Situated, | ) |
| | ) |
| Plaintiffs, | ) |
| | )    C.A. No. 05-327 GMS |
| v. | ) |
| | ) |
| Bruce L. HAMMONDS, et al, | ) |
| | ) |
| Defendants, | ) |
| _____ | ) |

**MEMORANDUM**

I.    **INTRODUCTION**

On November 21, 2005, the plaintiffs Lemon Bay Partners, LLP ("Lemon Bay") and Donald

F. Benoit ("Benoit") filed the present shareholder derivative action against twenty defendants,

including MBNA Corporation ("MBNA"), Bank of America Corporation ("BAC"), BAC President

and Chief Executive Officer Kenneth D. Lewis ("Lewis"), several MBNA executives[1] (the "Insider

Defendants"), and several of the members MBNA's Board of Directors[2] (the "Director

Defendants").[3] (D.I. 31 ¶¶ 21-44.) On January 20, 2006, MBNA, BAC, and the Insider Defendants,

---

[1] The Insider Defendants include Bruce L. Hammonds ("Hammonds"), Kenneth A. Vecchione, Richard K. Struthers, John R. Cochran III, Lance L. Weaver, Charles C. Krulak, Michael G. Rhodes, and John W. Scheflen.

[2] The Director Defendants include Randolph D. Lerner, James H. Berick, Mary M. Boies, Benjamin R. Civiletti, William L. Jews, Stuart L. Markowitz, William B. Milstead, Thomas G. Murdough, and Laura S. Unger.

[3] When discussing claims common to all of the defendants, the court will simply refer to them collectively as "the defendants" for purposes of this motion. When discussing claims common to MBNA's officers and directors, the court will refer to them collectively as the

filed a motion to dismiss all claims asserted against them pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure.  (D.I. 38.)  Also on January 20, 2006, the Director Defendants filed a

motion to dismiss all claims against them.  (D.I. 42.)  In the reply briefing to the motions to dismiss,

several of the defendants argue that the case should be dismissed for lack of subject matter

jurisdiction pursuant to Rule 12(b)(1).  (See D.I. 53 at 2-4.)  Pursuant to Federal Rule of Civil

Procedure 12(h)(3), the court is required to dismiss an action "whenever it appears by suggestion

of the parties or otherwise that the court lacks jurisdiction of the subject matter."  Fed. R. Civ. P.

12(h)(3).  The court has reviewed the parties' submissions[4] and relevant case law, and concludes that

it is without jurisdiction over the subject matter of this action.  As such, the court will grant the

defendants' motions and dismiss this action for the following reasons.

## II.     BACKGROUND

This action arises out of events related to market disclosures made by MBNA January 20,

2005 through April 21, 2005, and a stock and cash merger between MBNA and BAC.  The plaintiffs

assert derivative claims on behalf of MBNA, a Maryland corporation which was acquired by BAC,

a Delaware corporation, on January 1, 2006.  The plaintiffs also assert the same derivative claims

against BAC as MBNA's successor-in-interest.  (D.I. 31 ¶¶ 6, 21, 44, 114-54.)  Additionally, the

plaintiffs assert direct claims in their capacity as former MBNA shareholders against the Insider

Defendants and against Lewis.  The plaintiffs bring these direct claims on behalf of two classes of

---

"MBNA defendants."

[4] The court afforded the parties an opportunity to address the subject matter jurisdiction
issue in a subsequent sur-reply (D.I. 60) filed by the plaintiffs and reply to the sur-reply (D.I. 65)
filed by the defendants.

former MBNA shareholders – the "Holder Class"[5] and the "Merger Class."[6] (Id. ¶¶ 155-90.)

The claims center around the following allegations against the Insider and Director Defendants: That they engaged in practices constituting gross mismanagement; that they wasted corporate assets by permitting excessive compensation; and that they made misleading statements regarding MBNA's expected financial performance. (Id. ¶¶ 64-78.) The plaintiffs aver that these alleged actions constituted a breach of fiduciary duty on the part of the Insider and Director Defendants. (See id.) The plaintiffs also allege that the Insider and Director Defendants violated their fiduciary duties by: (1) agreeing to the merger with BAC on unfavorable terms; and (2) by failing to make certain disclosures in the proxy materials seeking MBNA shareholder approval of the proposed merger. (Id. ¶¶ 83-95). The plaintiffs further allege that the MBNA defendants breached their fiduciary duties in connection with the proposed merger. (Id. ¶¶ 83-95.) Finally, the plaintiffs allege that Lewis aided and abetted the remaining defendants in their purported breach of fiduciary duties in connection with the proxy materials. (Id. ¶¶ 39, 189.)

The following facts are taken from the Amended Complaint. According to the Amended Complaint, MBNA was the world's largest independent credit card lender in 2004. In January 2005, MBNA reported its fourth quarter and full year 2004 financial results. (Id. ¶ 64.) On January 21, 2005, MBNA held an earnings conference call with analysts during which it stated that it expected its earnings would grow at an annual rate of 10% for the fiscal year of 2005. (Id. ¶¶ 65-69.) The

---

[5] The Holder Class consists of all shareholders who held the shares of MBNA on January 19, 2005, and who continued to hold the stock through at least April 22, 2005, and were allegedly damaged by MBNA's disclosures. (D.I. 31 ¶ 7(a)).

[6] The Merger Class consists of all former MBNA shareholders whose shares were exchanged for BAC stock by reason of the merger. (Id. ¶ 7(b)).

3

company reported that it would increase earnings by increasing its profit margin, which it would accomplish in part by reducing its reliance on "zero percent" interest rate offers on credit card loans that it had been using to attract new customers. (Id. ¶ 66, 68-69.) It also announced that it was initiating voluntary early retirement and severance programs, in an effort to offset high marketing costs and to make MBNA more efficient. (Id. ¶ 64-65.) MBNA repeated its optimistic 10% growth estimation at a Credit Suisse First Boston ("CSFB") investor conference on February 9, 2005. (Id. ¶ 75.)

On April 21, 2005, MBNA issued a press release in which it announced that its earnings for the first quarter of 2005 were substantially lower than expected. (Id. ¶ 11.) The press release stated that MBNA's net income for the first quarter of 2005 was $0.02 per share, down from $0.40 per share in the same period one year earlier. (Id. ¶ 78.) This represented a 94% decline from the $0.59 per share that MBNA reported in the fourth quarter of 2004. (Id. ¶¶ 11.) MBNA attributed the lower-than-expected earnings to two events: First, costs associated with the aforementioned early retirement and severance programs were nearly double what the company had been expecting; second, payment volumes from United States credit card customers were unexpectedly high. (Id. ¶ 79.) As a result of the low earnings, MBNA vastly reduced its estimated projections for 2005 earnings per share, stating that it then expected earnings to be significantly below the initial projection. (Id. ¶ 11.) Following this announcement, shares of MBNA's publicly traded stock fell from its closing price of $23.11 on April 20, 2005 to below $19 per share. (Id. ¶ 80.)

The plaintiffs further allege that between January 21, 2005 and February 3, 2005, certain of the Insider Defendants sold nearly $76 million worth of the company's stock. (Id. ¶ 74.) The plaintiffs contend: (1) that these defendants knew MBNA's revenues were materially overstated; (2)

4

that these defendants were aware of the pending downturn at the time they sold their stock; and (3) that as a result of their intentional misstatements and omissions, the market price of MBNA shares was artificially inflated from January 20, 2005 through April 21, 2005.  (Id. ¶ 143.)

In early June 2005, the MBNA Board of Directors (the "Board") met with its management team and its financial and outside advisors, including representatives from UBS and Wachtell, Lipton, Rosen & Katz to discuss MBNA's financial performance, consolidation activity in the credit card industry, and long- and short-term trends, as well as other developments in areas which MBNA conducted its business.  (Id. ¶ 83.)  The Board considered a number of business strategies, including remaining independent, held discussions with at least one potential merger partner (Wachovia, Inc.), and had a list of several other merger candidates.  (Id. ¶ 83, 86.)  During this time, Hammonds was quoted in an article published in *Business Week*'s June 20, 2005 edition as saying "[t]here's no 'For Sale' sign on MBNA's Wilmington (Del.) headquarters."  (Id. ¶ 86.)

On June 29, 2005, however, the Board unanimously approved a merger with BAC.  (Id. ¶ 88.) The next day, BAC announced it would acquire all of the outstanding shares of MBNA in a stock and cash merger, whereby each share of MBNA stock would be exchanged for $27.50 in cash and shares of BAC stock.  (Id. ¶ 182.)  The merger price exceeded the $21.07 closing price of MBNA's shares the day before the announcement of the merger and the closing price of MBNA's shares on April 20, 2005, the day before MBNA's first quarter 2005 earnings results were announced.  (Id. ¶ 17.)  On September 26, 2005, MBNA sent proxy materials to shareholders containing disclosures about the merger process.  (Id. ¶ 83.)  MBNA's shareholders approved the merger on November 3, 2005.  (Id. ¶ 17.)  The plaintiffs allege that the Director Defendants authorized the sale of the corporation without maximizing shareholder value.  (Id. ¶ 85.)  They also

allege that the Board did not fairly consider in a timely manner all information reasonably available, that it did not act in good faith, and that it did not properly auction the company pursuant to its "Revlon Duties."[7]  (Id. ¶ 85.)

## III.     STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the jurisdiction of the court to address the merits of a plaintiff's complaint. A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction can take two forms: it can attack the complaint on its face (facial attack), or it can attack the existence of subject matter jurisdiction in fact (factual attack).  *See Mortensen v. First Federal Savings and Loan*, 549 F.2d 884, 891 (3d Cir. 1977).  When reviewing a factual attack the court is free to weigh evidence outside the pleadings to resolve factual issues bearing on jurisdiction, and to satisfy itself as to the existence of its power to hear the case.  *Id.*  Therefore, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the court from evaluating the merits of jurisdictional claims for itself.  *Id.*  The plaintiff bears the burden to prove that jurisdiction does in fact exist.  *Id.*  However, the plaintiff's burden is relatively light, since "dismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of the

---

[7] When a board of directors is on the verge of selling, breaking up or transferring control of the corporation, directors have a duty to maximize shareholder value.  Such actions as the board must take are often referred to as "Revlon Duties" after a well-known fiduciary law case which first established these principles in Delaware.  *See Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc*., 506 A.2d 173, 182 (Del. 1986).  When "Revlon Duties" arise, the board has a duty to maximize immediate shareholder value and an obligation to auction the company fairly. *See Barkan v. Amsted Indus., Inc.* 567 A.2d 1279, 1286 (Del. 1989).

Court, or otherwise completely devoid of merit as to not involve a federal controversy.'" *Kulick v. Pocono Downs Racking Ass'n*, 816 F.2d 895, 899 (3d Cir. 1987) (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974)). When reviewing a facial attack, however, the court must consider the allegations of the complaint as true, making all reasonable inferences in the plaintiff's favor. *Id.*

## VI.   DISCUSSION

"When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *In re Corestates Trust Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993), *aff'd* 39 F.3d 61 (3d Cir. 1994).  Rule 12(h) grants the court the power to dismiss a complaint for lack of subject matter jurisdiction at any stage in the proceeding. Fed. R. Civ. P. 12(h)(3).  Therefore, the court will turn its attention to the threshold question of subject matter jurisdiction.

The plaintiffs assert federal question jurisdiction based on a single claim for contribution brought under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78j(b), pursuant to which there is a private right of action for contribution, and Section 21(D) of the Private Securities Litigation Reform Act (the "PSLRA"), 15 U.S.C. §78u-4, which governs the application of any private right of action for contribution asserted pursuant to the Exchange Act.  (D.I. 60 at 1.)[8] The plaintiffs argue that, as a result of the defendants' dissemination

---

[8] Prior to Congress having enacted an express provision for contribution under Section 21(D) of the Exchange Act, the Supreme Court recognized that a federal cause of action exists for contribution pursuant to Section 10(b) of the Exchange Act and Rule 10b-5.  *See Musick, Peeler & Garrett v. Employers Ins. of Wausau*, 508 U.S. 286, 288(1993).

of materially false and misleading information, the stock price of MBNA was artificially inflated and MBNA shareholders were injured.  (D.I. 31 ¶ 122.)  The plaintiffs further contend that MBNA also participated in the wrongful conduct, and is equally liable for the violation of Section 10(b). (Id. ¶ 125.)  Assuming that MBNA is liable, the plaintiffs argue the defendants are liable to the company, or in this case to BAC, its successor in interest, for contribution pursuant to sections 10(b) and 21(D) of the Exchange Act.  (Id. ¶ 126.)

The defendants argue that the plaintiffs' complaint should be dismissed for lack of subject matter jurisdiction, because this lone federal claim is unrelated to the state claims that predominate this case.  Additionally, the defendants contend that the exercise of supplemental jurisdiction would be inappropriate in this instance.  (See, e.g., D.I. 53 at 2-3.)  The court concurs and finds that the allegations made in the amended complaint are chiefly state law issues, with the plaintiffs' claim for federal subject matter jurisdiction hinging on a single federal claim that bears only a distant and tangential relationship to the state law claims.  The plaintiffs argue that the federal claim they assert is sufficiently intertwined with all claims asserted, because the material misstatements and omissions which underlie the federal claim led to MBNA's stock price being artificially inflated, which in turn allowed the merger between MBNA and BAC to occur, which ultimately caused the merger price to be less than fair value.  (D.I. 65 at 7.)  However, the court concludes that this alleged connection between the federal claim and the state claims, even if true, is far too attenuated to form the basis for federal subject matter jurisdiction.  Put another way, the plaintiffs have not adequately explained how events relating to the BAC merger, which was not announced until June 30, 2005, are interrelated with claims relating to disclosures and statements made by defendants between December 2004 and April 2005 that concern only MBNA's first quarter 2005 results.

8

Furthermore, ten of the amended complaint's eleven counts focus almost exclusively on state law breach of fiduciary claims, with no connection between these state law claims and the federal claim apparent to the court. Nearly all sixty-nine pages of the plaintiffs' answering brief in response to the defendants' motion to dismiss address the state law claims relating to alleged grievances in connection with the merger between MBNA and BAC. The plaintiffs dedicate only a few short paragraphs in the amended complaint and three sentences in the answering brief to discussing their federal claim. The plaintiffs' federal claim is not even addressed in the eleven points described in their answering brief's "summary of argument." (See D.I. 47 at 4-7.) For these reasons, the court finds that the plaintiffs' contribution claim is so insignificant in comparison to the rest of the complaint that it is clear that the state law claims "substantially predominat[e] over" the federal law claim. *In re Litig. Trust of MDIP*, No. Civ. A. 03-779(GMS), 2005 WL 1242157, at *5 (D. Del. May 25, 2005).

The court may nonetheless choose to exercise supplemental jurisdiction over state law claims where it has original jurisdiction over a federal claim. Supplemental jurisdiction allows federal courts to hear and decide state law claims along with federal law claims when they are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. §1367(a). However, the fact that this court has the power to decide ancillary issues does not mean that it must "tolerate a litigant's efforts to impose upon it what it is in effect only a state law case." *United Mine Worker of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Once it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage, the state claim may fairly be dismissed."). As the supplemental jurisdiction statute states, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim

. . . if . . . the claim substantially predominates over the claim or claims over which the district court has original jurisdiction . . . ."  28 U.S.C. §1367(c)(2).

As explained above, the state law claims in this case substantially predominate over the federal claim.  The amended complaint is comprised almost entirely of state law issues that bear no discernable relationship to the contribution claim, and the plaintiffs present no persuasive reason for the court to use its discretionary power to exercise supplemental jurisdiction in this case.  (See D.I. 31 ¶¶ 127-90).  Given the foregoing, the court concludes that exercising supplemental jurisdiction in a case such as this would be an improper exercise of subject matter jurisdiction, since it "would truly permit the tail to wag the dog."  *Trust of MDIP*, 2005 WL 1242157, at *5.  Because the court declines to exercise supplemental jurisdiction, subject matter jurisdiction is lacking in this case.[9] Accordingly, the court will grant the defendants' motions to dismiss.[10]

Dated: June 26, 2007                         /s/ Gregory M. Sleet
                                             _____
                                             UNITED   STATES   DISTRICT   JUDGE

_____

[9] In their Sur-Reply Memorandum addressing subject matter jurisdiction, plaintiffs assert that diversity jurisdiction exists in this case.  (D.I. 60 at 10.)  However, since the plaintiffs failed to affirmatively and distinctly assert diversity jurisdiction in their amended complaint, the plaintiffs cannot now assert diversity as a possible basis for subject matter jurisdiction.  *See, e.g., S. Freedman & Co. v. Raab,* 180 Fed. Appx. 316, 320 (3d Cir. 2006) (citing 5 C. Wright & A. Miller, Federal Practice & Procedure § 1206, at 78-79 (1969 & Supp. 2005) for the proposition that "the basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot 'be established argumentatively or by mere inference.'").

[10] Because the court is dismissing the plaintiffs' entire amended complaint on Rule 12(b)(1) grounds, it need not address the defendants' Rule 12(b)(6) grounds for dismissal.

10

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LEMON BAY PARTNERS LLP and DAVID BENOIT, On behalf of Themselves And All Others Similarly Situated, | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) ) | C.A. No. 05-327 GMS |
| v. | ) ) | |
| Bruce L. HAMMONDS, et al, | ) ) | |
| Defendants, | ) ) | |

## ORDER

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1.      The defendants' Motions to Dismiss (D.I. 38, D.I. 42) are GRANTED.

2.      The plaintiffs' amended complaint (D.I. 31) is hereby DISMISSED in its entirety.

3.      The Clerk of Court is directed to close this case.

Dated: June 26, 2007                          /s/ Gregory M. Sleet                          
                                              UNITED STATES DISTRICT JUDGE